Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
  matt@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:   (310) 424-5557
Facsimile:   (310) 597-4626
*Attorneys for Defendant*

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, a New York Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,<br><br>    Defendant(s). | Case No. 2:23-cv-05492-WLH-AS<br><br>Assigned to: Honorable Wesley L. Hsu, United States District Judge<br><br>Referred to: Honorable Alka Sagar, United States Magistrate Judge<br><br>Action Filed:    07/10/2023<br>Fact Discovery Cutoff:  10/11/2024<br>Final Pretrial Conf.:  02/07/2025<br>Trial Date:    02/24/2025<br><br>**JOINT BRIEF RE:<br> (1) DEFENDANT LINE PBC'S MOTION FOR SUMMARY JUDGMENT ON STANDING;<br> (2) PLAINTIFF AUGUST'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**<br><br>Hearing:<br>Date/Time:  December 13, 2024, 1:30 pm<br>Location:    First Street Courthouse<br>    350 W. 1st Street<br>    Courtroom 9B, 9th Floor,<br>    Los Angeles, CA 90012 |

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

## NOTICE OF CROSS-MOTIONS

**TO THE COURT, ALL PARTIES, AND COUNSEL, TAKE NOTICE:**

Further to the Court's Order Granting Joint Stipulation Regarding Motion for Summary Judgment Briefing Schedule (ECF No. 57), the parties in this action hereby provide notice of summary judgment cross-motions to be heard on December 13, 2024 at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 350 W. 1st Street, Courtroom 9B, 9th Floor, Los Angeles, California 90012.

**(a)    Line PBC's Notice of Motion for Summary Judgment on Standing**

Defendant Line Financial PBC ("Line PBC" or "Defendant") will and hereby does move this Court for an order granting summary judgment, or alternatively partial summary judgment, in favor of Defendant and against Plaintiff August Image LLC ("August" or "Plaintiff") on all claims and causes of action asserted against it as follows:

1. Defendant is entitled to summary judgment as to the entire First Amended Complaint on the grounds that Plaintiff lacks standing to bring a Copyright Infringement lawsuit for all of the photographs at issue in this lawsuit.

Line PBC's motion is based upon this Notice of Motion and Motion, the accompanying Joint Memorandum of Points and Authorities, Joint Statement of Facts, Joint Appendix of Evidence, Joint Appendix of Objections, and the declarations of Morgan E. Pietz, all exhibits, pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 3, 2024, further to the Court's Standing Order For Motions for Summary Judgment (ECF No. 29).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(b)**   **August's Notice of Cross-Motion for Partial Summary Judgment on Liability**

Plaintiff August Image, LLC ("August") will and hereby does move for partial summary judgment establishing that Defendant Line Financial, PBC is liable for direct copyright infringement of the copyrights in the photographs asserted in this case (collectively, the "Subject Photographs," at Dkt. 45-1).[1] This motion is made on the grounds that there are no genuine disputes of material fact as to: (1) August's ownership of a valid copyright the Subject Photographs; (2) Defendant's access to and copying of the Subject Photographs; and (3) Defendant's lack of any viable affirmative defenses for direct copyright infringement. This motion is based on August's below memorandum of points and authorities, the accompanying separate statement of undisputed material facts and declarations, the record in this case, and such further and other evidence and argument as may be received at the hearing. This motion is made following a conference of counsel per Civil L.R. 7-3, which took place on October 3, 2024.

Respectfully submitted,

Dated: November 4, 2024                    Dated: November 4, 2024

*/s/ Morgan E. Pietz*                      */s/ Stephen M. Doniger*
Morgan E. Pietz                            Stephen M. Doniger
Matthew A. Trejo                           Benjamin F. Tookey
PIETZ & SHAHRIARI, LLP                     DONIGER / BURROUGHS
*Attorneys for Defendant*                  *Attorneys for Plaintiff*

---

[1] August does not move for partial summary judgment as to Subject Photograph AU2235159 (*see* Dkt. 45-1 at 28). Prior to, during, and after the parties' October 3 conference regarding August's motion, August requested that the parties stipulate to the dismissal of that photograph to narrow the issues to be adjudicated on summary judgment. Declaration of Stephen M. Doniger ¶¶ 2-3. Defendant refused to do so without conditions that were unreasonable and not agreeable to August. *See id.* ¶ 3. Because August already attempted to dismiss Subject Photograph AU2235159 in a more streamlined manner, August excludes that Subject Photograph from this motion.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1
2
## **TABLE OF CONTENTS**
3
NOTICE OF CROSS-MOTIONS....................................................................ii
4     (a) Line PBC's Notice of Motion for Summary Judgment on Standing ..........ii
5     (b) August's Notice of Cross-Motion for Partial Summary Judgment on
          Liability ..........................................................................................iii
6 TABLE OF CONTENTS ...........................................................................iv
7 TABLE OF AUTHORITIES .....................................................................ix
8 I. INTRODUCTION ...............................................................................1
9     (a) Defendant Line Financial PBC's Introduction to its MSJ on Standing ......1
10    (b) Plaintiff August Image's Response to Line PBC's MSJ on Standing ........2
11    (c) August's Introduction to its Cross-Motion on Liability.............................2
12    (d) Line PBC's Response to August's Cross-Motion on Liability ..................4
13 II. STATEMENT OF FACTS....................................................................6
14    (a) Defendant Line PBC's Statement of Facts in Support of its Motion for
          Summary Judgment on Standing.......................................................6
15        (1) The Pleadings Do Not Allege, and August Has Not Produced
16            Evidence Demonstrating, that it Owns the Copyrights at Issue .......6
          (2) The Agency Agreements, Dated Between 2007 to 2021, Merely
17            Appoint August as an "Exclusive Worldwide Agent" for the
18            Photographers..................................................................7
          (3) The Backdated Addendums Purport to "Clarify" the Earlier Agency
19            Agreements ...................................................................10
20        (4) August's Admission that the Addendums Were Backdated...........12
          (5) The ImageRights Agreement Purports to Make ImageRights Yet
21            Another "Exclusive Agent" that has the Right to File and Settle
22            Lawsuits for Infringement of the Photographs at Issue ..................12
          (6) August's Deposition Testimony Relevant to Standing.................13
23        (7) The Improperly Withheld Photographer Declarations...................14
24    (b) August's Statement of Facts in Opposition to Line PBC's Motion for
25        Summary Judgment on Standing.......................................................14
      (c) August's Statement of Facts in Support of its Cross-Motion For Partial
26        Summary Judgment on Liability .........................................................17
27        (1) August, its business, and the Subject Photographs .........................17
28        (2) Defendant and its business...........................................................18

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

(3) Defendant's unauthorized copying, display, reproduction, and distribution of the Subject Photographs ............................................. 19

(d) Line PBC's Statement of Facts in Opposition to August's Cross-Motion For Partial Summary Judgment on Liability ............................................. 21

(1) August's Insufficient Evidence of Standing and "Ownership" ...... 21

(A) The Agency Agreements: Do Not Mention "Syndication," "Copying," "Display," "Reproduction," or "Distribution"; Mention "Copyright" to Specify that Photographers Own It ........................................................... 21

(B) The Backdated Addendums: August Glosses Over Them 23

(C) The Photographer Declarations: Improperly Withheld; Subject of a Motion to Strike; Not a License Grant ......... 23

(D) Lauren Kelly's Testimony on "Intent" and "Industry Custom" Lacks Foundation and is Contrary to Her 30(b)(6) Admissions ........................................... 25

(2) August's Other Failures of Proof With Respect to "Ownership of a Valid Copyright" ............................................. 26

(A) Holes in Chain of Title: No Agency Agreements and Addendums Were Produced for Arielle Bobb-Willis, and Bruno & Nicoletta Van Mossevelde ................................ 27

(B) Copyright Registration Issues: Missing Certificates; Untimely Certificates Unsupported by Testimony; Failure to Prove Certificates Produced Cover the Photographs in Dispute ..................................................... 27

(3) Facts Relevant to August's Failure to Prove Copying ................... 29

(A) The Three Types of Pictures that Comprise Plaintiff's Compound Exhibit 7: PixMole, ImageRights, and Human-Captured ........................................................ 29

(B) The Deposition Testimony August Cites to Try and Authenticate Exhibit 7 Does Not Say What August Contends it Says .............................................. 30

(C) August Failed to Lay Foundation for Admission of the PixMole Pictures and ImageRights Pictures And Should be Precluded From Doing So ................................ 31

III. LEGAL STANDARD .......................................................... 33

IV. LINE PBC'S MOTION FOR SUMMARY JUDGMENT ON STANDING ..... 34

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

(a) Summary Judgment Should be Granted for the Defendant Because Plaintiff has Failed to Carry its Burden of Demonstrating Standing ........ 34

(1) Article III Standing and Section 501(b) of the Copyright Act: Exclusive Licensees May Sue for Infringements That Occur at the Time they Were Exclusive Licensees of the Relevant Right.......... 34

(2) *Righthaven* Addresses Bare Rights to Sue and Reinforces that Standing is Evaluated as of the Outset of Litigation...................... 35

(3) *Minden v. Pearson* and *Minden v. Wiley* ....................................... 36

(4) *Wiley's* Holding Does Not Apply Here and it Should be Distinguished; this Case is Closer to *DRK Photo*, and *Torres* ....... 38

(5) August's Attempts to Try and Rewrite the Agency Agreements with Parol Evidence Are Contrary to the Copyright Act, the Contracts Themselves, and New York State Law .......................................... 41

  (A) The Backdated Addendums Executed After the Complaint Was Filed Are All Irrelevant and Ineffective to Confer Standing ............................................................................ 42

  (B) The Photographers' Declarations Improperly Withheld Until the Final Few Hours of Fact Discovery and August's "Industry Custom" Deposition Testimony Do Not Establish Standing ........................................................... 43

(6) Summary Judgment Must Also Be Granted Because, as in *Torres*, Neither the Agency Agreements Nor the Addendums Cover Derivative Works ................................................................. 44

(7) Summary Judgment Must be Granted as to the Claims Asserted Based on the Willis and Mossevelde Photos, Because August Has Failed to Prove Up its Chain of Title as to Those Photographers .. 46

(8) Summary Judgment Must Also Be Granted Because the ImageRights Agreement Destroyed August's Exclusivity ............. 46

V. AUGUST'S OPPOSITION TO LINE PBC'S MOTION FOR SUMMARY JUDGMENT ON STANDING................................................................. 48

A. August holds an exclusive copyright interest in the Subject Photographs 48

  1. As the exclusive licensing agent for the Photographers, August has the exclusive rights to reproduce, distribute, and display (and authorize the reproduction, distribution, and display of) the Subject Photographs...................................................................... 48

  2. Defendant's claim that August has only a bare right to sue is untethered from August's agreements with the Photographers ...... 52

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

3.  Defendant's "typical, rights-grant language" argument fails because August's agreements with the Photographer's clearly show their mutual intent to transfer exclusive rights to August ...................... 53

B.  Under controlling Ninth Circuit authority, August has standing to pursue this case for violation of its exclusive rights in the Subject Photographs . 60

C.  Defendant's allegations of malfeasance against August are an unwarranted distraction from this motion's lack of merits ............................................. 62

VI. AUGUST'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ... 65

(a)  August holds an exclusive copyright interest in the Subject Photographs 65

(b)  Defendant infringed August's exclusive rights in the Subject Photographs 70

(1)  The copyrights in the Subject Photographs are valid .................... 70

(2)  Defendant copied, displayed, distributed, and reproduced the Subject Photographs without seeking or obtaining August's authorization ................................................................................... 72

(c)  Defendant has no viable affirmative defenses to liability ........................ 74

(1)  Defendant's uses of the Subject Photographs were commercial and non-transformative .......................................................................... 76

(2)  The Subject Photographs are original, creative works .................. 77

(3)  Defendant displayed nearly verbatim reproductions of the Subject Photographs even though it publishes posts without photographs . 78

(4)  If universalized, Defendant's uses would destroy an established licensing market for the use of celebrity photographs ................... 79

VII. LINE PBC'S OPPOSITION TO AUGUST'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY ......................................... 81

(a)  Line PBC's Own Motion for Summary Judgment Demonstrates that August Lacked Standing and Has Not Proven Copyright "Ownership" .. 81

(b)  Holes in the Chain of Title Require Entry of Summary Judgment in Line PBC's Favor on the Bobb-Willis and Van Mossevelde Claims .............. 82

(c)  Registration Problems Require the Denial of August's Cross-Motion..... 83

(1)  Missing Registration Certificates: Summary Judgment Should be Entered for Line PBC on the Streiber Photos of Elon Musk and Antonio Banderas .......................................................................... 83

(2)  Untimely Registration Certificates: Summary Judgment Should Be Denied for the Seven Registrations Covering Nine Photos That Were Issued More than Five Years First Publication .................... 84

(3)  Certificates Not Shown to Cover Photos in Dispute: Pugliese & Streiber ............................................................................................ 85

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

(d) August Has Not Proven Copying, So Its Cross-Motion Must Be Denied 86

(e) The "Derivative Works" Issue is a Reason to Grant Line PBC's Motion; or, at the Very Least, it Presents a Jury Issue Mandating Denial of Plaintiff's Cross-Motion ............................................................. 87

(f) Line PBC is Not Relying on its Affirmative Defenses to Oppose August's Cross-Motion ................................................................. 88

VIII. CONCLUSION ................................................................. 88

(a) Line PBC's Conclusion ................................................. 88

(b) August's Conclusion ..................................................... 88

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1

## TABLE OF AUTHORITIES

2

**Cases**

3   *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)                75

4   *AAA Flag & Banner Mfg., Co. v. Flynn Signs and Graphics, Inc.*, 2010 WL 1752177

5     (C.D. Cal. Apr. 28, 2010)                84

6   *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027 (D. Alaska 2013) 85

7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                33

8   *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023)  48,

9     65, 76, 77

10  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008)                74

11  *Aug. Image, LLC v. Girard Ent. & Media LLC*, 2024 WL 1300254 (S.D.N.Y. Mar.

12    27, 2024)                58

13  *Aug. Image, LLC v. Melt Cosmetics*, 2024 WL 4328823 (C.D. Cal. Aug. 20, 2024) 53

14  *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065 (9th Cir. 2021)                73

15  *Berry v. Hawaii Express Serv., Inc.*, 2005 WL 8166230 (D. Haw. June 27, 2005)  58

16  *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425 (S.D.N.Y.

17    2004)                55

18  *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 2012 WL 6553403 (S.D. Cal.

19    Dec. 13, 2012)                71, 72, 84

20  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)                passim

21  *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499 (9th Cir.

22    1987)                53

23  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)                33

24  *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090 (W.D. Wash. 2004)  85

25  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612 (9th Cir. 2010)  70

26  *Creative Photographers, Inc. v. Julie Torres Art, LLC*, 2023 WL 2482962 (N.D. Ga.

27    2023)                38

28  *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007)                43

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*Davis v. United States*, 2010 WL 334502 (C.D. Cal. Jan. 28, 2010) ................................ 2

*De Fontbrune v. Wofsy*, 39 F.4th 1214 (9th Cir. 2022) .............................................. 77, 79

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ............................ 80

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ........... 75, 80

*DRK Photo* ............................................................................................. 34, 39, 41

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir.
2017) ............................................................................................................... 1

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) *cert. denied* 498 U.S.
1103, 111 (1991) .......................................................................................... 43

*Ellison Educ. Equip., Inc. v. Chen*, 2004 WL 3154592 (C.D. Cal. Dec. 21, 2004) ... 63

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) .. 70

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000) .................................. 71

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................... 70, 71

*Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) .................................................... 49, 67

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000)
...................................................................................................................... 34

*Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc.*, 772 F.Supp.2d 1029 (E.D.
Wis. 2011) ..................................................................................................... 71

*Great Bowery Inc. v. Consequence Sound LLC*, No. 23-CV-80488, 2024 WL
3291101 (S.D. Fla. July 2, 2024) ................................................................. 38, 46

*Grupo Dataflux v. Atlas Global Grp., LP*, 541 U.S. 567 (2004) ............................... 34

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 1960) ...................... 75

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ............................................... 67

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010) ... 57,
69

*Keene Corp. v. United States*, 508 U.S. 200 (1993) ................................................ 42

*Lanard Toys Ltd. v. Novelty, Inc.*, 2007 WL 2439505 (C.D. Cal. 2006) ................... 85

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*Liaigre, Inc. v. California Furniture Collection, Inc.*, 2022 WL 18278600 (C.D. Cal.
Oct. 6, 2022) ............................................................................................................ 54

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 5310831 (N.D. Cal. June 29,
2018) ...................................................................................................................... 73

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 42

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005) .................. 71

*Marine Midland Bank–Southern v. Thurlow*, 53 N.Y.2d 381, 442 N.Y.S.2d 417
N.E.2d 805 (1981) .................................................................................................. 44

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....... 33

*McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022) ....................... 77, 78, 79

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D.
Cal. 2006) .............................................................................................................. 75

*Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189 (C.D.
Cal. 2005) .............................................................................................................. 70

*Minden Pictures* ............................................................................................... 69, 70

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117 (N.D. Cal.
2014), *rev'd on other grounds,* 795 F.3d 997 (9th Cir. 2015) ........................ passim

*Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962 (N.D. Cal. 2013)
............................................................................................................................ passim

*Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012) ......................... 77, 78, 79

*Motta v. Samuel Weiser, Inc.*, 768 F.2d 481 (1st Cir.1985) .......................... 35, 46, 83

*New Tradition Media, LLC v. Rittersbacker Sunset, LLC*, 2023 WL 8351523 (C.D.
Cal. Oct. 13, 2023) ................................................................................................ 76

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099 (9th Cir.
2000) ...................................................................................................................... 33

*Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ............................................ 33

*Orthoarm, Inc. v. Forestadent USA, Inc.*, 2007 WL 4457409 (E.D. Mo. Dec. 14,
2007) ...................................................................................................................... 81

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155 (C.D. Cal. 2010)          35

*Pac. Stock, Inc. v. Pearson Educ., Inc.*, 927 F. Supp. 2d 991 (D. Haw. 2013)          54

*Playboy Enters. v. Dumas*, 831 F. Supp. 295 (S.D.N.Y 1993)          42, 56

*Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922 (9th Cir.
   1999)          53

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 123
   (N.D. Cal. 1995)          71

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018)          78

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224 (E.D. Cal. 1985)          33

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989)          55, 72

*Scott v. Harris*, 550 U.S. 372 (2007)          33

*Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984)          73

*Shea v. Fantasy Inc.*, 2003 WL 881006 (N.D. Cal. Feb. 27, 2003)          85

*Signatours Corp. v. Hartford*, 2015 WL 12030058 (W.D. Wash. June 10, 2015)          53

*Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881 (9th Cir. 2005)          43, 52

*Stern v. Lavender*, 319 F. Supp. 3d 650 (S.D.N.Y. 2018)          71

*Stewart v. Abend*, 495 U.S. 207 (1990)          49, 67

*Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394 (D.N.J. 2020)    passim

*Survivor Prods. LLC v. Fox Broad. Co.*, 2001 WL 35829270 (C.D. Cal. June 12,
   2001)          74

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008)          66

*Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 WL 6892097 (C.D. Cal. Aug.
   11, 2016)          75

*Thomas v. Scutt*, 127 N.Y. 133 (1891)          44

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)          73

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assn.*, 953 F.3d 638
   (9th Cir. 2020)          39

*Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017)          passim

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) ........................... 73

*World Thrust Films Inc. v. Intl. Fam. Ent. Inc.*, No. 93 0681 CIV, 1996 WL 605957

  (S.D. Fla. Aug. 1, 1996) ............................................................. 21, 35

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110 (9th

  Cir. 2000) ....................................................................................... 78

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 506

  (S.D.N.Y. 2003) ............................................................................... 71

**Statutes**

106 .................................................................................................. 45, 87

17 U.S.C. § 101 ........................................................................... passim

17 U.S.C. § 106 .................................................................. 49, 54, 65

17 U.S.C. § 107 ................................................................... 75, 76

17 U.S.C. § 107(4) ...................................................................... 79

17 U.S.C. § 201(d)(1) .............................................................. 49, 66

17 U.S.C. § 201(d)(2) ......................................................... 49, 57, 65

17 U.S.C. § 204 .............................................................................. 43

17 U.S.C. § 410(c) ..................................................................... 70, 84

17 U.S.C. § 501(b) ..................................................................... 65, 66

17 U.S.C. 501(b) ........................................................................ passim

U.S.C. § 501 ..................................................................................... 5

**Other Authorities**

Article III of the U.S. Constitution ............................................... 1, 5, 34

**Rules**

37(b)(2)(A) ................................................................................... 24

Fed. R. Civ. P. 37 ........................................................................... 63

Fed. R. Civ. P. 56(a) ...................................................................... 33

Fed. R. Civ. Proc., Rule 37(c)(1) .................................................. 24

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

FRCP Rule 45 ............................................................................... 64

Rule 26(a)(1)(A) .......................................................................... 24

Rule 37(b)(2)(A) .......................................................................... 24

**Treatises**

Nimmer on Copyright ........................................................ 35, 53, 69

Patry on Copyright ....................................................... 35, 38, 46, 59

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

# I.  INTRODUCTION

**(a)    Defendant Line Financial PBC's Introduction to its MSJ on Standing**

In the federal courts, it is well-settled that a plaintiff must have standing at the time the *original* complaint is filed in a case, which is a jurisdictional requirement under Article III of the U.S. Constitution.  In this case, undisputed evidence demonstrates that the plaintiff did not have standing to sue at the time it filed its original complaint, so summary judgment in favor of the defendant is required.

Since 2020, plaintiff August Image, LLC has filed over 100 copyright infringement lawsuits in federal courts around the country—32 in this judicial district alone—seeking to recover damages for alleged online infringement of copyrighted photographs.  As in most of August's many other cases, here, the photographers *who purport to own the copyright registrations being sued upon*, are not joined as plaintiffs.

Accordingly, as a purported transferee of copyright rights, it is August's burden to establish that it has standing to sue for infringement, which it has attempted to do by arguing that is an "exclusive licensee."  But it is not.  The Agency Agreements it entered into with the photographers years ago do not qualify as the kinds of licenses sufficient to convey standing to sue.  *See DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017).  Indeed, the Agency Agreements grant no license at all; they merely appoint August as the photographers' agent.

August has attempted to solve this fatal problem with backdated "Addendums," late-disclosed declarations, and inadmissible parol evidence, none of which suffices to create a genuine dispute of material fact on standing.  Accordingly, Line PBC respectfully requests that the Court enter summary judgment in its favor on all claims.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(b)    Plaintiff August Image's Response to Line PBC's MSJ on Standing**

As the exclusive licensing and syndication agent for each of the Subject Photographs, there can be no genuine dispute that August has (and has held) exclusive rights in those works and has standing to pursue this case. Defendant Line Financial's contrary arguments demonstrate a profound misunderstanding of copyright law and must be rejected. And since there is also no genuine dispute that Defendant used the Subject Photographs without license in violation of August's exclusive rights in the Subject Photographs, this Court should not only deny Defendant's improperly long motion for summary judgment,[2] it should also find that August has standing to pursue this action and grant its motion for partial summary judgment establishing Defendant's liability for copyright infringement.

**(c)    August's Introduction to its Cross-Motion on Liability**

As the saying goes, a picture is worth a thousand words. One powerful photograph can drive interest in a story that may otherwise go unnoticed. There is a vibrant licensing market for photographs for use in articles, books, advertisements, and more because copyright law does not allow infringers "to avoid the drudgery in working up something fresh" by exploiting the value of a photograph they did not create. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). Yet that is exactly what Defendant did with the original Subject Photographs.

August is the exclusive licensing and syndication agent for high-end photographs of public figures created by internationally renowned photographers. Here, 12 such photographers (collectively, the "Photographers"), all of whom appointed August as their exclusive licensing agent, created the Subject

---

[2] Defendant's motion on August's standing is well over 8,000 words, more than 1,000 words over what Civil L.R. 11-6 allows. A failure to comply with the Local Rules can result in sanctions, including the Court striking non-compliant filings. *See, e.g., Davis v. United States*, 2010 WL 334502, at *1 (C.D. Cal. Jan. 28, 2010). To prevent Defendant from benefiting from its violation, this Court should either strike its motion or decline to consider anything in its motion after the 7,000-word mark.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Photographs, respectively. There is no genuine dispute of material fact that the Subject Photographs are original to the Photographers or that, at all relevant times, August has held exclusive rights in those photographs such that it has standing to pursue this case under the controlling Ninth Circuit authority of *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015).

Although August has previously licensed photographs of public figures created by those photographers, Defendant displayed, distributed, and reproduced the Subject Photographs—without seeking or obtaining August's permission—in numerous posts on Defendant's commercial website useline.com and its Instagram page @lineappofficial. There is no genuine dispute of material fact as to Defendant's unauthorized copying.

Nor is there any genuine dispute that Defendant has no viable affirmative defenses. Defendant has no evidence to satisfy its defenses of estoppel, unclean hands, implied license, and copyright misuse, and none of Defendant's unauthorized exploitations qualify as fair use. Defendant used the Subject Photographs for commercial purposes without critiquing or commenting on the Subject Photographs, the Photographers, or August. Rather, Defendant used those Photographs for the exact purpose for which they were created—to depict the Subject Photographs' respective subjects (i.e., the public figures). The Subject Photographs are original, creative works, and Defendant copied them essentially verbatim, other than minor cropping. And because Defendant used the Subject Photographs in the same manner as publications, media companies, and brands that have sought and obtained permission from August, Defendant's takings represent an existential threat to August's business.

Faced with the foregoing, Defendant questions August's standing in an attempt to excuse itself from the consequences of its infringement. But depriving an artist's exclusive agent from addressing infringement of the exclusive rights granted to it—especially when both artist and agent agree that the agent doing so is proper—

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

would contravene binding Ninth Circuit precedent and allow infringers like Defendant to evade liability for even admitted infringement. Such an absurd result would undermine "the goal of copyright": "to promote science and the arts." *See Campbell*, 510 U.S. at 579. If artists and their exclusive agents cannot control their copyrights, they will not make a living from their creative works or be incentivized to continue to develop and promote such works.

For these reasons, August respectfully requests that this Court find Defendant liable for infringing the copyrights in the Subject Photographs.

**(d)    Line PBC's Response to August's Cross-Motion on Liability**

Which party here is the one "exploiting the value of a photograph they did not create"?  Indeed, that statement perfectly encapsulates August's own business model.  The *photographers* might well be harmed by the unauthorized dissemination of their works.  But that is not who sued.  Indeed, as of the close of fact discovery, at least one the photographers who purports to own a copyrighted photograph at issue in this case appeared to be unaware of the alleged infringement at issue or that this case had even been filed involving his photo.

Further, a picture may well be worth 1,000 words.  But should 19 of them be worth 2.85 million dollars?  Because that is what August has asserted here, alleging, with little support, that Line PBC's blog posts about celebrities were supposedly willful. Which is August's standard MO.  It uses "crawling companies," namely ImageRights and PixMole, to scan the entire open Internet looking for photos on the websites of doctors' offices[3], NGO's[4], or, in this case, a public benefit corporation, and then sues them for copyright infringement.  After sniffing out potential claims in the first place, August then packages them together into mini class actions like this one, seeking astronomical statutory damages for supposedly "willful" infringement,

---

[3] *August Image v. Dr. Charles Sarosy*, C.D. Cal. No. 24-cv-5577, ECF No. 1.

[4] *August Image v. U.S.-Cuba Trade & Economic Council*, S.D.N.Y. No. 23-cv-10539, ECF No. 1.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

plus attorneys' fees.  And then when defendants like Line PBC offer to settle for more than the amount the photographers actually charge as license fees for the photographs at issue, August rejects the offer in the hopes of squeezing out a bigger, litigation payday.[5]  August Image's online photo monetization scheme has gotten very far afield from anything to do with "promoting science and the useful arts".

As to August's instant motion for partial summary judgment on liability, to establish a *prima facie* case for copyright infringement, August bears the burden of proving the following elements on each of its claims: (1) that it had standing to sue for the infringement at the time it filed the original complaint in this case; (2) that it "is the owner of a valid copyright"; and (3) that "the defendant copied original expression from the copyrighted work."  Ninth Circuit Model Jury Instructions, No. 17.5 ("Copyright Infringement—Elements—Ownership and Copying"); *see also* U.S. Const., Art. III; 17 U.S.C. § 501.

August has proven *none* of these elements with its cross-motion papers.  As demonstrated herein, and in Line PBC's responses to the 203 purportedly-undisputed "facts" that August has included in its portion of the JAF, most of the facts relied upon by August are actually disputed.  And, as Line PBC has demonstrated in its own motion for summary judgment, August lacked standing to sue at the time it filed the complaint.  There are other failures of proof, too.  Thus, August's partial motion for summary judgment must be denied in its entirety.

---

[5] Line PBC has offered to settle this case, including in May of 2024.  On the very last day of fact discovery, August finally produced evidence of the amounts it charged third parties to use the photos at issue (*i.e.*, "comps").  Many of the amounts August charged per photo in the late-produced comps are less than the per-photo amount of Line PBC's prior settlement offers to August.  JAF 96.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.  STATEMENT OF FACTS

**(a)** **Defendant Line PBC's Statement of Facts in Support of its Motion for Summary Judgment on Standing**

(1)   The Pleadings Do Not Allege, and August Has Not Produced Evidence Demonstrating, that it Owns the Copyrights at Issue

The plaintiff August Image, LLC filed its original complaint in this case on July 10, 2023.  JAF 1.  With respect to standing, both the original and subsequent first amended complaint, filed June 12, 2024, ambiguously allege that "As the exclusive administrator and syndicator of the photographs at issue in this case and the copyrights therein, August is entitled to institute and maintain this action under 17 U.S.C. § 501(b)."  JAF 2.  Neither the original nor first amended complaint allege that August owns the copyrights in suit.  JAF 3.

August has produced copyright registration certificates that it claims correspond to 17 of the 19 photographs alleged in the first amended complaint.  JAF 4.  Each of the registration certificates that was produced by August during fact discovery identifies both the "Author" and the "Copyright Claimant" as an individual photographer, not August.   JAF 5.  August has produced no evidence that is an *owner* (as distinct from an exclusive licensee, beneficial owner, or exclusive agent of the owner) of any of the copyright registrations at issue.   JAF 6.

August's original complaint did not specify which copyright registrations correspond to which pictures.  JAF 7.  August filed a First Amended Complaint ("**FAC**") on June 12, 2024, adding 4 new photographers (Bruno Van Mossevelde, Nicoletta Van Mossvelde, Arielle Bobb-Willis, and Mark Mann) and 3 new photos, bringing the total to 14 photographers and 19 photographs.  JAF 8.  Exhibit 1 to the FAC depicts the pictures the plaintiff claims to have standing to sue over in the left column, with registration numbers, and what the plaintiff purports are screenshots of Line PBC's allegedly infringing blog and social media posts in the right column, with URL links.  JAF 9.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Thus, for example, Exhibit 1 to the FAC identifies the following as being at issue with respect to the Elon Musk photo allegedly taken by Joe Pugliese (JAF 10):



The multimedia web story pictured on the right includes a text box (JAF 11), as well as interactivity features including pause and share buttons, and little grey and white rectangles indicate there were multiple frames in the story, each with different text (JAF 12). Further, the text in the boxes relates to the photo subject, here Elon Musk.  JAF 13.  The photo on the right is also cropped differently than the one on the left.  JAF 14.  Similarly, the other "Accused Posts" include most of these same elements. JAF 59.

(2)    The Agency Agreements, Dated Between 2007 to 2021, Merely Appoint August as an "Exclusive Worldwide Agent" for the Photographers

August has produced copies of written agreements between it and most of the photographers named in the first amended complaint, all of which are dated between 2007 and 2021 (the "**Agency Agreements**").  JAF 15.  However, August has never produced an Agency Agreement executed by Arielle Bobb Willis, Bruno Van Mossevelde, or Nicoletta Van Mossevelde (three of the four photographers added by the FAC).  JAF 16.  The Agency Agreements that August *has* produced are all similar and most of the language in them is identical to the others, except that there are a few different variations of the form.  JAF 17.

All of the Agency Agreements produced by August during fact discovery contain the following provisions concerning agency appointment, use of the works, copyright ownership, and integration / choice of law:

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

"We are delighted that you have agreed to work with AUGUST, LLC ("AUGUST", "we" or "us") as your exclusive worldwide agent[, ***with the right of first refusal***] for the sale, licensing and other promotion of the photographic ***portraits*** that you create during the Term hereof (or have created in the past, insofar as such Images are available for licensing pursuant to the terms of any agreements you may have with any third parties) (together, ***your*** "Images").  This letter provides information regarding the terms and conditions of our services as well as your responsibilities to AUGUST (the "Agreement")." JAF 18. (emphasis added) [6].

"Use of the ***Works***. The ***Works*** are Intended for editorial and commercial use/licensing by us and our clients."  JAF 22 (emphasis added)[7].

"The parties acknowledge and agree that all right, title and interest in and to your ***works***[8], including but not limited to copyright therein, shall be owned solely, in perpetuity, in any and all media, and throughout the world, by you."  JAF 27.  (emphasis added).

---

[6] The addition of the bracketed "right of first refusal" language appears to have been added to the form sometime around 2013.  The agreement for Mann, dated August 22, 2013, is the first to include this addition (JAF 19), which is also found in all subsequently-dated Agency Agreements, for Mobley (2015), Streiber (2017), Asgharia (2019), Slijper (2020), and Lubomirski (2021).  JAF 20.  These later-dated agreements also all use the term "images" instead of "portraits" and "the" instead of "your" where indicated with emphasis. JAF 21.

[7] The two earliest versions of the Agency Agreements, produced for Schoeller and Smith and dated in 2007, have an alternative version of this clause requiring the photographer to provide consent for commercial usage: "Use of the Works. The Works are intended for editorial use by us and our clients. With your consent, AUGUST may license the Works for commercial use."  JAF 23.  Versions dated between 2012 and 2015 and produced for Pugliese (2012), Eccles (2012), Hargrave (2013), Mann (2013) and Mobley (2015), use the version quoted here.  JAF 24.  And subsequent versions dated between 2017 and 2021 and produced for Streiber (2017), Asgharia (2019), Slijper (2020), and Lubomirski (2021) are the same as the quoted version, but use the term "Images," instead of "Works," where emphasized.  JAF 25

[8] The later-dated Agency Agreements produced for Mann (2013), Mobley (2015), Streiber (2017), Asgharnia (2019), Slijper (2020), and Lubomirski (2021) use the defined term "Images" here instead of "works".  JAF 26.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

> "This Agreement incorporates the entire understanding of the parties concerning the subject matter contained herein and supersedes any and all prior agreements and understandings, oral or written, with respect thereto and is to be construed in accordance with the laws of the State of New York;" JAF 28.

Certain of the Agency Agreements—but not others dated around the same time—contain language purporting to give August a right to "institute a claim or suit in your name" (meaning in the photographer's name) and mention responding to discovery. JAF 29. Specifically, the Agency Agreements produced for Smith (2007), Eccles (2012), Mann (2013), Asgharnia (2019), Slijper (2020), contain the following provision that the other agreements do not:

> "In the event of non-payment or unauthorized use of Images by AUGUST's licensees, clients, subagents or any other party, you give AUGUST full and complete authority to make or institute a claim or suit in your name without your prior approval to do so. All resulting net proceeds of recovery received by AUGUST shall be apportioned [] percent ([]%) to you and [] percent ([]%)[9] to AUGUST after deductions for fees paid to copyright compliance partners, collection fees, legal fees, subagent commissions and/or other expenses incurred by AUGUST in its efforts to resolve the claim. AUGUST incurs all upfront costs, including fees, subscriptions, storage costs as well as all labor dedicated to these copyright compliance efforts. These efforts involve many, many labor hours in-house and also includes multiple third parties such as "crawling companies," and outside attorneys and partners. This is the reason for the adjustment in commission rate related to this activity. You agree to use best efforts to cooperate with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided your pre-approved expenses are reimbursed by Agency. For the sake of clarity, you agree that whereas the foregoing grants AUGUST the complete authority to institute claim or suit, AUGUST is not obligated to do so. If there is an active case(s)

---

[9] At the plaintiff's request, the percentages specified in the Agency Agreements are being redacted from this public joint brief. The percentages specified in the brackets can be found in the unredacted versions of the agreements that the parties have applied to file under seal.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

at the time the contact terminates, photographer agrees to allow AUGUST to continue with the case(s) until they are resolved."  JAF 30.[10]

The Agency Agreement produced for Lubomirski, dated in 2021, has a similar provision to the foregoing, but it specifies that "if August is to file a suit for copyright infringement that includes any of your images, we will first obtain your approval," it specifies that Lubomirski will receive [][11]% of a recovery, and states that he will use "commercially reasonable" rather than "best" efforts to cooperate with August in discovery, as well as some other differences.  JAF 33.

Finally, three of the Agency Agreements, for Lubomirski, Slijper, and Asgharia, dated 2019 to 2021, contain the following provision, "You grant AUGUST the right to hold the copyright in your images only to the extent that such is required for the licensing purposes described In this agreement. You grant AUGUST the right, but not the obligation, to register such Images for copyright protection in your name and for your benefit. The costs of copyright registration shall be your responsibility; however, AUGUST will request permission from you to register Images for copyright on your behalf prior to incurring costs."   JAF 34.

(3)    The Backdated Addendums Purport to "Clarify" the Earlier Agency Agreements

During discovery in this case, August produced one-page "**Addendums**" purportedly signed by all of the photographers at issue in this case except Arielle Bobb Willis, and Bruno & Nicoletta Van Mossevelde. JAF 35.

---

[10] There is a slight variation in the language with respect to the Agency Agreements with Slijper and Asgharnia. JAF 31.  Instead of stating "AUGUST incurs all upfront costs, including fees, subscriptions, storage costs as well as all labor dedicated to these copyright compliance efforts. These efforts involve many, many labor hours in-house and also includes multiple third parties such as "crawling companies," and outside attorneys and partners," Slijper's and Asgharnia's agreements state "AUGUST incurs all upfront costs, including labor dedicated to these copyright compliance efforts." JAF 32.

[11] Percentage redacted at plaintiff's request.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1     As with the Agency Agreements themselves, the Addendums produced by

2  August are materially identical; they all begin as follows,

3          "As of January 4th, 2012, AUGUST Image LLC ("AUGUST")
          and Joe Pugliese ("Artist") hereby enter into the following agreement
4          ("Agreement"), which is an addendum to the parties' prior agreement,
          supersedes said agreement to the extent there is any conflict as to
5          terms."  JAF 36.

6     The date given as the "As of" date set out at the very start of the Addendum is

7  the same date listed on the Agency Agreement for that photographer[12].  JAF 37.

8     The Addendums go on to state as follows,

9          "As you know, you retained AUGUST as your exclusive agent to
          sell, syndicate, license, market or otherwise distribute your
10          photographic works. This Addendum clarifies that during the term of
          the Agreement, and any renewals thereof, AUGUST shall have the
11          exclusive right to authorize the making of copies of your Copyrighted
          work and/or distribute copies of your copyrighted works to the public
12          by rights-managed license, and to authorize and control the display of
          those copyrighted works publicly to news, advertising, and media
13          sources. In the interest of clarity, nothing in this grant of rights shall
          preclude you from selling or offering for sale copies of your work as
14          fine art, and it is agreed that you shall have full rights to display copies
          of your work on your commercial and social media pages. You
15          understand that you are conveying these exclusive rights to AUGUST
          during the term of the Agreement and any renewals thereof, and that
16          you also convey the exclusive right and ability to AUGUST to pursue
          infringement claims for violations of the exclusive copyright interests
17          granted to AUGUST under this Agreement. By signing this
          Addendum, you are affirming an intention that any rights necessary to
18          convey standing to AUGUST to enforce your intellectual property
          rights in your photographic works have been transferred and/or
19          assigned to AUGUST.

20          Per Section 501(b) of the Copyright Act, AUGUST will
          exclusively own and hold Artist's distribution, reproduction, and
21          display rights in the Works, each of which is an exclusive right under

---

[12] One Addendum lists a date two months after the date on Agency Agreement, but plaintiff's corporate representative testified that was a typo and that the Addendum was supposed to be dated "as of" the date of the Agency Agreement.  JAF 37.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Section 106 of the Copyright Act. This Agreement is an exclusive transfer of an exclusive right per Section 101 of the Copyright Act. The Artist will maintain ownership of the copyright for the Works."  JAF 39.

Apart from the "As of" date in the first sentence, there is no other date located anywhere on any of the Addendums.  JAF 40.   No date of signatures; nothing to memorialize the fact that each Addendum was actually prepared years after the date specified in the first sentence.  JAF 41.

(4)    August's Admission that the Addendums Were Backdated

After submitting one of the backdated Addendums as Exhibit 1 to its brief at the IDC conducted by Judge Sagar on August 15, 2024, and initially refusing to state when it was signed, August eventually admitted that 10 of the 11 Addendums it produced during discovery in this case, including the Streiber Addendum submitted to this Court at the IDC, were actually signed by August and the photographer after this litigation began. JAF 42.  Specifically, August asserts in its response to an interrogatory that Pugliese and August executed the Addendum produced for Pugliese on June 8, 2023.  JAF 43.   The original complaint here was filed July 10, 2023.  JAF 1.   August asserts in its response that the other 10 Addendums it has produced were signed by the parties thereto during the one-year+ period between August 7, 2023 and August 13, 2024.  JAF 44.

(5)    The ImageRights Agreement Purports to Make ImageRights Yet Another "Exclusive Agent" that has the Right to File and Settle Lawsuits for Infringement of the Photographs at Issue

On October 7, 2024, which was three days before the 30(b)(6) deposition of the plaintiff and four days before the fact discovery cutoff, August finally produced a copy of an "ImageRights Recovery Service Agreement" dated June 9, 2017 (the "**ImageRights Agreement**") (JAF 45), which Line PBC requested in RFPs served on May 22, 2024 (JAF 46).  Section 1 of the ImageRights Agreement provides,

**"1. Grant of Authority:**

-12-

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1

2
        I. You hereby appoint ImageRights, and ImageRights hereby accepts such appointment, as Your exclusive agent with respect to the settlement of each Recovery Asset, which may include the right to grant licenses for both past and/or future uses of each Recovery Asset.

3

4
        2. Subject to Your prior approval or the general terms and conditions for each Recovery Asset, ImageRights shall have discretion, based thereon, to negotiate the specific terms and conditions of any settlement fee and/or license of each Recovery Asset.

5

6

7
        3. Subject to the terms and conditions herein and by mutual agreement with the Client, ImageRights shall have the authority, directly and on Your behalf, to engage and discuss all related matters with one or more attorneys in connection with a given Recovery Asset, including but not limited to: (i) the initiation of such litigation or other legal action; (ii) the identity or the Recovery Asset(s) involved in litigation or other legal action; and (iii) any settlement, judgment or other resolution. By mutual agreement with the Client, ImageRights shall be free to select any such attorney in its discretion, in accordance with the terms and conditions herein. If ImageRights engages an attorney without the prior approval or Client, Client shall not be responsible for any costs, expenses, foes, billings, or charges incurred by ImageRights." JAF 47.

8

9

10

11

12

13

14

15

16
      (6)   <u>August's Deposition Testimony Relevant to Standing</u>

17
      The deposition of August's 30(b)(6) representative Lauren Kelly occurred on

18
October 10, 2024, and she testified that each of the photographs at issue in this case

19
is a "Recovery Asset" as defined under the ImageRights Agreement.  JAF 48.

20
      With respect to standing, Ms. Kelly testified that it was August's CEO, Bill

21
Hannigan, who "instructed" that the "template" for the Addendums should use the

22
date of the original Agency Agreement, rather than the date the Addendum was

23
signed.  JAF 49.  According to Ms. Kelly, the "language contained in the

24
addendum[s]" that each of the photographers allegedly signed in 2023-24, "actually

25
was agreed to as of the date of each photographer's original agreement" with

26
August.  JAF 50.  However, Ms. Kelly admitted that she was not present for and had

27
no personal knowledge of the negotiation of the original Agency Agreements

28
between August and the photographers. JAF 51.  Even though the details of those

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

negotiations were the specific subjects of noticed topics (JAF 52, Topic Nos. 26, 88), she admitted that she had no information to provide about the negotiations between August and the Photographers. JAF 53.[13]

(7)    The Improperly Withheld Photographer Declarations

On Friday October 11, 2024 (the last day of fact discovery), at 5:36 PM, August produced an additional 57 pages of documents.  JAF 54.  Included among this production were a series of declarations that August sought and obtained from 12 of the photographers[14] on and after September 26, 2024.  JAF 55.  According to related emails included in the production, many of the photographers returned their signed declarations back to August the same day, on September 26, and within a few days thereafter.  JAF 57.[15]

Like Ms. Kelly's deposition testimony, the photographers' declarations assert that, *really*, the photographers supposedly agreed to the language stated in the Addendums at the time they signed their Agency Agreement years earlier. JAF 58.

**(b)    August's Statement of Facts in Opposition to Line PBC's Motion for Summary Judgment on Standing**

August is a syndication company that specializes in licensing high-end photographs of models and celebrities by internationally renowned photographers. Joint Appendix of Facts ("JAF") ¶ 101. The photographers represented by August,

---

[13] "Q So your testimony is that AUGUST doesn't know what was said during the negotiations between AUGUST and the photographers; is that correct?    A I personally don't know what was said in meetings that -- from 2017. Q So I'm not asking for your personal testimony. I'm asking for the testimony of AUGUST Image on that topic.  A So I don't have that information."

[14] No declarations were produced for Arielle Bobb-Willis or Nicoletta Van Mossevelde.  JAF 56.

[15] August's pervasive and apparently intentional abuse of the discovery process in this litigation will be addressed by a separate motion, also being noticed for December 6, 2024, asking that some of August's summary judgment evidence be stricken as a sanction for discovery abuse, among other relief.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

including the 12 who took the Subject Photographs (the "Photographers"), have retained August as their exclusive agent to syndicate, license, and otherwise distribute their respective photographs. *Id*. ¶¶ 102, 106-212. The Photographers are the creators of the Subject Photographs. *Id*. ¶¶ 213-39.

August's initial syndication agreements with the Photographers of the Subject Photographs provide, respectively, that August is their "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" *Id*. ¶¶ 106-07, 115-16, 124-25, 133-34, 142-43, 151-52, 160-61, 169-70, 178-79, 187-88, 196-97, 204-05. The Photographers agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [their] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Images[.]" *Id*. ¶¶ 108, 117, 126, 135, 144, 153, 162, 171, 180, 189, 198, 206.

August licenses photographs in its syndication portfolio for editorial and commercial licensing. *Id*. ¶ 103. It is critical to August's business to maintain excellent relationships with its licensees and ensure that (1) each license has the appropriate approvals, and (2) each placement benefits August, its photographers, and its licensees. *Id*. ¶ 105.

August cannot do its job as the Photographers' "exclusive agent to sell, syndicate, license, market or otherwise distribute [their] photographic works" without "the exclusive right to authorize the making of copies of [their] copyrighted work and/or distribute copies of [their] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" *Id*. ¶¶ 111, 120, 129, 138, 147, 156, 165, 174, 183, 192, 201, 209. Thus, August necessarily has the exclusive right to authorize the reproduction,

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

display, and distribution of the Subject Photographs for editorial and commercial licensing. *Id*. ¶ 102 (at Kelly Decl. ¶ 7). August believes that, at all relevant times, its photographer clients (including the Photographers) understood this. *Id*. ¶¶ 112-13, 121-22, 130-31, 139-40, 148-49, 157-58, 166-67, 175-76, 184-85, 193-94, 202-03, 210-11. Indeed, the Photographers have independently confirmed just that. *Id*. ¶¶ 114, 123, 132, 141, 150, 159, 168, 177, 186, 195, 203, 212.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1    **(c)    August's Statement of Facts in Support of its Cross-Motion For Partial**
2    **Summary Judgment on Liability**

3                    (1)    August, its business, and the Subject Photographs

4          August is a syndication company that specializes in licensing high-end
5    photographs of models and celebrities created by internationally renowned
6    photographers. JAF ¶ 101. The photographers represented by August have retained
7    August as their exclusive agent to syndicate, license, market, and otherwise
8    distribute their respective photographs. *Id*. ¶ 102. August licenses photographs in its
9    syndication portfolio for editorial and commercial licensing. *Id*. ¶ 103.

10          As the exclusive licensing agent and syndicator for the Subject Photographs,
11    August necessarily has the exclusive right to authorize the reproduction, display, and
12    distribution of the Subject Photographs for editorial and commercial licensing. *Id*. ¶
13    102 (at Kelly Decl. ¶ 7). August's initial syndication agreements with the
14    Photographers of the Subject Photographs provide, respectively, that August is their
15    "exclusive worldwide agent . . . for the sale, licensing and other promotion of the
16    photographic images that you create[.]" *Id*. ¶¶ 106-07, 115-16, 124-25, 133-34, 142-
17    43, 151-52, 160-61, 169-70, 178-79, 187-88, 196-97, 204-05. The Photographers
18    agreed to "not sell or transfer any ownership interest in any Images accepted by
19    [August] . . . or other Images substantially similar to any Image we have accepted to
20    any person, licensing agent or other entity for sale, licensing or exploitation," "to
21    terminate any existing agreements that would violate [August's] appointment as
22    [their] exclusive agent," and to "not enter into any agreement for the sale, licensing
23    and other exploitation of the Images[.]" *Id*. ¶¶ 108, 117, 126, 135, 144, 153, 162,
24    171, 180, 189, 198, 206.

25          August cannot act as the Photographers' "exclusive agent to sell, syndicate,
26    license, market or otherwise distribute [their] photographic works" without "the
27    exclusive right to authorize the making of copies of [their] copyrighted work and/or
28    distribute copies of [their] copyrighted works to the public," "to authorize and

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

control the display of those copyrighted works publicly," and "to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" *Id*. ¶¶ 111, 120, 129, 138, 147, 156, 165, 174, 183, 192, 201, 209. August believes that, at all relevant times, its photographer clients (including the Photographers) understood this. *Id*. ¶¶ 112-13, 121-22, 130-31, 139-40, 148-49, 157-58, 166-67, 175-76, 184-85, 193-94, 202-03, 210-11. Indeed, the Photographers have confirmed just that. *Id*. ¶¶ 114, 123, 132, 141, 150, 159, 168, 177, 186, 195, 203, 212.

The Photographers are, respectively, the creators and copyright owners of the Subject Photographs, and the Subject Photographs are registered with the U.S. Copyright Office. *Id*. ¶¶ 213-39. August is, and at all relevant times has been, the exclusive licensing agent for the Photographers and, as such, an exclusive rightsholder in the Subject Photographs. *Id*. ¶¶ 106-212. It is critical to August's business to maintain excellent relationships with its licensees and ensure that (1) each license has the appropriate approvals, and (2) each placement benefits August, its photographers, and its licensees. *Id*. ¶ 105.

(2)    Defendant and its business

Defendant owns, operates, and controls the website useline.com (which Defendant rebranded, and which now redirects, to trybeem.com) (altogether, "Defendant's Website"). *Id*. ¶¶ 248-49. Defendant also operates and controls the Instagram page instagram.com/trybeemapp under the handle @trybeemapp, which prior to Defendant's rebrand was instagram.com/lineappofficial under the handle @lineappofficial. *Id*. ¶¶ 250-51.

Defendant holds itself out as a profitable financial technology company. *Id*. ¶¶ 245-46. Defendant is registered with the U.S. Securities & Exchange Commission ("SEC") and has issued millions in equity, including $7 million in issued equity disclosed to the SEC. *Id*. ¶ 247. Defendant transacts its for-profit business in part through its Website. *Id*. ¶ 252. The Website promotes pricing for the services

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Defendant offers (through its Website and corresponding app) to paying subscribers, which include instant cash, tax filing, money transfers, purchasing gift cards, and offers for personal loans and insurance services, among others. *Id*. ¶ 253. Defendant partners with financial services companies to facilitate its services to paying subscribers. *Id*. ¶ 254. Defendant has serviced millions of customers and has disbursed over $85 million in instant cash. *Id*. ¶ 255.

Also on its Website, Defendant publishes blog stories divided into categories by topic, one of which is "lifestyle." *Id*. ¶ 256. Under the "lifestyle" category, Defendant publishes blog posts about celebrities and their net worth. *Id*. ¶ 257. Defendant displays paid-for advertisements on its Website, including as part of its "lifestyle" blog posts. *Id*. ¶ 259. Defendant's "content team" identifies topics to write about, creates content around that topic, and then publishes that content on Defendant's Website and social media channels through Defendant's content management system. *Id*. ¶ 260.

(3)    <u>Defendant's unauthorized copying, display, reproduction, and distribution of the Subject Photographs</u>

Defendant has previously sought and obtained licenses to use photographs in blog posts on its Website. *Id*. ¶ 302. It did not do so with respect to the Subject Photographs, despite using them in precisely the manner that August has the exclusive right to control. *Id*. ¶¶ 241-43, 299. Rather, Defendant's content team accessed and obtained unauthorized copies of the Subject Photographs from third-party websites, and then displayed, distributed, and reproduced those unauthorized copies in blog posts on Defendant's Website and in posts on Defendant's Instagram page. *Id*. ¶¶ 263-298.

None of Defendant's uses credited or otherwise identified the Photographers or August as the source of the Subject Photographs; mentioned the Photographers, August, or the Subject Photographs themselves; treated the Photographers, August, or the Subject Photographs themselves as the story; or commented on or critiqued

<strong>JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS</strong>

1  the Photographers themselves, August itself, or the Subject Photographs themselves.
2  *Id.* ¶ 300. Defendant's posts allowed users to zoom in on the Subject Photographs
3  and make them larger, as the copies displayed were high-resolution. *Id.* ¶ 301.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(d)    Line PBC's Statement of Facts in Opposition to August's Cross-Motion For Partial Summary Judgment on Liability**

(1)    <u>August's Insufficient Evidence of Standing and "Ownership"</u>

Line PBC hereby incorporates Section II(a) (Defendant Line PBC's Statement of Facts in Support of its Motion for Summary Judgment on Standing), above, which sets out the facts relevant to its own summary judgment motion on standing.

In its own statement of facts, August has admitted that "the Photographers are, respectively, the creators and copyright owners of the Subject Photographs". *See* Section II(c)(1) (August, its business, and the subject photographs), above.[16]

As addressed above, during fact discovery, August attempted to prove standing to sue and chain of title constituting copyright ownership by pointing to the following pieces of evidence: (a) the original Agency Agreements[17]; (b) the backdated Addendums[18]; (c) the improperly-withheld photographer declarations[19]; and (d) the testimony of Lauren Kelly, August's 30(b)(6) corporate representative, about August and the photographers' "intent" and "industry custom"[20].

In response to August's recitation of the facts in its cross-motion, Line PBC offers the following, additional facts.

(A)    *The Agency Agreements: Do Not Mention "Syndication," "Copying," "Display," "Reproduction," or "Distribution"; Mention "Copyright" to Specify that Photographers Own It*

---

[16] This admission is significant because its means that, as a purported transferee of copyright, August bears the burden of proving its chain of title. *See* Section IV(a)(1), below, *citing World Thrust Films Inc. v. Intl. Fam. Ent. Inc.*, No. 93 0681 CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996); *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483-84 (1st Cir. 1985).

[17] Addressed at Section II(a)(2), above.

[18] Addressed at Section II(a)(3), above.  Also subject of Line PBC's motion to strike.

[19] Addressed at Section II(a)(7), above.  Also subject of Line PBC's motion to strike.

[20] Addressed at Section II(a)(6), above.  Also subject of evidentiary objections.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

In its cross-motion papers, August repeatedly refers to itself as a "syndicator" for the photographers and calls the Agency Agreements "syndication agreements." *E.g.*, Section II(c)(1), above.  However, the Agency Agreements do not actually mention the word "syndication," or "syndicator," *etc*. JAF 60.

Another set of words that August uses a lot in its cross-motion brief, but which are not to be found anywhere in the Agency Agreements themselves are the words: "copying," "display," "reproduction," and "distribution."  JAF 61.[21]  Also not present in the Agency Agreements, but discussed somewhat less in August's brief: the words "derivative works."  JAF 62.

Further, when the Agency Agreements refer to appointing August as an exclusive worldwide agent "[with the right of first refusal] for sale, licensing and other promotion" the objects that August has authority to sell, license, or otherwise promote are "*photographic portraits/images.*"  JAF 18-21. Notably, the agency appointment clause itself does *not* mention *copyright rights* for the photographs, as opposed to selling, licensing, or promoting the photographs themselves.  JAF 18.

The word "copyright" does appear in the Agency Agreements, several paragraphs after the agency appointment clause discussed above.  Specifically, all of the Agency Agreements mention "copyright" in connection with the clause stating that it is the photographers (and not August) that owns the copyrights to the photographs.  JAF 27 ("The parties acknowledge and agree that all right, title and interest in and to your works, including but not limited to copyright therein, shall be

---

[21] Compare with *Wiley*, 795 F.3d at 1001 (9th Cir. 2015) (Minden's agency agreements each contained, "an 'authorization' clause in which the photographers agree to 'appoint[ ] [Minden] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images' in the relevant territory. The Agreements also confer upon Minden 'the unrestricted, ***exclusive right to distribute***, License, and / or exploit the Images ... without seeking special permission to do so.' ***The Agreements define 'Licensing' as 'the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image*** . . . .") (emphasis added).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

owned solely, in perpetuity, in any and all media, and throughout the world, by you.")  "Copyright" also appears in a clause present in all of the Agency Agreements purporting absolve August of liability "for any claims on work submitted under your name that is not copyrighted and photographed by you."[22] JAF 63.

Finally, the Agency Agreements with Joe Pugliese, Brian Bowen Smith, Andrew Eccles, Austin Hargrave, Martin Schoeller, Mark Mann do not contain the provision stating that the photographer guarantees that all work has been shot by the photographer and that the photographer is the exclusive copyright holder in all images submitted to August. JAF 64.

(B)    *The Backdated Addendums: August Glosses Over Them*

Tellingly, August's cross-motion for summary judgment *makes no mention* of the fact that all of the Addendums were backdated or that August has admitted that all but one of them were executed after August filed its complaint in this case.  JAF 42.  in dispute from the Mosseveldes *See* Section II(c), above. Indeed, the word "Addendum" appears nowhere in August's brief offered in support of its motion for partial summary judgment on liability.  *See* Section II(c), above (facts); Section VI, below (argument).  Rather, the admission that the Addendums were "subsequently signed" is mentioned by August only in its portion of the JAF. JAF 113, 122, 131, 140, 149, 158, 167, 176, 185, 194, 211.

(C)    *The Photographer Declarations: Improperly Withheld; Subject of a Motion to Strike; Not a License Grant*

---

[22] In some of the Agency Agreements, but not others, the word "copyright" comes up again in connection with representations that the photos are non-infringing (JAF 65), and in a section purporting to provide August with rights "required for the licensing purposes described in this agreement," including the right to register copyrights "in your name" (JAF 66).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Concurrently with this cross-motion, Line PBC is filing a motion asking the Court to strike all of the backdated Addendums, as well as the 12 photographer declarations[23] served at 5:31 pm[24] on the final day of fact discovery, as a sanction for discovery abuse, among other relief. *See* Fed. R. Civ. Proc., Rule 37(c)(1), Rule 37(b)(2)(A); Rule 26(a)(1)(A); *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 965 (N.D. Cal. 2013) ("*Pearson*") (striking agency agreements and not considering them on summary judgment, as a sanction for discovery abuse, where plaintiff delayed producing them, and also addressing the impropriety of plaintiff's attempts to mislead by backdating assignment documentation). As set forward in that separate motion, there are good reasons why the Court should not consider this evidence (as well as certain screenshot evidence)[25], at all.

If the Court does consider the photographer declarations, it should be noted that none of them purport to grant an exclusive license on a going forward basis. Rather, like the backdated Addendums, they purport to "clarify" the "understanding and intention" of the photographers and August at the time they signed the Agency Agreements and Addendums. With one exception, all of the photographers' declarations state:

> "*I*[26] entered into a written syndication agreement with August dated [date on Agency Agreement]. My understanding and intention

---

[23] August failed to submit declarations from two photographers: Arielle Bobb-Willis and Nicoletta Van Mossevelde. JAF 56.

[24] Line PBC's moving brief on standing incorrectly asserts that final document dump was sent at 5:36 pm on the last day of fact discovery. It was sent at 5:31 pm.

[25] In its sanctions motion, Line PBC also asks the Court to strike pictures from ImageRights and PixMole that August offers as evidence of copying, despite August adding these witnesses late, and then deleting them from its initial disclosures after Line PBC indicated that it would move to extend fact discovery to seek information from these witnesses.

[26] The one exception is the Bruno Van Mossevelde declaration, which differs from the others in that it does not say "I" entered into an agreement, but rather that "My

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

as of that date was that until the agreement is terminated August is my exclusive syndication agent with exclusive rights to license and control the right to copy, distribute, and publicly display my photographs. . . .

August and I subsequently signed an addendum to the [date on Agency Agreement] agreement to clarify our understanding and intention that, as of [date on Agency Agreement], August has had the exclusive rights to authorize the making of copies of my photographs, authorize and control the display of my photographs publicly, and pursue claims for violations of those rights. It is my understanding and intention that August has hade those rights as my exclusive agents since [date on Agency Agreement]. . . .

It is my understanding and intention that August is an exclusive rightsholder in my photographs as set forth above, and that August has the right to pursue this action to address the infringement of my photographs at issue. . . ." JAF 58 (emphasis added).

Thus, as with the backdated Addendums, the photographer declarations are not a present-tense grant of exclusive copyright rights; rather, they purport to clarify the "intent" behind an earlier transaction.

(D)  *Lauren Kelly's Testimony on "Intent" and "Industry Custom" Lacks Foundation and is Contrary to Her 30(b)(6) Admissions*

Ms. Kelly's deposition 30(b)(6) deposition testimony for August that she offered during fact discovery is addressed above at Section II(a)(6). As noted, Ms. Kelly testified that she was not present for and had no personal knowledge about August and the photographers' negotiation of the Agency Agreements (JAF 51) and that she had no information to provide for August about the details of those negotiations (JAF 53), even though this subject was covered by noticed topics (JAF 52[27]). Similarly, when Ms. Kelly came back from a break in the deposition and tried

---

representative, Atomo Management SRL," entered into an agreement. See Section VII(b), below

[27] Topic 26: "Any COMMUNICATIONS YOU have had with the PHOTOGRAPHERS RELATING TO the AGENCY AGREEMENTS."

Topic 88: "Explain the process by which YOU allegedly obtained exclusive copyright rights in and to the SUBJECT PHOTOGRAPHS, including by detailing

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

to correct her prior answers to clarify that August was relying on "industry custom and practice" to establish standing, she was largely unable to explain what those terms meant.  JAF 67.

August's cross-motion for summary judgment on liability is now accompanied by a Kelly declaration, not produced during fact discovery, in which she purports to offer new details about August's formation of the Agency Agreements with the photographers.  Kelly's new declaration states that:

> August's "understanding and intention was that until the Agency Agreements terminated, August was the "…exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs…." JAF 68.

> The photographers "subsequently signed an addendum to their syndication agreement to clarify that, as the [photographers'] exclusive licensing agent, and since August and [the photographers] executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of [the photographers'] photographs, distribute copies of [the photographers'] photographs, authorize and control the display of [the photographers'] photographs publicly, and pursue infringement claims for violations of those rights." JAF 69.

> "[b]ased on its agreements with its photographer clients and industry custom and practice, August is an exclusive rightsholder in each of the Subject Photographs and has the right to pursue this action to address the infringement of its exclusive rights in those works." JAF 70.

Kelly has not been designated as an expert. JAF 71. And her new MSJ declaration does not even attempt to lay a proper foundation that might suggest how she would know, based on her own personal knowledge, that her assertions about the parties' "intent" or "industry custom and practice" are supposedly true.  JAF 72.

(2)    August's Other Failures of Proof With Respect to "Ownership of a Valid Copyright"

---

any transaction(s) by which those rights were obtained, the negotiation of those transactions, and any monetary or other consideration paid as part of those transactions."

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

The foregoing section II(d)(1) addresses the evidence August *has* presented on standing and copyright ownership.  However, on certain claims, there are also clearcut failures of proof on these issues and on the "validity" of the copyright August claims to have standing to sue upon.

  (A) *Holes in Chain of Title: No Agency Agreements and Addendums Were Produced for Arielle Bobb-Willis, and Bruno & Nicoletta Van Mossevelde*

It is undisputed that August has failed to produce an Agency Agreement executed by three photographers at issue: Arielle Bobb-Willis, and Bruno & Nicoletta Van Mossevelde (the latter two are purported co-authors).  JAF 16. Similarly, August has also failed to produce Addendums executed by these same three photographers.  JAF 35.

With respect to the Van Mosseveldes' claim, August offers a photographer declaration from Bruno Van Mossevelde that served on Line PBC on October 11, 2024 at 5:31 p.m.  Unlike the other photographer declarations, which all say that "I entered into a written syndication agreement with August," Mr. Mossevelde's declaration states "My representative, Atomo Management SRL, entered into a written syndication agreement with August."   JAF 95; *see also* JAF 196-97 (citing to Exh. 200, the Atomo agreement).

However, August has *not* produced any documentation purporting to transfer copyright ownership of the photograph in dispute from the Mosseveldes (who are listed as the "author" and "claimant" on the copyright registration) (JAF 237; citing to Exh. 85, the reg. certificate)  to "Atomo Management SRL."  JAF 196.

  (B) *Copyright Registration Issues: Missing Certificates; Untimely Certificates Unsupported by Testimony; Failure to Prove Certificates Produced Cover the Photographs in Dispute*

<u>Missing Certificates</u>.  It is undisputed that Plaintiff has not produced certificates of registration for two of Streiber's photographs at issue in this lawsuit:

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1  (1) Elon Musk Space X, Reg. No. VA0002201766 (allegedly covering AU1955961);

2  and (2) Antonio Banderas, Reg. No. VA0002204089 (allegedly covering

3  AU213782). JAF 73.

4      <u>Untimely Certificates</u>.  Further, it is also undisputed that many of the

5  copyright registrations that the plaintiff is suing on were issued more than five years

6  after the claimed date of first publication. JAF 74.[28]  Thus, the seven registrations,

7  purportedly covering nine photos, produced by the plaintiff for Streiber, Bowen-

8  Smith, Slijper, Eccles, Hargrave, and Mann (*id.*), will not benefit from the

9  presumption of validity afforded by 17 U.S.C. § 401(c).

10     None of these photographers offer testimony in their improperly-withheld

11  declarations that purports to establish the truth of the facts stated in these untimely

12  registration certificates.  JAF 75.

13     <u>Certificates Not Shown to Cover Photos in Dispute</u>.  Further, several of the

14  registration certificates the plaintiff is suing do not contain any information

15  indicating that the certificate in question actually covers the photo at issue.

16  Specifically, the Pugliese registration ('131) does not reference the two photos it

17  purportedly covers, namely photos AU1955890 and AU1387317.  JAF 76.

18  Similarly, the Streiber registrations ('766, '089', and '902) allegedly covering

19  photos AU1955961, AU213782, and AU179089, respectively, also do not reference

20  the photographs in the registration certificates.  JAF 77.

21     Indeed, August offers no testimony from any of the photographers, nor from

22  anyone else, that purports to establish that the photos depicted in Exhibit 1 to the

---

[28] Specifically, the untimely certificates are: Art Streiber, Reg. No. VA 2-201-766
(allegedly covering AU1955961);  Art Streiber, Reg. No. VA 2-141-902 (covering
AU179089);  Brian Bowen Smith, Reg. No. VA 2-294-743 (allegedly covering
AU1390084); David Slijper, Reg. Nos. VA 2-323-663 (allegedly covering
AU2149055, AU2149064, and AU2149040);  Andrew Eccles, Reg. No. VA 2-334-
439 (allegedly covering AU11251088); Austin Hargrave, Reg. No. VA 2-227-879
(allegedly covering AU1508967); and  Mark Mann, Reg. No. VA 2-326-585
(allegedly covering AU1561939). JAF 74.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

FAC match whatever it was that was registered with the Copyright Office and deposited at the Library of Congress in connection with the registrations August has sued upon.  JAF 78.

(3)   Facts Relevant to August's Failure to Prove Copying

(A)   *The Three Types of Pictures that Comprise Plaintiff's Compound Exhibit 7: PixMole, ImageRights, and Human-Captured*

In its cross-motion, August attempts to prove copying using deposition Exhibit 7, a 63-page document.  JAF 79.  The pictures that comprise Exhibit 7 were all produced by August.  JAF 80.  However, the BATES range of the pictures that comprise Exhibit 7 is not consecutive; for example, page AUGUST000054 is followed by AUGUST000044; it skips from '52 to '55; '84 is followed by '890, and so on.  JAF 81.  In short, this is a compound exhibit, prepared by plaintiff's counsel ahead of Line PBC's deposition, by bundling together different kinds of pictures, obtained from different sources, and pulled from different parts of August's several document productions.   JAF 81.

There are three different types of pictures included within Exhibit 7:

PixMole Pictures.  An example of the first type of evidence August is using to try and prove copying can be found on the first page of Exhibit 7, AUGUST000051.  This is a picture generated by software created and maintained by a company called PixMole.  JAF 82.  The "**PixMole Pictures**" are identifiable in that they look *sort of* like screenshots taken of a website, except that there is no date, or desktop imagery as one would expect to see in a screenshot taken by a human, and, at the top of each picture, there is a URL listed as if in a text box, rather than in a web browser bar.  Most of the pictures included in Exhibit 7 are PixMole Pictures.

ImageRights Pictures.  An example of the second type of evidence August is using to try and prove copying can be found at the 28th page of Exhibit 7, AUGUST000586.  This is a picture generated by software created and maintained by a company called ImageRights.  JAF 83.  The "**ImageRights Pictures**" are

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

identifiable in that they also *sort of* look like screenshots, except that the URL is listed in a web browser bar that is shaded pink, and there is a little robot head logo to the left of the browser bar listing the URL. JAF 84.   The ImageRights pictures also all have "Modified" and "Screenshot" dates listed in the bottom left.  The pink browser bar and robot head logo indicate that the web browser in question is being remotely controlled by a computer program, namely, the ImageRights software. JAF 85.  There are 12 ImageRights Pictures included in Exhibit 7[29], at Bates Nos.: AUGUST000586, AUGUST000842, AUGUST000843, AUGUST000588, AUGUST000845, AUGUST000575, AUGUST000590, AUGUST000581, AUGUST000582, AUGUST000583, AUGUST000584 and AUGUST000585. JAF 86.

Human-Captured Screenshots.  An example of the final type of evidence August is using to try and prove copying can be found at the 49th page of Exhibit 7, AUGUST000587.  Although August does not submit the testimony in support of its motion, Ms. Kelly testified at her deposition that she personally took this screenshot using her own computer.  JAF 87.  The "**Human-Captured Screenshots**" are identifiable by the blue strip at the top, and the normal, non-pink browser bar that purportedly corresponds to the URL of the webpage being depicted. At her deposition, Ms. Kelly testified to personally taking four of the screenshots included in Exhibit 7, namely AUGUST 000587 (Margot Robbie), 000589 (Kristen Stewart), 000591 (Oprah), and 000592 (Issa Rae).

(B)    *The Deposition Testimony August Cites to Try and Authenticate Exhibit 7 Does Not Say What August Contends it Says*

Plaintiff cites to portions of Line PBC's 30(b)(6) deposition transcript for the proposition that Line PBC admitted that Exhibit 7 contains true and correct copies of the Accused Posts as displayed on the Defendant's website.

---

[29] Many of the pictures in Exhibit 7 depict the same photograph at issue. The screen shots in Exhibit 7 depict the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

However, Defendant's deposition testimony only stated that Defendant recognized the images in Exhibit 7 *as being in dispute in this lawsuit*, not that the pictures were true and correct copies of the defendant's website.  JAF 89.[30] Moreover, Line PBC's timely objections to this vague question about a 63-page compound exhibit comprised of different things should be sustained.

Apart from the citation to Line PBC's deposition testimony, the plaintiff does not otherwise try to authenticate or lay foundation for the admission of the different types of pictures that comprise its Exhibit 7, which is its only evidence of copying.

(C)    *August Failed to Lay Foundation for Admission of the PixMole Pictures and ImageRights Pictures And Should be Precluded From Doing So*

Importantly, the PixMole Pictures and the ImageRights Pictures are ***not*** 100% authentic representations of what Line PBC's website ever looked like.  Rather, they are pictures that were exported from computer programs maintained by PixMole and ImageRights.  JAF 90. Kelly testified that these companies' software is prone to making errors (JAF 91), and that system users can change the data within the systems (JAF 92).  Accordingly, August has failed to lay proper foundation for the admission of the PixMole Pictures and ImageRights Pictures.

Further, Line PBC's sanctions motion asks the Court to strike the PixMole Pictures, and the ImageRights Pictures in connection with this motion, and to preclude August from introducing them at trial, as a sanction for discovery abuse.  If plaintiff wanted to rely on evidence created by these entities, it should have timely

---

[30] "Q. Yes. I'm asking you Exhibit 7, do you recognize these as the posts on your website that display the photos that you referenced you sourced from these other websites? MR. PIETZ: Objection. Vague. Exceeds the scope. Compound.

A. I did not mention the names of the websites. I do know that they were sourced from a specific website. I do recognize this. It was there in the case file because they are even in our responses. I do recognize this, what you're showing me on the screen. I do recognize it."

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

disclosed them under Rule 26(a) and produced all relevant, responsive documents related to them, as requested by Line PBC in May of 2024.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

### III.  LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue where the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.  While reasonable inferences are drawn in the nonmoving party's favor (*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)), it is the nonmoving party's obligation to produce factual predicates from which an inference may be drawn (*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985)).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

## IV. LINE PBC'S MOTION FOR SUMMARY JUDGMENT ON STANDING

**(a)** **Summary Judgment Should be Granted for the Defendant Because Plaintiff has Failed to Carry its Burden of Demonstrating Standing**

        (1)   Article III Standing and Section 501(b) of the Copyright Act: Exclusive Licensees May Sue for Infringements That Occur at the Time they Were Exclusive Licensees of the Relevant Right

Standing is a jurisdictional requirement deriving from Article III of the U.S. Constitution, such that standing is evaluated "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *see also Grupo Dataflux v. Atlas Global Grp., LP*, 541 U.S. 567, 570–71 (2004) ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." (footnote omitted)).

The statutory basis to sue for infringement under the Copyright Act is set out at 17 U.S.C. 501(b) which provides that "The legal or beneficial owner[31] of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement *of that particular right committed while he or she is the owner of it*." *Id*. (emphasis added). The term "legal owner" as used in Section 501(b) means the authors in whom the copyright vests initially, their assignees who succeed them in owning the copyright, as well as exclusive licensees "of an exclusive right under a copyright[32]." *See DRK Photo*, 870 F.3d at 983. Notably, *non*-exclusive licensees are specifically excluded from being "legal

---

[31] "District courts in the Ninth Circuit have narrowly defined 'beneficial owner' as being *only* an individual who had legal title and parted with it in exchange for royalties." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1130 (N.D. Cal. 2014), *rev'd on other grounds,* 795 F.3d 997 (9th Cir. 2015).

[32] The six, so-called exclusive copyright rights are: reproduction, preparation of derivative works, distribution of copies, public performance (for certain types of works), public display, and digital audio transmission of sound recordings. 17 U.S.C. § 106.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

owners" of a copyright, by statute.  *Id.*; *citing* 17 U.S.C. § 101 (defining "transfer of copyright ownership" and noting it does "not include[e] a nonexclusive license").

For an exclusive licensee to have standing to sue, the infringement must occur at the time the exclusive licensee is a legal owner of the copyright right in question. 3 Nimmer on Copyright § 12.02 (2024); *citing, inter alia*, *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1159 (C.D. Cal. 2010).  Further, those claiming ownership by transfer bear the burden of proving a clear chain of title. 6 Patry on Copyright § 21:7; *citing, inter alia, World Thrust Films Inc. v. Intl. Fam. Ent. Inc.*, No. 93 0681 CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996); *accord Motta v. Samuel Weiser, Inc.*, 768 F.2d 481 (1st Cir.1985) (if a plaintiff is not the author of the copyrighted work, it must prove a proprietary right through the chain of title).

(2)    <u>*Righthaven* Addresses Bare Rights to Sue and Reinforces that Standing is Evaluated as of the Outset of Litigation</u>

The Ninth Circuit addressed copyright standing in *Righthaven*, a case involving a plaintiff entity that was specifically setup to pursue online copyright infringement claims pursuant to a purported exclusive license from Stephens Media, the owner of *Las Vegas Review-Journal.  Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1168 (9th Cir. 2013).  Certain defendants sued by Righthaven filed a motion to dismiss for lack of standing.  In response, Righthaven and Stephens Media "executed a 'Clarification and Amendment to Strategic Alliance Agreement,'" which "purported to clarify that the parties' intent in entering the SAA [*i.e., their earlier "Strategic Alliance Agreement"*] was to 'convey all ownership rights in and to any identified Work to Righthaven through a Copyright Assignment so that Righthaven would be the rightful owner of the identified Work.'" *Righthaven*, 716 F.3d at 1171.  The district court dismissed Righthaven's complaint for lack of standing, finding that the agreements between the parties granted Righthaven nothing more than a "bare right to sue".  *Id*. at 1169.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

On appeal, Righthaven argued that, in deciding the standing issue, the district court should have considered the amended version of the Strategic Alliance Agreement executed after the defendants filed their motion to dismiss. *Id*. at 1171. The Ninth Circuit disagreed. *Id*. "In general, jurisdiction is based on facts that exist at the time of filing. The Supreme Court has enunciated few exceptions to this general principle. So far, permitting standing based on a property interest acquired after filing is not one of them." *Id*. (internal citations omitted).

(3)    *Minden v. Pearson* and *Minden v. Wiley*

Like August and Righthaven, Minden Pictures, Inc. was another onetime member of the copyright frequent filer club; Minden was a photo agency that filed a series of infringement lawsuits against educational textbook publishers.

In *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 965 (N.D. Cal. 2013) ("*Pearson*"), the defendant publisher discovered that Minden had back dated certain of the copyright assignment agreements it was using to try and demonstrate that it had standing to sue. "The backdated agreements correspond to 123 of the more than 4000 copyrights asserted in this action. One backdated copyright assignment was filed with the Court on March 1, 2012—prior to defendants' discovery of Minden's backdating scheme." *Id*. (docket citations omitted). In addition to backdating certain *copyright assignment* documents, Minden also delayed producing certain *agency agreements* until after the defendant's had initiated a summary judgment motion addressed to the assignments. *Id*. at 964. Judge Alsup held that "As a sanction for Minden's multiple violations of the Court's orders and the discovery rules, the agency agreements shall be deemed Stricken from the record, and Minden is Precluded from relying on them." *Id*. at 967. With respect to the assignments, Judge Alsup determined they conveyed only a bare right to sue and were thus insufficient to establish standing. *Id*. at 967-70.

Two years later, another case filed by Minden against a different textbook publisher made it to the Ninth Circuit. *Minden Pictures, Inc. v. John Wiley & Sons,*

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015) ("*Wiley*").  In 2014, the district court in *Wiley* had granted the publisher's motion to dismiss, concluding that the agency agreements did not confer standing under the Copyright Act to bring an infringement suit.  *Id*.  Minden appealed, and, in *Wiley*, the Ninth Circuit described the question before it as follows: "[t]his appeal concerns only whether Minden is permitted by the Copyright Act to bring an infringement suit against Wiley for exceeding the scope of its licenses."  *Id*. at 1000.  Thus, in *Wiley*, the crux of the infringement claim was whether the defendant book publisher had printed more copies of its textbooks than was allowed by the license it had previously entered into with the plaintiff Minden.  *See id.*

In reversing the district court and concluding that Minden had standing to sue, the Ninth Circuit in *Wiley* delved into the details of Minden's "agency agreements," which Judge Alsup had previously stricken and declined to consider in *Pearson*.  As summarized in *Wiley*, Minden's agency agreements each contained,

> "an 'authorization' clause in which the photographers agree to 'appoint[ ] [Minden] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images' in the relevant territory. The Agreements also confer upon Minden 'the unrestricted, exclusive **right to distribute**, License, and / or exploit the Images ... without seeking special permission to do so.' The Agreements define 'Licensing' as 'the marketing, grant, lease, sale, use or other **exploitation of reproduction rights** to an Image. . . .

> The Agreements generally permit the photographers to issue some licenses themselves, subject to the terms of the individual Agreements, but prohibit them from hiring a licensing agent other than Minden." *Wiley*, 795 F.3d at 1000 (emphasis added).

The Ninth Circuit thus held, "Because we conclude that the Agency Agreements convey the rights to reproduce, distribute, and display the photographs to Minden via an 'exclusive license' to grant licenses to third parties, we hold that Minden may bring an infringement action to remedy the unauthorized reproduction, distribution, and display of the photographs **by those to whom it has granted licenses**."  *Id.* at 1005-06 (emphasis added).  In support of that holding, the Ninth Circuit explained

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1  that it would be inconsistent with common sense if the photographers could not "rely

2  on Minden to protect and defend the licenses that it has issued on their [*i.e., the*

3  *photographers'*] behalf." *Id*. at 1005.

4    (4)    Wiley's Holding Does Not Apply Here and it Should be

5    Distinguished; this Case is Closer to *DRK Photo*, and *Torres*

6    *Wiley* has been much criticized.  The standing section of William Patry's

7  copyright treatise describes *Wiley* as a case that "gives credence to the [Ninth

8  Circuit] court of appeals' harshest critics" and he presents a convincing argument for

9  why it was wrongly decided.  6 Patry on Copyright § 21:16 ("Section 501(b) is

10  crystal clear: standing is limited to legal and beneficial owners of exclusive rights. It

11  allows no exceptions, no rules of convenience or common sense. It reflects a

12  congressional judgment deliberately limiting the classes of people who can use for

13  infringement. Plaintiff was not within that class and therefore had no standing.")

14    Further, courts in other circuits have not merely distinguished *Wiley*, but

15  criticized its reasoning.  For example, this July, Judge Rosenberg of the Southern

16  District of Florida noted that in *Wiley*, the Ninth Circuit "effectively disregarded the

17  fact that the plaintiff in that case held a non-exclusive license; indeed, a fair reading

18  of the *Minden* court's conclusion is that the word "exclusive" doesn't necessarily

19  have to mean 'exclusive,'… Courts in this Circuit have declined to follow the

20  reasoning of *Minden*, noting that it is not binding authority. . . ."  *Great Bowery Inc.*

21  *v. Consequence Sound LLC*, No. 23-CV-80488, 2024 WL 3291101, at *4 (S.D. Fla.

22  July 2, 2024); *see also Creative Photographers, Inc. v. Julie Torres Art, LLC*, 2023

23  WL 2482962 (N.D. Ga. 2023) ("*Torres*") (distinguishing Wiley because the agency

24  agreement at issue there lacked language like that in Wiley "confer[ring] upon

25  Minden 'the unrestricted, exclusive right to distribute, License, and / or exploit the

26  Images ... without seeking special permission to do so.'")

27    Of course, *Wiley* is binding authority in this circuit.  However, two years after

28  it was decided, the Ninth Circuit revisited the exact same issue and reached the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

opposite result in another published opinion, concluding that a photo agency lacked
standing to sue a textbook publisher for infringement for exceeding the scope of
prior licenses. *DRK Photo,* 870 F.3d at 982–89; *see also Tresona Multimedia, LLC
v. Burbank High Sch. Vocal Music Assn.*, 953 F.3d 638, 646–47 (9th Cir. 2020)
(distinguishing *Wiley* again, in a slightly different context, "because the issue of
whether a co-owner of a copyright interest can unilaterally grant an exclusive license
to that interest was not present in *Minden Pictures*, Tresóna's reliance on *Minden
Pictures* is misplaced.")

In *DRK Photo,* the Ninth Circuit noted that the plaintiff photo agency's
representation agreements there were "devoid of that key provision," which was
present in *Wiley*, "that Minden, *and only Minden*, will have the power, as the
photographers' licensing agent, to authorize third parties to reproduce, distribute, and
display the photographs." *Id.* at 984. "In the absence of any such promise," the
photo agency's "Representation Agreements confer nonexclusive licenses and do
not render DRK a legal owner for standing purposes." The *DRK Photo* court also
rejected the plaintiff's argument that plaintiffs right to "to authorize" others to
exercise copyright rights was sufficient to confer standing. *Id.* ("Neither the
statutory text nor the analysis in *Minden* suggests that, having been given the right
"to authorize" others to exercise the rights of copyright holders, a nonexclusive
licensee becomes a legal owner with standing to sue.")

Here, strictly speaking, the *holding* of *Wiley* does not apply, because this is
not a case where a plaintiff is suing to "protect and defend" licenses that August
previously issued to Line PBC on the photographers' behaves.

Moreover, the differences between the agreements in Wiley that had more
typical, rights-grant language, and the Agency Agreements at issue here make this
case closer *to DRK Photo* and *Torres.* As in those cases, here, *Wiley* should be
distinguished because the Agency Agreements at issue in this case lack "language
conferring upon [the plaintiff] 'the unrestricted, exclusive right to distribute,

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

License, and / or exploit the Images ... without seeking special permission to do so.'"). *Torres*, 2023 WL 2482962; *see also DRK Photo*, 870 F.3d at 984 (same).

Whereas the agency agreements at issue in *Wiley* and *Pearson* specifically stated that Minden was receiving an "exclusive right to distribute" photographs without the photographers' permission (*Wiley*, 795 F.3d at 1000), the Agency Agreements here have no such provision.  Again, what the Agency Agreements here say, in the bit that comes closest to any kind of license grant, is:

> "We are delighted that you have agreed to work with AUGUST, LLC ("AUGUST", "we" or "us") as your exclusive worldwide agent[, with the right of first refusal] for the sale, licensing and other promotion of the photographic portraits that you create during the Term hereof (or have created in the past, insofar as such Images are available for licensing pursuant to the terms of any agreements you may have with any third parties) (together, **your** "Images").  JAF 18; JAF 19; JAF 20; JAF 21.

Thus, what the Agency Agreements at issue in this case do is merely appoint August as the photographers' "exclusive worldwide agent"; they do not contain any language granting August an exclusive license to any of the six copyright rights.  There is no mention of copyrights at all, just "photographic portraits".

Further, the addition of the 'suit in your name' language (JAF 30-33)[33] into some of the Agency Agreements, for Smith (2007), Eccles (2012), Mann (2013), Asgharnia (2019), and Slijper (2020), also undermines August's position on standing.  If the other provisions of the Agency Agreements were sufficient, on their own, to anoint August an exclusive licensee with standing to sue, it would not have needed this clause.  Thus, some of the agreements do specifically contemplate August initiating litigation, but they envision August doing so in the photographers' names, rather than August filing suit on its own.

---

[33] "In the event of non-payment or unauthorized use of Images by AUGUST's licensees, clients, subagents or any other party, you give AUGUST full and complete authority **to make or institute a claim or suit in your name** without your prior approval to do so. . . ." (emphasis added).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Accordingly, the Agency Agreements at best confer a mere non-exclusive license, which was not sufficient to give August standing to file this lawsuit. *See* 17 U.S.C. § 501(b); *DRK Photo*, 870 F.3d at 982–89; *Torres*, 2023 WL 2482962.

(5)    August's Attempts to Try and Rewrite the Agency Agreements with Parol Evidence Are Contrary to the Copyright Act, the Contracts Themselves, and New York State Law

Of course, at some point, August seems to have recognized that its Agency Agreements were insufficient to provide it with standing to sue in any of the 100+ infringement lawsuits it has filed since 2020. Which explains why it went to the trouble to create the Addendums in the first place (the first of which was purportedly signed three months after the *Torres* decision), and why it intentionally backdated them all in such a way as to conceal the fact they were executed recently. As Judge Alsup put it when Minden was caught doing exactly the same thing, and for exactly the same reason (*i.e.*, to try and shore up its position on standing while the middle of a mass copyright infringement litigation campaign), with its backdated assignments,

> "The evidence that Larry Minden backdated certain agreements is highly troubling. "In this circuit, courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1338 (9th Cir.1985). Defendants contend that the Larry Minden's email statements establishing that certain agreements were backdated constitutes willful and fraudulent falsification of documents. If proven true, plaintiff's conduct could result in the dismissal of this action with prejudice, the entry of default judgment in defendants' favor, an award of all fees and costs to defendants, and a referral to the United States Attorney's Office for criminal investigation. *See* 18 U.S.C. 1623(a). Nonetheless, this order does not rely on the evidence of plaintiff's bad acts as a basis for granting summary judgment." *Pearson*, 929 F. Supp. 2d at 971.

Similarly, here, setting aside, for now, the discovery abuse[34], the Addendums and the other would-be parol evidence that August proffered at the very end of fact

---

[34] As noted, August's abuse of discovery will be addressed by a separate motion.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

discovery fail to save August from summary judgment in Line PBC's favor when
addressed on the merits.

        (A)    *The Backdated Addendums Executed After the Complaint Was*
    *Filed Are All Irrelevant and Ineffective to Confer Standing*

As in *Righthaven*, this Court plainly should disregard all 10 of the Addendums
executed after the original complaint was filed because, regardless of whatever the
parties' supposedly intended to accomplish by preparing them, they are not relevant
to the facts that existed at the time the complaint was filed. *Righthaven*, 716 F.3d at
1171; 17 U.S.C. 501(b); *Keene Corp. v. United States,* 508 U.S. 200, 207–08 (1993)
(looking at the facts as they existed at the time the complaint was filed, rather than
the time of the trial court's ruling on the motion to dismiss as urged by plaintiff);
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992).

Moreover, to the extent that any of the Addendums may be relevant to the
facts as they existed at the time the complaint was filed (*i.e.*, for Pugliese), they do
not suffice to confer standing on August, both because of the fraudulent way in
which they are worded, and also because of *Silvers*.

Notably, the Addendums do ***not*** say that the photographers "hereby" grant
rights to August. JAF 36. Rather, they purport to "clarif[y]" and "affirm" the
nature of rights that were granted previously, which is (a) fraudulent, but also (b) is
not a present assignment of exclusive copyright rights. *See id*.; *Playboy Enters. v.
Dumas*, 831 F. Supp. 295, 309 (S.D.N.Y 1993) (finding a purported assignment of
copyright to be invalid where there was "no language of present transfer," and the
agreement could also be read as confirming a previous transfer of rights) *rev'd in
part on other grounds by Playboy Enters. v. Dumas*, 831 F. Supp. 295, 309 (2d Cir.
1995). The closest the Addendums come to a present assignment of an exclusive
copyright right is this sentence,

    "You understand that you are conveying these exclusive rights to
    AUGUST during the term of the Agreement and any renewals thereof,
    and that you also convey the exclusive right and ability to AUGUST to

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pursue infringement claims for violations of the exclusive copyright interests granted to AUGUST under this Agreement."

JAF 39.   However, the reference to "these exclusive rights" refers to the rights supposedly conveyed previously (*i.e.*, the non-exclusive license set forward in the Agency Agreements), as opposed to any new rights being conveyed by the Addendums.  In short, by preparing the Addendums to make them look like they were clarifying a prior rights grant, instead of simply doing a new, non-fraudulent, rights grant, August has hoisted itself on its own petard.

Further, the clause purportedly conveying "the right and ability" to "pursue infringement claims" is the kind of non-specific assignment of an accrued chose in action, uncoupled with legal ownership of a copyright, that the Ninth Circuit said was insufficient to establish standing in *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) (holding that assignee of accrued claim for copyright infringement but who has no legal or beneficial interest in the copyright lacks standing to sue).

> (B)    *The Photographers' Declarations Improperly Withheld Until the Final Few Hours of Fact Discovery and August's "Industry Custom" Deposition Testimony Do Not Establish Standing*

The Copyright Act itself contains its own statute of frauds.  17 U.S.C. § 204; *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990) *cert. denied* 498 U.S. 1103, 111 (1991) ("While the copyright owner can sell or license his rights to someone else, section 204 of the Copyright Act invalidates a purported transfer of ownership unless it is in writing.")  Moreover, the Second Circuit has held that "although the Copyright Act itself is silent on the issue of retroactive transfer or license, we conclude that such retroactive transfers violate basic principles of tort and contract law, and undermine the policies embodied by the Copyright Act." *Davis v. Blige*, 505 F.3d 90, 97–98 (2d Cir. 2007).

The Agency Agreements all have an integration clause,

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

> "This Agreement incorporates the entire understanding of the parties concerning the subject matter contained herein and supersedes any and all prior agreements and understandings, oral or written, with respect thereto and is to be construed in accordance with the laws of the State of New York."   JAF 28.

New York law has a typical parol evidence rule that prohibits the introduction of unstated terms to try and very the terms that actually appear in an integrated contract.  *Marine Midland Bank–Southern v. Thurlow*, 53 N.Y.2d 381, 442 N.Y.S.2d 417, 425 N.E.2d 805 (1981) (under New York law, "Where the parties have reduced their agreement to writing, the parol evidence rule excludes evidence of any prior oral or written agreement when offered to contradict, vary, add to, or subtract from the terms of the writing."); *citing Thomas v. Scutt*, 127 N.Y. 133, 137 (1891).

Per these authorities, the photographers' late-produced declarations, and the "industry custom" testimony of August's 30(b)(6) witness, are insufficient to vary the stated terms of the Agency Agreements.

(6)  <u>Summary Judgment Must Also Be Granted Because, as in</u> <u>*Torres*, Neither the Agency Agreements Nor the Addendums</u> <u>Cover Derivative Works</u>

Exhibit 1 to the FAC shows the photographs August is suing on in the left column (the "**Subject Photographs**"), and, in the right column, it has screenshots of what the plaintiff claims Line PBC's allegedly infringing blog stories and social media posts looked like (the "Accused Posts").  In looking at Exhibit 1 to the FAC, a couple of things are important to note.

First, all of the Accused Posts on the right are *multimedia web and social media stories,* which include text conveying subject matter related to the celebrity who is depicted in the photograph, typically having to do with something gossipy that the celebrity in question was recently 'in the news' for.

Further, these multimedia stories included scrolling functionality allowing website users to play or pause the different slides as the multimedia story was revealed.  In comparing the pictures on the left to the portion of the multimedia web

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

and social media stories on the right that contain a picture, the pictures in question are not exactly the same. Different compositional choices were made with respect to how the photographs on the right were cropped and there is also overlaid text as well as shaded boxes and other features like the play, pause, and share icons. To be sure, some of the differences between the left column and the right column are more significant than others, but *none of the pictures on the left are identical to the multimedia storie*s on the right.

In most copyright cases, where the plaintiff owns all the copyright rights, differences of this sort probably would not matter. Here, however, these differences do matter, because neither the Agency Agreements nor the Addendums say anything about the right to license the creation of derivative works. Which is what Line PBC has allegedly done here. FAC at ¶ 9 (alleging that "Line PBC "created derivative works of" the Subject Photographs). Specifically, the claim here is that Line PBC took photographs (which it found on third party websites, not from the plaintiff or the photographers) that were then incorporated into a separate, multimedia web or social media story that involved something more than just a picture. JAF 11-14, 59. In other words, if there is a copyright right that Line PBC allegedly violated, it was the right to make derivative works. Which is, undisputedly, not a right that was granted to August in any of the documentation produced by August during discovery. JAF 18, 39.

The *Torres* court found that very point significant in its decision last year distinguishing *Wiley* and holding that Creative Photo lacked standing because the purported license grant said nothing about derivative works and that was the type of infringement at issue. *Torres*, 2023 WL 2482962, at *8 ("Importantly, there is another hurdle for Plaintiffs to clear before establishing statutory standing. Even if the Agreement conveyed to Plaintiff an exclusive license, the Agreement contains no language suggesting that it confers to Plaintiff the § 106 right that is at issue in this

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1  case: the exclusive right to authorize the preparation of derivative works based upon
2  the copyrighted work.") So, too, here. *See id.;* JAF 10.

3          (7)    <u>Summary Judgment Must be Granted as to the Claims Asserted</u>
4                 <u>Based on the Willis and Mossevelde Photos, Because August Has</u>
5                 <u>Failed to Prove Up its Chain of Title as to Those Photographers</u>

6          Separately, for Nicolleta & Bruno Mossevelde (alleged co-authors) and
7  Arielle Bobb Willis, August has failed to prove up chain of title.  Specifically,
8  August has failed to produce evidence documenting an assignment or exclusive
9  license going from these authors to the entities with which August contracted.
10 Accordingly, August has failed to carry its burden of proving chain of title and these
11 claims must be dismissed for that additional reason.  *See Motta*, 768 F.2d 481.

12         (8)    <u>Summary Judgment Must Also Be Granted Because the</u>
13                <u>ImageRights Agreement Destroyed August's Exclusivity</u>

14         Judge Rosenberg's criticism from this July that "a fair reading" of *Wiley* "is
15 that the word 'exclusive doesn't necessarily have to mean 'exclusive'" is brought
16 into stark relief by the facts of this case.  *Great Bowery*, 2024 WL 3291101, at *4.
17 Here, there are not merely two parties, but *three*, purporting to share "exclusive"
18 rights to the very same copyright rights.  Both the Agency Agreements and the
19 backdated Addendums purport to reserve certain rights (as well as copyright
20 ownership) to the photographers, which is a recurring fact pattern in the online photo
21 infringement monetization ecosystem.

22         However, here, August's late-produced evidence further demonstrates that
23 ImageRights is also purportedly an "exclusive agent" that is also authorized to hire
24 lawyers, initiate litigation, and then settle it.  JAF 47.  Surely, it stretches *Wiley* too
25 far to have three purportedly "exclusive" rights holders out there in the world suing
26 on the very same copyright rights.  Such an arrangement is certainly not to be found
27 anywhere in 17 U.S.C. § 501(b) which, as Patry argues, is actually "crystal clear"
28 about who is, and is not, authorized to sue for infringement.  Notably, 17 U.S.C. §

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

501(b) and the related statutory provisions do not say anything about exclusive licensing agents, and their own exclusive sub-agents all having standing to sue for infringement.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1

## V.  AUGUST'S OPPOSITION TO LINE PBC'S MOTION FOR SUMMARY JUDGMENT ON STANDING

Defendant cannot genuinely dispute that (1) at all relevant times, August has acted as the exclusive syndicator of the Subject Photographs pursuant to written syndication agreements with the Photographers, nor that (2) Defendant's unauthorized use of the Subject Photographs is precisely the type of use that August has (and at all relevant times has had) the exclusive right to control under those agreements. Because August has been properly transferred exclusive rights in the Subject Photographs, Defendant's motion fails.

### A. August holds an exclusive copyright interest in the Subject Photographs

Defendant's challenges to August's standing are untethered from August's syndication agreements and addenda with the Photographers and the reality of August's business. Worse, they show a profound misunderstanding of copyright law. Defendant seemingly does not understand that each "stick" in the "bundle of rights" granted under copyright law is a copyright, that copyrights are divisible and standing vests in any person with an exclusive right in any copyright (even if someone else owns a different interest in or part of that copyright), and that there is no "magic language" to transfer a copyright. If Defendant understood these things, it would understand that its challenges to August's standing in this case are absurd.

### 1.  As the exclusive licensing agent for the Photographers, August has the exclusive rights to reproduce, distribute, and display (and authorize the reproduction, distribution, and display of) the Subject Photographs

"The Copyright Act encourages creativity by granting to the author of an original work 'a bundle of exclusive rights . . . [which] includes the rights to reproduce the copyrighted work" and, "in the case of pictorial or graphic works, to display the copyrighted work publicly." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526 (2023). The exclusive rights also include the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

right "to authorize" others to do those things. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002 (9th Cir. 2015) (citing 17 U.S.C. § 106); *see Stewart v. Abend*, 495 U.S. 207, 220, 229 (1990) (stating that copyright holders' exclusive rights include "the capacity arbitrarily to refuse to license one who seeks to exploit the work"); *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932) ("The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property."). Each of these exclusive rights is a copyright.

The Act also permits a copyright owner to transfer "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the[se] rights," to someone else. 17 U.S.C. § 201(d)(2). Such a transfer may occur through "an assignment, . . . exclusive license, or any other conveyance, . . . whether or not it is limited in time or place of effect." 17 U.S.C. § 101. "That is, either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for purposes of the Act." *Minden Pictures*, 795 F.3d at 1003 (citations omitted, emphasis in original).

The "divisibility principle embodied by the 1976 Act" makes clear that a copyright holder need not transfer the entirety of his or her exclusive rights to someone else for the transferee to also hold a copyright interest in the work. *See Minden Pictures*, 795 F.3d at 1004. The ability to "subdivide" copyrights is expressly authorized in 17 U.S.C. § 201(d)(1), which allows a copyright owner to transfer his or her rights "in whole or in part" to someone else. 17 U.S.C. § 201(d)(1). Thus, "a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right." *Minden Pictures*, 795 F.3d at 1004 (citation omitted). For example, "an author of a novel might convey the exclusive right to publish a hardcover edition of the novel to

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1    one person and the right to create a movie based upon the novel to another." *Id*. at
2    1002.

3        The divisibility principle applies "with equal force when the interest granted is
4    an exclusive license to grant licenses to others." *Id*. at 1004. As the Ninth Circuit has
5    explained, "when a licensee has been granted rights vis-à-vis the world—even if he
6    or she shares those rights with another party, including the owner of the copyright—
7    we see nothing in the Copyright Act that requires us to deem such an arrangement a
8    mere 'nonexclusive license' insufficient to give rise to standing to sue." *Id*. That is
9    because "the essence of an 'exclusive' license under the Act is that 'the copyright
10   holder permits the licensee to use the protected material for a specific use and further
11   promises that the same permission will not be given to others.'" *Id*. at 1005 (citation
12   omitted).

13       Here, August's syndication agreements with the Photographers make August
14   their "exclusive worldwide agent . . . for the sale, licensing and other promotion of
15   the photographic images that you create[.]" JAF ¶¶ 106-07, 115-16, 124-25, 133-34,
16   142-43, 151-52, 160-61, 169-70, 178-79, 187-88, 196-97, 204-05. The
17   Photographers agreed to "not sell or transfer any ownership interest in any Images
18   accepted by [August] . . . to any person, licensing agent or other entity for sale,
19   licensing or exploitation," "to terminate any existing agreements that would violate
20   [August's] appointment as [their] exclusive agent," and to "not enter into any
21   agreement for the sale, licensing and other exploitation of the Images[.]"[35] *Id*. ¶¶
22   108, 117, 126, 135, 144, 153, 162, 171, 180, 189, 198, 206. That includes Bruno
23   Van Mossevelde (creator of Subject Photograph AU11037582, *see* Dkt. 45-1 at 27)
24

25   [35] Defendant's reliance on *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
26   870 F.3d 978 (9th Cir. 2017) is misplaced. There, the agency agreements at issue
      permitted the photographers to appoint other agents and "lack[ed] any limitation
27   whatsoever on the photographers' authority to contract with other licensing agents,"
      failed to label DRK as an "exclusive" agent, and provided that any sales or leases
28   DRK entered into were presumptively non-exclusive. *Id.* at 891, 984–85.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

with whom August contracted through his agent Atomo Management.[36] JAF ¶¶ 196-203, 236-37.

Defendant's argument that the agreements "merely appoint August as the photographers' 'exclusive worldwide agent'" (Mot. at Section IV.a.4) proves too much, as "appointment as the photographer's exclusive agent worldwide . . . is sufficiently specific" to confer exclusivity because "it does not permit the appointment of another licensing agent for the same copyrighted works." *Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 410 (D.N.J. 2020). Since no other person or entity has the right to authorize or enter commercial licenses for the Subject Photographs, August holds a valid copyright in those works.[37]

August's syndication agreements "d[o] not merely permit the licensing agent to copy the copyrighted photos without fear of being sued for infringement." *See id*. at 407. Rather, they convey to August, as "the licensing agent," "the authority to license the use of the photographers' images to third parties[.]" *Id*. Indeed, for August to do its job as the Photographers' "exclusive agent to sell, syndicate, license, market or otherwise distribute [their] photographic works," it necessarily must have "the exclusive right to authorize the making of copies of [their] copyrighted work and/or distribute copies of [their] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "to pursue infringement claims for violations of the exclusive copyright interests

---

[36] "Bruno and Nicoletta Van Mossevelde," and "VANMOSSEVELDE+N," is a pseudonym for Bruno Van Mossevelde, the sole author of Subject Photograph AU11037582. *See* JAF ¶¶ 236-37, Kelly Decl. Ex. 85, 200. Bruno Van Mossevelde is one of the artists identified (under pseudonym) as covered under that agreement. *Id*. ¶ 196, Kelly Decl. Ex. 200.

[37] Defendant argues that August did not "prove up chain of title" for Arielle Bobb-Willis (Subject Photograph AU2235159). Mot. at Section IV.a.7. August already agreed to dismiss that claim based on an acknowledged flaw in the documentation, but the parties could not agree on the language of a stipulation. August does not object to that claim being dismissed.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

granted to August[.]" JAF ¶¶ 111, 120, 129, 138, 147, 156, 165, 174, 183, 192, 201, 209. As set forth below, the Photographers have confirmed this common sense understanding in addenda to the syndication agreements. *Id.* ¶¶ 112-14, 121-23, 130-32, 139-41, 148-50, 157-59, 166-68, 175-77, 184-86, 193-95, 202-03, 210-12.

## 2. Defendant's claim that August has only a bare right to sue is untethered from August's agreements with the Photographers

Ignoring the actual language of August's syndication agreements, Defendant argues that this case is like *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169-70 (9th Cir. 2013),[38] where the plaintiff had only "a bare right to sue for infringement" because it was not an exclusive licensing agent, it had no right to "reproduce the works, distribute them, or exploit any other exclusive right under the Copyright Act," and the photographers "retained 'the unfettered and exclusive ability' to exploit the copyrights." Not so here. As set forth above, August holds the exclusive licensing and syndication rights in the Subject Photographs, far afield from just a bare right to sue.

The other authorities on which Defendant relies are inapplicable for the same reasons. In *Silvers v. Sony Pictures Ent., Inc.*, the plaintiff was "an assignee who holds an accrued claim for copyright infringement, but who has no legal or beneficial interest in the copyright itself[.]" 402 F.3d 881, 883, 866 (9th Cir. 2005). And in *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962 (N.D. Cal. 2013), the plaintiff had only "the bare right to sue" because it admitted the only purpose for which it could use the assignment was to bring that lawsuit. Again, August has the exclusive right to syndicate and license the Subject Photographs *as*

---

[38] *Righthaven* also seemingly conflates the principles of Article III standing (which is jurisdictional and goes to the power of a court to adjudicate an action) and statutory standing (which goes to the merits of the claim). *See Minden Pictures*, 795 F.3d at 1001 (internal citations omitted) ("[T]he issue is whether [August] has a statutory right to sue for infringement under the Copyright Act, . . . not whether [August] has satisfied the requirements of Article III[.]"). Defendant makes that same mistake. *See* Mot. at Section IV.a.1.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*well as* the right to redress violations of the rights it received. That is why courts in this district have properly found that August has standing to pursue cases like this one. *See e.g.*, *Aug. Image, LLC v. Melt Cosmetics*, 2024 WL 4328823, at *3 (C.D. Cal. Aug. 20, 2024) (holding August sufficiently alleged standing).

> ### 3. Defendant's "typical, rights-grant language" argument fails because August's agreements with the Photographer's clearly show their mutual intent to transfer exclusive rights to August

Defendant argues that even if August has more than a bare right to sue, it is a non-exclusive licensee because its agreements with the Photographers do not have "typical, rights-grant language" (Mot. at Section IV.a.4), and do not use the specific word "distribute" nor "any language . . . of the six copyright rights" (*id*.). But "no magic words must be included in a document," all that matters is that "the parties' intent as evidenced by the writing [] demonstrate[s] a transfer of the copyright." *Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999); 3 Nimmer on Copyright § 10.03[A][2] at 10–37 ("[T]he essence of the inquiry here is to effectuate the intent of the parties."); *Signatours Corp. v. Hartford*, 2015 WL 12030058, at *3–4 (W.D. Wash. June 10, 2015) ("The Ninth Circuit has instructed that courts are to 'look at the substance and effect of the contract' rather than the labels the parties use.") (finding standing); *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.,* 817 F.2d 499, 503–04 (9th Cir. 1987) (concluding that notwithstanding contractual language that original copyright owner remained "the sole and exclusive proprietor" of the copyright, the owner "clearly transferred part of [its] property interest" to transferee).

Here, August's syndication agreements do not permit the appointment of another licensing agent for the Photographers' works. Thus, the mutual intent between August and the Photographers, as demonstrated by the syndication agreements and addenda, is that August is their exclusive licensing agent with the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

exclusive rights to syndicate, license, market, or otherwise distribute the Subject Photographs.

To be sure, "[l]icensing of photographs *means* the licensing of the reproduction, distribution, and display of photographs. No court has interpreted 'photograph licensing' to mean anything else." *Stockfood*, 475 F. Supp. 3d at 403-04 (emphasis in original). Notably, to provide a copyrighted work to a licensee is to "distribute copies . . . of the copyrighted work[.]" *See* 17 U.S.C. § 106. And to publish a copyrighted work as available for licensing is "offering to distribute copies . . . for purposes of further distribution . . . or public display[.]" 17 U.S.C. § 101. That is why "courts routinely incorporate the concept of an 'exclusive licensing agent' which exercises some or all of the principal's Section 106 rights." *Stockfood*, 475 F. Supp. 3d at 403-04; *see, e.g.*, *Minden Pictures*, 795 F.3d at 1005–06 ("[W]e conclude that the Agency Agreements convey the rights to reproduce, distribute, and display the photographs to Minden *via* an 'exclusive license' to grant licenses to third parties[.]") (emphasis added); *Liaigre, Inc. v. California Furniture Collection, Inc.*, 2022 WL 18278600, at *14 (C.D. Cal. Oct. 6, 2022) ("[T]his letter is an exclusive license. Although the letter does not use the phrase 'exclusive license,' it promises Liaigre USA 'exclusivity to distribute' the products at issue.").

Defendant cannot genuinely dispute that August was retained to act—and has acted—as the exclusive licensing agent for the Subject Photographs, and Defendant does not contend that anything in the agreements or addenda is ambiguous. Rather, Defendant seems to argue that those documents do not convey exclusive rights to August because they do not use the "magic" words—an argument which fails, as set forth above. Accordingly, "[t]his court is not faced with any evidence contradicting the plain language of" August's syndication agreements and the exclusive rights conveyed therein. *See Pac. Stock, Inc. v. Pearson Educ., Inc.*, 927 F. Supp. 2d 991, 1006–07 (D. Haw. 2013). Thus, because the exclusive right to license a work is

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

equivalent to the exclusive rights to reproduce, distribute, and display that work, August has standing to maintain this action against Defendant.

### a. This Court may consider the addenda to the Agreements

Assuming *arguendo* that there was any ambiguity about the rights necessarily given to August when it was granted its "exclusive licensing agent" rights in the Subject Photographs (there is none), that ambiguity is cleared up by the addenda as well as August's and the Photographers' testimony regarding their intent and understanding in entering into and executing the syndication agreements—all of which is properly considered by this Court.[39] *See Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 433 (S.D.N.Y. 2004) (in copyright case, considering extrinsic evidence to resolve ambiguities). Here, the addenda clarify the understanding of the parties to the syndication agreements regarding the rights given to August under those agreements. Defendant offers no competing interpretation (nor any evidence corroborating any such interpretation) that is equally or more plausible in resolving any ambiguity over the rights necessarily conveyed to August as exclusive licensing agent.

Defendant complains that the addenda (other than the addendum between August and Joe Pugliese, creator of Subject Photographs AU1955890 and

---

[39] The syndication agreements are "to be construed in accordance with the laws of the State of New York[.]" JAF ¶ 28. An agreement conveying rights under copyright "must be construed in accordance with the purposes underlying federal copyright law." *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) (citing *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988)). Federal courts "rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy." *Id*. Under New York law, if the agreement contains ambiguous language, evidence external to the contract may be offered to resolve the ambiguity. *See Kerin v. U.S. Postal Service,* 116 F.3d 988, 992 n.2 (2d Cir.1997). Defendant's reference to rules governing introduction of agreements *prior to* the syndication agreements (i.e., its "integration clause" argument) is irrelevant because the addenda were executed later.

-55-

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

AU1387317) were executed after the filing of this case (*see* Mot. at Section IV.a.5.A), but that is irrelevant. August's exclusive rights stem from the original syndication agreements, each of which predate Defendant's infringements and the filing of this case. August claims no new or altered rights because of the addenda. Rather, the addenda clarify, in explicit terms, the rights August was given when it was originally made the exclusive licensing agent for the Subject Photographs.

Because the terms of the syndication agreements (and by extension the addenda) are clear, Defendant's reliance on *Playboy Enterprises, Inc. v. Dumas*, 831 F. Supp. 295 (S.D.N.Y. 1993), is misplaced. Setting aside Defendant's misrepresentation of a "present assignment" requirement[40] (Mot. at Section IV.a.5.A), *Playboy* only addressed whether an endorsement on a payment check satisfied Section 204 of the Copyright Act where the language of the check did not describe a present transfer (the language seemingly confirmed a previous transfer of rights) and the plaintiff "introduced no credible evidence as to any existing prior agreement." *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995). Here, there is no question that the syndication agreements satisfy Section 204's writing requirement.[41] "[W]hen there is no dispute between the copyright owner and transferee, 'it would be unusual and unwarranted to permit a third-party infringer to

---

[40] There is no such requirement. The Copyright Act allows parties to later confirm in writing prior oral agreements, there is no contemporaneity requirement. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011) ("At least where there is no dispute between transferor and transferee regarding the ownership of a copyright, there is little reason to demand that a validating written instrument be drafted and signed contemporaneously with the transferring event."); *see also Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996) (holding sufficient a writing dated more than 14 years after initial oral transfer: "[A] prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement.").

[41] Defendant invokes Section 204 of the Copyright Act. *See* Mot. at. Section IV.a.5.B.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

invoke § 204(a) to avoid suit for copyright infringement.'" *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) (internal citations omitted). Of course, there is no dispute here between August and the Photographers.

### b.  Other rights reserved to the Photographers are irrelevant

Defendant also disputes August's exclusive rights to the extent five of the Photographers additionally authorize August to "make or institute a claim or suit in [the Photographer's] name without your prior approval to do so"[42] and because of the Photographers retaining other Section 106 rights in their works (Mot. at Section IV.a.4), but those facts reflect nothing more than the divisibility principle—they do not undermine August's exclusive rights.

As discussed above, the "exclusive rights comprised in a copyright, including any *subdivision* of any of the rights specified by section 106, may be transferred . . . and owned separately." 17 U.S.C. § 201(d)(2) (emphasis added). Moreover, the "bundle of rights" set forth in Section 106 "may be subdivided *indefinitely*[.]" H.R. REP. 94-1476, 61, 1976 U.S.C.C.A.N. 5659, 5674 (emphasis added). For example, if an author conveys an exclusive right to an agent to distribute her work to newspapers and to another agent to distribute her work to magazines, both of those rights are exclusive. If a newspaper infringes, the first licensee has standing; if a magazine infringes, the second licensee has standing. Because rights can be subdivided "indefinitely," they can be further subdivided so that an exclusive right is granted to sports magazines and another to nature magazines. And then divided among sports magazines that cover baseball and those that cover football. And so on.

"That the photographers have retained some limited degree of authority," i.e., the exclusive rights under Section 106 they did not convey to August, "does not eliminate [August's] interest in the copyright as the sole entity to act as the

---

[42] In addition to this language not being in all syndication agreements, it is not an exclusive right under the Copyright Act, so it is irrelevant to August's standing.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

photographers' licensing agent" and as such does not render the rights conveyed to August any less exclusive. *See Minden Pictures*, 795 F.3d at 1004-05. "It merely means that both [August] and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them." *See id*. For example, if an infringer violates one of the rights those five Photographers retained, those five have separately chosen to empower August to redress the violation of that right on their behalf. August's exclusive rights remain unaffected. *See id*. at 1004; *Aug. Image, LLC v. Girard Ent. & Media LLC*, 2024 WL 1300254, at *3 (S.D.N.Y. Mar. 27, 2024) (citations omitted) (in holding August sufficiently alleged standing, stating that "[a] plaintiff need not have all the exclusive rights in § 106 . . . for standing purposes, so long as its claims are based on infringement of the limited exclusive rights to which it does have a license"). "To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act." *Minden Pictures*, 795 F.3d at 1005.

Relatedly, Defendant argues that August lacks standing because Defendant purportedly created derivative works by cropping the Subject Photographs and adding some text over them, and August was not transferred the right to control derivatives. Mot. at Section IV.a.6. That argument is frivolous for at least two reasons.[43] First, "'trivial changes and inconsequential modifications such as underlining, highlighting, [and] cropping pages' do not rise to the level of creating a derivative." *Berry v. Hawaii Express Serv., Inc.*, 2005 WL 8166230, at *4 (D. Haw. June 27, 2005). And second, even assuming *arguendo* Defendant created unauthorized derivative works, it *also* copied, displayed, and distributed the Subject

---

[43] Defendant's argument that August's FAC only alleges infringement of the derivative work right (Mot. at Section IV.a.6) is clearly false. *See* Dkt. 45 ¶¶ 9, 14.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Photographs *irrespective of its cropping*.[44] August has standing to redress those infringements, and it is no defense that the copy is not identical—it need only be substantially similar to be infringing. *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984–85 (9th Cir. 2017).

### c.  August's agreement with ImageRights is irrelevant

Defendant also argues that August's agreement with ImageRights "destroyed August's exclusivity" (Mot. at Section IV.a.8), but ImageRights is only authorized to act as a recovery agent for claims it finds up to a certain point—which, if anything, amounts to no more than the bare right to pursue claims and is not a copyright (as Defendant otherwise acknowledges).

While August's agreement with ImageRights permits ImageRights to "grant licenses for both past and/or future uses of" any infringement claim it pursues, it may only do so "subject to [August's] prior approval," August (*not* ImageRights) is to "serve as claimant" (which is an acknowledgement that it is August that holds the copyright), and it is August's decision "whether or not to retain counsel and/or to initiate litigation." *See* JAF ¶ 47, Ex. 90.

To the extent any cognizable copyright has been transferred to ImageRights, it is merely a subdivision August's rights. The case of *Lines+Angles, Inc. v. Adagio Teas, Inc.* is instructive. There, the court rejected an argument similar to the one Defendant makes in this case, explaining: "Stockfood Global, holding an exclusive license from Poplis, may enter into agreements to distribute Poplis's photographs [which give third parties rights to further distribute] without automatically losing its ability to sue for infringement[.]" 2022 WL 2473360, at *3–4 (D.N.J. July 6, 2022).

---

[44] "[I]nfringement of the reproduction right" is "unauthorized copying of a material amount of expression." 3 Patry on Copyright § 9:4 ("Reproduction right— Generally"). To "display" a work means to "show a copy of it." 17 U.S.C. § 101. And uploading works to a website for further dissemination is a distribution. *See Sega Enterprises Ltd. v. MAPHIA*, 857 F. Supp. 679, 687 (N.D. Cal. 1994).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

And, in any event, there is no evidence in the record that August ever in fact authorized ImageRights to issue any such licenses with respect to the Subject Photographs or that ImageRights has ever even been in contact with Defendant.

\*       \*       \*

August's exclusive syndication agreements grant it rights vis-à-vis the world. August does not merely "stand in the shoes of a nonexclusive licensee, permitted to use the work but not to prevent others from doing so. Rather, [August] st[ands] in the shoes of the photographer[s] with respect to the licensing rights that were assigned to it from the photographer[s]." *See Stockfood*, 475 F. Supp. 3d at 407. Defendant's contrary arguments are untethered from the language of the agreements between August and the Photographers and rest on specious reasoning. Therefore, this Court should find that August holds an exclusive copyright interest in the Subject Photographs.

**B. Under controlling Ninth Circuit authority, August has standing to pursue this case for violation of its exclusive rights in the Subject Photographs**

As the exclusive licensing agent for the Subject Photographs, it is August— and only August—that has the right to grant licenses for commercial and editorial uses of the Subject Photographs, including uses like those by Defendant. Because Defendant has infringed August's exclusive rights, August has standing to pursue this case.

"[T]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right[.]" 17 U.S.C. § 501(b). As such, "[a]ny party to whom such a right has been transferred— whether via an assignment or an exclusive license—has standing to bring an infringement action based on that right." *Minden Pictures*, 795 F.3d at 1003 (citation omitted). Thus, "a party granted an exclusive license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work," because the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

exclusive licensee owns "an exclusive right under copyright[.]" *Id*.; *see also* 2 Roger M. Milgram, Milgram on Licensing § 15.08 (stating that "one who takes an 'exclusive' license subject to a preexisting license . . . possesses the legal right to exclude third parties (other than the existing licensee) . . . and, thus, has . . . standing to sue for infringement").

In *Minden Pictures*, 795 F.3d at 999, 1005–06, the Ninth Circuit explained that "a stock photography company that serves as the licensing agent for dozens of photographers" had standing to "bring an infringement action to remedy the unauthorized reproduction, distribution, and display of the photographs" in its syndication portfolio based on agreements making it "the exclusive right to act as their licensing agent." The panel explained that an "'exclusive license' to grant licenses to third parties" necessarily incorporates "the rights to reproduce, distribute, and display the photographs" and to authorize the same. *See id*. at 999, 1003, 1005-06. As such, the agent had standing to "prevent [] third parties who have not received permission to use the photographs from using them." *See id*. at 1005; *see also Stockfood*, 475 F. Supp. 3d at 411 (granting "summary judgment in favor of Stockfood as to ownership and standing to sue for infringement" upon finding it "clear from the face of the Agency Agreement that the photographers intended to appoint Stockfood as their exclusive licensing agent . . . [which] carried with it the grant of the exclusive right . . . to authorize the reproduction, distribution, and display of the Images[.]"); *Aug. Image*, 2024 WL 1300254 at *4 n.4 (recognizing *Minden Pictures*' holding that, in the Ninth Circuit, a party's "status as an exclusive agent is sufficient for standing").

Ignoring the divisibility principle, the clear agreements between August and the Photographers, and the sound reasoning of *Minden Pictures*, Defendant disingenuously suggests that *Minden Pictures* may no longer be good law and/or should be limited to cases by an exclusive licensor against its former licensee. Mot.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

at Section IV.a.4. But *Minden* is unquestionably good law[45] and recognizes that an exclusive licensing agent is "granted rights vis-a-wis ***the world***" (*see Minden Pictures*, 795 F.3d at 1004, emphasis added), not just vis-à-vis licensees. Under Defendant's argument, an infringer can avoid liability for violating the rights of an exclusive licensing agent simply by not seeking or obtaining a license in the first place. The perverse incentives that would create are self-evident. Of course, Defendant has reason to make such an argument: *it* made no attempt to seek or obtain August's authorization before exploiting the Subject Photographs on its Website and Instagram page.

When Defendant copied and displayed the Subject Photographs, it violated August's exclusive rights. August has standing to redress those violations, and Defendant's contrary arguments should all be rejected.

**C. Defendant's allegations of malfeasance against August are an unwarranted distraction from this motion's lack of merits**

Lacking any meritorious defense, Defendant attacks August with baseless accusations of backdating, fraud, and some alleged "discovery abuse." Although those accusations are irresponsible and uncalled for, August feels compelled to briefly address them out of fear they may prejudice this Court against it.

---

[45] *DRK Photo* did not overrule *Minden*. To the contrary, it reiterated: "We recently held in *Minden Pictures, Inc. v. John Wiley & Sons, Inc.* that a stock photography agency that served as the exclusive licensing agent for allegedly infringed photographs had standing to sue for infringement under the Copyright Act." *DRK Photo*, 870 F.3d at 983. *Tresóna Multimedia, LLC v. Burbank High School Vocal Music*, 953 F.3d 638, 645 (9th Cir. 2020), addressed the standing of a plaintiff who "received its copyright interests . . . as a license from an individual co-owner of those interests without the consent of the other co-owners," which has no bearing here. *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), also dealt with claims "addressed to the co-ownership context[.]" *See Young-Wolff v. John Wiley & Sons, Inc.*, 2016 WL 154115, at *4 (S.D.N.Y. Jan. 12, 2016) (collecting cases recognizing narrow holding of *Davis*). None of these cases are on point. And Defendant's unpublished, out-of-circuit, district court decisions declining to apply *Minden* cannot override *Minden*.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Even a cursory review of the evidence presented shows that nothing has been "backdated." Defendant's charge is aimed at the addenda which have no signature dates. While they do refer to the dates of the corresponding original syndication agreements, that is only because they are intended to reflect the understanding of the parties thereto (August and the Photographers) as of those dates. August freely admits as much and has done nothing nefarious or improper.

Defendant invokes *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962 (N.D. Cal. 2013), to suggest malfeasance in this case, but the facts of that case are far from this one. That case included repeated instances of the plaintiff violating court orders and making misrepresentations to the court, as well as the plaintiff asking "the photographers to backdate their signatures" on the agency agreements, meaning "adding signatures and dates to preexisting documents," i.e., "'faking it' in the sense that the documents [were] altered" (*id.* at 964-65). In stark contrast, August has not altered preexisting documents by adding signatures or dates, has made no misrepresentations, and has violated no court orders. Rather, August has truthfully testified about when the addenda were signed and the dates referenced in the addenda referring to the dates of the corresponding original syndication agreements.

Defendant's allegations of "discovery abuse" are equally spurious, as August will address (and seek sanctions for) if and when Defendant files its referenced "separate motion." To be sure, "a summary judgment motion is not the proper manner for [Defendant] to seek relief" for alleged discovery disputes because those "are regulated by Fed. R. Civ. P. 37 and Local Rule 37 of this district. The formalities required by these rules have not been followed," and this Court should refuse to allow Defendant "to make an end-run around the requirements by seeking sanctions for discovery abuse in its motion for summary judgment." *See Ellison Educ. Equip., Inc. v. Chen*, 2004 WL 3154592, at *20 (C.D. Cal. Dec. 21, 2004). Again, though, August has violated no orders from, nor made any

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

misrepresentations to, this Court, and its discovery responses have never been held insufficient. To the contrary, August has been clear from the start of this case that its exclusive rights in the Subject Photographs (and standing to pursue violations thereof) emanate from its syndication agreements, and it has never represented otherwise.

Defendant also disingenuously complains about testimony submitted from the Photographers—testimony that Defendant *itself* simultaneously submits to this Court as evidence—but it was Defendant's choice not to pursue discovery from those Photographers. Judge Sagar denied Defendant's motion to compel August to produce nine of the (non-party) Photographers for deposition via Rule 30 notices, holding that "[t]he 9 Photographers are not Plaintiff's managing agents and must be served subpoena notices through FRCP Rule 45." Dkt. 52. Defendant has known about the Photographers for at least half a year (*see* Dkts. 43-4, 45) and has had contact information for the Photographers from August since May 30, in addition to contact information for those Photographers being publicly available. Yet Defendant made no attempt to subpoena any of them except two, which it first seemingly sought to subpoena on September 13, 2024—less than a month before the fact discovery deadline. Defendant had ample opportunity to take discovery from the Photographers but sat on its hands.

Defendant's allegations of malfeasance are misguided. And they certainly do nothing to dispute August's ownership of exclusive rights under copyright or Defendant's infringement of those rights. Therefore, this Court should deny Defendant's motion for summary judgment.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

# VI.  AUGUST'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Here, there is no genuine dispute as to August's standing to pursue this case; ownership of valid copyrights in the Subject Photographs; Defendant's access to and unauthorized copying, display, reproduction, and distribution of the Subject Photographs; and Defendant's lack of any viable affirmative defenses. Therefore, this Court should find Defendant liable for direct infringement of the copyrights in the Subject Photographs as a matter of law.

**(a)    August holds an exclusive copyright interest in the Subject Photographs**

Because the Subject Photographs are original works in which August holds exclusive rights under copyright, August easily establishes the first element of its infringement claims.

"The Copyright Act encourages creativity by granting to the author of an original work 'a bundle of exclusive rights . . . [which] includes the rights to reproduce the copyrighted work, to prepare derivative works, and, in the case of pictorial or graphic works, to display the copyrighted work publicly." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526 (2023) (citations omitted); 17 U.S.C. § 106. Each of those exclusive rights is a copyright, and "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right[.]" 17 U.S.C. § 501(b).

Importantly, the Copyright Act permits a copyright owner to transfer "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the[se] rights," to someone else. 17 U.S.C. § 201(d)(2). For example, "an author of a novel might convey the exclusive right to publish a hardcover edition of the novel to one person and the right to create a movie based upon the novel to another." *Minden Pictures*, 795 F.3d at 1002 (citations omitted). Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share,

"in whole or in part," to someone else. 17 U.S.C. § 201(d)(1). The owner can transfer a right, or a share of such a right, via "an assignment, . . . exclusive license, or any other conveyance, . . . whether or not it is limited in time or place of effect." 17 U.S.C. § 101. "That is, either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for purposes of the Act." *Minden Pictures*, 795 F.3d at 1003 (citations omitted, emphasis in original).

"[A]ny party to whom such a right has been transferred—whether via an assignment or an exclusive license—has standing to bring an infringement action based on that right." *Id.* (citing *Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1146 (9th Cir. 2008)). Thus, "a party granted an exclusive license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work." *Minden Pictures*, 795 F.3d at 1003 ("As the owner of 'an exclusive right under a copyright,' an exclusive licensee is 'entitled . . . to institute an action for any infringement[.]'") (quoting 17 U.S.C. § 501(b)).

This is a result of "the divisibility principle embodied by the 1976 Act." *See Minden Pictures*, 795 F.3d at 1004. For example, "a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right," because "the word 'exclusive' in [the Act] cannot mean that only sole owners possess 'exclusive' rights." *Id.* at 1004 (citation omitted). The divisibility principle also applies "with equal force when the interest granted is an exclusive license to grant licenses to others." *Id.* "[W]hen a licensee has been granted rights vis-à-vis the world—even if he or she shares those rights with another party, including the owner of the copyright"—the licensee has standing to sue. *See id.* That is because "the essence of an 'exclusive' license under the Act is that 'the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

others.'" *Id*. at 1005 (quoting *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)); *see also* 2 Roger M. Milgram, Milgram on Licensing § 15.08 (stating that "one who takes an 'exclusive' license subject to a preexisting license . . . possesses the legal right to exclude third parties (other than the existing licensee) . . . and, thus, has . . . standing to sue for infringement").

As a result, exclusive licensing agents and syndicators hold copyright interests in the works they syndicate and thus have standing to pursue infringements of those interests. *See, e.g. Stewart v. Abend*, 495 U.S. 207, 220, 229 (1990) (stating that copyright holders "hold[] a bundle of exclusive rights in the copyrighted work," including "the capacity arbitrarily to refuse to license one who seeks to exploit the work"); *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932) ("The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property.").

That is why, in *Minden Pictures*, 795 F.3d at 999, 1005–06, the Ninth Circuit held that Minden, "a stock photography company that serves as the licensing agent for dozens of photographers, authorizing third parties to use copyrighted photographs," had standing to "bring an infringement action to remedy the unauthorized reproduction, distribution, and display of the photographs" in its syndication portfolio. There, Minden entered into agreements with the photographers providing to Minden "the exclusive right to act as their licensing agent," and that "'exclusive license' to grant licenses to third parties" necessarily included "the rights to reproduce, distribute, and display the photographs" and to authorize the same. *See id*. at 999, 1003, 1005-06. The panel held that even though "the Agreements do not make Minden the legal owner of the copyrights," because Minden is the "sole and exclusive agent and representative with respect to the licensing of any and all uses" of the photographs—meaning that "the photographers have promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute,

and display the photographs"—Minden had standing to "prevent [] third parties who have not received permission to use the photographs from using them." *See id*. at 1005.[46]

Here, August is the exclusive licensing agent for the Photographers and the Subject Photographs and, as such, has been conveyed the rights to reproduce, display, and distribute the Subject Photographs, to authorize (or not) others to do the same, and to address violations of those rights. *See* JAF ¶¶ 102-03, 106-212; *Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 411 (D.N.J. 2020) (granting "summary judgment in favor of Stockfood as to ownership and standing to sue for infringement": "Altogether, it is clear from the face of the Agency Agreement that the photographers intended to appoint Stockfood as their exclusive licensing agent. That appointment carried with it the grant of the exclusive right to act as a licensing agent, that is, to authorize the reproduction, distribution, and display of the Images[.]"). None of the Photographers have claimed otherwise; to the contrary, each has promised that those same rights have not been, and will not be, given to others. *See* JAF ¶¶ 106-212. Therefore, when Defendant reproduced, displayed, and distributed the Subject Photographs without authorization, Defendant violated August's exclusive rights, and August has standing to redress those violations.

"[T]o hold otherwise would [] be inconsistent with common sense" and "run[] contrary to the divisibility principle embodied by the 1976 Act, and to the bulk of the caselaw and commentary in this field." *Minden Pictures*, 795 F.3d at 1004-05. August's appointment as exclusive licensing agent necessarily includes the exclusive rights to make, distribute, and display copies of their original photographs, to

---

[46] The fact that the agreements "permit[ted] the photographers to issue some licenses themselves" did not render Minden's license nonexclusive, "[i]t merely means that both Minden and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them." *Id*. at 1000, 1004-05.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

authorize (or not) others to do the same, and to address violations of those rights—
indeed, August could not perform its job as exclusive licensing agent without those
rights. *See Stockfood*, 475 F. Supp. 3d at 403–04 ("[C]ourts routinely incorporate the
concept of an 'exclusive licensing agent' which exercises some or all of the
principal's Section 106 rights.").

Put differently, had the Photographers never entered into their syndication
agreements with August and instead issued licenses directly, they could bring
infringement actions over the violations August asserts in this case. But, having
appointed August to exclusively manage the commercial and editorial use of their
photographs, it is *August* that has the right to pursue those violations, and there is no
reason why "the photographers should not also be able to rely on [August] to protect
and defend the licenses that it has issued on their behalf." *See Minden Pictures*, 795
F.3d at 1005; *see also Stockfood*, 475 F. Supp. 3d at 403–04 ("It stands to reason
that many copyright holders, such as photographers and musicians, are not interested
in the day-to-day business of drafting licenses, and would rather outsource those
functions to another."); 3 Nimmer on Copyright § 10.03(A)(4) ("[A] license duly
executed by the copyright owner's exclusive licensing agent can be treated as the
owner's 'contract as much as if he had executed it in person.'").

Ultimately, each of the Photographers has confirmed their understanding of
their respective agreements with August and that August has the necessary exclusive
copyrights to pursue this case. *See* JAF ¶¶ 106-212. "[W]hen there is no dispute
between the copyright owner and transferee, it would be unusual and unwarranted to
permit a third-party infringer to invoke § 204(a) to avoid suit for copyright
infringement." *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146,
1157 (9th Cir. 2010) (internal quotation marks omitted). Honoring August's and the
Photographers' contracting intentions and expectations removes "incentive[s] to
engage in infringing behavior" and "significant practical disadvantage[s] in seeking

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

to protect a copyrighted work" that would otherwise result. *See Minden Pictures*, 795 F.3d at 1005 (providing examples).

In sum, August is the exclusive licensing agent for the Photographers and the Subject Photographs—a grant of rights vis-à-vis the world—and, as such, holds an exclusive copyright interest in the Photographs and has standing to seek redress of Defendant's infringement of those rights. This Court should therefore find that August satisfies the first element of its infringement claims.

**(b)    Defendant infringed August's exclusive rights in the Subject Photographs**

To prove copyright infringement, a plaintiff need only establish (1) ownership of a valid copyright and (2) copying of original elements of the work. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Here, Defendant is prima facie liable for infringing the copyrights in the Subject Photographs.

(1)    The copyrights in the Subject Photographs are valid

A plaintiff is "required to show registration as an element of an infringement claim." *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017). "[A] registration certificate [issued] within five years after first publication . . . constitute[s] prima facie evidence of both the validity of the copyright and the facts stated in the certificate." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp*, 606 F.3d 612, 619 (9th Cir. 2010); *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1194 (C.D. Cal. 2005). Such a certificate "shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). A registration certificate "made [after the five-year period]" can be entitled to the same "[e]videntiary weight," it is just "within the discretion of the court." 17 U.S.C. § 410(c). "Most courts conclude that untimely certificates constitute prima facie

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

evidence" of copyright validity.[47] *See Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2012) (collecting cases, and applying presumption to registration made more than 13 years after first publication).

Even if not entitled to the presumption, a plaintiff need only show that the copyrighted work is original. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 346 (citation omitted). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id*. at 345.

Here, the Photographers respectively created the Subject Photographs (JAF ¶¶ 213-39), and there is a "longstanding and consistent body of case law holding that photographs generally satisfy th[e] minimal standard" of creativity and are entitled to copyright protection. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (collecting cases); *see also Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 450 (S.D.N.Y. 2005) (holding that "almost any photograph may claim the necessary originality to support a copyright."). The Photographers represented and warranted that their "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work,"

---

[47] *See also, e.g.*, *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (applying presumption to registration made more than five years after first publication); *Stern v. Lavender*, 319 F. Supp. 3d 650, 671 (S.D.N.Y. 2018) (same); *Graphic Design Mktg., Inc. v. Xtreme Enterprises, Inc.*, 772 F.Supp.2d 1029, 1033 (E.D. Wis. 2011) (same); *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 506, 516 (S.D.N.Y. 2003) (same).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

including the Subject Photographs, "has been photographed by [them.]" JAF ¶¶ 109, 118, 127, 136, 145, 154, 163, 172, 181, 190, 199, 207. The registrations "from the U.S. Copyright Office" for the Subject Photographs "raise[] the presumption of copyright validity and ownership."[48] *See Unicolors*, 853 F.3d at 988. And Defendant has no evidence to rebut that presumption or otherwise prove that the copyrights in the Subject Photographs are invalid.

Consequently, there is no genuine dispute as to ownership of valid copyrights in the Subject Photographs.

> (2) <u>Defendant copied, displayed, distributed, and reproduced the Subject Photographs without seeking or obtaining August's authorization</u>

The second element of a copyright infringement claim is satisfied when there is "copying" of a protected work. *Unicolors*, 853 F.3d at 984. "The word 'copying' is shorthand for the infringing of any of the copyright owner's [six] exclusive rights[.]" *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989). Copying can be proven through "direct evidence"; through "circumstantial evidence" that (1) the defendant had access to the copyrighted work prior to the creation of defendant's work, and (2) there is substantial similarity of expression between the copyrighted work and the defendant's work; or through a similarity between the copyrighted work and the defendant's work that is so "striking" that it is highly likely the works

---

[48] Reg. Nos. VA 2-201-766 (covering AU1955961), VA 2-141-902 (covering AU179089), VA 2-294-743 (covering AU1390084), VA 2-323-663 (covering AU2149055, AU2149064, and AU2149040), VA 2-334-439 (covering AU11251088), VA 2-227-879 (covering AU1508967), and VA 2-326-585 (covering AU1561939) were issued more than five years after first publication. However, this Court should, as most courts do, treat these registrations as prima facie evidence of the validity of the copyrights in these Subject Photographs because there is no evidence that those registrations are invalid, and the mere passage of time between publication and registration is not evidence of invalidity. *See Brighton Collectibles*, 2012 WL 6553403, at *2.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

were not created independent of one another. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483, 486 (9th Cir. 2000); *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984) (explaining that "striking similarity" refers to similarities that "are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source").

Here, Defendant accessed and downloaded the Subject Photographs from third-party websites, and then copied, displayed, reproduced, and distributed the Subject Photographs on its own Website and Instagram page without August's permission. *See* JAF ¶¶ 240-42, 263-99. Those copies are essentially verbatim reproductions of the Subject Photographs but for minor cropping, and thus by definition are strikingly similar to the Subject Photographs. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074 (9th Cir. 2021) ("[I]f such duplication is literal or verbatim, then clearly substantial similarity exists."); *Unicolors*, 853 F.3d at 987 ("Where the extrinsic similarity is so strong that the works are near duplicates save for superficial differences, the court may properly conclude that no reasonable jury could find that the works are not substantially similar in their overall concept and feel."). And there is no dispute that Defendant's unauthorized exploitation is "conduct that can reasonably be described as the direct cause of the infringement." *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019).

Consequently, there is no genuine dispute of material fact as to Defendant's copying. *See Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 5310831, at *2 (N.D. Cal. June 29, 2018) (finding plaintiff stated a prima facie case for infringement where defendant used strikingly similar images and dialogue to plaintiff's protected works).

*        *        *

For the foregoing reasons, Defendant has committed direct copyright infringement. And as set forth below, Defendant has no viable affirmative defense to liability. Therefore, this motion should be granted.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(c)    Defendant has no viable affirmative defenses to liability**

When the parties met and conferred over this motion, Defendant represented that it "does not intend to rely on any of its affirmative defenses to oppose [August's] motion [on liability], other than standing," yet simultaneously said that "the affirmative defenses defendant may rely on may change depending on what arguments plaintiff mentions in its cross-motion." Doniger Decl. ¶ 4. Because Defendant refused to confirm, without hedging, which affirmative defenses it would pursue in opposition to this motion, August addresses each so this Court can properly dispose of them.

This Court can quickly dispatch with Defendant's assertions of estoppel (Dkt. 46 at 6-7), unclean hands (*id*. at 7), implied license (*id*.), and copyright misuse (*id*. at 10-11). To establish an implied license, Defendant must show "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (cleaned up). Here, Defendant admits it scraped the unauthorized copies of the Subject Photographs from third-party websites and had no prior relationship or communication with August. JAF ¶¶ 241, 263-99. This defense fails.

So do the others. "To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Survivor Prods. LLC v. Fox Broad. Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001). To establish estoppel, Defendant must show that (1) August "kn[e]w the facts"; (2) August "intend[ed] that [its] conduct shall be acted on"; (3) Defendant was "ignorant of the true facts"; and (4) Defendant

relied on August's conduct "to [its] injury."[49] *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). And while copyright misuse "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly" (*A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)), "[a] plaintiff's 'enforcement of its copyrights does not constitute copyright misuse'" (*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 998 (C.D. Cal. 2006)). Each of these defenses fails. August has only sought to redress the infringement of photographs for which it is the exclusive licensing agent and syndicator. August has sought no unfair advantage over Defendant or any market it has no right to control, and it has done nothing inequitable. There is no evidence in the record establishing the elements of any of these defenses, so they should be dismissed.

The only defense that warrants any further discussion,[50] fair use (Dkt. 46 at 6), also fails. In determining fair use, courts analyze (1) the purpose and character of the use, including whether such use is of a commercial nature; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Where the only dispute is over the legal significance to be drawn from facts, it is appropriate to adjudicate a fair use defense on summary judgment. *See Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 461 (9th Cir. 2020). Defendant bears the burden. *Id.* at 459. None of the fair use factors favor Defendant. *See New Tradition Media,*

---

[49] Defendant also asserts a separate "knowledge, consent, and acquiescence" defense (*see* Dkt. 46 at 10). It is not even clear that "acquiescence applies in the copyright context," as it is "an equitable defense that usually applies to trademark cases." *Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 WL 6892097, at *8 (C.D. Cal. Aug. 11, 2016) (granting summary judgment in favor of plaintiff). Even if it did apply, there is no evidence in the record satisfying the elements.

[50] Other than fair use, the remaining defenses asserted in Defendant's operative Answer (Dkt. 46) are not affirmative defenses or go to issues other than liability.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

*LLC v. Rittersbacker Sunset, LLC*, 2023 WL 8351523, at \*7 (C.D. Cal. Oct. 13, 2023) (Hsu, J.) (granting summary judgment on fair use defense in favor of plaintiff).

### (1)  Defendant's uses of the Subject Photographs were commercial and non-transformative

Defendant displayed high-resolution copies the Subject Photographs in posts on its for-profit Website as visual representations of the celebrities discussed in those posts. The whole point of Defendant's celebrity-focused blog series is to feature content that existing users find interesting and relevant, attract new users, and increase Defendant's brand awareness and search engine placement (JAF ¶ 258)—which is far afield from "criticism, comment, news reporting, teaching . . . , scholarship, or research" (*see* 17 U.S.C. § 107). Defendant's uses are commercial and non-transformative, weighing heavily against fair use.

"[T]he first factor assesses the character of the use, including whether it is commercial in nature, and, critically, whether it is 'transformative.'" *Zillow*, 918 F.3d at 742. The "central purpose" of this inquiry is to see "whether the new work merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579 (cleaned up). "The larger the difference, the more likely the first factor weighs in favor of fair use." *Andy Warhol*, 143 S. Ct. at 1274-75.

While "[n]ew expression may be relevant to whether a copying use has a sufficiently distinct purpose or character," "it is not, without more, dispositive of the first factor." *Id.* at 1273. "*Campbell* cannot be read to mean that § 107(1) weighs in favor of any use that adds some new expression, meaning, or message." *Id.* at 1282. Instead, "the meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

provides otherwise unavailable information about the original." *Id.* at 1284-85 (finding secondary use was commercial and non-transformative).

Here, Defendant accessed copies of the Subject Photographs, minorly cropped them, and published them on its for-profit Website (to paying and potential subscribers) and Instagram page in posts discussing the celebrities depicted in the Subject Photographs, including alongside paid-for advertisements (*see* JAF ¶ 259). Thus, Defendant's use of the Subject Photographs was for a commercial purpose. *See McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022) ("For-profit [] articles are generally considered commercial uses."). Moreover, Defendant did not change the portrayal of the Subject Photographs themselves, instead it used essentially verbatim copies. Defendant's uses do not comment on August, the Photographers, or the Subject Photographs at all—indeed, any accompanying text was untethered from the Subject Photographs altogether. *See also De Fontbrune v. Wofsy*, 39 F.4th 1214, 1225 (9th Cir. 2022) ("Adding informative captions does not necessarily transform copyrighted works."); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1174 (9th Cir. 2012) ("[N]either minor cropping nor the inclusion of headlines or captions transformed the copyrighted works."). Thus, Defendant's "claim to fairness in borrowing" the Subject Photographs "diminishes accordingly (if it does not vanish)." *See Andy Warhol*, 143 S. Ct. at 1285 (quoting *Campbell*, 510 U.S. at 580), n.21.

In short, Defendant made minor alterations to the Subject Photographs, displayed some of them alone, and incorporated all of them into posts loosely about the celebrities depicted therein. Under *Andy Warhol*'s guidance and established fair use precedent, that is not transformative use. As a result, the purpose and character of Defendant's use clearly favors August.

   (2) <u>The Subject Photographs are original, creative works</u>

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

The second factor, the nature of the copyrighted work, turns on whether the work is informational or creative. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000).

The Photographers respectively took the Subject Photographs and determined their features. They are creative works. *See Zillow*, 918 F.3d at 743 ("[P]hotographers' images are creative, especially when they are created for public viewing."); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018) (describing "creative choices" of photographs).

This factor cuts against Defendant. *See Zillow*, 918 F.3d at 744.

> (3)    Defendant displayed nearly verbatim reproductions of the Subject Photographs even though it publishes posts without photographs

The third factor asks whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. Courts "examine both the quantitative and qualitative aspects of the portion of the copyrighted material taken." *Monge*, 688 F.3d at 1179. Generally, "copying an entire work militates against a finding of fair use." *Zillow*, 918 F.3d at 744.

Quantitatively, Defendant used essentially the entirety of the Subject Photographs but for minor cropping. "Qualitatively, the minimal cropping of each picture demonstrates that the 'heart' of each individual copyrighted picture was published." *Monge*, 688 F.3d at 1178-79; *McGucken*, 42 F.4th at 1162 ("[E]ven assuming [Defendants] [were] justified in using some portion of the photos, copying the entirety of twelve of them would be far more than was necessary") (internal quotation marks omitted). And there is no evidence establishing why it was necessary to use the Subject Photographs specifically and the amounts taken, or even why it was necessary to use photographs in the first place. There is no such necessity—notably, Defendant replaced Subject Photograph AU1561939 (Dkt. 45-1

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

at 31) with a *different photograph* of Benedict Cumberbatch in the same post (JAF ¶ 259 at Doniger Decl. Ex. 5), and Defendant has published blog posts *without* photographs (*id.* ¶ 261).

Defendant copied the "heart" of the Subject Photographs and has no adequate justification, so the third factor cuts against Defendant. *See Monge*, 688 F.3d at 1180 (defendant's "use was not just substantial, it was total"); *McGucken*, 42 F.4th at 1163 (defendant "copied extensively without justification").

(4)    If universalized, Defendant's uses would destroy an established licensing market for the use of celebrity photographs

The fourth fair use factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "[A] presumption of market harm 'makes common sense[] when a commercial use amounts to mere duplication of the entirety of an original.'" *Monge*, 688 F.3d at 1181 (quoting *Campbell*, 510 U.S. at 591). "[T]o defeat a fair use defense, 'one need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Zillow*, 918 F.3d at 744.

August has licensed the photographs in its syndication portfolio (including from the Photographers) for use in articles (JAF ¶ 104) as well as evidence of Defendant's participation in licensing photographs (albeit not the Subject Photographs) (*id.* ¶ 302), which is more than sufficient to establish that the market is "more than hypothetical." *See Zillow*, 918 F.3d at 744 (holding that licensing "a handful of photos" established that "market was more than 'hypothetical'"). Regardless, Ninth Circuit precedent instructs that widespread reproduction of copyrighted photographs in articles, even if unrelated in subject matter to a plaintiff's primary licensing clients, would damage the plaintiff's market to license those photographs. *See Monge*, 688 F.3d at 1182; *McGucken*, 42 F.4th at 1163.

Moreover, because Defendant's uses were "both commercial and non-transformative," market harm is presumed here. *See De Fontbrune*, 39 F.4th at 1226

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

(citing *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 861 (9th Cir. 2017)). And Defendant has not produced expert reports or economic analyses indicating the potential market effect its use has on August's potential ability to license the photographs in its syndication portfolio, as is its burden. *See Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020); *see also Campbell*, 510 U.S. at 590 ("Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets.").

The fourth factor cuts against Defendant.

\*      \*      \*

All four fair use factors favor August, so Defendant's fair use defense fails as a matter of law. Because Defendant's remaining asserted defenses also fail, there is no genuine dispute that Defendant is liable for infringing the copyrights in the Subject Photographs. So owing, this Court should grant this motion.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

# VII.  LINE PBC'S OPPOSITION TO AUGUST'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

In addition to August's failure to prove standing and "ownership" of a copyright, there are multiple other reasons why summary judgment *in the plaintiff's favor* must be denied.  Namely, there are genuine disputes of fact here, and failures of proof by August, with respect to chain of title, registration, and copying.

**(a)    Line PBC's Own Motion for Summary Judgment Demonstrates that August Lacked Standing and Has Not Proven Copyright "Ownership"**

Line PBC's arguments, set out at Section IV above, in support of its own summary judgment motion on standing and lack of copyright ownership, are hereby incorporated by reference, in opposition to August's cross-motion for partial summary judgment on liability.

Section IV already addresses all of August's standing and copyright ownership evidence that was produced during fact discovery, namely the Agency Agreements, the backdated Addendums, the improperly-withheld photographer declarations, and Lauren Kelly's deposition testimony.  Section IV(a)(1)-(6).

The only new addition is Ms. Kelly's MSJ declaration, which was not produced during fact discovery, but was served in support of August's cross-motion. As explained above, Ms. Kelly admitted at her deposition that she lacks personal knowledge about the formation of the Agency Agreements, and she otherwise fails to provide foundation for the averments in her declaration about the parties' "intent" and "industry custom and practice."  Section II(d)(1)(D), above.

Further, even if Ms. Kelly had personal knowledge about the things she avers to in her MSJ declaration (she does not), it is, of course, well settled that she cannot offer a summary judgment declaration that contradicts her prior 30(b)(6) testimony. *E.g., Orthoarm, Inc. v. Forestadent USA, Inc.*, 2007 WL 4457409, at *2-3 (E.D. Mo. Dec. 14, 2007) (rejecting declaration as a "sham affidavit" at summary judgment because it "directly contradict[ed]" prior Rule 30(b)(6) deposition testimony).

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

1    Apart from the lack of foundation, and 'using an MSJ declaration to try and

2 contradict prior 30(b)(6) testimony' issues, the substance of what Kelly says in her

3 new MSJ declaration also fails to save the day for August on standing and copyright

4 ownership.  Kelly's newest averments simply repeat the party line previously trotted

5 out in the backdated Addendums and improperly-withheld photographer

6 declarations, and should be discounted for the same reasons argued above at Section

7 IV(a)(5).  Namely, the Copyright Act requires that a grant of an *exclusive* license be

8 in writing and signed by the grantor.  So, it does not matter that Kelly opines in her

9 declaration that she thinks such a license should be implied here.   The Agency

10 Agreements were fully integrated.  New York's parol evidence rule bars August

11 from trying to alter the terms of the integrated agreements using Kelly's (and the

12 photographers') *ex-post facto* assertions about the parties' supposed "intent."

**(b)    Holes in the Chain of Title Require Entry of Summary Judgment in Line PBC's Favor on the Bobb-Willis and Van Mossevelde Claims**

15    August appears to concede that summary judgment should be entered in Line

16 PBC's favor on the Arielle Bobb-Willis claim.  In a footnote in its notice of motion,

17 August notes that it "attempted to dismiss" this claim, and "does not move for partial

18 summary judgment as to Subject Photograph AU2235159," which corresponds to

19 Bobb-Willis.  See Plaintiff's Notice of Motion, fn. 1.[51]  This concession is because,

20 with fact discovery now closed, August has been unable to produce an Agency

21 Agreement, Addendum, or anything else from Bobb-Willis.  Thus, August has failed

22 to carry its burden, as a purported transferee of copyright rights, to prove up its chain

23 of title with respect to Bobb-Willis.  *Motta*, 768 F.2d at 483-84.

24    Similarly, on the Van Mossevelde claim, August has also failed to produce an

25 Agency Agreement or Addendum from Bruno or Nicoletta Van Mossevelde (alleged

---

[51] August offered to dismiss this claim only after Line PBC sent a detailed letter asking to confer on its standing summary judgment motion.  Line PBC later offered to stipulate to the dismissal of this claim with prejudice, *but without a cost waiver*, and subject to Line PBC being deemed the prevailing party on this particular claim.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

co-authors).  August is not conceding this claim, however.  This is because it offers a photographer declaration from Bruno Van Mossevelde (there is none from Nicoletta) served on October 11, 2024 at 5:31 p.m.  Unlike the other photographer declarations, which all say that "I entered into a written syndication agreement with August," Mr. Mossevelde's declaration states "My representative, Atomo Management SRL, entered into a written syndication agreement with August."

Notably, however, August has *not* produced any documentation purporting to transfer copyright ownership of the photograph in dispute from the Van Mosseveldes  to "Atomo Management SRL."  JAF 97.  August has produced an Agency Agreement which it says gave August exclusive rights from Atomo.  But August has not produced evidence establishing that Atomo ever had any copyright rights from the Van Mosseveldes to pass along to August in the first place.  JAF 98.  Thus, on the Van Mossevelde claim, there is also a hole in the chain of title, mandating entry of judgment in Line PBC's favor.  *Motta*, 768 F.2d at 483-84; *see also* Section II(d)(2)(A), above.

**(c)    Registration Problems Require the Denial of August's Cross-Motion**

August's case in chief is also beset by numerous problems with the registration certificates it is suing upon: missing certificates, untimely certificates, and failures of proof that the certificates cover the photos at issue.  *See* Section II(d)(2)(B), above,

(1)    Missing Registration Certificates: Summary Judgment Should be Entered for Line PBC on the Streiber Photos of Elon Musk and Antonio Banderas

As August correctly argues above at Section VI(b)(1), "A plaintiff is 'required to show registration as an element of an infringement claim.' *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017)."  Here, as of the close of fact discovery, August has failed to produce a registration certificate for the Streiber photos of Elon Musk and Antonio Banderas.  JAF 73.  Accordingly, summary

1    judgment *in favor of Line PBC* is appropriate on these two claims.  *See Unicolors,*

2    853 F.3d at 988.

3           (2)     <u>Untimely Registration Certificates: Summary Judgment Should Be</u>

4                     <u>Denied for the Seven Registrations Covering Nine Photos That Were</u>

5                     <u>Issued More than Five Years First Publication</u>

6        Seven registrations, purportedly covering nine photos, produced by the

7    plaintiff for Streiber, Bowen-Smith, Slijper, Eccles, Hargrave, and Mann, have

8    claimed dates of first publication more than five years prior to the effective date of

9    registration.  JAF 74.

10        August is correct in arguing that a district court has discretion to give *some*

11    evidentiary weight to these registration certificates obtained more than five years

12    after first publication.  *See* 17 U.S.C. § 410(c) (certificates obtained within five years

13    of first publication "shall constitute *prima facie* evidence of the validity of the

14    copyright and of the facts stated in the certificate," but "the evidentiary weight to be

15    accorded the certificate of a registration made thereafter shall be within the

16    discretion of the court.)

17        August is wrong, however, in arguing that it would be appropriate to grant

18    summary judgment *for a plaintiff* based on untimely registration certificates.

19    Neither *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 2012 WL 6553403

20    (S.D. Cal. 2012), nor any of the other cases cited by the plaintiff, did so.

21        Moreover, courts routinely give untimely registration certificates no weight at

22    all.  *E.g., AAA Flag & Banner Mfg., Co. v. Flynn Signs and Graphics, Inc.*, 2010

23    WL 1752177, at *2 (C.D. Cal. Apr. 28, 2010) (holding that, where presumption did

24    not apply, plaintiff did not prove existence of a valid copyright); *Kling v. Hallmark*

25    *Cards Inc.*, 225 F.3d 1030, 1035 n.2 (9th Cir. 2000) (noting district court's decision

26    "to give the [registration] certifications no weight whatsoever" after finding works

27    were not entitled to presumption of validity because plaintiff applied for registration

28    12 years after first publication).  Further, where evidence casts doubt on the

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

accuracy of the information contained in a late-obtained certificate, courts assign little or no evidentiary weight. *See, e.g., Shea v. Fantasy Inc.*, 2003 WL 881006, at *4 (N.D. Cal. Feb. 27, 2003) (holding that late- obtained registration certificate was "not probative of copyright validity" since evidence showed that certificate inaccurately characterized work as "unpublished").

Here, it was a representative of ImageRights, not the photographers, and not August, who applied to obtain most of the copyright registrations at issue. JAF 93. No communications between the photographers and ImageRights, or between the photographers and August about the registration applications have been produced. JAF 94. Accordingly, there is little basis to believe that any of the information stated in the certificates is accurate and they should be afforded no weight. Or, at least, they should not carry the day without a trial.

(3)    Certificates Not Shown to Cover Photos in Dispute: Pugliese & Strieber

While introducing a timely registration certificate into evidence proves up much of a plaintiff's *prima facie* case for infringement, including the "facts stated in the certificate" one thing that remains for the plaintiff to prove is *exactly what* it registered. Where nothing on the face of the certificate confirms that a particular photograph has been included in what was deposited with the Library of Congress as part of the registration application, the plaintiff needs to introduce evidence establishing that a particular photo is covered by an asserted registration. *Lanard Toys Ltd. v. Novelty, Inc.*, 2007 WL 2439505, at *7 (C.D. Cal. 2006); *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1114–15 (W.D. Wash. 2004); *Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp. 2d 1027, 1040 (D. Alaska 2013) (denying a plaintiff's motion for summary judgment because, "like the certificates in *Corbis* and *Lanard Toys,* the certificates of registration in this case do not provide the details necessary to confirm that the image or images relating to Alaska Stock's claims are the same images underlying the certificates of registration.")

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Here, August offers no testimony from the photographers, or from anyone else, for any of the registration, averring 'X photo attached hereto is the same work that was registered with my registration number Y'. Moreover, on certain of the registration certificates produced by August, there are no details stated in the certificate that indicate that the given registration covers the asserted photograph. Notably, for the Pugliese '131 and Streiber '766, '089, and '902 registrations, the "AU. . ." number the plaintiff uses to identify each individual photo at issue in this case is not listed anywhere in the registration certificate.

Accordingly, the Court must also deny partial summary judgment to August because August has failed to provide admissible evidence showing that the photos included in its complaint correspond to the registrations it is suing upon. *See Alaska Stock*, 975 F. Supp. 2d at 1040.

**(d)    August Has Not Proven Copying, So Its Cross-Motion Must Be Denied**

August's cross-motion papers fail to authenticate and lay a proper foundation for the introduction of any evidence of purported copying. *See* Section II(d)(3), above. Accordingly, August's motion for summary judgment must be denied for this reason alone.

For the four Human-Created Screenshots that Ms. Kelly testified that she took herself,[52] this issue might be fixable at trial.

However, by separate motion, Line PBC asks the Court to preclude the introduction of all the PixMole Pictures, and the ImageRights Pictures at trial, as a sanction under Rule 37, due to plaintiff's obstruction of discovery into those entities. If the Court grants that sanctions motion and precludes this evidence, then it should also grant summary judgment *for Line PBC* on all claims, except the four where Kelly herself took the screenshot that the plaintiff relies upon for its evidence of copying .

---

[52] Specifically, these screenshots are – August587 (Margot Robbie), August589 (Kristen Stewart), August591 (Oprah) and August592 (Isa Rae). JAF 88.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(e)**    **The "Derivative Works" Issue is a Reason to Grant Line PBC's Motion; or, at the Very Least, it Presents a Jury Issue Mandating Denial of Plaintiff's Cross-Motion**

As argued above at Section IV(a)(6), in *Torres*, the district court dismissed a photo case on a Rule 12 motion challenging standing in part because "there is another hurdle for Plaintiffs to clear before establishing statutory standing. Even if the Agreement conveyed to Plaintiff an exclusive license, the Agreement contains no language suggesting that it confers to Plaintiff the § 106 right that is at issue in this case: the exclusive right to authorize the preparation of derivative works based upon the copyrighted work." *Torres*, 2023 WL 2482962, at *8.

Here, this Court can similarly look at Exhibit 1 to the FAC, compare the photos the plaintiff is suing on in the left column, to the accused multimedia web and social media stories in the right column, and reach a similar conclusion, as a matter of law.  That is, the court can determine, as a matter of law, that if there was a copyright right that was violated here, it was the right to make derivative works. And since the Agency Agreements that August claims purportedly constitute an exclusive license say nothing about derivative works, summary judgment for Line PBC is appropriate on this additional ground.  That is, it seems clear that the scope of the rights August claims to "own" (via exclusive license) do not match the type of alleged infringement at issue.

At a minimum, this seems like a jury question.  Are the challenged multimedia web stories "copies" (the distribution of which August assertedly has exclusive rights to control)?  Or are they "derivative works" (the creation of which August undisputedly does *not* have exclusive rights to do anything about)?  It this issue is not resolved in Line PBC's favor on summary judgment, it at least precludes the entry of summary judgment in August's favor.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**(f)    Line PBC is Not Relying on its Affirmative Defenses to Oppose August's Cross-Motion**

As explained above, there are a lot of good reasons to deny plaintiff's summary judgment motion without getting into Line PBC's affirmative defenses.    Which is exactly what Line PBC told August during the meet and confer process on this motion.  However, prior to serving its cross-motion brief, August refused to explain the basis for its cross-motion for partial summary judgment, beyond one short email that cited no cases and mentioned no specific evidence it would rely upon.  Thus, Line PBC was not prepared to waive reliance on its affirmative defenses in opposition to August's motion until it understood August's arguments.  Having now reviewed and addressed them all above, Line PBC hereby confirms that it will not rely on any of its affirmative defenses to oppose August's motion for partial summary judgment.

# VIII.  CONCLUSION

**(a)    Line PBC's Conclusion**

On its motion for summary judgment on standing, Line PBC has carried its burden of demonstrating that the plaintiff has not adduced evidence of direct copyright ownership and must therefore prove up its chain of title and standing to sue.  August has failed to carry its burden of demonstrating standing, such that judgment must now be entered in Line PBC's favor on all of plaintiff's claims.

As to August's cross-motion for partial summary judgment on liability, August has failed to produce admissible evidence sufficient to establish standing, ownership of a valid copyright, or copying.  Accordingly, August's motion must be denied in its entirety.

**(b)    August's Conclusion**

Defendant's motion is an ill-conceived bid to evade liability for its multiple infringements, and it must be denied. Depriving an artist's exclusive agency from

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

addressing infringement of the exclusive rights granted to that agent—especially when both the artist and agent agree that doing so is proper—would frustrate the basic purpose of the Copyright Act and work a grave injustice in this case. August holds exclusive rights in the Subject Photographs and has standing to hold Defendant accountable for its violation of those exclusive rights in this case. Therefore, this Court should deny Defendant's motion.

Artists should be encouraged to create new and compelling creative works. And when sophisticated companies like Defendant exploit those works without consent and for commercial purposes, they should not be permitted to skirt the consequences of their infringement based on standing challenges that contravene binding Ninth Circuit precedent. Instead, they should be held accountable. Therefore, August respectfully requests that this Court find Defendant liable for directly infringing the copyrights in the Subject Photographs as a matter of law. Upon that adjudication, this case can proceed to trial in a streamlined manner on the issues of willfulness and damages.

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

Respectfully submitted,

As to the filing of the combined joint brief:

DATED: November 4, 2024

*/s/ Morgan E. Pietz*\*
Morgan E. Pietz
Matthew A. Trejo
PIETZ & SHAHRIARI, LLP
*Attorneys for Defendant*

As to the moving briefs:

Signed: October 17, 2024                    Signed: October 17, 2024

*/s/ Morgan E. Pietz*                        */s/ Stephen M. Doniger*
Morgan E. Pietz                              Stephen M. Doniger
Matthew A. Trejo                             Benjamin F. Tookey
PIETZ & SHAHRIARI, LLP                       DONIGER / BURROUGHS
*Attorneys for Defendant*                    *Attorneys for Plaintiff*

As to the opposition briefs:

Signed: October 31, 2024                    Signed: October 31, 2024

*/s/ Morgan E. Pietz*                        */s/ Stephen M. Doniger*
Morgan E. Pietz                              Stephen M. Doniger
Matthew A. Trejo                             Benjamin F. Tookey
PIETZ & SHAHRIARI, LLP                       DONIGER / BURROUGHS
*Attorneys for Defendant*                    *Attorneys for Plaintiff*

\* <u>Signature Attestation</u>: Pursuant to Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Morgan E. Pietz*
Morgan E. Pietz

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

**Certificate of Compliance With Page Limitation**

**Per Standing Order for Motions for Summary Judgment Section (ECF No. 29)**

As required by this Court's Standing Order for Motions for Summary Judgment (ECF No. 29), this certifies that the Moving Party's portion of Line Financial's motion for summary judgment on standing do not exceed 25 pages, exclusive of the notice of motion and tables of contents and authorities. Further, the typeface is Times New Roman 14 point, with footnotes in the same size.

Respectfully submitted,                    PIETZ & SHAHRIARI, LLP


DATED: October 17, 2014               BY:   */s/ Morgan E. Pietz*
                                      Morgan E. Pietz
                                      Matthew A. Trejo
                                      *Attorneys for Defendant LINE*
                                      *FINANCIAL PBC*


**Certificate of Compliance With Page Limitation**

**Per Standing Order for Motions for Summary Judgment Section (ECF No. 29)**

As required by this Court's Standing Order for Motions for Summary Judgment (ECF No. 29), this certifies that Line PBC's portions of this joint brief, which addresses two motions, namely Line PBC's motion for summary judgment on standing, and August's cross motion for summary judgment on liability, comprise 47 pages, exclusive of the tables of contents and authorities. Further, the typeface is Times New Roman 14 point, with footnotes in the same size.


Respectfully submitted,                    PIETZ & SHAHRIARI, LLP

DATED: November 1, 2024               BY:   */s/ Morgan E. Pietz*
                                      Morgan E. Pietz
                                      Matthew A. Trejo
                                      *Attorneys for Defendant*
                                      *LINEFINANCIAL PBC*

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**

### L.R. 11-6.2. Certificate of Compliance

Counsel for Plaintiff August Image, LLC certifies that Plaintiff's portion of this memorandum of points and authorities complies with the type-volume limitation of L.R. 11-6.1. This certification is made relying on the word count of the word-processing system used to prepare the document. Plaintiff's counsel further certifies that Plaintiff's opposition to Defendant's motion for summary judgment contains 6,498 words, and complies with the word limit of L.R. 11-6. Plaintiff's counsel further certifies that Plaintiff's motion for partial summary judgment contains 6,991 words, and complies with the word limit of L.R. 11-6.

Dated: November 4, 2024

By:    */s/ Benjamin F. Tookey*
Benjamin F. Tookey, Esq.
DONIGER / BURROUGHS
*Counsel for Plaintiff*

**JOINT BRIEF RE: SUMMARY JUDGMENT CROSS-MOTIONS**