Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
  matt@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:   (310) 424-5557
Facsimile:   (310) 597-4626
*Attorneys for Defendant*

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

AUGUST IMAGE, LLC, a New York Limited Liability Company,

          Plaintiff,

v.

LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,

          Defendant(s).

Case No. 2:23-cv-05492-WLH-AS

Assigned to: Honorable Wesley L. Hsu, United States District Judge

Referred to: Honorable Alka Sagar, United States Magistrate Judge

Action Filed:                    07/10/2023
Fact Discovery Cutoff:    10/11/2024
Final Pretrial Conf.:         02/07/2025
Trial Date:                       02/24/2025

## JOINT APPENDIX OF FACTS

Hearing:
Date/Time:   December 13, 2024, 1:30 pm
Location:     First Street Courthouse
                  350 W. 1st Street
                  Courtroom 9B, 9th Floor,
                  Los Angeles, CA 90012

-1-

JOINT APPENDIX OF FACTS

# JOINT APPENDIX OF FACTS

Pursuant to the Court's Order Re: Summary Judgment Motions (Docket No. 29), the parties hereby submit their Joint Appendix of Facts.

## I.    DEFENDANT'S APPENDIX OF UNDISPUTED FACTS

| No. | Fact | Supporting Evidence | P's Response |
|-----|------|---------------------|--------------|
| **Plaintiff Has Failed to Meet its Burden of Demonstrating Standing** | | | |
| **(1)    The Pleadings Do Not Allege, and August Has Not Produced Evidence Demonstrating, that it Owns the Copyrights at Issue** | | | |
| 1 | The plaintiff August Image, LLC filed its original complaint in this case on July 10, 2023. | ECF No. 1; ECF No. 1-1. | Undisputed. |
| 2 | With respect to standing, both the original and subsequent first amended complaint, filed June 12, 2024, ambiguously allege that "As the exclusive administrator and syndicator of the photographs at issue in this case and the copyrights therein, August is entitled to institute and maintain this action under 17 U.S.C. | ECF No. 45. | Undisputed. |

JOINT APPENDIX OF FACTS

| | | | | |
|---|---|---|---|---|
| | | § 501(b)." | | |
| | 3 | Neither the original nor first amended complaint allege that August owns the copyrights in suit. | ECF No. 1; ECF No. 1-1; ECF No. 45; ECF No. 45-1. | Disputed. August's operative Complaint states, in part, that "August, a full-service rights managed collection, represents an elite group of portrait, lifestyle, beauty, and fashion photographers for editorial and commercial licensing. As the exclusive administrator and syndicator of the photographs at issue in this case and the copyrights therein, August is entitled to institute and maintain this action under 17 U.S.C. § 501(b)" (Dkt. 45 ¶ 4); and that "August is the exclusive administrator and syndicator of 19 original photographs registered with the U.S. Copyright Office and the copyrights therein (collectively, the 'Subject Photographs'), and represents the photographers who took the Subject Photographs. Accordingly, August has standing to maintain this action under 17 U.S.C. § 501(b)" (Dkt. 45 ¶ 8). |
| | 4 | August has produced | Pietz Decl., ¶ 30. | Disputed in part. August has produced registrations |

-3-

JOINT APPENDIX OF FACTS

| | | copyright registration certificates that it claims correspond to 17 of the 19 photographs alleged in the first amended complaint. | | (whether certificates or printouts from the U.S. Copyright Office's Public Catalog) for all Subject Photographs. *See* JAF ¶¶ 214-16, 218, 220-21, 223, 225, 227, 229, 231, 233, 235, 237, 239. |
| --- | --- | --- | --- | --- |
| | 5 | Each of the registration certificates that was produced by August during fact discovery identifies both the "Author" and the "Copyright Claimant" as an individual photographer, not August. | Pietz Decl., ¶ 31. | Undisputed. |
| | 6 | August has produced no evidence that is an owner (as distinct from an exclusive licensee, beneficial owner, or exclusive agent of the owner) of any of the copyright registrations at issue. | Pietz Decl., ¶ 32. | August is unable to respond to this "fact" as it does not understand what Defendant means by "owner . . . of any of the copyright registrations at issue." If Defendant means that August's copyright interest is not identified on the registrations, undisputed. If Defendant means that August has no copyright in the registered works, that is a legal argument or conclusion, not a fact, and it is disputed since August's syndication agreements give it such |

JOINT APPENDIX OF FACTS

| | | | rights. See JAF ¶¶ 106-212. |
|---|---|---|---|
| 7 | August's original complaint did not specify which copyright registrations correspond to which pictures. | ECF No. 1; ECF No. 1-1. | Disputed. The referenced exhibit (Dkt. 1-1) lists registration numbers under each Subject Photograph. |
| 8 | August filed a First Amended Complaint ("**FAC**") on June 12, 2024, adding 4 new photographers (Bruno Mossevelde, Nicolleta Mossevelde, Arielle Bobb-Willis, and Mark Mann) and 3 new photos, bringing the total to 14 photographers and 19 photographs. | ECF No. 45; ECF No. 45-1. | Disputed in part. The FAC added three Subject Photographs by three Photographers— "AU11037582" by "Bruno and Nicoletta Van Mossevelde" under "VA 2-110-334"; "AU2235159" by "Arielle Bobb Willis" under "VA 2-359-589"; and "AU1561939" by "Mark Mann" under "VA 2-326-585"—bringing the total to 13 Photographers. Bruno Van Mossevelde is the author of Subject Photograph AU11037582, and "Bruno and Nicoletta Van Mossevelde" is a pseudonym for Bruno Van Mossevelde. *See* Kelly Decl. Ex. 85 (identifying Bruno Van Mossevelde as author, and identifying "VANMOSSEVELDE+N" as "pseudonym" of Bruno Van Mossevelde), |

JOINT APPENDIX OF FACTS

| | | | *id*. Ex. 200 (identifying "Van Mossevelde + N" as one of artists covered by agreement). |
|---|---|---|---|
| 9 | Exhibit 1 to the FAC depicts the pictures the plaintiff claims to have standing to sue over in the left column, with registration numbers, and what the plaintiff purports are screenshots of Line PBC's allegedly infringing blog and social media posts in the right column, with URL links. | ECF No. 45-1. | Undisputed. |
| 10 | Exhibit 1 to the FAC identifies the Elon Musk photo allegedly authored by photographer Joe Pugliese as being at issue in this case. | ECF No. 45-1, page 5. | With the understanding that "the Elon Musk photo allegedly authored by Joe Pugliese as being at issue in this case" refers to AU1955890 and not AU1955961, undisputed for purposes of this motion. |
| 11 | As can be seen, the multimedia web story pictured on the right includes a text box. | ECF No. 45-1, page 5. | Undisputed. |
| 12 | As can be seen, the | ECF No. 45-1, | Disputed in part. Ex. 1 to the FAC (the cited |

JOINT APPENDIX OF FACTS

| | multimedia web story pictured on the right includes interactivity features including pause and share buttons, and little grey and white rectangles indicate there were multiple frames in the story, each with different text. | page 5. | evidence) does not support the proposition "each with different text." |
|---|---|---|---|
| 13 | The text in the box relates to the subject of the photograph, Elon Musk. | ECF No. 45-1, page 5. | Undisputed. |
| 14 | The photo on the right is also cropped differently than the one on the left. | ECF No. 45-1, page 5. | Undisputed. |
| **(2)** | **The Agency Agreements, Dated Between 2007 to 2021, Merely Appoint August as an "Exclusive Worldwide Agent" for the Photographers** | | |
| 15 | August has produced copies of written agreements between it and most of the photographers named in the first amended complaint, all of which are dated between 2007 and 2021 (the "Agency Agreements"). | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, | Undisputed. |

JOINT APPENDIX OF FACTS

| | | | ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | |
|---|---|---|---|---|
| 16 | August has never produced an Agency Agreement executed by Arielle Bobb Willis, Bruno Mossevelde, or Nicoletta Mossevelde (three of the four photographers added by the FAC) | | Pietz Decl., ¶ 33. | Disputed. August produced a syndication agreement executed by Bruno Van Mossevelde's representative, Atomo Management, which covers Van Mossevelde and his works under the pseudonym "VANMOSSEVELDE+N ," and Bruno Van Mossevelde is the sole creator of Subject Photograph. *See* JAF ¶¶ 196-203. 236-37. The FAC added three Subject Photographs by three Photographers. Undisputed that August did not produce a syndication agreement executed by Arielle Bobb-Willis. |
| 17 | The Agency Agreements August has produced are all similar and most of the language in them is identical to the others, except that there are a few different variations of the form. | | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, | To the extent this is a factual assertion and not just Defendant's characterization, undisputed for purposes of this motion. |

-8-

JOINT APPENDIX OF FACTS

| | | ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | |
|---|---|---|---|
| 18 | All of the Agency Agreements produced by August during fact discovery contain the following provisions concerning agency appointment, use of the works, copyright ownership, and integration / choice of law: "We are delighted that you have agreed to work with AUGUST, LLC ("AUGUST", "we" or "us") as your exclusive worldwide agent[, with the right of first refusal] for the sale, licensing and other promotion of the photographic portraits that you create during the Term hereof (or have created in | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Disputed in part. The bracketed language is only in the syndication agreements referenced in Paragraphs 19-20 below. Also disputed to the extent Defendant characterizes the quoted language as concerning all of, or as the only language in the syndication agreements concerning, "agency appointment, use of the works, copyright ownership, and integration / choice of law." Undisputed that the quoted language, with slight variations, is included in each of August's syndication agreements with the Photographers. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | the past, insofar as such Images are available for licensing pursuant to the terms of any agreements you may have with any third parties) (together, ***your*** "Images").  This letter provides information regarding the terms and conditions of our services as well as your responsibilities to AUGUST (the "Agreement")." | | |
| 19 | The agreement for Mann, dated August 22, 2013, is the first to include this addition of the "right of first refusal" language. | Pietz Decl., ¶ 23, Exh. 71. | Undisputed that August's syndication agreement with Photographer Mark Mann includes the phrase "with the right of first refusal" and, of the agreements with the Photographers whose works are at issue in this case, is the earliest dated agreement with that language. |
| 20 | The "right of first refusal" language is also found in all subsequently-dated Agency Agreements, for Mobley | Pietz Decl., ¶ 3, Exh. 41, ¶ 7, Exh. 47, ¶ 11, Exh. 53, | Undisputed that the syndication agreements referenced in this Paragraph include the phrase "with the right of first refusal" in the |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | (2015), Streiber (2017), Asgharia (2019), Slijper (2020), and Lubomirski (2021). | ¶ 13, Exh. 56, ¶ 19, Exh. 65. | opening paragraph of each agreement. |
| 21 | These later-dated agreements also all use the term "images" instead of "portraits" and "the" instead of "your" where indicated with emphasis. | Pietz Decl., ¶ 3, Exh. 41, ¶ 7, Exh. 47, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 19, Exh. 65, ¶ 23, Exh. 71. | Undisputed that the syndication agreements referenced in this Paragraph include the phrase "the photographic images," and not "the photographic portraits," in the opening paragraph of each agreement; and further include the phrase "the 'Images,'" and not "your 'Images,'" in the opening paragraph of each agreement. |
| 22 | All of the Agency Agreements produced by August during fact discovery contain the following provisions concerning agency appointment, use of the works, copyright ownership, and integration / choice of law: "Use of the Works. The Works are Intended for | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Undisputed that the quoted language, with a slight variation in August's syndication agreements with Photographers Brian Bowen Smith and Martin Schoeller, is included in each of August's syndication agreements with the Photographers. |

-11-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | editorial and commercial use/licensing by us and our clients." | | |
| 23 | The two earliest versions of the Agency Agreements, produced for Schoeller and Smith and dated in 2007, have an alternative version of this clause requiring the photographer to provide consent for commercial usage: "Use of the Works. The Works are intended for editorial use by us and our clients. With your consent, AUGUST may license the Works for commercial use." | Pietz Decl., ¶ 9, Exh. 50, ¶ 21, Exh. 68. | Undisputed that the quoted language appears in the syndication agreements referenced in this Paragraph. |
| 24 | Versions dated between 2012 and 2015 and produced for Pugliese (2012), Eccles (2012), Hargrave (2013), Mann (2013) and Mobley (2015), use the version quoted here. | Pietz Decl., ¶ 5, Exh. 44, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 23, Exh. 71. | Undisputed that the syndication agreements referenced in this Paragraph include this language (bolding in original): "**Use of the Works**. The Works are intended for editorial and commercial use/licensing by us and our clients." |
| 25 | And subsequent versions | Pietz Decl., | Undisputed that the syndication agreements |

-12-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | dated between 2017 and 2021 and produced for Streiber (2017), Asgharia (2019), Slijper (2020), and Lubomirski (2021) are the same as the quoted version, but use the term "Images," instead of "Works," where emphasized. | ¶ 3, Exh. 41, ¶ 7, Exh. 47, ¶ 11, Exh. 53, ¶ 13, Exh. 56. | referenced in this Paragraph include this language (bolding in original): "**Use of the Images**. The Images are intended for editorial and commercial use/licensing by us and our clients." |
| 26 | The later-dated Agency Agreements produced for Mann (2013), Mobley (2015), Streiber (2017), Asgharnia (2019), Slijper (2020), and Lubomirski (2021) use the defined term "Images" here instead of "works" | Pietz Decl., ¶ 3, Exh. 41, ¶ 7, Exh. 47, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 19, Exh. 65, ¶ 23, Exh. 71. | Disputed in part as vague as to "later-dated" and "here," and disputed as to Ex. 65 and 71. Those two syndication agreements use the phrase "Use of the Works" and the term "the Works." Undisputed that Ex. 41, 47, 53, and 56 use the phrase "Use of the Images" and the term "The Images." |
| 27 | All of the Agency Agreements produced by August during fact discovery contain the following provisions concerning agency appointment, use of the works, copyright | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, | Undisputed that the quoted language is included in each of August's syndication agreements with the Photographers. |

-13-

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| ownership, and integration / choice of law: "The parties acknowledge and agree that all right, title and interest in and to your works, including but not limited to copyright therein, shall be owned solely, in perpetuity, in any and all media, and throughout the world, by you." | ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | |
| 28 | All of the Agency Agreements produced by August during fact discovery contain the following provisions concerning agency appointment, use of the works, copyright ownership, and integration / choice of law: "This Agreement incorporates the entire understanding of the parties concerning the subject matter contained herein and | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Undisputed that the quoted language is included in each of August's syndication agreements with the Photographers. |

-14-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | supersedes any and all prior agreements and understandings, oral or written, with respect thereto and is to be construed in accordance with the laws of the State of New York;" | | |
| 29 | Certain of the Agency Agreements—but not others dated around the same time—contain language purporting to give August a right to "institute a claim or suit in your name" (meaning in the photographer's name) and mention responding to discovery. | Pietz Decl., ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 23, Exh. 71. | Undisputed. |
| 30 | Specifically, the Agency Agreements produced for Smith, Slijper, Asgharnia, Eccles, and Mann and dated between 2007 and 2020, contain the following provision, | Pietz Decl., ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 23, Exh. 71. | Disputed in part. August's syndication agreements with Photographers David Slijper (Ex. 53) and Shayan Asgharnia (Ex. 56) do not contain this quoted language. Undisputed that the remaining syndication agreements referenced in this Paragraph include |

JOINT APPENDIX OF FACTS

| | "In the event of non-payment or unauthorized use of Images by AUGUST's licensees, clients, subagents or any other party, you give AUGUST full and complete authority to make or institute a claim or suit in your name without your prior approval to do so. All resulting net proceeds of recovery received by AUGUST shall be apportioned [] percent ([]%) to you and [] percent ([]%) to AUGUST[1] after deductions for fees paid to copyright compliance partners, collection fees, legal fees, subagent commissions and/or other expenses incurred by AUGUST in its efforts to resolve the claim. AUGUST incurs all upfront costs, including fees, subscriptions, storage costs as well as all labor dedicated to these copyright compliance efforts. These efforts involve many, many labor hours in-house and also includes multiple third parties such as "crawling companies," and outside | | this quoted language. |

---

[1] At the plaintiff's request, the percentages specified in the Agency Agreements are being redacted from this public joint brief. The percentages specified in the brackets can be found in the unredacted versions of the agreements that the parties have applied to file under seal.

-16-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | attorneys and partners. This is the reason for the adjustment in commission rate related to this activity. You agree to use best efforts to cooperate with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, and appearances at deposition and trial provided your pre-approved expenses are reimbursed by Agency. For the sake of clarity, you agree that whereas the foregoing grants AUGUST the complete authority to institute claim or suit, AUGUST is not obligated to do so. If there is an active case(s) at the time the contact terminates, photographer agrees to allow AUGUST to continue with the case(s) until they are resolved." | | |
| 31 | There is a slight variation in the language with respect to the Agency Agreements with Slijper and Asgharnia. | Pietz Decl., ¶ 11, Exh. 53, ¶ 13, Exh. 56. | Undisputed that August's syndication agreements with Photographers David Slijper and Shayan Asgharnia do not contain the quoted language in Paragraph 30. |

-17-

JOINT APPENDIX OF FACTS

| 32 | Instead of stating "AUGUST incurs all upfront costs, including fees, subscriptions, storage costs as well as all labor dedicated to these copyright compliance efforts. These efforts involve many, many labor hours in-house and also includes multiple third parties such as "crawling companies," and outside attorneys and partners," Slijper's and Asgharnia's agreements state "AUGUST incurs all upfront costs, including labor dedicated to these copyright compliance efforts." | Pietz Decl., ¶ 11, Exh. 53, ¶ 13, Exh. 56. | Undisputed. |
| 33 | The Agency Agreement produced for Lubomirski, dated in 2021, has a similar provision to the foregoing, but it specifies that "if August is to file a suit for copyright infringement that | Pietz Decl., ¶ 7, Exh., 47. | Undisputed, but incomplete. The language within the fuller context is: "In the event of non-payment or unauthorized use of Images by AUGUST's licensees, clients, subagents or any other party, you give AUGUST full and complete authority to |

-18-

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| includes any of your images, we will first obtain your approval," it specifies that Lubomirski will receive [] %[2] of a recovery, and states that he will use "commercially reasonable" rather than "best" efforts to cooperate with August in discovery, as well as some other differences. | | make or institute a claim for lost fees in your name without your prior approval to do so as it pertains to the ongoing efforts and review of such misuses related to AUGUST images and current copyright compliance program. If AUGUST is to file a suit for copyright infringement that includes any of your images, we will first obtain your approval. All resulting net proceeds of recovery received by AUGUST shall be apportioned [] percent ([]%) to you and [] percent ([]%) to AUGUST after deductions for fees paid to copyright compliance partners, collection fees, legal fees, subagent commissions and/or other expenses incurred by AUGUST in its efforts to resolve the claim . . . . You agree to use commercially reasonable efforts to cooperate with respect to such lawsuits, including without limitation, production of |

---

[2] At the plaintiff's request, the percentages specified in the Agency Agreements are being redacted from this public joint brief. The percentages specified in the brackets can be found in the unredacted versions of the agreements that the parties have applied to file under seal.

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | pertinent documents, responding to interrogatories, and appearances at deposition and trial provided your pre-approved expenses are reimbursed by Agency. For the sake of clarity, you agree that whereas the foregoing grants AUGUST the complete authority to institute claim or suit, AUGUST is not obligated to do so." |
| 34 | Finally, three of the Agency Agreements, for Lubomirski, Slijper, and Asgharia, dated 2019 to 2021, contain the following provision, "You grant AUGUST the right to hold the copyright in your images only to the extent that such is required for the licensing purposes described In this agreement You grant AUGUST the right, but not the obligation, to register such Images for copyright protection in your | Pietz Decl., ¶ 7, Exh. 47, ¶ 11, Exh. 53, ¶ 13, Exh. 56. | Undisputed. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | name and for your benefit. The costs of copyright registration shall be your responsibility; however, AUGUST will request permission from you to register Images for copyright on your behalf prior to incurring costs." | | |
| **(3)** | **The Backdated Addendums Purport to Both "Clarify" and "Supersede" the Earlier Agency Agreements** | | |
| 35 | During discovery in this case, August produced one-page "Addendums" purportedly signed by all of the photographers at issue in this case except Arielle Bobb Willis, Bruno Mossevelde, and Nicoletta Mossevelde. | Pietz Decl., ¶ 34. | Undisputed. |
| 36 | As with the Agency Agreements themselves, the Addendums produced by August are materially identical; they all begin as follows, | Pietz Decl., ¶ 4, Exh. 42, ¶ 6, Exh. 45, ¶ 8, Exh. 48, ¶ 10, Exh. 51, ¶ 12, Exh. 54, | Undisputed. |

-21-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | "As of January 4th, 2012, AUGUST Image LLC ("AUGUST") and Joe Pugliese ("Artist") hereby enter into the following agreement ("Agreement"), which is an addendum to the parties' prior agreement, supersedes said agreement to the extent there is any conflict as to terms." | ¶ 14, Exh. 57, ¶ 16, Exh. 60, ¶ 18, Exh. 63, ¶ 20, Exh. 66, ¶ 22, Exh. 69 and ¶ 24, Exh. 72. | |
| 37 | The date given as the "As of" date set out at the very start of the Addendum is the same date listed on the Agency Agreement for that photographer. | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71.<br><br>Pietz Decl., | Undisputed. |

| | | | |
|---|---|---|---|
| | | ¶ 4, Exh. 42, ¶ 6, Exh. 45, ¶ 8, Exh. 48, ¶ 10, Exh. 51, ¶ 12, Exh. 54, ¶ 14, Exh. 57, ¶ 16, Exh. 60, ¶ 18, Exh. 63, ¶ 20, Exh. 66, ¶ 22, Exh. 69 and ¶ 24, Exh. 72. | |
| 38 | One Addendum lists a date two months after the date on Agency Agreement, but plaintiff's corporate representative testified that was a typo and that the Addendum was supposed to be dated "as of" the date of the Agency Agreement. | Pietz Decl., ¶ 3, Exh. 41, ¶ 4, Exh. 42. | Undisputed. |
| 39 | The Addendums go on to state as follows, "As you know, you retained AUGUST as your exclusive agent to sell, syndicate, license, market or otherwise distribute your photographic works. This | Pietz Decl., ¶ 4, Exh. 42, ¶ 6, Exh. 45, ¶ 8, Exh. 48, ¶ 10, Exh. 51, ¶ 12, Exh. 54, | Undisputed. |

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| Addendum clarifies that during the term of the Agreement, and any renewals thereof, AUGUST shall have the exclusive right to authorize the making of copies of your Copyrighted work and/or distribute copies of your copyrighted works to the public by rights-managed license, and to authorize and control the display of those copyrighted works publicly to news, advertising, and media sources. In the interest of clarity, nothing in this grant of rights shall preclude you from selling or offering for sale copies of your work as fine art, and it is agreed that you shall have full rights to display copies of your work on your commercial and social media pages.You understand that you are conveying these exclusive rights to AUGUST during the term of the Agreement and any renewals thereof, and that you also convey the exclusive right and ability to AUGUST to pursue infringement claims for violations of the exclusive copyright interests granted to AUGUST under this | ¶ 14, Exh. 57,<br><br>¶ 16, Exh. 60,<br><br>¶ 18, Exh. 63,<br><br>¶ 20, Exh. 66,<br><br>¶ 22, Exh. 69 and<br><br>¶ 24, Exh. 72. | |

-24-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | Agreement. By signing this Addendum, you are affirming an intention that any rights necessary to convey standing to AUGUST to enforce your intellectual property rights in your photographic works have been transferred and/or assigned to AUGUST.<br><br>Per Section 501(b) of the Copyright Act, AUGUST will exclusively own and hold Artist's distribution, reproduction, and display rights in the Works, each of which is an exclusive right under Section 106 of the Copyright Act. This Agreement is an exclusive transfer of an exclusive right per Section 101 of the Copyright Act.<br><br>The Artist will maintain ownership of the copyright for the Works." | | |
| 40 | Apart from the "As of" date in the first sentence, there is no other date located anywhere on any of the Addendums. | Pietz Decl., ¶ 4, Exh. 42, ¶ 6, Exh. 45, ¶ 8, Exh. 48, ¶ 10, Exh. 51, ¶ 12, Exh. 54, ¶ 14, Exh. 57, | Undisputed. |

-25-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | ¶ 16, Exh. 60, ¶ 18, Exh. 63, ¶ 20, Exh. 66, ¶ 22, Exh. 69 and ¶ 24, Exh. 72. | |
| 41 | No date of signatures; nothing to memorialize the fact that each Addendum was actually prepared years after the date specified in the first sentence. | Pietz Decl., ¶ 4, Exh. 42, ¶ 6, Exh. 45, ¶ 8, Exh. 48, ¶ 10, Exh. 51, ¶ 12, Exh. 54, ¶ 14, Exh. 57, ¶ 16, Exh. 60, ¶ 18, Exh. 63, ¶ 20, Exh. 66, ¶ 22, Exh. 69 and ¶ 24, Exh. 72. | Undisputed. |
| **(4)** | **August's Admission that the Addendums Were Backdated** | | |
| 42 | After submitting one of the backdated Addendums as Exhibit 1 to its brief at the IDC conducted by Judge Sagar on August 15, 2024, and initially refusing to state when it was signed, August eventually admitted | Pietz Decl., ¶ 25, Exh., 88. | Disputed as to Defendant's characterization of "backdated" and of August "initially refusing to state when it was signed." The cited evidence does not support either proposition, they are inaccurate, and they are irrelevant. Undisputed that all addenda produced |

JOINT APPENDIX OF FACTS

| | that 10 of the 11 Addendums it produced during discovery in this case, including the Streiber Addendum submitted to this Court at the IDC, were actually signed by August and the photographer after this litigation began. | | to Defendant in this case, other than the addendum between August and Photographer Joe Pugliese, were executed after August filed this case. |
|---|---|---|---|
| 43 | August asserts in its response that Pugliese and August executed the Addendum produced for Pugliese on June 8, 2023 | Pietz Decl., ¶ 25, Exh., 88. | Undisputed. |
| 44 | August asserts in its response that the other 10 Addendums it has produced were signed by the parties thereto during the one-year+ period between August 7, 2023 and August 13, 2024 | Pietz Decl., ¶ 25, Exh., 88. | Undisputed. |
| **(5)** | **The ImageRights Agreement Purports to Make ImageRights Yet Another "Exclusive Agent" that has the Right to File and Settle Lawsuits for Infringement of the Photographs at Issue** | | |
| 45 | On October 7, 2024, which | Pietz Decl., ¶ 26, | Undisputed. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | was three days before the 30(b)(6) deposition of the plaintiff and four days before the fact discovery cutoff, August finally produced a copy of an "ImageRights Recovery Service Agreement" dated June 9, 2017. | Exh., 90. | |
| 45 | On May 22, 2024, Line PBC served discovery designed to uncover ImageRights potential involvement, including an RFP that specifically asked for copies of August's agreement with ImageRights (RFP No. 34; *see also* Nos. 36, 39, 41-47, 49). | Pietz Decl., ¶ 27, Exh., 102. | Disputed as to Defendant's characterization, but undisputed that the cited evidence is a copy of August's first responses to Defendant's first set of RFPs, which August served on Defendant on July 1, 2024. |
| 47 | Section 1 of the ImageRights Agreement provides, **"1. Grant of Authority:** I. You hereby appoint ImageRights, and ImageRights hereby accepts such appointment, as Your | Pietz Decl., ¶ 26, Exh., 90. | Undisputed. |

JOINT APPENDIX OF FACTS

exclusive agent with respect to the settlement of each Recovery Asset, which may include the right to grant licenses for both past and/or future uses of each Recovery Asset.

2. Subject to Your prior approval or the general terms and conditions for each Recovery Asset, ImageRights shall have discretion, based thereon, to negotiate the specific terms and conditions of any settlement fee and/or license of each Recovery Asset.

3. Subject to the terms and conditions herein and by mutual agreement with the Client, ImageRights shall have the authority, directly and on Your behalf, to engage and discuss all related matters with one or more attorneys in connection with a given Recovery Asset, including but not limited to: (i) the initiation of such litigation or other legal action; (ii) the identity or the Recovery Asset(s) involved in litigation or other legal action; and (iii) any settlement, judgment or other resolution. By mutual agreement with the Client,

-29-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | ImageRights shall be free to select any such attorney in its discretion, in accordance with the terms and conditions herein. If ImageRights engages an attorney without the prior approval or Client, Client shall not be responsible for any costs, expenses, foes, billings, or charges incurred by ImageRights." | | |
| **(7)** | **August's Deposition Testimony Relevant to Standing** | | |
| 48 | The 30(b)(6) deposition of the August's corporate representative Lauren Kelly occurred on October 10, 2024.  She testified that each of the photographs at issue in this case is a "Recovery Asset" as defined under the ImageRights Agreement. | Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. at 176:25-177:10) | Disputed in part. August's agreement with ImageRights defines "Recovery Asset" as "one or more unauthorized uses of the Content . . . which Client hereby authorizes ImageRights to attempt to settle and/or license . . . upon the terms and conditions set forth herein." Ex. 90. "Content" is defined under the same agreement as "certain images" in which "Customer is the copyright owner or the exclusive licensee to one or more rights contained in 17 U.S.C. § 106." *Id.* The cited testimony shows that Ms. Kelly is not a signatory to that agreement and testified to the extent of her belief and understanding. |

-30-

JOINT APPENDIX OF FACTS

| 49 | With respect to standing, Ms. Kelly testified that it was August's CEO, Bill Hannigan, who "instructed" that the "template" for the Addendums should use the date of the original Agency Agreement, rather than the date the Addendum was signed. | Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. at 66:23-4; 67:1-4) | Disputed in part. The bolded language, to the extent it is a factual assertion and not a legal argument or conclusion, mischaracterizes the question and testimony referenced in the evidence cited. The two questions asked of Ms. Kelly in the cited portions were, "Who chose to put that April 21st, 2021 date on the addendum, was that your decision?"; and "Whose decision was that?" Undisputed that the dates referenced on the addenda are intended to, and do, reflect the dates of their corresponding original syndication Agreements. |
| 50 | According to Ms. Kelly, the "language contained in the addendum[s]" that each of the photographers allegedly signed in 2023-24, "actually was agreed to as of the date of each photographer's original agreement" with August | Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. 123:6-16) | Undisputed. |
| 51 | However, Ms. Kelly | Pietz Decl., ¶ 28, | Disputed in part. The cited portion is testimony |

-31-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | admitted that she was not present for and no personal knowledge of the negotiation of the original Agency Agreements between August and the photographers. | Exh., 106. (P's Depo. Tr. 92:5-13) | from Ms. Kelly stating: "I personally don't know what was said in meetings that – from 2017." |
| 52 | Even though the details of those negotiations were the specific subjects of noticed topics. | Pietz Decl., ¶ 2, Exh., 39, Topic Nos. 26, 88. | To the extent this incomplete fact/sentence is a factual assertion at all and not an argument, disputed as irrelevant. August further notes that the cited deposition notice, to the extent it is evidence at all, was served on October 8, 2024, two days before August's deposition. |
| 53 | She admitted that she had no information to provide about the negotiations between August and the Photographers. | Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. at 92:5-13) | Disputed in part. The cited testimony simply states: "I personally don't know what was said in meetings that – from 2017." |
| **(7)** | **The Improperly Withheld Photographer Declarations** | | |
| 54 | On October 11, 2024, at 5:36 PM, August produced an additional 57 pages of documents. | Pietz Decl., ¶ 29, Exh., 112. | Undisputed that August produced documents on October 11 marked AUGUST001066-1122. |
| 55 | Included among this | Pietz Decl., ¶ 29, | Disputed in part. Included in AUGUST001066-1122 |

-32-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | production were a series of declarations that August sought and obtained from the photographers on September 26, 2024. | Exh., 112. | (Ex. 112) were declarations sent to August on September 26-27, September 30, and October 7-9. |
| 56 | No declarations were produced for Arielle Willis or Nicoletta Mossevelde | Pietz Decl., ¶ 29, Exh., 112. | Undisputed. |
| 57 | According to related emails included in the production, many of the photographers returned their signed declarations back to August the same day, on September 26, and within a few days thereafter. | Pietz Decl., ¶ 29, Exh., 112. | Disputed in part. Included in AUGUST001066-1122 (Ex. 112) were declarations sent to August on September 26-27, September 30, and October 7-9. |
| 58 | Like Ms. Kelly's deposition testimony, the photographer declarations assert that, *really*, the photographers' supposedly agreed to the language stated in the Addendum at the time they signed their Agency Agreement years earlier | Pietz Decl., ¶ 29, Exh., 112. | Undisputed. |
| 59 | The other "Accused Posts" | ECF No. 45-1. | Disputed in part. Ex. 1 to the FAC (the cited |

-33-

JOINT APPENDIX OF FACTS

| | include most of these same elements as the Elon Misk Accused Post, including a text box which relates to a story about the subject, little rectangles, some of which are whiter and others are grayer, suggesting that there were multiple frames for the story, each with different text, and the photo that appears as part of the multimedia web story on the right is cropped differently than the photo on the left. | | evidence) does not support the proposition "each with different text." The cited evidence also shows Accused Posts that include no text or "little rectangles" at all. *See* Dkt. 45-1 at 16, 19, 25, 30-32). Otherwise, undisputed. |
|---|---|---|---|
| **Additional Facts In Opposition to Plaintiff's Cross-Motion** | | | |
| 60 | The Agency Agreements do not actually mention the word "syndication," or "syndicator," etc. | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, | Disputed as vague as to "etc." Undisputed that August's syndication agreements with the Photographers referenced in this Paragraph do not contain the specific words "syndication" or "syndicator." |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | ¶ 19, Exh. 65,<br>¶ 21, Exh. 68 and<br>¶ 23, Exh. 71. | |
| 61 | Another set of words that August uses a lot in its cross-motion brief, but which are not to be found anywhere in the Agency Agreements themselves are the words: "copying," "display," "reproduction," and "distribution." | Pietz Decl.,<br>¶ 3, Exh. 41,<br>¶ 5, Exh. 44,<br>¶ 7, Exh. 47,<br>¶ 9, Exh. 50,<br>¶ 11, Exh. 53,<br>¶ 13, Exh. 56,<br>¶ 15, Exh. 59,<br>¶ 17, Exh. 62,<br>¶ 19, Exh. 65,<br>¶ 21, Exh. 68 and<br>¶ 23, Exh. 71. | Undisputed that August's syndication agreements referenced in this Paragraph do not contain the specific words "copying," "display," "reproduction," and "distribution." |
| 62 | Also not present in the Agency Agreements, but discussed somewhat less in August's brief: the words "derivative works." | Pietz Decl.,<br>¶ 3, Exh. 41,<br>¶ 5, Exh. 44,<br>¶ 7, Exh. 47,<br>¶ 9, Exh. 50,<br>¶ 11, Exh. 53,<br>¶ 13, Exh. 56,<br>¶ 15, Exh. 59,<br>¶ 17, Exh. 62,<br>¶ 19, Exh. 65,<br>¶ 21, Exh. 68 and | Undisputed that August's syndication agreements referenced in this Paragraph do not contain the specific words "derivative works." |

-35-

JOINT APPENDIX OF FACTS

| | | ¶ 23, Exh. 71. | |
|---|---|---|---|
| 63 | "Copyright" also appears in a clause present in all of the Agency Agreements purporting absolve August of liability "for any claims on work submitted under your name that is not copyrighted and photographed by you." | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Disputed in part. Undisputed that Ex. 41, 47, 53, 56, and 65 referenced in this Paragraph contain the language "AUGUST shall not be liable for any loss or damage to any images or other materials submitted to us nor shall AUGUST be liable for any claims on work submitted under your name that is not copyrighted and photographed by you." Disputed that the remainder of the syndication agreements referenced in this Paragraph contain the quoted language. |
| 64 | The Agency Agreements with Joe Pugliese, Brian Bowen Smith, Andrew Eccles, Austin Hargrave, Martin Schoeller, Mark Mann do not contain the provision stating that the photographer guarantees that all work has been shot by the photographer and | Pietz Decl., ¶ 5, Exh. 44, ¶ 9, Exh. 50, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Disputed in part. The syndication agreements referenced in this Paragraph contain language that the Photographers own "all right, title and interest in and to your works, including but not limited to copyright therein," and that "the Images do not, and will not, infringe the copyright of any third party[.]" Undisputed that the |

-36-

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| that the photographer is the exclusive copyright holder in all images submitted to August | | syndication agreements referenced in this Paragraph do not contain the language "you guarantee all work has been photographed by you, and you are the exclusive copyright holder of all images submitted to AUGUST." |
| 65 | In the Agency Agreements, the word "copyright" comes up again in connection with representations that the photos are non-infringing. | Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. | Undisputed. |
| 66 | In some of the Agency Agreements, but not others, the word "copyright" comes up again in a section purporting to provide August with rights "required for the licensing | Pietz Decl., ¶ 7, Exh. 47, ¶ 11, Exh. 53, ¶ 13, Exh. 56, | Undisputed that the syndication agreements referenced in this Paragraph contain the following language: "You grant AUGUST the right to hold the copyright in your images only to the extent that such is required for the licensing |

-37-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | purposes described in this agreement," including the right to register copyrights "in your name." | | purposes described in this agreement. You grant AUGUST the right, but not the obligation, to register such Images for copyright protection in your name and for your benefit. The costs of copyright registration shall be your responsibility; however, AUGUST will request permission from you to register Images for copyright on your behalf prior to incurring costs." |
| 67 | When Kelly came back from a break in the deposition and tried to correct her prior answers to clarify that August was relying on "industry custom and practice" to establish standing, she was largely unable to explain what those terms meant. | Pietz Opp. Decl., ¶ 2, Exh. 113 (TR 118: 20-25; 119: 1-25). | Disputed. The cited evidence does not support the proposition. Ms. Kelly simply testified to her "understanding of the industry standard" in her role as August's Director of Copyright: "that when you sign somebody to a licensing agency, you are their exclusive licenser, and you represent them, and you host their works on your site, and that you control copies made and like the public display of their work." |
| 68 | Kelly's new declaration states that: August's "understanding and intention was that until the | Kelley Decl., ¶¶ 10, 14, 18, 22, 26, 30, 34, 38, 42, 46, 50, 54.) | August assumes that Defendant's citation to Paragraph 54 of Kelly's declaration is a typo and that Defendant intended to cite Paragraph 53. |

-38-

JOINT APPENDIX OF FACTS

| | Agency Agreements terminated, August was the "…exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs…." | | With that understanding, undisputed that the paragraphs referenced contain the following language: "August's understanding and intention was (and has remained) that until its syndication agreement with [Photographer] is terminated, August is [Photographer]'s exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs [Titles]." |
|---|---|---|---|
| 69 | Kelly's new declaration states that: The photographers "subsequently signed an addendum to their syndication agreement to clarify that, as the [photographers'] exclusive licensing agent, and since August and [the photographers] executed their written syndication agreement, August has had | Kelley Decl., ¶ 11, 15, 19, 23, 27, 31, 35, 39, 43, 47, 54. | Undisputed that the paragraphs referenced contain the quoted language. |

-39-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | the exclusive rights to authorize the making of copies of [the photographers'] photographs, distribute copies of [the photographers'] photographs, authorize and control the display of [the photographers'] photographs publicly, and pursue infringement claims for violations of those rights." | | |
| 70 | Kelly's new declaration states that: "[b]ased on its agreements with its photographer clients and industry custom and practice, August is an exclusive rightsholder in each of the Subject Photographs and has the right to pursue this action to address the infringement of its exclusive rights in those | Kelley Decl., ¶ 55. | Undisputed. |

-40-

JOINT APPENDIX OF FACTS

| | | works." | | |
|---|---|---|---|---|
| | 71 | Notably, Kelly has not been designated as an expert. | Pietz Opp. Decl., ¶ 3. | Undisputed. |
| | 72 | And her new MSJ declaration does not even attempt to lay a proper foundation that might suggest how she would know, of her own personal knowledge, that her assertions about the parties' "intent" or "industry custom and practice" are supposedly true. | See, generally, Kelley Decl. | This is a legal argument or conclusion, not a fact. To the extent this can be construed as a fact, disputed. Kelly testified to her personal knowledge (Kelly Decl. ¶ 1), she is August's Director of Copyright (*id*.), and accordingly she has foundation to testify to August's understanding and intention with respect to its syndication agreements with the Photographers and industry custom and practice (*id*. ¶¶ 10, 14, 18, 22, 26, 30, 34. 38, 42, 46, 50, 53, 55). |
| | 73 | It is undisputed that Plaintiff has not produced certificates of registration for two of Streiber's photographs at issue in this lawsuit: (1) Elon Musk Space X, Reg. No. VA0002201766 (allegedly covering AU1955961); and | Kelley Decl., ¶ 56, Exh. 26, 28. | Disputed. The cited evidence consists of printouts of Reg. Nos. VA 2-201-766 and VA 2-204-089 from, and on file with, the U.S. Copyright Office's Public Catalog. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | (2) Antonio Banderas, Reg. No. VA0002204089 (allegedly covering AU213782). | | |
| 74 | It is also undisputed that the following registrations were issued more than five years after the claimed date of first publication: Art Streiber, Reg. No. VA 2-201-766 (allegedly covering AU1955961);  Art Streiber, Reg. No. VA 2-141-902 (covering AU179089);  Brian Bowen Smith, Reg. No. VA 2-294-743 (allegedly covering AU1390084); David Slijper, Reg. Nos. VA 2-323-663 (allegedly covering AU2149055, AU2149064, and AU2149040);  Andrew Eccles, Reg. No. VA 2-334-439 (allegedly covering AU11251088); | See footnote 4 to Plaintiff's cross-motion, stating "Reg. Nos. VA 2-201-766 (covering AU1955961), VA 2-141-902 (covering AU179089), VA 2-294-743 (covering AU1390084), VA 2-323-663 (covering AU2149055, AU2149064, and AU2149040), VA 2-334-439 (covering AU11251088), VA 2-227-879 (covering | Undisputed. |

JOINT APPENDIX OF FACTS

|   | | | |
|---|---|---|---|
|   | Austin Hargrave, Reg. No. VA 2-227-879 (allegedly covering AU1508967); and Mark Mann, Reg. No. VA 2-326-585 (allegedly covering AU1561939) | AU1508967), and VA 2-326-585 (covering AU1561939) were issued more than five years after first publication." | |
| 75 | None of these photographers offer testimony in their improperly-withheld declarations that purports to establish the truth of the facts stated in these untimely registration certificates | See, generally, Declarations of Streiber, Pugliese, Lubomirski, Smith, Slijper, Asgharnia, Eccles, Hargrave, Mobley, Schoeller, Mossevelde and Mann in support of Plaintiff's motion. | This is a legal argument or conclusion, not a fact. To the extent this can be deemed a fact, disputed. As set forth in each of the declarations cited in this paragraph, each Photographer has personal knowledge regarding, and attests to, the creation and registration of their respective Subject Photographs. |
| 76 | The Pugliese registration ('131) does not reference the two photos it purportedly covers, namely photos AU1955890 and | Kelley Decl., ¶ 57, Exh. 30. | Undisputed that Subject Photographs AU1955890 and AU1387317 are not explicitly identified on the face of Reg. No. VAu 1-163-131. |

-43-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | AU1387317. | | |
| 77 | Similarly, the Streiber registrations ('766, '089', and '902) allegedly covering photos AU1955961, AU213782, and AU179089, respectively, also do not reference the photographs in the registration certificates. | Kelley Decl., ¶ 56, Exh. 26, 27 and 28. | Disputed in part. Subject Photograph AU213782 is identified on the face of Reg. No. VA 2-204-089 under "aoa_antoniobanderas-black_6205." Undisputed that Subject Photographs AU1955961 and AU179089 are not explicitly identified on the face of Reg. Nos. VA 2-201-766 and VA 2-141-902. |
| 78 | Indeed, August offers no testimony from any of the photographers, nor from anyone else, that purports to establish that the photos depicted in Exhibit 1 to the FAC match whatever it was that was registered with the Copyright Office and deposited at the Library of Congress in connection with the registrations August has sued upon. | See, generally, Declarations of Streiber, Pugliese, Lubomirski, Smith, Slijper, Asgharnia, Eccles, Hargrave, Mobley, Schoeller, Mossevelde and Mann in support of Plaintiff's motion. | Disputed. In each of the declarations cited in this paragraph, each Photographer attests to the registration of their respective Subject Photographs with the U.S. Copyright Office. August has also attested to the registration of the Subject Photographs with the U.S. Copyright Office. *See* JAF ¶¶ 213-39. |
| 79 | August attempts to prove copying using deposition | *Compare* Doniger Decl. at ¶ 11, | Undisputed. |

JOINT APPENDIX OF FACTS

| | | Exhibit 7, a 63-page document. | Exhibit 7, with Kelley Decl., ¶ 71, Exhibit 7. | |
|---|---|---|---|---|
| 80 | | The documents that comprise Exhibit 7 were all produced by August. | Kelley Decl., ¶ 71. | Undisputed. |
| 81 | | The BATES range of the documents that comprise Exhibit 7 is not consecutive; for example, page AUGUST000054 is followed by AUGUST000044; it skips from '52 to '55; '84 is followed by '890, and so on. | See, generally, Doniger Decl. at ¶ 11, Exhibit 7; Kelley Decl., ¶ 71, Exhibit 7. | Undisputed, and irrelevant. |
| 82 | | An example of the first type of evidence August is using to try and prove copying can be found on the first page of the exhibit 7, AUGUST000051, **which is a picture generated by software created and maintained by a company called PixMole** | Doniger Decl. at ¶ 11, Exhibit 7 (AUGUST000051); Kelley Decl., ¶ 71, Exhibit 7 (AUGUST000051). | Disputed in part. The cited evidence does not support the bolded proposition. AUGUST000051 is not "a picture generated by software created and maintained by a company called PixMole," it is a screenshot of a post on Defendant's website. *See* JAF ¶¶ 263-64. |

-45-

JOINT APPENDIX OF FACTS

| 83 | An example of the second type of evidence August is using to try and prove copying can be found at the 28th page of Exhibit 7, AUGUST000586.  **This is a picture generated by software created and maintained by a company called ImageRights**. | Doniger Decl. at ¶ 11, Exhibit 7 (AUGUST000586); Kelley Decl., ¶ 71, Exhibit 7 (AUGUST000586). | Disputed in part. The cited evidence does not support the bolded proposition. AUGUST000586 is not "a picture generated by software created and maintained by a company called ImageRights," it is a screenshot of a post on Defendant's website. *See* JAF ¶¶ 275-76. |
| --- | --- | --- | --- |
| 84 | The "**ImageRights Pictures**" are identifiable in that they also **sort of look like** screenshots, except that the URL is listed in a web browser bar is shaded pink, and there is a little robot head logo to the left of the browser bar listing the URL. | Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. at 259: 20-25; 260: 1-25; 261: 1-15.) | Disputed in part. Doniger Decl. Ex. 7 consists of screenshots of Defendant's website, not photographs created by ImageRights, as Defendant's characterization suggests. The cited evidence also does not support the bolded proposition. Undisputed that, in Doniger Decl. Ex. 7, the following screenshots show a browser bar shaded pink and with a robot icon: AUGUST000586, 842-43, 588, 845, 590, 581, 583-85. |
| 85 | The ImageRights pictures also all have "Modified" and "Screenshot" dates | Doniger Decl. at ¶ 11, Exhibit 7; Kelley Decl., | Disputed in part. The cited evidence does not support the bolded proposition. Defendant's |

-46-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | listed in the bottom left. **The pink browser bar and robot head logo indicate that the web browser in question is being remotely controlled by a computer program, namely, the ImageRights software**. | ¶ 71, Exhibit 7.  Pietz Decl., ¶ 28, Exh., 106. (P's Depo. Tr. at 259: 20-25; 260: 1-25; 261: 1-15.) | counsel's question is not evidence. Ms. Kelly did not testify on behalf of ImageRights. Ms. Kelly testified only that she did not know the answer to Defendant's counsel's question "if you get the pink search bar with the little robot guy logo, that means that your browser is being remotely controlled by another program." The only Subject Photograph referenced in the cited portions of the transcript is AU561939, i.e., "the Benedict Cumberbatch photo." |
| 86 | There are 12 ImageRights Pictures included in Exhibit 7, at Bates Nos.: AUGUST000586, AUGUST000842, AUGUST000843, AUGUST000588, AUGUST000845, AUGUST000575, AUGUST000590, AUGUST000581, AUGUST000582, AUGUST000583, | Doniger Decl. at ¶ 11, Exhibit 7; Kelley Decl., ¶ 71, Exhibit 7. | Disputed in part. The screenshot of Defendant's website set forth at AUGUST000575 was not taken by ImageRights. Undisputed that, in Doniger Decl. Ex. 7, the following screenshots of Defendant's website were taken by ImageRights: AUGUST000586, 842-43, 588, 845, 590, 581-85. |

JOINT APPENDIX OF FACTS

| | | AUGUST000584 and AUGUST000585. | | |
|---|---|---|---|---|
| | 87 | Ms. Kelly testified at her deposition that she personally took this screenshot found at the 49th page of Exhibit 7, AUGUST000587, using her own computer. | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 262:3-25; 263: 1-6.) | Undisputed. |
| | 88 | At her deposition, Ms. Kelly testified to personally taking four of the screenshots included in Exhibit 7, namely AUGUST 000587 (Margot Robbie), 000589 (Kristen Stewart), 000591 (Oprah), and 000592 (Issa Rae). | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 262:3-25; 263: 1-6.) | Disputed in part. Ms. Kelly took the screenshots of Defendant's website set forth at AUGUST000078 and AUGUST000575 in Doniger Decl. Ex. 7. Undisputed that Ms. Kelly also took the screenshots of Defendant's website set forth at AUGUST000587, 589, and 591-92 in Doniger Decl. Ex. 7. |
| | 89 | Defendant's deposition testimony only stated that Defendant "recognized" all the screen shots in Exhibit 7 as being in dispute in this lawsuit, not that the pictures were true and correct copies of the | Declaration of Stephen M. Doniger Ex. 1 at 81:15-83:10, 84:6-15, 95:7-15. | Disputed. The cited evidence does not support Defendant's proposition. In response to the question "you understand this case is about 19 photos on your website," Defendant testified, "If you're referring to a specific photo that was displayed on our website, yes . . . We do know that |

-48-

JOINT APPENDIX OF FACTS

| | defendant's website | | there were photos posted on our site and they were taken from another site. That I can tell," and further testified "So what is posted on our website, I can attest to that, right? . . . I took it from a web page. I can attest that we took from that website. I do not know the source of that website. I do know that we took it from that web page and we used it for our post." Doniger Decl. Ex. 1 at 82:9-83:10. When asked, regarding "Exhibit 7, do you recognize these ***as the posts on your website that display the photos that you referenced you sourced from these other websites***" (emphasis added), Defendant testified, "I do recognize this. It was there in the case file because they are even in our responses. I do recognize this, what you're showing me on the screen. I do recognize it." Doniger Decl. Ex. 1 at 84:6-15. Defendant then testified to why it chose the photographs set forth in Ex. 7 in particular to use on its website (*id*. at 84:16-85:9) and the |

JOINT APPENDIX OF FACTS

| | | | purpose of using the photographs set forth in Ex. 7 in particular on its website (*id*. at 85:12-22). And Defendant testified to, and produced a document showing, "Which photo we used" and "where we used it," which lists the same locations on Defendant's website as set forth in the screenshots of Defendant's website comprising Ex. 7 (*id*. at 95:7-10, Ex. 8). |
| 90 | The PixMole Pictures and the ImageRights picture are not 100% authentic representations of what Line PBC's website ever looked like but rather are pictures that were exported from computer programs maintained by PixMole and ImageRights. | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 206: 2-20.) | Disputed. The cited evidence does not support this proposition. Ms. Kelly testified only that, with respect to Pixmole, and to the extent of her personal knowledge, "Generally speaking, I feel like they have less information than ImageRights. So it will be the date of discovery. But any information I feel like they're less accurate about providing information about when the post was – or the image was posted on a website or social media"; and that "From what I recall, the information just might be missing, as in when the |

-50-

JOINT APPENDIX OF FACTS

| | | | case or claim was exported. I think it's just like where occasionally there might be a date." |
|---|---|---|---|
| 91 | Kelly testified that PixMole's and the ImageRights' software is prone to making errors. | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 187:10-16 (ImageRights); TR 205: 20-25 (PixMole)). | Disputed. The cited evidence does not support the proposition. When asked "Sometimes the system will identify a match that when you a human looks at it, it turns out that the match was inaccurate; is that right?," Ms. Kelly simply testified "Yes. Rarely, but yes, it happens." And when asked "Does Pixmole similarly log the first time that it discovers an alleged infringement and the earliest date of the alleged infringement in the same way that ImageRights does?," Ms. Kelly simply testified, to the extent of her personal knowledge, "Generally speaking, I feel like they have less information than ImageRights. So it will be the date of discovery. But any information I feel like they're less accurate about providing information about when the post was – or the image was posted on a website or social |

JOINT APPENDIX OF FACTS

| | | | media." |
|---|---|---|---|
| 92 | Kelly testified that PixMole and the ImageRights system users can change the data within the systems. | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 188:1-10; 198: 20-25)). | Disputed in part. The cited evidence does not support the breadth of the proposition. The cited evidence only contains Ms. Kelly responding "yes" to the question "I think I understood you to say it's possible to go in a modify a field, for example registered timely, whereas if you disagree with what the ImageRights system says, you can manually go in and change what the value of the field is; is that correct?"; and testifying, to the extent of her personal knowledge, "As far as -- I don't know their technology, but as far as how we utilize them and the results that they give us, yes, they're similar to ImageRights," in response to the question "And explain to my how the Pixmole system works, is it similar to ImageRights?" |
| 93 | It was a representative of ImageRights, not the photographers, and not August, **who applied to** | Pietz Opp. Decl., ¶ 2, Exh. 113 (P's Depo TR 149:11-25;150: 1)). | Disputed in part as vague as to "who applied to obtain most of the copyright registrations at issue." If Defendant asserts that ImageRights |

JOINT APPENDIX OF FACTS

|  | **obtain most of the copyright registrations at issue**. |  | obtained any copyrights in the Subject Photographs, disputed. If Defendant asserts that ImageRights was involved in the process of submitting applications to the U.S. Copyright Office, undisputed that the name of a representative of ImageRights is included on Reg. Nos. VA 2-274-844, VA 2-294-743, VA 2-323-663, VA 2-268-158, VA 2-286-920, VA 2-334-439, VA 2-227-879, VA 2-227-659, VA 2-209-628, VA 2-110-334, and VA 2-326-585. |
| 94 | No communications between the photographers and ImageRights, or between the photographers and August about the registration applications have been produced. | Pietz Opp. Decl., ¶ 4. | Undisputed. |
| 95 | Unlike the other photographer declarations, which all say that "I entered into a written syndication agreement with August," Mr. Mossevelde's | Mossevelde Decl. ¶ 5. | Undisputed that Paragraph 5 of Bruno Van Mossevelde's declaration states, "My representative, Atomo Management SRL, entered into a written syndication agreement with August dated |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | declaration states "My representative, Atomo Management SRL, entered into a written syndication agreement with August." | | February 6, 2017. My understanding and intention as of that date was that as a result of that agreement, and until that agreement is terminated, August is my exclusive syndication agent with exclusive rights to license and control the right to copy, distribute, and publicly display my photographs, including Subject Photograph AU11037582. That agreement remains in full force and effect." |
| 96 | Many of the amounts August charged per photo in the late-produced comps are less than the per-photo amount of Line PBC's prior settlement offers to August. | Pietz Decl., ¶ 29, Exh., 112 (AUGUST001103 - AUGUST001113) | August cannot respond without either publicly revealing confidential pricing information or the contents of confidential settlement communications. |
| 97 | August has not produced any documentation purporting to transfer copyright ownership of the photograph in dispute from the Van Mosseveldes to "Atomo Management SRL." | Pietz Opp. Decl., ¶ 5. | Undisputed. |
| 98 | August has not produced | Pietz Opp. Decl., | This is a legal argument |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | evidence establishing that Atomo ever had any copyright rights from the Van Mosseveldes to pass along to August in the first place. | ¶ 6. | or conclusion, not a fact. To the extent it can be construed as a fact, disputed. *See* August's syndication agreement with Bruno Van Mossevelde through his authorized agent, JAF ¶¶ 196-203. |
| | | | |
| **DEFENDANT IS LIABLE FOR COPYRIGHT INFRINGEMENT** | | | |
| 100. | **August, its business, and the Subject Photographs** | // | |
| 101. | August is a syndication company that specializes in licensing high-end photographs of models, celebrities, and public figures created by internationally renowned portrait, lifestyle, beauty, and fashion photographers. | Declaration of Lauren Kelly Decl. ¶ 2. | Disputed in part. None of the Agency Agreements (aka "syndication agreements") with the photographers mention the word "syndication." Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. |
| 102. | The photographers represented by August have retained August as their exclusive agent to sell, syndicate, license, market, or otherwise distribute their respective photographs. | Kelly Decl. ¶¶ 3, 7, 55. | Disputed in part. The Agency Agreements do not state that the Photographers retained August as their exclusive agent to "syndicate, market, or otherwise |

-55-

JOINT APPENDIX OF FACTS

| | | | distribute" their photographs. Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. |
|---|---|---|---|
| 103. | August licenses photographs in its syndication portfolio for editorial and commercial licensing. | Kelly Decl. ¶ 4. | Disputed in part.<br><br>None of the Agency Agreements (aka "syndication agreements") with the photographers mention the word "syndication." Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71. |
| 104. | Photographs in August's syndication portfolio, including from the photographers of the Subject Photographs at issue (collectively, the "Photographers") have been featured in internationally renowned publications such as *Elle*, *People*, *Entertainment Weekly*, *Billboard*, *The Sun*, *Cosmopolitan*, *Time*, and *InStyle*; licensed by | Kelly Decl. ¶ 5. | Disputed in part.<br><br>None of the Agency Agreements (aka "syndication agreements") with the photographers mention the word "syndication." Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and |

-56-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | sophisticated media companies, such as SiriusXM, Netflix, Apple, Universal Pictures, Paramount Pictures, and Island Records; and featured in advertising campaigns for such luxury brands as Lancôme and Elizabeth Arden, among many other high-profile placements. | | ¶ 23, Exh. 71. |
| 105. | It is critical to August's success to maintain excellent relationships with its licensees and ensure that (1) each license has the appropriate approvals, and (2) each placement serves a mutually beneficial strategic goal for August, its photographers, and its licensees. | Kelly Decl. ¶ 6. | Undisputed but immaterial. |
| 106. | On June 7, 2017, professional photographer Art Streiber and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Declaration of Art Streiber ¶¶ 5-7. | Disputed in part. The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 3, Exh. 41. August refers to the Agency Agreement and the Addendum to the |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
| 107. | August's agreement with Streiber provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part. In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of first refusal." Pietz Decl., ¶ 3, Exh. 41. |
| 108. | Streiber agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part. Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Images[.]" | | such Conflicting Agreements."  Pietz Decl., ¶ 3, Exh. 41. |
| 109. | Streiber represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work," including his Subject Photographs, "has been photographed by [him.]" | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 3, Exh. 41. |
| 110. | August and Streiber agreed that his "Images are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Undisputed. |
| 111. | August cannot act as Streiber's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed. The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 3, Exh. 41 |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | | The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 3, Exh. 41.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 3, Exh. 41. |
| 112. | The mutual understanding and intention between August and Streiber was that until their syndication agreement is terminated, August is Streiber's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs AU1955961, AU179089, and AU213782. | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 3, Exh. 41.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 3, Exh. 41.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz |

JOINT APPENDIX OF FACTS

| | | | Decl., ¶ 3, Exh. 41. |
|---|---|---|---|
| 113. | August and Streiber subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Streiber's exclusive licensing agent, and since August and Streiber executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Streiber's photographs, distribute copies of Streiber's photographs, authorize and control the display of Streiber's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 3, Exh. 41.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs.<br><br>Pietz Decl., ¶ 3, Exh. 41.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 3, Exh. 41. |
| 114. | It is August's and Streiber's mutual understanding and intention that August is an exclusive rightsholder in Streiber's photographs as set forth above, and that | Kelly Decl. ¶¶ 8-11, Ex. 41-42; Streiber Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any |

| | | | |
|---|---|---|---|
| | August has the right to pursue this action to address the infringement of Streiber's photographs at issue, Subject Photographs AU1955961, AU179089, and AU213782, to protect its exclusive rights in those works. | | exclusive rights to the photographer's photographs. Pietz Decl., ¶ 3, Exh. 41.<br><br>The Agency Agreement does not reference August pursing infringement claims.  Pietz Decl., ¶ 3, Exh. 41.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 3, Exh. 41. |
| 115. | On January 4, 2012, professional photographer Joe Pugliese and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Declaration of Joe Pugliese ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 5, Exh. 44.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency Agreement. However, the |

-62-

JOINT APPENDIX OF FACTS

| | | | photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case. Pietz Decl., ¶ 25, Exh. 88. |
|---|---|---|---|
| 116. | August's agreement with Pugliese provides that August is his "exclusive worldwide agent for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Pugliese Decl. ¶¶ 5-7. | Undisputed. |
| 117. | Pugliese agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other works substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Works." | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Pugliese Decl. ¶¶ 5-7. | Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 5, Exh. 44. |
| 118. | Pugliese represented and warranted that his "Images," including the | Kelly Decl. ¶¶ 12-15, Ex. 44-45; | Disputed in part. The Agency Agreement |

JOINT APPENDIX OF FACTS

| | Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Pugliese Decl. ¶¶ 5-7. | does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 5, Exh. 44. |
|---|---|---|---|
| 119. | August and Pugliese agreed that his "Works are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Pugliese Decl. ¶¶ 5-7. | Undisputed. |
| 120. | August cannot act as Pugliese's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Pugliese Decl. ¶¶ 5-7. | Disputed. The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 5, Exh. 44. The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 5, Exh. 44. The Agency Agreement does not reference August pursing infringement claims. Pietz Pietz Decl., ¶ 5, Exh. 44. |
| 121. | The mutual understanding and intention between August and Pugliese was | Kelly Decl. ¶¶ 12-15, Ex. 15; | Disputed in part. The Agency Agreement |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | that until their syndication agreement is terminated, August is Pugliese's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs AU1955890 and AU1387317. | Pugliese Decl. ¶¶ 5-7. | (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. ietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 5, Exh. 44. |
| 122. | August and Pugliese subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Pugliese's exclusive licensing agent, and since August and Pugliese executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Pugliese's photographs, distribute | Kelly Decl. ¶¶ 12-15, Ex. 44-45;<br><br>Pugliese Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's |

JOINT APPENDIX OF FACTS

| | | copies of Pugliese's photographs, authorize and control the display of Pugliese's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | | photographs. Pietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 5, Exh. 44. |
|---|---|---|---|---|
| 123. | | It is August's and Pugliese's mutual understanding and intention that August is an exclusive rightsholder in Pugliese's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Pugliese's photographs at issue, Subject Photographs AU1955890 and AU1387317, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 12-15, Ex. 44-45; Pugliese Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 5, Exh. 44.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 5, Exh. 44. |
| 124. | | On April 21, 2021, professional photographer Alexi Lubomirski and | Kelly Decl. ¶¶ 16-19, Ex. 47-48; | Disputed in part.<br>The "syndication |

-66-

JOINT APPENDIX OF FACTS

| | | August entered into a written syndication agreement. That agreement remains in full force and effect. | Declaration of Alexi Lubomirski ¶¶ 5-7. | agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 7, Exh. 47.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the years after the Agency Agreement was executed.  Pietz Decl., ¶ 25, Exh. 88. |
| 125. | August's agreement with Lubomirski provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Disputed in part.<br><br>In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of first refusal." Pietz Decl., ¶ 7, Exh. 47. |
| 126. | Lubomirski agreed to "not sell or transfer any ownership interest in any | Kelly Decl. ¶¶ 16-19, Ex. 47-48; | Disputed in part.<br><br>Plaintiff omitted the |

-67-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Images[.]" | Lubomirski Decl. ¶¶ 5-7. | language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 7, Exh. 47. |
| 127. | Lubomirski represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work," including his Subject Photographs, "has been photographed by [him.]" | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 7, Exh. 47. |
| 128. | August and Lubomirski agreed that his "Images are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Undisputed. |
| 129 | August cannot act as Lubomirski's "exclusive | Kelly Decl. ¶¶ 16- | Disputed. |

-68-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| . | agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | 19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 7, Exh. 47.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 7, Exh. 47. |
| 130. | The mutual understanding and intention between August and Lubomirski was that until their syndication agreement is terminated, August is Lubomirski's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs AU2305864 and AU2301788. | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 7, Exh. 47.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 7, Exh. 47.<br><br>The Agency Agreement |

-69-

JOINT APPENDIX OF FACTS

| | | | does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 7, Exh. 47. |
|---|---|---|---|
| 131. | August and Lubomirski subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Lubomirski's exclusive licensing agent, and since August and Lubomirski executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Lubomirski's photographs, distribute copies of Lubomirski's photographs, authorize and control the display of Lubomirski's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 7, Exh. 47.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs.<br><br>Pietz Decl., ¶ 7, Exh. 47. |

JOINT APPENDIX OF FACTS

| 132. | It is August's and Lubomirski's mutual understanding and intention that August is an exclusive rightsholder in Lubomirski's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Lubomirski's photographs at issue, Subject Photographs AU2305864 and AU2301788, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 16-19, Ex. 47-48; Lubomirski Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 7, Exh. 47.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 7, Exh. 47. |
| 133. | On May 18, 2007, professional photographer Brian Bowen Smith and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Declaration of Brian Bowen Smith ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 9, Exh. 50.<br><br>August refers to the Agency Agreement and |

-71-

JOINT APPENDIX OF FACTS

| | | | the Addendum to the Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
|---|---|---|---|
| 134. | August's agreement with Smith provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic portraits that you create[.]" | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Undisputed. |
| 135. | Smith agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other works substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Disputed in part.<br><br>Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Works." | | such Conflicting Agreements."  Pietz Decl., ¶ 9, Exh. 50. |
| 136. | Smith represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 3, Exh. 41. |
| 137. | August and Smith agreed that his "Works are intended for editorial . . . and commercial use." | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Undisputed. |
| 138. | August cannot act as Smith's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Disputed. The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 9, Exh. 50.  The Agency Agreement does not grant August any |

-73-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | | exclusive rights to the photographer's photographs. Pietz Decl., ¶ 9, Exh. 50. |
| 139. | The mutual understanding and intention between August and Smith was that until their syndication agreement is terminated, August is Smith's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU1390084. | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 9, Exh. 50.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 9, Exh. 50.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 9, Exh. 50. |
| 140. | August and Smith subsequently signed an addendum to their syndication agreement to clarify their mutual | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5- | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers |

-74-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | understanding and intention that, as Smith's exclusive licensing agent, and since August and Smith executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Smith's photographs, distribute copies of Smith's photographs, authorize and control the display of Smith's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | 7. | to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 9, Exh. 50. <br><br> The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88. <br><br> The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 9, Exh. 50. |
| 141. | It is August's and Smith's mutual understanding and intention that August is an exclusive rightsholder in Smith's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Smith's photographs at issue, Subject Photograph AU1390084, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 20-23, Ex. 50-51; Smith Decl. ¶¶ 5-7. | Disputed in part. <br><br> The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 9, Exh. 50. <br><br> The photographer did not execute the Addendum to the Agency Agreement until after the Original |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 9, Exh. 50. |
| 142. | On April 9, 2020, professional photographer David Slijper and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Declaration of David Slijper ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 11, Exh. 53.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case. Pietz Decl., ¶ |

-76-

JOINT APPENDIX OF FACTS

| | | | | 25, Exh. 88. |
|---|---|---|---|---|
| 143. | August's agreement with Slijper provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | | Disputed in part. In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of first refusal." Pietz Decl., ¶ 11, Exh. 53. |
| 144. | Slijper agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Images[.]" | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | | Disputed in part. Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 11, Exh. 53. |
| 145. | Slijper represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | | Disputed in part. The Agency Agreement does not specifically state |

-77-

JOINT APPENDIX OF FACTS

| | | | | |
|---|---|---|---|---|
| | party," and guaranteed that "all work," including his Subject Photographs, "has been photographed by [him.]" | | | that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 11, Exh. 53. |
| 146. | August and Slijper agreed that his "Images are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | | Undisputed. |
| 147. | August cannot act as Slijper's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 11, Exh. 53.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 11, Exh. 53.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 11, Exh. 53. |

-78-

JOINT APPENDIX OF FACTS

| 148. | The mutual understanding and intention between August and Slijper was that until their syndication agreement is terminated, August is Slijper's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photographs AU2149055, AU2149064, and AU2149040. | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 11, Exh. 53.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 11, Exh. 53.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 11, Exh. 53. |
| 149. | August and Slijper subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Slijper's exclusive licensing agent, and since August and Slijper executed their written syndication agreement, August has had the exclusive rights to | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 11, Exh. 53.<br><br>The photographer did not execute the Addendum to the Agency Agreement |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | authorize the making of copies of Slijper's photographs, distribute copies of Slijper's photographs, authorize and control the display of Slijper's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | | until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 11, Exh. 53. |
| 150. | It is August's and Slijper's mutual understanding and intention that August is an exclusive rightsholder in Slijper's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Slijper's photographs at issue, Subject Photographs AU2149055, AU2149064, and AU2149040, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 24-27, Ex. 53-54; Slijper Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 11, Exh. 53.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject |

-80-

JOINT APPENDIX OF FACTS

| | | | Photographs are part of the agreement. Pietz Decl., ¶ 11, Exh. 53. |
|---|---|---|---|
| 151. | On September 5, 2019, professional photographer Shayan Asgharnia and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Declaration of Shayan Asgharnia ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 13, Exh. 56.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case. Pietz Decl., ¶ 25, Exh. 88. |
| 152. | August's agreement with Asgharnia provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part.<br><br>In the portion of sentence omitted by Plaintiff where the ellipses is at, it |

-81-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | photographic images that you create[.]" | | states, "with the right of first refusal." Pietz Decl., ¶ 13, Exh. 56. |
| 153. | Asgharnia agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Images[.]" | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part. Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 13, Exh. 56. |
| 154. | Asgharnia represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work," including his Subject Photographs, "has been photographed by [him.]" | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 13, Exh. 56. |
| 155 | August and Asgharnia agreed that his "Images are | Kelly Decl. ¶¶ 28- | Undisputed. |

-82-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| . | intended for editorial and commercial use/licensing by [August] and [its] clients." | 31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | |
| 156. | August cannot act as Asgharnia's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 13, Exh. 56.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 13, Exh. 56. |
| 157. | The mutual understanding and intention between August and Asgharnia was that until their syndication agreement is terminated, August is Asgharnia's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 13, Exh. 56.<br><br>The Agency Agreement |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | photographs, including Subject Photograph AU2363315. | | does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 13, Exh. 56.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 13, Exh. 56. |
| 158. | August and Asgharnia subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Asgharnia's exclusive licensing agent, and since August and Asgharnia executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Asgharnia's photographs, distribute copies of Asgharnia's photographs, authorize and control the display of Asgharnia's photographs publicly, and pursue infringement claims for violations of those rights. | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 13, Exh. 56.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any |

-84-

JOINT APPENDIX OF FACTS

| | | That addendum remains in full force and effect. | | exclusive rights to the photographer's photographs.<br><br>Pietz Decl., ¶ 13, Exh. 56. |
|---|---|---|---|---|
| 159. | | It is August's and Asgharnia's mutual understanding and intention that August is an exclusive rightsholder in Asgharnia's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Asgharnia's photographs at issue, Subject Photograph AU2363315, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 28-31, Ex. 56-57; Asgharnia Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 13, Exh. 56.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 13, Exh. 56. |
| 160. | | On March 7, 2012, professional photographer Andrew Eccles and August entered into a written syndication agreement. | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Declaration of | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the |

-85-

JOINT APPENDIX OF FACTS

| | That agreement remains in full force and effect. | Andrew Eccles ¶¶ 5-7. | word "syndication" in the agreement.<br>Pietz Decl., ¶ 15, Exh. 59.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
| --- | --- | --- | --- |
| 161. | August's agreement with Eccles provides that August is his "exclusive worldwide agent for the sale, licensing and other promotion of the photographic portraits that you create[.]" | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Disputed in part.<br><br>In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of first refusal." Pietz Decl., ¶ 15, Exh. 59. |
| 162. | Eccles agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other works substantially | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5- | Disputed in part.<br><br>Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') |

-86-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Works." | 7. | no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 15, Exh. 59. |
| 163. | Eccles represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 15, Exh. 59. |
| 164. | August and Eccles agreed that his "Works are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Undisputed. |
| 165. | August cannot act as Eccles's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Disputed. The Agency Agreement does not state that the photographer retained August as their exclusive |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | | agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 15, Exh. 59.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 15, Exh. 59. |
| 166. | The mutual understanding and intention between August and Eccles was that until their syndication agreement is terminated, August is Eccles's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU11251088. | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 15, Exh. 59.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 15, Exh. 59.<br><br>The Agency Agreement does not specifically state that the Subject |

JOINT APPENDIX OF FACTS

| | | | Photographs are part of the agreement. Pietz Decl., ¶ 15, Exh. 59. |
|---|---|---|---|
| 167. | August and Eccles subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Eccles's exclusive licensing agent, and since August and Eccles executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Eccles's photographs, distribute copies of Eccles's photographs, authorize and control the display of Eccles's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 15, Exh. 59. The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88. The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 15, Exh. 59. |
| 168. | It is August's and Eccles's mutual understanding and intention that August is an exclusive rightsholder in | Kelly Decl. ¶¶ 32-35, Ex. 59-60; Eccles Decl. ¶¶ 5- | Disputed in part. The Agency Agreement (aka "syndication |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | Eccles's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Eccles's photographs at issue, Subject Photograph AU11251088, to protect its exclusive rights in those works. | 7. | agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 15, Exh. 59.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 15, Exh. 59. |
| 169. | On August 12, 2013, professional photographer Austin Hargrave and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Declaration of Austin Hargrave ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 17, Exh. 62.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency |

JOINT APPENDIX OF FACTS

| | | | Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
|---|---|---|---|
| 170. | August's agreement with Hargrave provides that August is his "exclusive worldwide agent for the sale, licensing and other promotion of the photographic portraits that you create[.]" | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Undisputed. |
| 171. | Hargrave agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Disputed in part.  Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements."  Pietz Decl., ¶ 17, Exh. 62. |

-91-

JOINT APPENDIX OF FACTS

| | | licensing and other exploitation of the Works." | | |
|---|---|---|---|---|
| 172. | | Hargrave represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 17, Exh. 62. |
| 173. | | August and Hargrave agreed that his "Works are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Undisputed. |
| 174. | | August cannot act as Hargrave's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 17, Exh. 62.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 17, Exh. 62. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | claims for violations of the exclusive copyright interests granted to August[.]" | | The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 17, Exh. 62. |
| 175. | The mutual understanding and intention between August and Hargrave was that until their syndication agreement is terminated, August is Hargrave's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU1508967. | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 17, Exh. 62. The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 17, Exh. 62. The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 17, Exh. 62. |
| 176. | August and Hargrave subsequently signed an addendum to their syndication agreement to clarify their mutual | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ | Disputed in part. The Agency Agreement (aka "syndication agreement") August refers |

JOINT APPENDIX OF FACTS

| | | 5-7. | to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 17, Exh. 62. |

| | understanding and intention that, as Hargrave's exclusive licensing agent, and since August and Hargrave executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Hargrave's photographs, distribute copies of Hargrave's photographs, authorize and control the display of Hargrave's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | 5-7. | to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 17, Exh. 62.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 17, Exh. 62.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 17, Exh. 62. |
|---|---|---|---|
| 177. | It is August's and Hargrave's mutual understanding and intention that August is an exclusive rightsholder in Hargrave's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Hargrave's photographs at issue, | Kelly Decl. ¶¶ 36-39, Ex. 62-63; Hargrave Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 17, Exh. 62. |

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| | Subject Photograph AU1508967, to protect its exclusive rights in those works. | | The Agency Agreement does not reference August pursing infringement claims.  Pietz Decl., ¶ 17, Exh. 62.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 17, Exh. 62. |
| 178. | On December 10, 2015, professional photographer Miller Mobley and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Declaration of Miller Mobley ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 19, Exh. 65.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as being the Agency |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
| 179. | August's agreement with Mobley provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed in part.  In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of first refusal." Pietz Decl., ¶ 19, Exh. 65. |
| 180. | Mobley agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed in part.  Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | "not enter into any agreement for the sale, licensing and other exploitation of the Works." | | Agreements." Pietz Decl., ¶ 19, Exh. 65. |
| 181. | Mobley represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work," including his Subject Photographs, "has been shot by [him.]" | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 19, Exh. 65. |
| 182. | August and Mobley agreed that his "Works are intended for editorial and commercial use/licensing by [August] and [its] clients." | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Undisputed. |
| 183. | August cannot act as Mobley's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 19, Exh. 65.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | | photographs. Pietz Decl., ¶ 19, Exh. 65. The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 19, Exh. 65. |
| 184. | The mutual understanding and intention between August and Mobley was that until their syndication agreement is terminated, August is Mobley's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU11161901. | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 19, Exh. 65. The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 19, Exh. 65. The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 19, Exh. 65. |
| 185. | August and Mobley subsequently signed an addendum to their | Kelly Decl. ¶¶ 40-43, Ex. 65-66; | Disputed in part. The Agency Agreement |

-98-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | syndication agreement to clarify their mutual understanding and intention that, as Mobley's exclusive licensing agent, and since August and Mobley executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Mobley's photographs, distribute copies of Mobley's photographs, authorize and control the display of Mobley's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | Mobley Decl. ¶¶ 5-7. | (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 3, Exh. 41.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 19, Exh. 65.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 19, Exh. 65. |
| 186. | It is August's and Mobley's mutual understanding and intention that August is an exclusive rightsholder in Mobley's photographs as set forth above, and that August has the right to pursue this action to address the infringement of | Kelly Decl. ¶¶ 40-43, Ex. 65-66; Mobley Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., |

-99-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | Mobley's photographs at issue, Subject Photograph AU11161901, to protect its exclusive rights in those works. | | ¶ 19, Exh. 65.<br><br>The Agency Agreement does not reference August pursing infringement claims.  Pietz Decl., ¶ 19, Exh. 65.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 19, Exh. 65. |
| 187. | On May 23, 2007, professional photographer Martin Schoeller and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Declaration of Martin Schoeller ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 21, Exh. 68.<br><br>August refers to the Agency Agreement and the Addendum to the Agency Agreement as |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | being the Agency Agreement. However, the photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed in this case.  Pietz Decl., ¶ 25, Exh. 88. |
| 188. | August's agreement with Schoeller provides that August is his "exclusive worldwide agent for the sale, licensing and other promotion of the photographic portraits that you create[.]" | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Undisputed. |
| 189. | Schoeller agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed in part.<br><br>Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements."  Pietz |

JOINT APPENDIX OF FACTS

| | | licensing and other exploitation of the Works." | | Decl., ¶ 21, Exh. 68. |
|---|---|---|---|---|
| 190. | | Schoeller represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 21, Exh. 68. |
| 191. | | August and Schoeller agreed that his "Works are intended for editorial . . . and commercial use." | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Undisputed. |
| 192. | | August cannot act as Schoeller's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 21, Exh. 68.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 21, Exh. 68. |

-102-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | exclusive copyright interests granted to August[.]" | | The Agency Agreement does not reference August pursing infringement claims.  Pietz Decl., ¶ 21, Exh. 68. |
| 193. | The mutual understanding and intention between August and Schoeller was that until their syndication agreement is terminated, August is Schoeller's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU11234878. | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed in part.  The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 21, Exh. 68.  The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 21, Exh. 68.  The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 21, Exh. 68. |
| 194. | August and Schoeller subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed in part.  The Agency Agreement (aka "syndication agreement") August refers to does not reference the |

-103-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | that, as Schoeller's exclusive licensing agent, and since August and Schoeller executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Schoeller's photographs, distribute copies of Schoeller's photographs, authorize and control the display of Schoeller's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | | word "syndication" in the agreement. Pietz Decl., ¶ 21, Exh. 68.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 21, Exh. 68.<br><br>The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 21, Exh. 68. |
| 195. | It is August's and Schoeller's mutual understanding and intention that August is an exclusive rightsholder in Schoeller's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Schoeller's photographs at issue, Subject Photograph | Kelly Decl. ¶¶ 44-47, Ex. 68-69; Schoeller Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 21, Exh. 68.<br><br>The Agency Agreement |

-104-

JOINT APPENDIX OF FACTS

| | | |
|---|---|---|
| AU11234878, to protect its exclusive rights in those works. | | does not reference August pursing infringement claims. Pietz Decl., ¶ 21, Exh. 68.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 21, Exh. 68. |
| 196. | In December 2016, Atomo Management SRL, as representative for professional photographer Bruno Van Mossevelde, and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 48-50, Ex. 200; Declaration of Bruno Van Mossevelde ¶¶ 5-7. | Disputed in part.<br><br>The "syndication agreement" August refers to does not reference the word "syndication" in the agreement. Kelly Decl. ¶ 48, Ex. 200. |
| 197. | That agreement provides that August is Van Mossevelde's "exclusive worldwide agent for any and all sales, licensing and other promotion of [his] images [.]" | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed in part.<br><br>This Agency Agreement only states that "the Client desires to engage |

-105-

JOINT APPENDIX OF FACTS

| | | | the Agent as its exclusive worldwide agent." Kelly Decl. ¶ 48, Ex. 20 |
|---|---|---|---|
| 198. | Van Mossevelde agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Works." | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed in part. Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements."  Kelly Decl. ¶ 48, Ex. 200. |
| 199. | Van Mossevelde represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party," and guaranteed that "all work," including his Subject Photographs, "has been shot by [him.]" | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Kelly Decl. ¶ 48, Ex. 200. |
| 200. | August and Van Mossevelde agreed that his "Images are intended for | Kelly Decl. ¶¶ 48-50, Ex. 200; Van | Undisputed. |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | editorial and commercial use/licensing by [August] and [its] clients." | Mossevelde Decl. ¶¶ 5-7. | |
| 201. | August cannot act as Van Mossevelde's exclusive agent to sell, syndicate, license, market or otherwise distribute his photographs without the exclusive right to authorize the making of copies of his copyrighted work and/or distribute copies of his copyrighted works to the public, to authorize and control the display of those copyrighted works publicly, and the exclusive right and ability to pursue infringement claims for violations of the exclusive copyright interests granted to August. | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed.

The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Kelly Decl. ¶ 48, Ex. 200.

The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Kelly Decl. ¶ 48, Ex. 200.

The Agency Agreement does not reference August pursing infringement claims. Kelly Decl. ¶ 48, Ex. 200. |
| 202. | The mutual understanding and intention between August and Van Mossevelde was that until their syndication agreement is terminated, August is Van Mossevelde's exclusive licensing agent with exclusive rights to | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed in part.

The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Kelly Decl. ¶ 48, Ex. 200. |

-107-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | license and control the right to copy, distribute, and publicly display his photographs, including Subject Photograph AU11037582. | | The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Kelly Decl. ¶ 48, Ex. 200.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Kelly Decl. ¶ 48, Ex. 200. |
| 203. | It is August's and Van Mossevelde's mutual understanding and intention that August is an exclusive rightsholder in Van Mossevelde's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Van Mossevelde's photographs at issue, Subject Photograph AU11037582, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 48-50, Ex. 200; Van Mossevelde Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement.<br>Kelly Decl. ¶ 48, Ex. 200.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Kelly Decl. ¶ 48, Ex. 200.<br><br>The Agency Agreement does not reference August |

-108-

JOINT APPENDIX OF FACTS

| | | | pursing infringement claims.  Kelly Decl. ¶ 48, Ex. 200. |
|---|---|---|---|
| 204. | On August 22, 2013, professional photographer Mark Mann and August entered into a written syndication agreement. That agreement remains in full force and effect. | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Declaration of Mark Mann ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 23, Exh. 71.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 23, Exh. 71. |
| 205. | August's agreement with Mann provides that August is his "exclusive worldwide agent . . . for the sale, licensing and other promotion of the photographic images that you create[.]" | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part.<br><br>In the portion of sentence omitted by Plaintiff where the ellipses is at, it states, "with the right of |

JOINT APPENDIX OF FACTS

| | | | first refusal." Pietz Decl., ¶ 23, Exh. 71. |
|---|---|---|---|
| 206. | Mann agreed to "not sell or transfer any ownership interest in any Images accepted by [August] . . . or other Images substantially similar to any Image we have accepted . . . to any person, licensing agent or other entity for sale, licensing or exploitation," "to terminate any existing agreements that would violate [August's] appointment as [his] exclusive agent," and to "not enter into any agreement for the sale, licensing and other exploitation of the Works." | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part.<br><br>Plaintiff omitted the language "hereunder (the 'Conflicting Agreements') no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements." Pietz Decl., ¶ 23, Exh. 71. |
| 207. | Mann represented and warranted that his "Images," including the Subject Photographs, "do not, and will not, infringe the copyright of any third party[.]" | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement does not specifically state that the Subject Photograph is part of the agreement. Pietz Decl., ¶ 23, Exh. 71. |
| 208. | August and Mann agreed that his "Works are intended for editorial and commercial use/licensing | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5- | Undisputed. |

-110-

JOINT APPENDIX OF FACTS

| | | by [August] and [its] clients." | 7. | |
|---|---|---|---|---|
| 209. | | August cannot act as Mann's "exclusive agent to sell, syndicate, license, market or otherwise distribute [his] photographic works" without "the exclusive right to authorize the making of copies of [his] copyrighted work and/or distribute copies of [his] copyrighted works to the public," "to authorize and control the display of those copyrighted works publicly," and "the exclusive right and ability . . . to pursue infringement claims for violations of the exclusive copyright interests granted to August[.]" | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed.<br><br>The Agency Agreement does not state that the photographer retained August as their exclusive agent to "syndicate, market, or otherwise distribute" his photographs. Pietz Decl., ¶ 23, Exh. 71.<br><br>The Agency Agreement does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 3, Exh. 41. |
| 210. | | The mutual understanding and intention between August and Mann was that until their syndication agreement is terminated, August is Mann's exclusive licensing agent with exclusive rights to license and control the right to copy, distribute, and publicly display his photographs, including | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 23, Exh. 71.<br><br>The Agency Agreement does not grant August any exclusive rights to the |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | Subject Photograph AU1561939. | | photographer's photographs. Pietz Decl., ¶ 23, Exh. 71.<br><br>The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 23, Exh. 71. |
| 211. | August and Mann subsequently signed an addendum to their syndication agreement to clarify their mutual understanding and intention that, as Mann's exclusive licensing agent, and since August and Mann executed their written syndication agreement, August has had the exclusive rights to authorize the making of copies of Mann's photographs, distribute copies of Mann's photographs, authorize and control the display of Mann's photographs publicly, and pursue infringement claims for violations of those rights. That addendum remains in full force and effect. | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part.<br><br>The Agency Agreement (aka "syndication agreement") August refers to does not reference the word "syndication" in the agreement. Pietz Decl., ¶ 23, Exh. 71.<br><br>The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88.<br><br>The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's |

-112-

JOINT APPENDIX OF FACTS

| | | | photographs. Pietz Decl., ¶ 23, Exh. 71. |
|---|---|---|---|
| 212. | It is August's and Mann's mutual understanding and intention that August is an exclusive rightsholder in Mann's photographs as set forth above, and that August has the right to pursue this action to address the infringement of Mann's photographs at issue, Subject Photograph AU1561939, to protect its exclusive rights in those works. | Kelly Decl. ¶¶ 51-54, Ex. 71-72; Mann Decl. ¶¶ 5-7. | Disputed in part. The Agency Agreement (aka "syndication agreement") does not grant August any exclusive rights to the photographer's photographs. Pietz Decl., ¶ 23, Exh. 71. The Agency Agreement does not reference August pursing infringement claims. Pietz Decl., ¶ 23, Exh. 71. The photographer did not execute the Addendum to the Agency Agreement until after the Original Complaint was filed. Pietz Decl., ¶ 25, Exh. 88. The Agency Agreement does not specifically state that the Subject Photographs are part of the agreement. Pietz Decl., ¶ 23, Exh. 71. |
| 213. | Art Streiber created and is the copyright owner of Subject Photographs | Kelly Decl. ¶ 56, Ex. 76, 92, 201- | Disputed in part. Neither the plaintiff's |

JOINT APPENDIX OF FACTS

| | | | | |
|---|---|---|---|---|
| | AU1955961, AU179089, and AU213782. To create those works, Streiber selected and/or captured their features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | 02; Streiber Decl. ¶¶ 2-4. | declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 56, Ex. 26-28; Streiber Decl. ¶¶ 2-4. | |
| 214. | Subject Photograph AU1955961 is registered with the U.S. Copyright Office under Reg. No. VA 2-201-766. | Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4. | Disputed.<br><br>Plaintiff has not produced a certificate of registration for Reg. No. VA 2-201-766 (allegedly covering AU1955961). Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4.<br><br>Reg. No. VA 2-201-766 (allegedly covering AU1955961) was not registered within 5 years of publication. Kelly Decl. ¶ 56, Ex. 26.<br><br>The Subject Photograph AU1955961 is not referenced in the screen shot of the copyright office's website provided by Plaintiff. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02. | |

JOINT APPENDIX OF FACTS

|  |  |  | Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4. |
| 215. | Subject Photograph AU179089 is registered with the U.S. Copyright Office under Reg. No. VA 2-141-902. | Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4. | Disputed.<br><br>Reg. No. VA 2-141-902 (allegedly covering AU179089), was not registered within 5 years of publication. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02.<br><br>The Subject Photograph AU179089 is not referenced in the certificate of registration provided by plaintiff. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library |

JOINT APPENDIX OF FACTS

| | | | of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4. |
|---|---|---|---|
| 216. | Subject Photograph AU213782 is registered with the U.S. Copyright Office under Reg. No. VA 2-204-089 as aoa_antonio-banderas-black_6205. | Kelly Decl. ¶ 56, Ex. 76, 92, 201-02; Streiber Decl. ¶¶ 2-4. | Disputed.<br><br>Plaintiff has not produced a certificate of registration for Reg. No. VA0002204089 (allegedly covering AU213782). Kelly Decl. ¶ 56, Ex. 76, 92, 201-02.<br><br>The Subject Photograph AU213782 is not referenced in the screen shot of the copyright office's website provided by plaintiff. Kelly Decl. ¶ 56, Ex. 76, 92, 201-02.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 56, Ex. 76, |

JOINT APPENDIX OF FACTS

| | | | 92, 201-02; Streiber Decl. ¶¶ 2-4. |
|---|---|---|---|
| 217. | Joe Pugliese created and is the copyright owner of Subject Photographs AU1955890 and AU1387317. To create those works, Pugliese selected and/or captured their features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 57, Ex. 74, 92; Pugliese Decl. ¶¶ 2-4. | Disputed in part.<br><br>The Subject Photographs are not referenced in certificate of registration. Kelly Decl. ¶ 57, Ex. 74, 92.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 57, Ex. 74, 92; Pugliese Decl. ¶¶ 2-4. |
| 218. | Subject Photographs AU1955890 and AU1387317 are registered with the U.S. Copyright Office under Reg. No. VAu 1-163-131. | Kelly Decl. ¶ 57, Ex. 74, 92; Pugliese Decl. ¶¶ 2-4. | Disputed in part.<br><br>The Subject Photographs are not referenced in certificate of registration. Kelly Decl. ¶ 57, Ex. 29-30.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library |

-117-

JOINT APPENDIX OF FACTS

| | | | of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 57, Ex. 74, 92; Pugliese Decl. ¶¶ 2-4. |
|---|---|---|---|
| 219. | Alexi Lubomirski created and is the copyright owner of Subject Photographs AU2305864 and AU2301788. To create those works, Lubomirski selected and/or captured their features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. |
| 220. | Subject Photograph AU2305864 is registered with the U.S. Copyright Office under Reg. No. VA 2-274-844. | Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. |

JOINT APPENDIX OF FACTS

| 221. | Subject Photograph AU2301788 is registered with the U.S. Copyright Office under Reg. No. VA 2-268-158. | Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. | Disputed in part.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 58, Ex. 75, 79, 92; Lubomirski Decl. ¶¶ 2-4. |
| --- | --- | --- | --- |
| 222. | Brian Bowen Smith created and is the copyright owner of Subject Photograph AU1390084. To create that work, Smith selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 59, Ex. 77, 92; Smith Decl. ¶¶ 2-4. | Disputed in part.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 59, Ex. 77, 92; Smith Decl. ¶¶ 2-4. |
| 223. | Subject Photograph AU1390084 is registered with the U.S. Copyright Office under Reg. No. VA 2-294-743. | Kelly Decl. ¶ 59, Ex. 77, 92; Smith Decl. ¶¶ 2-4. | Disputed in part.<br><br>Reg. No. VA 2-294-743 (allegedly covering AU1390084) was not registered within 5 years of publication. |

-119-

JOINT APPENDIX OF FACTS

| | | | Kelly Decl. ¶ 59, Ex. 33. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 59, Ex. 77, 92; Smith Decl. ¶¶ 2-4. |
|---|---|---|---|
| 224. | David Slijper created and is the copyright owner of Subject Photographs AU2149055, AU2149064, and AU2149040. To create those works, Slijper selected and/or captured their features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 60, Ex. 78, 92; Slijper Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 60, Ex. 78, 92; Slijper Decl. ¶¶ 2-4. |
| 225. | Subject Photographs AU2149055, AU2149064, and AU2149040 are registered with the U.S. Copyright Office under Reg. No. VA 2-323-663. | Kelly Decl. ¶ 60, Ex. 78, 92; Slijper Decl. ¶¶ 2-4. | Disputed in part. Reg. No. VA 2-323-663 (allegedly covering AU2149055, AU2149064, and AU2149040) was not registered within 5 years of publication. Kelly Decl. ¶ 60, Ex. 78, |

JOINT APPENDIX OF FACTS

| | | | 92.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration.<br>Kelly Decl. ¶ 60, Ex. 78, 92; Slijper Decl. ¶¶ 2-4. |
| 226. | Shayan Asgharnia created and is the copyright owner of Subject Photograph AU2363315. To create that work, Asgharnia selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 61, Ex. 80, 92; Asgharnia Decl. ¶¶ 2-4. | Disputed in part.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration.<br>Kelly Decl. ¶ 61, Ex. 80, 92; Asgharnia Decl. ¶¶ 2-4. |
| 227. | Subject Photograph AU2363315 is registered with the U.S. Copyright Office under Reg. No. VA 2-286-920. | Kelly Decl. ¶ 61, Ex. 80, 92; Asgharnia Decl. ¶¶ 2-4. | Disputed in part.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of |

JOINT APPENDIX OF FACTS

|  |  |  | the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 61, Ex. 80, 92; Asgharnia Decl. ¶¶ 2-4. |
|---|---|---|---|
| 228. | Andrew Eccles created and is the copyright owner of Subject Photograph AU11251088. To create that work, Eccles selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 62, Ex. 81, 92; Eccles Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 62, Ex. 81, 92; Eccles Decl. ¶¶ 2-4. |
| 229. | Subject Photograph AU11251088 is registered with the U.S. Copyright Office under Reg. No. VA 2-334-439. | Kelly Decl. ¶ 62, Ex. 81, 92; Eccles Decl. ¶¶ 2-4. | Disputed in part. Reg. No. VA 2-334-439 (allegedly covering AU11251088) was not registered within 5 years of publication. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy |

JOINT APPENDIX OF FACTS

| | | | submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 62, Ex. 81, 92; Eccles Decl. ¶¶ 2-4. |
|---|---|---|---|
| 230. | Austin Hargrave created and is the copyright owner of Subject Photograph AU1508967. To create that work, Hargrave selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 63, Ex. 82, 92; Hargrave Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 63, Ex. 82, 92; Hargrave Decl. ¶¶ 2-4. |
| 231. | Subject Photograph AU1508967 is registered with the U.S. Copyright Office under Reg. No. VA 2-227-879. | Kelly Decl. ¶ 63, Ex. 82, 92; Hargrave Decl. ¶¶ 2-4. | Disputed in part. Reg. No. VA 2-227-879 (allegedly covering AU1508967) was not registered within 5 years of publication. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library |

-123-

JOINT APPENDIX OF FACTS

| | | | of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 63, Ex. 82, 92; Hargrave Decl. ¶¶ 2-4. |
|---|---|---|---|
| 232. | Miller Mobley created and is the copyright owner of Subject Photograph AU11161901. To create that work, Mobley selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 64, Ex. 83, 92; Mobley Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 64, Ex. 83, 92; Mobley Decl. ¶¶ 2-4. |
| 233. | Subject Photograph AU11161901 is registered with the U.S. Copyright Office under Reg. No. VA 2-227-659. | Kelly Decl. ¶ 64, Ex. 83, 92; Mobley Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 64, Ex. 83, 92; Mobley Decl. ¶¶ 2-4. |
| 234 | Martin Schoeller created and is the copyright owner | Kelly Decl. ¶ 65, | Disputed in part. |

-124-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| . | of Subject Photograph AU11234878. To create that work, Schoeller selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Ex. 84, 92; Schoeller Decl. ¶¶ 2-4. | Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 65, Ex. 84, 92; Schoeller Decl. ¶¶ 2-4. |
| 235. | Subject Photograph AU11234878 is registered with the U.S. Copyright Office under Reg. No. VA 2-209-628. | Kelly Decl. ¶ 65, Ex. 84, 92; Schoeller Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 65, Ex. 84, 92; Schoeller Decl. ¶¶ 2-4. |
| 236. | Bruno Van Mossevelde created and is the copyright owner of Subject Photograph AU11037582. To create that work, Van Mossevelde selected and/or captured its features, including composition, | Kelly Decl. ¶ 66, Ex. 85, 92; Van Mossevelde Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | lighting, framing, perspective, angles, depth, foreground, background, and so on. | | submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 66, Ex. 85, 92; Van Mossevelde Decl. ¶¶ 2-4. |
| 237. | Subject Photograph AU11037582 is registered with the U.S. Copyright Office under Reg. No. VA 2-110-334. | Kelly Decl. ¶ 66, Ex. 85, 92; Van Mossevelde Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 66, Ex. 85, 92; Van Mossevelde Decl. ¶¶ 2-4. |
| 238. | Mark Mann created and is the copyright owner of Subject Photograph AU1561939. To create that work, Mann selected and/or captured its features, including composition, lighting, framing, perspective, angles, depth, foreground, background, and so on. | Kelly Decl. ¶ 67, Ex. 87, 92; Mann Decl. ¶¶ 2-4. | Disputed in part. Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 67, Ex. 87, 92; Mann Decl. ¶¶ 2-4. |

-126-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| 239. | Subject Photograph AU1561939 is registered with the U.S. Copyright Office under Reg. No. VA 2-326-585. | Kelly Decl. ¶ 67, Ex. 87, 92; Mann Decl. ¶¶ 2-4. | Disputed in part.<br><br>Reg. No. VA 2-326-585 (allegedly covering AU1561939) was not registered within 5 years of publication. Kelly Decl. ¶ 67, Ex. 87, 92.<br><br>Neither the plaintiff's declaration nor the photographer's declaration state that a true and correct copy of the deposit copy submitted to the Library of Congress of the Subject Photograph is attached to the declaration. Kelly Decl. ¶ 67, Ex. 87, 92; Mann Decl. ¶¶ 2-4. |
| 240. | Defendant displayed, distributed, and reproduced unauthorized copies of the Subject Photographs. | Kelly Decl. ¶ 68; Declaration of Stephen M. Doniger Ex. 1 at 81:15-83:10, 84:6-15, 95:7-15; *id.* Ex. 7; *id.* Ex. 9 at 9:20-10:8, 16:13-19; *id.* Ex. 22; *id.* Ex. 203 at Resp. | Disputed.<br><br>The plaintiff's "Subject Photographs" were not "displayed, distributed, or reproduced" on what is alleged to be defendant's website. Rather, what is alleged to be defendant's website appears to incorporate a photo sourced from a third party website into a multimedia story about the celebrity who is the subject of the |

JOINT APPENDIX OF FACTS

| | | to RFAs 5, 7, 9; *id.* Ex. 205 at Resp. to ROGs 4-5. | photograph.<br><br>*Compare* ECF No. 45-1 (Exhibit 1 to FAC) left column *with id.* right column; see also D's JAF Nos. 11-14. |
|---|---|---|---|
| 241. | Defendant did not seek or obtain August's authorization to display, distribute, or reproduce copies of the Subject Photographs. | Kelly Decl. ¶ 68; Dkt. 46 ¶ 9; Doniger Decl. Ex. 1 at 81:15-19; *id.* Ex. 203 at Resp. to RFAs 1-2; *id.* Ex. 204 at Resp. to ROG 3. | Disputed in part.<br><br>Undisputed that Line PBC did not obtain authorization from August.<br><br>Disputed that Defendant displayed, distributed or reproduced the "Subject Photographs". See response to JAF 240. |
| 242. | The unauthorized copies of the Subject Photographs that Defendant displayed, distributed, and reproduced are essentially verbatim copies of the Subject Photographs, but for minor cropping. | Kelly Decl. ¶ 69; Dkt. 45-1; *compare* Kelly Decl. Ex. 92 *with* Doniger Decl. Ex. 7. | Disputed.<br><br>It is unclear what is meant by "verbatim copy" since plaintiff's photos do not contain words. What plaintiff claims are the "Subject Photographs" are not exactly the same as the multimedia stories that allegedly appeared on defendant's website.<br><br>*Compare* ECF No. 45-1 (Exhibit 1 to FAC) left column *with id.* right column; see also D's JAF |

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | Nos. 11-14. |
| 243. | Defendant's unauthorized exploitations of the Subject Photographs are the type of uses that August has the right to control licensing of. If left unchecked, Defendant's uses of the Subject Photographs would essentially destroy the licensing market for the photographs in August's syndication portfolio. | Kelly Decl. ¶ 70. | Disputed.<br><br>August was never granted the exclusive right to prepare derivative works of the photographers' photographs.<br>Pietz Decl., ¶ 3, Exh. 41, ¶ 5, Exh. 44, ¶ 7, Exh. 47, ¶ 9, Exh. 50, ¶ 11, Exh. 53, ¶ 13, Exh. 56, ¶ 15, Exh. 59, ¶ 17, Exh. 62, ¶ 19, Exh. 65, ¶ 21, Exh. 68 and ¶ 23, Exh. 71.<br>(Agency Agreements)<br><br>Pietz Decl.,<br>¶ 4, Exh. 42,<br>¶ 6, Exh. 45,<br>¶ 8, Exh. 48,<br>¶ 10, Exh. 51,<br>¶ 12, Exh. 54,<br>¶ 14, Exh. 57,<br>¶ 16, Exh. 60,<br>¶ 18, Exh. 63,<br>¶ 20, Exh. 66,<br>¶ 22, Exh. 69 and<br>¶ 24, Exh. 72.<br>(Addendums)<br><br>*Compare* ECF No. 45-1 (Exhibit 1 to FAC) left column *with id.* right column; see also D's JAF Nos. 11-14. |

JOINT APPENDIX OF FACTS

| 244. | **Defendant and its business** | | |
|---|---|---|---|
| 245. | Defendant Line Financial, PBC is a financial technology company. | Doniger Decl. Ex. 1 at 24:25-25:18. | Disputed in part.<br><br>Defendant testified that Line Financial is a financial technology company in "certain locations." Doniger Decl. Ex. 1 at 25:2. |
| 246. | Defendant holds itself out as profitable. | Doniger Decl. Ex. 1 at 26:2-9, Ex. 2. | Disputed.<br><br>Defendant testified that whether Line Financial was profitable depended on the definition of profitability. When shown Exhibit 2, defendant testified that he did not recollect when the screen shot of its LinedIn page was taken, and he needed more information to answer the question. Doniger Decl. Ex. 1 at 26:9-16. |
| 247. | Defendant is registered with the U.S. Securities & Exchange Commission ("SEC") and has issued millions in equity, including $7 million in issued equity disclosed to the SEC. | Doniger Decl. Ex. 1 at 70:3-24, Ex. 6. | Disputed in part.<br><br>Defendant's testimony was that he did not recollect exactly how much equity was issued but it was in the millions. Defendant testified that he did not personally file the |

-130-

JOINT APPENDIX OF FACTS

| | | | form in Exhibit 6 with the US Securities and Exchange Commission. Doniger Decl. Ex. 1 at 70:3-24. |
|---|---|---|---|
| 248. | Defendant owns, operates, and controls the website useline.com. | Dkt. 46 ¶ 5; Doniger Decl. Ex. 1 at 20:16-19. | Undisputed. |
| 249. | Defendant rebranded useline.com to trybeem.com. Useline.com now redirects to trybeem.com (useline.com/trybeem.com is referred to as "Defendant's Website"). | Doniger Decl. Ex. 1 at 20:4-19; *id*. Ex. 203 at Resp. to RFAs 17-18. | Undisputed. |
| 250. | Defendant operates and controls the Instagram page instagram.com/trybeemapp under the handle @trybeemapp. | Doniger Decl. Ex. 1 at 23:23-24:24. | Undisputed. |
| 251. | Before Defendant rebranded its Website, its Instagram page was instagram.com/lineappoffic ial under the handle @lineappofficial. | Doniger Decl. Ex. 1 at 23:23-24:24. | Undisputed. |
| 252. | Defendant is a for-profit corporation that uses its Website to transact its business. | Doniger Decl. Ex. 1 at 38:3-42:8; *id*. Ex. 2; *id*. Ex. 203 at Resp. to RFAs | Disputed in part. Defendant's discovery responses state that "it used the useline.com website to transact its |

-131-

JOINT APPENDIX OF FACTS

| | | 15, 21. | business as a public benefit corporation" and that it "is a public benefit corporation (which is not a non-profit, but also not a usual commercial corporation."<br>     Doniger Decl. Ex. 11 at Resp. to RFAs 15, 21.<br><br>Defendant did not testify that it uses its website to transact business. Defendant's testimony was that subscription users can login on the Website to cancel and upgrade subscriptions. Doniger Decl. Ex. 1 at 39:1-14.<br><br>Defendant testified that whether Line Financial was profitable depended on the definition of profitability. When shown Exhibit 2, defendant testified that he did not recollect when the screen shot of its LinedIn page was taken, and he needed more information to answer the question. Doniger Decl. Ex. 1 at 26:9-16. |

JOINT APPENDIX OF FACTS

| 253. | On its Website, Defendant promotes pricing for the services Defendant offers (through its Website and corresponding app) to paying subscribers, which include instant cash, tax filing, money transfers, purchasing gift cards, and offers for personal loans and insurance services, among others. | Doniger Decl. Ex. 1 at 25:3-18, 32:24-33:25, 56:10-58:4; *id.* Ex. 3. | Disputed in part.<br><br>Defendant testified that its services were offered on its App.<br>Doniger Decl. Ex. 1 at 25:7-18. |
| 254. | Defendant partners with financial services companies to facilitate its services to paying subscribers. | Doniger Decl. Ex. 1 at 43:2-44:17. | Disputed in part.<br><br>Defendant only testified that it had financial services partners.<br>Doniger Decl. Ex. 1 at 43:2-44:17. |
| 255. | Defendant has serviced millions of customers and has disbursed over $85 million in instant cash. | Doniger Decl. Ex. 1 at 32:24-33:25, 42:9-43:1. | Undisputed. |
| 256. | Also on its Website, Defendant publishes blog stories divided into categories by topic, one of which is "lifestyle." | Doniger Decl. Ex. 3 at AUGUST000326-27. | Undisputed. |
| 257. | Under the "lifestyle" category, Defendant publishes blog posts about celebrities and their net worth, biographies, careers, and salaries. | Doniger Decl. Ex. 1 at 34:4-37:20, 64:6-65:11; *see, e.g., id.* Ex. 5. | Disputed.<br><br>The cited deposition testimony doesn't establish any of what is |

JOINT APPENDIX OF FACTS

| | | | asserted.  The word "lifestyle" does not appear in the cited depo passages.  Exhibit 5 is one single article. |
|---|---|---|---|
| 258. | The purpose of Defendant's celebrity-focused blog series is to feature content that existing users find interesting and relevant, attract new users, and increase Defendant's brand awareness and search engine placement. | Doniger Decl. Ex. 1 at 19:2-14, 34:4-37:20, 85:10-22. | Disputed and improperly compound.<br><br>The cited depo passages do not establish what is asserte.d. Line PBC's witness testified that the purpose of the posts on the website was "we like content that is specific to our customers. That is information that our customers is seeking". Ex. 1 at 19:10-15.  He mentions SEO, but does not testify that was the purpose of the posts. |
| 259. | Defendant displays paid-for advertisements on its Website, including as part of its "lifestyle" blog posts. | Doniger Decl. Ex. 1 at 58:21-59:17, 60:11-18, 63:2-20, 64:6-65:11; *id.* Ex. 4 at | Disputed.<br><br>Ex. 1 at 58:21-59:11: "Q. Does Line -- strike that -- do you feature any paid advertisements on your website? MR. PIETZ: Exceeds the |

-134-

JOINT APPENDIX OF FACTS

| | | | LF(AUGUST)–000086; *see, e.g., id.* Ex. 5. | scope of the noticed topics. Vague as to time. We have experimented with that this year. We are experimenting all the time. But not necessarily as we are a primary source of revenue. It would almost call it potentially insignificant.<br>Q. So let me just break that down. Even if it's not a primary source or to use your words potentially insignificant, it is still a source of revenue on your -- from your website; is that correct?<br>MR. PIETZ: The same objections.<br>A. We have not done that this year. We have done that far and between. But as far as my recollection is concerned it has not generated any revenue parts." |
| 260. | Defendant's "content team" identifies topics to write about, creates content around that topic, and then publishes that content on Defendant's Website and social media channels through Defendant's | Doniger Decl. Ex. 1 at 21:1-23:4. | Disputed in part. Defendant testified that the "content team" works for a wholly-owned subsidiary of Line PBC in India.  Ex. 1 at 96:4-6. |

-135-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | content management system. | | |
| 261. | Defendant has published blog posts without photographs. | Doniger Decl. Ex. 1 at 87:1-9. | Disputed.<br><br>"Q. Have you ever been published blog posts with no photos?<br> MR. PIETZ: Objection. Exceeds the scope. Vague.<br>          Compound.<br>A. We may have. I do not recollect it."<br><br>Ex. 1 at 87:1-5. |
| 262. | **Defendant's unauthorized copying, display, reproduction, and distribution of the Subject Photographs** | // | |
| 263. | Defendant's content team accessed a copy of Subject Photograph AU1955961 in April 2022 from third-party website pxfuel.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>Admitted that defendant's content team accessed a photo from the specified third-party website. Disputed that the picture accessed from the third party website is an exact "copy" of plaintiff's registered photo (i.e., what plaintiff calls the "Subject Photograph"). And Disputed that what is alleged to be defendant's website is an exact copy of the Subject Photograph. |

-136-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | | *Compare* ECF No. 45-1 (Exhibit 1 to FAC) left column *with id.* right column; see also D's JAF Nos. 11-14. |
| 264. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id.* Ex. 7 at AUGUST000051-52, 55-59; *id.* Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>The plaintiff's "Subject Photograph" was not "displayed, distributed, or reproduced" on what is alleged to be defendant's website. Rather, what is alleged to be defendant's website appears to incorporate a photo sourced from a third party website into a multimedia story about the celebrity who is the subject of the photograph.<br><br>*Compare* ECF No. 45-1 (Exhibit 1 to FAC) left column *with id.* right column; see also D's JAF Nos. 11-14. |
| 265. | Defendant's content team accessed a copy of Subject Photograph AU1955890 in April 2022 from third-party website wallpapers.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id.* Ex. 8; *id.* Ex. 22 at Fourth Supp. | Disputed in part.<br><br>See response to JAF 264. |

-137-

JOINT APPENDIX OF FACTS

| | | Resp. to ROG 2. | |
|---|---|---|---|
| 266. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000053-54; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 267. | Defendant's content team accessed a copy of Subject Photograph AU2305864 in May 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 268. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000044-48; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |

-138-

JOINT APPENDIX OF FACTS

| 269. | Defendant's content team accessed a copy of Subject Photograph AU179089 in December 2022 from third-party website pxfuel.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id.* Ex. 8; *id.* Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| --- | --- | --- | --- |
| 270. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id.* Ex. 7 at AUGUST000039-43; *id.* Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>See response to JAF 265. |
| 271. | Defendant's content team accessed a copy of Subject Photograph AU1390084 in April 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id.* Ex. 8; *id.* Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| 272. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id.* Ex. 7 | Disputed.<br><br>See response to JAF 265. |

JOINT APPENDIX OF FACTS

| | | at AUGUST000071-74, 76-77; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | |
|---|---|---|---|
| 273. | Defendant's content team accessed a copy of Subject Photograph AU2149055 in April 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 274. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000075; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 275. | Defendant's content team accessed a copy of Subject Photograph AU2149064 in April 2022 from third-party website wallpapercave.com | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, | Disputed in part. See response to JAF 264. |

-140-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | and then uploaded that copy to Defendant's Website. | 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | |
| 276. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000078, 586, 842-43; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 277. | Defendant's content team accessed a copy of Subject Photograph AU2149040 in April 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 278. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000587; | Disputed. See response to JAF 265. |

JOINT APPENDIX OF FACTS

| | | *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | |
|---|---|---|---|
| 279. | Defendant's content team accessed a copy of Subject Photograph AU213782 in November 2022 from third-party website twitter.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 280. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000037-38; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 281. | Defendant's content team accessed a copy of Subject Photograph AU2301788 in December 2022 from third-party website hdqwalls.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. | Disputed in part. See response to JAF 264. |

JOINT APPENDIX OF FACTS

| | | | Resp. to ROG 2. | |
|---|---|---|---|---|
| 282. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000066-68, 87-89; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>See response to JAF 265. |
| 283. | Defendant's content team accessed a copy of Subject Photograph AU2363315 in December 2022 from third-party website twitter.com and then uploaded that copy to Defendant's Website. | | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| 284. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000589; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp | Disputed.<br><br>See response to JAF 265. |

JOINT APPENDIX OF FACTS

| | | | Resp. to ROG 5. |
|---|---|---|---|
| 285. | Defendant's content team accessed a copy of Subject Photograph AU11251088 in December 2022 from third-party website wallpapers.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id.* Ex. 8; *id.* Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| 286. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id.* Ex. 7 at AUGUST000060-61; *id.* Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>See response to JAF 265. |
| 287. | Defendant's content team accessed a copy of Subject Photograph AU1508967 in November 2022 from third-party website wallpapersafari.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id.* Ex. 8; *id.* Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| 288. | Defendant then displayed, distributed, and reproduced | Doniger Decl. Ex. 1 at 81:20-83:10, | Disputed.<br><br>See response to JAF 265. |

-144-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | that Subject Photograph on its Website. | 84:6-15; *id*. Ex. 7 at AUGUST000049-50; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | |
| 289. | Defendant's content team accessed a copy of Subject Photograph AU11161901 in March 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part.<br><br>See response to JAF 264. |
| 290. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000062-63, 588, 845; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>See response to JAF 265. |
| 291. | Defendant's content team accessed a copy of Subject Photograph AU1387317 in | Doniger Decl. Ex. 1 at 95:7-15, 96:2- | Disputed in part.<br><br>See response to JAF 264. |

-145-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | March 2022—Defendant is "unsure of source"—and then uploaded that copy to Defendant's Instagram page. | 97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | |
| 292. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Instagram page. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000591; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 293. | Defendant's content team accessed a copy of Subject Photograph AU11234878 in March 2022—Defendant is "unsure of source"—and then uploaded that copy to Defendant's Instagram page. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 294. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Instagram page. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000592; | Disputed. See response to JAF 265. |

-146-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | | *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | |
| 295. | Defendant's content team accessed a copy of Subject Photograph AU11037582 in March 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2. | Disputed in part. See response to JAF 264. |
| 296. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000575; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed. See response to JAF 265. |
| 297. | Defendant's content team accessed a copy of Subject Photograph AU1561939 in December 2022 from third-party website wallpapercave.com and then uploaded that copy to Defendant's Website. | Doniger Decl. Ex. 1 at 95:7-15, 96:2-97:14, 108:2-10, 168:10-16; *id*. Ex. 8; *id*. Ex. 22 at Fourth Supp. | Disputed in part. See response to JAF 264. |

JOINT APPENDIX OF FACTS

| | | Resp. to ROG 2. | |
|---|---|---|---|
| 298. | Defendant then displayed, distributed, and reproduced that Subject Photograph on its Website. | Doniger Decl. Ex. 1 at 81:20-83:10, 84:6-15; *id*. Ex. 7 at AUGUST000581-85; *id*. Ex. 205 at Supp. Resp. to ROG 4, Supp Resp. to ROG 5. | Disputed.<br><br>See response to JAF 265. |
| 299. | Defendant did not seek or obtain August's permission to display, distribute, or reproduce the Subject Photographs on Defendant's Website or Instagram page. | Dkt. 46 ¶ 9; Kelly Decl. ¶ 68; Doniger Decl. Ex. 1 at 81:15-19; *id*. Ex. 22 at Fourth Supp. Resp. to ROG 2; *id*. Ex. 203 at RFAs 1-2; *id*. Ex. 204 at ROG 3. | Undisputed. |
| 300. | None of Defendant's uses of the Subject Photographs credited or otherwise identified the Photographers or August as the source of the Subject Photographs; mentioned the Photographers, August, or the Subject Photographs | Doniger Decl. Ex. 7; *id*. Ex. 203 at RFA 10. | Undisputed. |

-148-

JOINT APPENDIX OF FACTS

| | | | |
|---|---|---|---|
| | themselves; treated the Photographers, August, or the Subject Photographs themselves as the story; or commented on or critiqued the Photographers themselves, August itself, or the Subject Photographs themselves. | | |
| 301. | Defendant's posts displaying, distributing, and reproducing the Subject Photographs allowed users to zoom in on the Subject Photographs and make them larger, as the copies displayed were high-resolution. | Doniger Decl. Ex. 7. | Undisputed. |
| 302. | Defendant has previously sought and obtained licenses to use photographs in blog posts on its Website. | Doniger Decl. Ex. 1 at 74:5-77:4; *id.* Ex. 9 at Supp. Resp. to ROG 16; *id*. Ex. 203 at RFA 5. | Undisputed. |

Dated: November 4, 2024

Dated: November 4, 2024

*/s/ Morgan E. Pietz*
Morgan E. Pietz
Matthew A. Trejo
PIETZ & SHAHRIARI, LLP
*Attorneys for Defendant*

*/s/ Stephen M. Doniger*
Stephen M. Doniger
Benjamin F. Tookey
DONIGER / BURROUGHS
*Attorneys for Plaintiff*

-149-

JOINT APPENDIX OF FACTS