1  Morgan E. Pietz (SBN 260629)
     morgan@pstrials.com
2  Matthew A. Trejo (SBN 320464)
     matt@pstrials.com
3  PIETZ & SHAHRIARI, LLP
   6700 S. Centinela Avenue, 2nd Floor
4  Culver City, CA 90230
   Telephone:   (310) 424-5557
5  Facsimile:   (310) 597-4626

6  Attorneys for Defendant
   *LINE FINANCIAL PBC*

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  AUGUST IMAGE, LLC, a New York          Case No. 2:23-cv-05492-WLH-AS
12  Limited Liability Company,
                                           Assigned to: Honorable Wesley L. Hsu,
13         Plaintiff,                      United States District Judge

14  v.                                     Referred to: Honorable Alka Sagar,
                                           United States Magistrate Judge
15  LINE FINANCIAL PBC, a Delaware         Action Filed:           07/10/2023
16  Corporation; and DOES 1-10,            Fact Discovery Cutoff:  10/11/2024
                                           Final Pretrial Conf.:   02/07/2025
17         Defendant(s).                   Trial Date:             02/24/2025

                                           **DEFENDANT LINE PBC'S**
18                                         **APPENDIX OF EXHIBITS IN**
                                           **SUPPORT OF ITS MOTION FOR**
19                                         **SANCTIONS**

20                                         Hearing:
                                           Date/Time:  December 13, 2024, 1:30 pm
21                                         Location:   First Street Courthouse
22                                                     350 W. 1st Street
23                                                     Courtroom 9B, 9th Floor,
                                                       Los Angeles, CA 90012
24

25

26

27

28

                                  -1-

# APPENDIX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 114 | 2024.01.05- August Image Original Initial Disclosures |
| 115 | 2024.05.22 - Depo Notice to Alexi Lubomirski (2pm) |
| 116 | Excerpts of Ps Disco Responses re ImageRights |
| 117 | 2024.05.30 - Ps First Supp Initial Disclosures with Cover Email |
| 118 | 2024.07.26 - Meet and Confer LT P's Counsel |
| 119 | 2024.08.02 - Excerpts from August's IDC Statement [Exh. 89] |
| 120 | 2024.08.09 - Meet and Confer LT P's Counsel |
| 121 | 2024.08.09 - Response Ltr from Plaintiff |
| 122 | 2024.08.13 - Reply re Addendum Dates, Serving Rog |
| 123 | 2024.08.13 - Rog 20 to August |
| 124 | 2024.08.15 - IDC Hearing Tr. |
| 125 | 2024.08.30 - Def RFAs to Plf Set 2 (Excerpts) |
| 126 | 2024.09.20 - August's Second Supp Initial Disclosures |
| 127 | 2024.09.23 - Meet and Confer LT re MSJ |
| 128 | 2024.09.25 - August's Third Supp Initial Disclosures |
| 129 | 2024.09.27 - Decl. of James Passmore re Non-Service |
| 130 | 2024.09.27 - Meet and Confer LT P's Counsel |
| 131 | 2024.10.01 - Meet and Confer LT P's Counsel |
| 132 | 2024.10.03 - August's Fourth Supp Initial Disclosures |
| 133 | 2024.10.04 - M&C Email Chain |
| 134 | 2024.10.07 - Doc Prodn - Excerpt Showing Late Prodcued License Comps  **[SUBJECT OF APPLICATION TO SEAL]** |
| 135 | 2024.10.10 - Doc Prodn - Complete AUGUST001057-65 **[SUBJECT OF APPLICATION TO SEAL]** |
| 136 | 2024.10.11 - August's Fifth Supp Initial Disclosures |

-2-

DEFENDANT LINE PBC'S APPENDIX OF EXHIBITS
IN SUPPORT OF ITS MOTION FOR SANCTIONS

| 137 | 2024.10.25 - M&C Ltr re Motion for Sanctions |
| 138 | 2024.11.07 - M&C Emails re Mtn for Sanctions |
| 139 | SDNY Defendants Letter |
| 140 | SDNY Order re Sanctions |
| 141 | Excerpts of Depo of Lauren Kelly |

Respectfully submitted,                    PIETZ & SHAHRIARI, LLP

DATED: November 8, 2024              BY: */s/ Morgan E. Pietz*

                                            Morgan E. Pietz
                                            *Attorneys for Defendant*
                                            *Line Financial PBC*

-3-

DEFENDANT LINE PBC'S APPENDIX OF EXHIBITS
IN SUPPORT OF ITS MOTION FOR SANCTIONS

# EXHIBIT 114

**2024.01.05- August Image Original Initial Disclosures**

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LINE FINANCIAL, PBC, et al.,<br><br>Defendants. | Case No. 2:23-cv-05492-WLH-AS<br>*Hon. Wesley L. Hsu Presiding*<br><br>**PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES** |

Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1). August is investigating the claims and defenses asserted in this case. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

## A.    Witnesses

Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.    Bill Hannigan, Owner of August, reachable through counsel, regarding the creation and registration of the original photos at issue in this case (the "Subject

Photographs"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.      Andrew Eccles, Brian Bowen Smith, Austian Hargrave, Art Streiber, Joe Pugliese, David Slijper, Alexi Lubomirski, Shayan Asgharnia, and Martin Schoeller, the photographers of the Subject Photographs, reachable through counsel, regarding the creation, originality, ownership, and registration of their respective Subject Photographs; their licensing histories and rates, including for their respective Subject Photographs; as well as their respective appointments of August as the exclusive syndicator of their respective Subject Photographs.

3.      Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), regarding access to the Subject Photographs; use of the Subject Photographs, including but not limited to displaying the Accused Posts on useline.com (and any/all associated social media pages); any/all efforts to clear use of the Subject Photographs prior to the display of the Accused Posts; the total revenue and gross profit earned from, and total costs and expenses incurred because of, the Accused Posts; viewership analytics for the Accused Posts; prior experience with obtaining licenses to use photographs, knowledge of and experience with copyright law and copyright infringement cases, and/or knowledge of ownership of the copyrights in (or knowledge that it did not own the copyrights in) the Subject Photographs; Defendant's Answer and the factual bases for their asserted affirmative defenses; Defendant's discovery responses and document production; Defendant's advertising practices; licenses, subscriptions, agreements, and/or permissions regarding the display of photographs on useline.com; and the actions and steps taken to investigate the claims asserted in this case upon notice of alleged infringement.

4.      The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's

employee(s), regarding the creation, dissemination, and exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.    <u>Documents</u>**

1.    Documents reflecting the creation, ownership, and registration of the Subject Photographs;

2.    Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

3.    Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

4.    Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.    Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

6.    Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

7.    The discovery responses and documents produced in this case.

**C.    <u>Damages</u>**

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs.

The amount of such fees will be determinable after the full scope of Defendant's exploitation of the Subject Photographs is established. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

August will also seek its costs and attorneys' fees incurred in prosecuting this case. *See* 17 U.S.C. § 505.

**D.    Insurance**

August does not have insurance for the claims at issue.


Date: January 5, 2024          By:    */s/ Benjamin F. Tookey*
                                      Stephen M. Doniger, Esq.
                                      Benjamin F. Tookey, Esq.
                                      DONIGER / BURROUGHS
                                      *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is:   DONIGER/BURROUGHS PC, 603 Rose Ave, Venice, CA 90291.

On January 5, 2024 I served the ENCLOSED documents described as: **PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES,** on the following necessary part(ies) in this action:

> Morgan E. Pietz
> PIETZ & SHAHRIARI, LLP
> 6700 S. Centinela Avenue, 2nd Floor
> Culver City, CA 90230
> T: (310) 424-5557
> F : (310) 597-4626
> E: morgan@pstrials.com; jessica@pstrials.com; admin@pstrials.com
>
> *Attorneys for Defendant Line Financial PBC*

☒ by sending ☐ the original ☒ true cop(ies) thereof via the following means:

☒ BY ELECTRONIC MAIL (E-MAIL)

☒ I caused a true copy of the documents to be sent to the persons at the corresponding electronic addresses as indicated above on the above-mentioned date. I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

EXECUTED January 5, 2024 in Los Angeles, California.

☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*/s/ Inigo Gatus*
Inigo Gatus

# EXHIBIT 115

**2024.05.22 - Depo Notice to Alexi Lubomirski (2pm)**

Morgan E. Pietz (SBN 260629)
 morgan@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:  (310) 424-5557
Facsimile:   (310) 597-4626

Attorneys for Defendant
**LINE FINANCIAL PBC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, a New York Limited Liability Company,<br><br>     Plaintiff,<br><br>v.<br><br>LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,<br><br>     Defendant(s). | Case No. 2:23-cv-05492-WLH-AS<br><br>Assigned for All Purposes to the Honorable Wesley S. Hsu<br><br>**DEFENDANT LINE FINANCIAL PBC'S NOTICE OF DEPOSITION TO ALEXI LUBOMIRSKI WITH REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Date:     June 21, 2024<br>Time:     2:00 p.m.<br>Location:  PIETZ & SHAHRIARI, LLP<br>           6700 S. Centinela Ave.<br>           2nd Floor<br>           Culver City, CA 90230 |

-1-

## NOTICE OF DEPOSITION SUBPOENA

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE:**

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, defendant LINE FINANCIAL PBC will take the deposition of ALEXI LUBOMIRSKI.

Defendant further requests the production of the documents identified in the enclosed ATTACHMENT TO NOTICE OF DEPOSITION.

This deposition will take place at the offices of Pietz & Shahriari, LLP, 6700 S. Centinela Ave., 2nd Floor, Culver City, CA 90230, commencing at 2:00 p.m. on June 21, 2024, unless the parties mutually agree to hold the deposition on a different date or time and/or at a different location.

This deposition will be taken and recorded by stenographic and audiovisual means before an officer authorized to administer oaths and will continue from day to day until completed. The deposition will be taken for the purposes of discovery, for use at trial in this matter, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Dated: May 22, 2024                    PIETZ & SHAHRIARI, LLP


                                       By:  */s/ Morgan E. Pietz*
                                       _____
                                       Morgan E. Pietz
                                       *Attorney for Defendant*
                                       *Line Financial PBC*

## ATTACHMENT TO NOTICE OF DEPOSITION

### Definitions

1. "<u>DOCUMENTS</u>" have the meanings set forth in Federal Rule of Evidence 1001(a) and also means the original or exact copies of any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical recordings and any transcripts thereof, draft, final, original, reproduced, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, computer data files, electronically stored information ("ESI") in the possession, custody, and/or control of Plaintiff or Plaintiffs agents and counsel or may through reasonable efforts be obtained of Plaintiffs agents and counsel, or known by Plaintiff to exist; it shall also mean all copies of documents by whatever means made, including intermediate or working copies. "DOCUMENT(S)" includes all attachments and enclosures thereto including, but not limited to any correspondence, notes (whether handwritten or computerized), agreements, lists, memoranda, minutes, records, instruments, publications, reports, books, pamphlets, summaries, drafts, calendars, communications, telegrams, facsimiles, emails, manuals, guidelines, rules, instructions, electronic tapes, discs or other recordings, computer programs, hard drives, discs, printouts, data cards, computer files, backup tapes, hard disks, litigation data bases, and other data compilations from which information can be obtained. Any copies of "Documents" bearing notations or marks not found on the original shall be deemed to be different documents and shall also be produced.

2. A DOCUMENT is required to be produced if it is a copy of an original and if that copy in any way differs from the original including, but not limited to, a difference caused by reason of handwritten notations or being appended to another document.

3. "<u>COMMUNICATIONS</u>" means all correspondence, inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, notes,

emails, telegrams, telexes, facsimiles, social media posts or comments, other forms of communicating or transmitting information, including, but not limited to, oral, digital, and written communications and includes DOCUMENTS (as defined above) exchanged in relation to such communications.

4.    "<u>RELATES TO</u>", "<u>RELATING TO</u>" and "<u>RELATED TO</u>" means concerning, describing, discussing, evidencing, reflecting, compromising, illustrating, containing, embodying, constituting, analyzing, stating, identifying, referring to, commenting on, connected with, substantiating, establishing, memorializing, proving, disproving, contradicting, mentioning, regarding, reflecting, dealing with, in any way pertaining to, or supporting, directly or indirectly.

5.    "<u>ALL</u>" shall be construed as "all and each." "<u>AND</u>" and "<u>OR</u>" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

6.    "<u>COPYRIGHT INFRINGEMENT ACTION</u>" means the action entitled *AUGUST IMAGE, LLC V. LINE FINANCIAL PBC, ET AL* (USDC Central District of California Case # 2:23-cv-05492-WLH-AS).

7.    "<u>PLAINTIFF</u>" or "<u>AUGUST</u>" means plaintiff, AUGUST IMAGE, LLC, a New York Limited Liability Company, and its principals, officers, directors, employees, agents and attorneys, including any of its affiliates, predecessor entities, parent companies, and subsidiaries.

8.    "<u>LINE FINANCIAL</u>" or "<u>DEFENDANT</u>" means defendant LINE FINANCIAL PBC, a Delaware corporation, and its principals, officers, directors, employees, agents and attorneys, including any of its affiliates, predecessor entities, parent companies, and subsidiaries and any other person or entity acting on its behalf.

9.    "<u>DEPONENT</u>," "<u>YOU</u>" or "<u>YOUR</u>" means the individual photographer identified as the deponent on page 1 of this notice of deposition.

10.    "AGREEMENT(S)" shall mean and include every proposal, contract, agreement, or understanding, whether reflected in writing, verbally, or implied, and documents reflecting such proposals, contracts, agreements, or understandings and the negotiations thereof, whether or not finalized.

11.    "COMPLAINT" means the Complaint filed by AUGUST in this action on or about July 10, 2023.

12.    "SUBJECT PHOTOGRAPHS" means and refers to the "20 original photographs registered with the U.S. Copyright Office" as defined in Paragraph 8 of the Complaint and which are specifically identified on Exhibit 1 to the Complaint.

13.    "OTHER PHOTOGRAPHS" means and refers to any photograph or image other than the Subject Photographs for which YOU contend DEFENDANT infringed upon YOUR copyright(s) in said photograph or image.

14.    "YOUR PHOTOGRAPHS" collectively means and refers to: (a) any of the "20 original photographs registered with the U.S. Copyright Office" that RELATE TO YOU or for which YOU hold any copyrights or other rights, and (b) the OTHER PHOTOGRAPHS.

15.    "PHOTOGRAPHERS" means and refers to the photographers of the SUBJECT PHOTOGRAPHS: Andrew Eccles, Brian Bowen Smith, Austian Hargrave, Art Streiber, Joe Pugliese, David Slijper, Alexi Lubomirski, Shayan Asgharnia, and Martin Schoeller.

16.    "ACCUSED POSTS" means and refers to the images on Line Financial's websites that allegedly infringe on AUGUST and/or YOUR copyrights in the SUBJECT PHOTOGRAPHS, including, but not limited to, the ACCUSED POSTS identified on Exhibit 1 to the Complaint.

## Instructions

A.    In producing a DOCUMENT, the DEPONENT is requested to furnish all DOCUMENTS in DEPONENT's actual or constructive possession, custody, and/or control including, without limitation, DOCUMENTS which may be in the

physical possession of its advisors, attorneys, investigators, employees, agents, associates, affiliates and/or representatives.

B.    In producing responsive DOCUMENTS, the DEPONENT is requested to produce the original of each DOCUMENT, together with all non-identical copies and drafts of that DOCUMENT.  (A non-identical copy is a document which was initially identical in all respects to any other document, but which now is no longer identical by reason of any notation or other modification of any kind whatsoever including, without limiting the generality of the foregoing, notes or modifications on the backs of pages or in the margin thereof, and/or on any copies thereof).

C.    It is requested that all DOCUMENTS be produced in the form in which they are found in their normal filing place, and that the file folders or other bindings in which such documents are found be produced with the DOCUMENTS.  If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

D.    DOCUMENTS attached to each other should not be separated.

E.    If a requested DOCUMENT cannot be produced in full, please produce it to the extent possible, indicating what portion or portions are being withheld and the reason(s) the same is being withheld.

F.    If a DOCUMENT otherwise responsive to this request was, but no longer is, in DEPONENT s actual or constructive possession, custody or control, DEPONENT should be prepared to state whether the DOCUMENT: (I) is lost or destroyed; (ii) has been transferred to another person or entity either voluntarily or involuntarily; or (iii) has been otherwise disposed of, and, in each instance; (iii) explain the circumstance surrounding the disposition, including the date or approximate date of the disposition.

G.    Each request set forth below should be construed independently, and not in reference to any other request for purposes of limitation.

1    H.    The use of the terms and, or and/or should be construed conjunctively
2    and disjunctively for the broadest possible meaning.

3    I.    The singular use of any term or phrase includes its plural, and the plural
4    of any term or phrase includes the singular.

5    J.    The production of business records provided herein shall be supported
6    by a Custodian of Records Declaration.

7

8    **Requests for Production of Documents at Deposition**

9

10    **REQUEST FOR PRODUCTION NO. 1:**

11    A copy of the copyright registration certificates for each of YOUR
12    PHOTOGRAPHS.

13    **REQUEST FOR PRODUCTION NO. 2:**

14    For each of YOUR PHOTOGRAPHS, please produce the exact "deposit
15    copy" that was submitted to the Library of Congress as part of your application to
16    register the copyright for that design with the United States Copyright Office, in its
17    original native format.

18    **REQUEST FOR PRODUCTION NO. 3:**

19    ALL DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR
20    application(s) to the United States Copyright Office for YOUR PHOTOGRAPHS,
21    including copies of the applications and any correspondence with the Copyright
22    Office.

23    **REQUEST FOR PRODUCTION NO. 4:**

24    For each of YOUR PHOTOGRAPHS, ALL DOCUMENTS and
25    COMMUNICATIONS that RELATE TO the creation of that photograph or image,
26    including ALL the different versions that have ever existed, ALL prior or
27    subsequent drafts (such as versions which were contemplated but not used), original
28    images or drawings, copies of draft Adobe Illustrator files, the same image file with

different names, and emails transferring different versions from one PERSON to another.

**REQUEST FOR PRODUCTION NO. 5:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any PERSON providing creative or other feedback as to any draft version of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 6:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any public domain elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element (e.g., a copy of a source art image file used for inspiration).

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any licensed elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element (e.g., a copy of the licensed artwork).

**REQUEST FOR PRODUCTION NO. 8:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any non-original elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element.

**REQUEST FOR PRODUCTION NO. 9:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any prior work of authorship that was included in YOUR PHOTOGRAPHS, including a copy of any such work.

**REQUEST FOR PRODUCTION NO. 10:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR purported ownership of YOUR PHOTOGRAPHS, including any work-for-hire agreements, assignments, licenses, purchase agreements, or related emails.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any agreements entered into by YOU with ALL PERSON(S) who actually designed or created YOUR PHOTOGRAPHS, including copies of any such agreements.

**REQUEST FOR PRODUCTION NO. 12:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any payments made by YOU to ALL PERSON(S) that actually designed or created YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 13:**

DOCUMENTS sufficient to IDENTIFY ALL of YOUR employees, subcontractors and agents who were involved in creating YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 14:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any policies, procedures, or business practices YOU have ever had in place in order to ensure that artwork or photograph that YOU create or that YOU acquire from a third party does not infringe the intellectual property rights of others.

**REQUEST FOR PRODUCTION NO. 15:**

ALL DOCUMENTS and COMMUNICATIONS that YOU may rely upon to establish when each of YOUR PHOTOGRAPHS was first created.

**REQUEST FOR PRODUCTION NO. 16:**

A DOCUMENT showing when and how YOUR PHOTOGRAPHS were first published.

**REQUEST FOR PRODUCTION NO. 17:**

ALL DOCUMENTS and COMMUNICATIONS that YOU may rely upon to establish when each of YOUR PHOTOGRAPHS was first published.

**REQUEST FOR PRODUCTION NO. 18:**

ALL DOCUMENTS and COMMUNICATIONS that YOU may rely upon to establish that the defendant purportedly had access to YOUR PHOTOGRAPHS.

1   **REQUEST FOR PRODUCTION NO. 19:**

2         For each of YOUR PHOTOGRAPHS, ALL of YOUR purchase orders,

3   purchase contracts, receiving invoices, and any other purchase or commission

4   documentation.

5   **REQUEST FOR PRODUCTION NO. 20:**

6         If YOU claim that any of YOUR PHOTOGRAPHS are based in whole or in

7   part on prior copyright registrations that are not alleged as copyrights in suit,

8   produce copies of the copyright registration certificates and deposit copies for those

9   prior registrations.

10  **REQUEST FOR PRODUCTION NO. 21:**

11        ALL DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR

12  allegation that LINE FINANCIAL's alleged infringement was willful.

13  **REQUEST FOR PRODUCTION NO. 22:**

14        ALL DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR

15  licensing of YOUR PHOTOGRAPHS to third parties, including, but not limited to,

16  ALL license or sub-license agreements, invoices, sales receipts, sales summaries or

17  financial records.

18  **REQUEST FOR PRODUCTION NO. 23:**

19        Sufficient DOCUMENTS to show your gross profits from licensing YOUR

20  PHOTOGRAPHS to third parties for each of the last three (3) years.

21  **REQUEST FOR PRODUCTION NO. 24:**

22        Sufficient DOCUMENTS to identify the date on which YOUR sale or

23  licensing of YOUR PHOTOGRAPHS commenced.

24  **REQUEST FOR PRODUCTION NO. 25:**

25        Sufficient DOCUMENTS to identify the date on which YOUR sales or

26  licensing of YOUR PHOTOGRAPHS ceased.

27

28

DEFENDANT LINE FINANCIAL PBC'S NOTICE OF DEPOSITION TO ALEXI
LUBOMIRSKI REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 26:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO LINE FINANCIAL's alleged infringement of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 27:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO LINE FINANCIAL's alleged access to YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 28:**

ALL COMMUNICATIONS between YOU and LINE FINANCIAL prior to the filing of the complaint.

**REQUEST FOR PRODUCTION NO. 29:**

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR advertising, promotion, and marketing of YOUR PHOTOGRAPHS within the last three years, including ALL catalogs, advertisements, price sheets, flyers, and brochures depicting or referring to YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 30:**

Financial DOCUMENTS YOU may rely upon to evidence the total revenue and profits RELATING TO YOUR PHOTOGRAPHS within the last three years, such as sales summaries, profit and loss reports, quarterly reports, or annual reports.

**REQUEST FOR PRODUCTION NO. 31:**

For each expense that YOU claim it is appropriate to deduct as costs, expenses or overhead in calculating the profits of YOUR PHOTOGRAPHS within the last three years, produce DOCUMENTS sufficient to substantiate the amount of that expense.

**REQUEST FOR PRODUCTION NO. 32:**

A copy of any cease-and-desist letter sent by or to YOU that alleges infringement of any of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 33:**

ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 34:**

ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO YOUR PHOTOGRAPHS and AUGUST and/or IMAGERIGHTS INTERNATIONAL, INC.

**REQUEST FOR PRODUCTION NO. 35:**

ALL DOCUMENTS COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data referenced in Section B of "PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES" served by AUGUST in this action on or about January 5, 2024. The information requested includes, but is not limited to: (1) Documents reflecting the creation, ownership, and registration of the Subject Photographs; (2) Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs; (3) Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use; (4) Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs; (5) Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts; (6) Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs.

**REQUEST FOR PRODUCTION NO. 36:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO ANY AND ALL

AGREEMENTS pursuant to which IMAGERIGHTS INTERNATIONAL, INC. monitored and/or identified purported infringement of YOUR PHOTOGRAPHS and ALL payments made in connection with such agreement.

**REQUEST FOR PRODUCTION NO. 37:**

ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO rights involving YOUR PHOTOGRAPHS, including, but not limited to, AGREEMENTS and/or DOCUMENTS RELATING TO copyrights, ownership rights, licensing rights, assignment rights, exclusivity rights and rights to pursue claims to initiate litigation involving YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 38:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the registration for each of YOUR PHOTOGRAPHS and who registered them.

**REQUEST FOR PRODUCTION NO. 39:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the rights, terms and implementation of the "Recovery Service Agreement" between IMAGERIGHTS INTERNATIONAL, INC., on the one hand, and AUGUST and/or the YOU, on the other hand, pursuant to which IMAGERIGHTS INTERNATIONAL, INC. is appointed as an agent or an "exclusive agent" to identify potentially unauthorized uses of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 40:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the identity(ies) of and last known contact information for any person, business, company, corporation, limited liability company, partnership or any other individual or entity holding any rights RELATING TO YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 41:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS INTERNATIONAL, INC.'s monitoring and identification of purported infringement of YOUR PHOTOGRAPHS, including when such monitoring and/or identification began and the means by which IMAGERIGHTS INTERNATIONAL, INC. conducted such monitoring and/or identification, and all payments made or received in connection with such work.

**REQUEST FOR PRODUCTION NO. 42:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS INTERNATIONAL, INC. notifying YOU and/or AUGUST of infringement or potential infringement of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 43:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO YOU and/or AUGUST uploading the images of YOUR PHOTOGRAPHS to IMAGERIGHTS INTERNATIONAL, INC.  *See* https://www.imagerights.com/discovery (Step 1).

**REQUEST FOR PRODUCTION NO. 44:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS INTERNATIONAL, INC.'s use of "advanced mathematical algorithms to calculate a unique fingerprint for each of [YOUR PHOTOGRAPHS]."  *See* https://www.imagerights.com/discovery (Step 2).

**REQUEST FOR PRODUCTION NO. 45:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS INTERNATIONAL, INC.'s efforts to "search[] the internet and collect[]

-14-

fingerprints for any image [IMAGERIGHTS INTERNATIONAL, INC.] see[s] online" RELATING TO the PHOTOGRAPHERS, AUGUST and/or YOUR PHOTOGRAPHS  *See* https://www.imagerights.com/discovery (Step 3).

**REQUEST FOR PRODUCTION NO. 46:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO ALL "sightings" that were "analyzed, sorted and ranked, with the pursuable claims delivered to [YOUR and/or AUGUST's] Inbox" or otherwise shared by IMAGERIGHTS INTERNATIONAL, INC. with YOU and/or AUGUST.  *See* https://www.imagerights.com/discovery (Step 4).

**REQUEST FOR PRODUCTION NO. 47:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the total amount of revenue IMAGERIGHTS INTERNATIONAL, INC. received from AUGUST and/or YOU for each year in 2018, 2019, 2020, 2021, 2022, 2023 and 2024 in connection with monitoring and identifying purported infringement of copyrights.

**REQUEST FOR PRODUCTION NO. 48:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO YOUR discovery of any instances of copyright infringement by LINE FINANCIAL, including, but not limited to, any instances of copyright infringement RELATING TO YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 49:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO ALL COMMUNICATIONS between YOU, AUGUST, IMAGERIGHTS INTERNATIONAL, INC. and/or LINE FINANCIAL concerning LINE FINANCIAL's purported infringement of YOUR PHOTOGRAPHS.

**REQUEST FOR PRODUCTION NO. 50:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO any other payment made or due to any person, business, company, corporation, limited liability company, partnership or any other individual or entity RELATING TO YOU, YOUR PHOTOGRAPHS, the SUBJECT PHOTOGRAPHS and/or the PHOTOGRAPHERS.

DEFENDANT LINE FINANCIAL PBC'S NOTICE OF DEPOSITION TO ALEXI LUBOMIRSKI REQUESTS FOR PRODUCTION OF DOCUMENTS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 6700 S. Centinela Ave., 2nd Floor, Culver City, CA 90230. On May 9, 2024 I served the foregoing document described as

### DEFENDANT LINE FINANCIAL PBC'S NOTICE OF DEPOSITION TO ALEXI LUBOMIRSKI WITH REQUESTS FOR PRODUCTION OF DOCUMENTS

on all interested parties in this action as follows:

☒By Electronic Service: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

### *SERVICE LIST*

*Person/Entity Served:*          *Attorneys for Plaintiff*
Stephen M. Doniger (SBN 179314)
  stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
  btookey@donigerlawfirm.com
DONIGER/BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

### Executed on May 22, 2024 at Los Angeles, California

**Jessica Martinez**

-17-

DEFENDANT LINE FINANCIAL PBC'S NOTICE OF DEPOSITION TO ALEXI LUBOMIRSKI REQUESTS FOR PRODUCTION OF DOCUMENTS

# EXHIBIT 116

## 2024.08.23 - Excerpts of Ps Disco Responses re ImageRights

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

August Image, LLC,

Plaintiff,

v.

Line Financial, PBC, et al.,

Defendants.

Case No. 2:22-cv-05492-WLH-AS
<u>Hon. Wesley L. Hsu Presiding</u>

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

PROPOUNDING PARTY:     LINE FINANCIAL, PBC

RESPONDING PARTY:     AUGUST IMAGE, LLC

SET:     ONE

**TO PROPOUNDING PARTY AND ITS COUNSEL OF RECORD:**

Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiff August Image, LLC hereby responds to Defendant's first set of interrogatories ("ROGs").

## <u>PRELIMINARY STATEMENT</u>

Plaintiff's responses to the below ROGs are based upon his investigation to date (i.e., in the time available since service of the ROGs). Because Plaintiff's investigation in this case remains ongoing, and as of the date of these responses, Plaintiff does (or may) not yet know of or possess all information potentially relevant to this case, including through discovery from Defendants and/or non-

parties. As such, Plaintiff's responses are based upon information now known to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the ROGs. Because Plaintiff may acquire additional information (through discovery from Defendants (and/or non-parties) or otherwise) bearing upon the ROGs and Plaintiff's responses thereto, Plaintiff reserves the right to (1) supplement, and/or otherwise subsequently revise or amend, these responses based upon any information, evidence, and/or documents hereafter discovered; and (2) produce, introduce, and/or otherwise rely upon such additional or subsequently acquired or discovered information, evidence, and/or documents at the time of any pretrial proceedings or trial held in this case.

## **GENERAL OBJECTIONS**

Plaintiff incorporates by reference each of the following General Objections in its responses below:

1.      Plaintiff objects to each of the ROGs as unduly burdensome, overbroad, and disproportionate to the needs of the case to the extent they seek information that is not relevant to the claims or defenses asserted in this case.

2.      Plaintiff objects to each ROG to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

3.      Plaintiff objects to each ROG to the extent it seeks information that is publicly available; equally available to the Propounding Party; and/or already within the possession, custody, or control of the Propounding Party.

4.      Plaintiff objects to each ROG as compound and containing multiple subparts.

5.      Plaintiff objects to Instructions 4, 6-8 as purporting to impose obligations on Plaintiff beyond those required under Fed. R. Civ. P. 33.

6.      Plaintiff objects to Definition 1 ("YOU") as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES
Exhibit 116 (Excerpts) - 2

scope, and calling for information outside of Plaintiff's possession, custody, or control.

7.    Plaintiff objects to Definition 4 ("IDENTIFY") on the ground that it purports to impose obligations on Plaintiff beyond those required under Fed. R. Civ. P. 26 and 33, and as harassing and oppressive.

8.    Plaintiff objects to Definition 10 ("SUBJECT PHOTOGRAPHS") to the extent it includes photographs that are not at issue in this case and not relevant to the claims or defenses asserted in this case. Plaintiff understands this Definition to refer only to the photographs identified and referred to in the operative Complaint as the "Subject Photographs."

9.    Plaintiff objects to Definitions 12 ("OTHER PHOTOGRAPHS") and 13 ("YOUR PHOTOGRAPHS") on the ground that they include photographs that are not at issue in this case and not relevant to the claims or defenses asserted in this case. Plaintiff understands "OTHER PHOTOGRAPHS" and "YOUR PHOTOGRAPHS" as having the same meaning as Plaintiff's understanding of "SUBJECT PHOTOGRAPHS" set forth above.

## INTERROGATORIES

## INTERROGATORY NO. 1

For each of the SUBJECT PHOTOGRAPHS, please IDENTIFY ALL aspects of the photograph that constitute original authorship.

In order to do this, for each photograph: (a) if there are individual elements of the photograph that YOU are claiming constitute original authorship, such that they are individually protectable, then YOU should identify each such element; (b) if YOU are claiming that the photograph is an original selection and arrangement of otherwise unprotectable elements, then you should identify each of the elements that are part the claimed selection and arrangement, and explain what is purportedly original about the claimed selection and arrangement; (c) if there are elements of the photograph that YOU concede are within the public domain, then

Exhibit 116 (Excerpts) - 3

1    **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

2            Subject to the above general and specific objections, and to the extent

3    August understands this ROG, August identifies AUGUST000001-36,

4    AUGUST000090-103, AUGUST000120-151, AUGUST000152-75,

5    AUGUST000413-15, AUGUST000416-25, AUGUST000426-31,

6    AUGUST000593-602, and AUGUST000687-724 pursuant to Fed. R. Civ. P.

7    33(d). August's syndication agreements with the photographers of the Subject

8    Photographs includes representations and warranties from those photographers that

9    their photographs do not infringe the copyright of any third party.

10   **INTERROGATORY NO. 12:**

11           State ALL facts, IDENTIFY ALL PERSONS with knowledge of those facts,

12   and IDENTIFY ALL DOCUMENTS and COMMUNICATIONS that YOU claim

13   support YOUR allegation that PROPOUNDING PARTY actually copied or had

14   access to the SUBJECT PHOTOGRAPHS. Your response should include the

15   names of any specific individuals associated with PROPOUNDING PARTY who

16   you claim copied or had access to each of the SUBJECT PHOTOGRAPHS and

17   explain how and when YOU claim they accessed the SUBJECT PHOTOGRAPHS.

18   **RESPONSE TO INTERROGATORY NO. 12:**

19           August objects to this ROG on the ground that it is overbroad, unduly

20   burdensome, disproportionate to the needs of the case, harassing, and oppressive

21   because it seeks "ALL facts," "ALL PERSONS with knowledge of those facts,"

22   and "ALL DOCUMENTS and COMMUNICATIONS." August objects to this

23   ROG on the ground that it calls for a legal conclusion as to "copied" and "access."

24   August objects to this ROG to the extent it seeks information that is not relevant to

25   the claims or defenses asserted in this case. August objects to this ROG on the

26   ground that the term "how and when YOU claim they accessed the SUBJECT

27   PHOTOGRAPHS" is confusing and unintelligible. August objects to this ROG to

28   the extent it seeks information protected by the attorney-client privilege and/or

Exhibit 116 (Excerpts) - 4

1  work-product doctrine. August objects to this ROG on the ground that it seeks

2  information that is equally available to Defendant and/or already in Defendant's

3  possession, custody, or control.

4          Subject to the above general and specific objections, and to the extent

5  August understands this ROG, August responds as follows: Pursuant to Fed. R.

6  Civ. P. 33(d), August will produce documents from which the answer to this ROG

7  may be ascertained.

8  **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

9          Subject to the above general and specific objections, and to the extent

10 August understands this ROG, August responds as follows: AUGUST000037-103,

11 AUGUST000198-216, AUGUST000575, AUGUST000581-92, AUGUST000791-

12 820, AUGUST000838-43, AUGUST000845-47, LF (AUGUST) – 000030-43, and

13 Defendant's responses to Interrogatory Nos. 1-2 and 4-5. August identifies Bill

14 Hannigan, Lauren Kelly, Defendant, and the persons identified in Defendant's

15 above-referenced responses.

16 **INTERROGATORY NO. 13:**

17         State ALL facts, IDENTIFY ALL PERSONS with knowledge of those facts,

18 and IDENTIFY ALL DOCUMENTS and COMMUNICATIONS that YOU claim

19 support YOUR allegation that PROPOUNDING PARTY's alleged infringement

20 was willful.

21 **RESPONSE TO INTERROGATORY NO. 13:**

22         August objects to this ROG on the ground that it is overbroad, unduly

23 burdensome, disproportionate to the needs of the case, harassing, and oppressive

24 because it seeks "ALL facts," "ALL PERSONS with knowledge of those facts,"

25 and "ALL DOCUMENTS and COMMUNICATIONS." August objects to this

26 ROG on the ground that it calls for a legal conclusion as to "infringement" and

27 "willful[ness]." August objects to this ROG to the extent it seeks information

28 protected by the attorney-client privilege and/or work-product doctrine. August

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit 116 (Excerpts) - 5

the photograph or images of the photograph to (e.g., names and addresses of companies or stores, etc.)" is overbroad, unduly burdensome, disproportionate to the needs of the case, harassing, and oppressive. August objects to this ROG on the ground that the inconsistent use of "SUBJECT PHOTOGRAPHS," "each photograph," "the photograph," and "images of the photograph" renders this ROG confusing and unintelligible. August objects to this ROG on the ground that it seeks information in a manner that is not maintained by August in the ordinary course of business. August objects to this ROG to the extent it seeks information that is not within August's possession, custody, or control.

Dated: August 23, 2024                    DONIGER / BURROUGHS

                              By:    */s/ Benjamin F. Tookey*
                                     Stephen M. Doniger, Esq.
                                     Benjamin F. Tookey, Esq.
                                     *Attorneys for Plaintiff*

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES
Exhibit 116 (Excerpts) - 6

1  Stephen M. Doniger (SBN 179314)
   stephen@donigerlawfirm.com
2  Benjamin F. Tookey (SBN 330508)
   btookey@donigerlawfirm.com
3  DONIGER / BURROUGHS
4  603 Rose Avenue
   Venice, California 90291
5  Telephone: (310) 590-1820
6
7  *Attorneys for Plaintiff*

8            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
9

10 August Image, LLC,                    Case No. 2:22-cv-05492-WLH-AS
                                         *Hon. Wesley L. Hsu Presiding*
11 Plaintiff,
                                         **VERIFICATION**
12
13 v.

14 Line Financial, PBC, et al.,

15 Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

                              1
                         VERIFICATION

Exhibit 116 (Excerpts) - 7

I, Bill Hannigan, am the founder and owner of August Image, LLC, a party to this case. I have read PLAINTIFF AUGUST IMAGE, LLC'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES, am familiar with its contents, and make this verification for and on August's behalf. With respect to any part of the foregoing that is within my own personal knowledge, I state that portion is true. All other matters contained therein are based on information gathered by others; and on that basis, I am informed and believe, and thereon state, that such information is true.

I reserve all rights to make changes should it appear that the foregoing contains any omissions or errors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___August 21, 2024___ in ___Marlboro, Vermont___

_____

Bill Hannigan

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| August Image, LLC, | Case No. 2:22-cv-05492-WLH-AS |
| Plaintiff, | <u>Hon. Wesley L. Hsu Presiding</u> |
| v. | **PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |
| Line Financial, PBC, et al., | |
| Defendants. | |

PROPOUNDING PARTY:     LINE FINANCIAL, PBC

RESPONDING PARTY:     AUGUST IMAGE, LLC

SET:     ONE

**TO PROPOUNDING PARTY AND ITS COUNSEL OF RECORD:**

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiff August Image, LLC hereby responds to Defendants' first set of requests for the production of documents and things ("RFPs").

## PRELIMINARY STATEMENT

Plaintiff's responses to the below RFPs are based upon his investigation to date (i.e., in the time available since service of the RFPs). Because Plaintiff's investigation in this case remains ongoing, and as of the date of these responses, Plaintiff does (or may) not yet know of or possess all information potentially

relevant to this case, including through discovery from Defendants and/or non-parties. As such, Plaintiff's responses are based upon information now known to Plaintiff and that Plaintiff believes to be relevant to the subject matter covered by the RFPs. Because Plaintiff may acquire additional information (through discovery from Defendants (and/or non-parties) or otherwise) bearing upon the RFPs and Plaintiff's responses thereto, Plaintiff reserves the right to (1) supplement, and/or otherwise subsequently revise or amend, these responses based upon any information, evidence, and/or documents hereafter discovered; and (2) produce, introduce, and/or otherwise rely upon such additional or subsequently acquired or discovered information, evidence, and/or documents at the time of any pretrial proceedings or trial held in this case.

## GENERAL OBJECTIONS

Plaintiff incorporates by reference each of the following General Objections in its Responses below:

1.     Plaintiff objects to each of the RFPs as unduly burdensome, overbroad, and disproportionate to the needs of the case to the extent they seek information that is not relevant to the claims or defenses asserted in this case.

2.     Plaintiff objects to each RFP to the extent it seeks information/documents protected by the attorney-client privilege and/or work-product doctrine.

3.     Plaintiff objects to each RFP to the extent it seeks information that is publicly available; equally available to the Propounding Party; and/or already within the possession, custody, or control of the Propounding Party.

4.     Plaintiff objects to Instructions 4 and 7-8 as purporting to impose obligations on Plaintiff beyond those required under Fed. R. Civ. P. 34.

5.     Plaintiff objects to Definition 1 ("YOU") as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal

scope, and calling for information outside of Plaintiff's possession, custody, or control.

6.      Plaintiff objects to Definition 4 ("IDENTIFY") on the ground that it purports to impose obligations on Plaintiff beyond those required under Fed. R. Civ. P. 26 and 33, and as harassing and oppressive.

7.      Plaintiff objects to Definition 10 ("SUBJECT PHOTOGRAPHS") to the extent it includes photographs that are not at issue in this case and not relevant to the claims or defenses asserted in this case. Plaintiff understands this Definition to refer only to the photographs identified and referred to in the operative Complaint as the "Subject Photographs."

8.      Plaintiff objects to Definitions 12 ("OTHER PHOTOGRAPHS") and 13 ("YOUR PHOTOGRAPHS") on the ground that they include photographs that are not at issue in this case and not relevant to the claims or defenses asserted in this case. Plaintiff understands "OTHER PHOTOGRAPHS" and "YOUR PHOTOGRAPHS" as having the same meaning as Plaintiff's understanding of "SUBJECT PHOTOGRAPHS" set forth above.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

A copy of the copyright registration certificates for each of YOUR PHOTOGRAPHS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case.

Subject to the above general and specific objections, August will produce relevant, responsive documents within its possession, custody, or control located after a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 2:**

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Exhibit 116 (Excerpts) - 11

August objects to "electronically stored information and/or other writings or data" as vague, ambiguous, and undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO YOUR PHOTOGRAPHS" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 34:**

ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO YOUR PHOTOGRAPHS, the PHOTOGRAPHERS and/or IMAGERIGHTS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

August objects to "electronically stored information and/or other writings or data" as vague, ambiguous, and undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO YOUR PHOTOGRAPHS, the PHOTOGRAPHERS and/or IMAGERIGHTS" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 35:**

ALL DOCUMENTS COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data referenced in

Section B of "PLAINTIFF'S RULE 26(a)(1) INITIAL DISCLOSURES" served by AUGUST in this action on or about January 5, 2024. The information requested includes, but is not limited to: (1) Documents reflecting the creation, ownership, and registration of the Subject Photographs; (2) Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs; (3) Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use; (4) Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs; (5) Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts; (6) Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

August objects to "electronically stored information and/or other writings or data" as vague, ambiguous, and undefined. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine. August objects to this RFP to the extent it seeks information equally available to Defendant and/or already or solely in Defendant's possession, custody, or control.

Subject to the above general and specific objections, and to the extent August understands this RFP, August will produce relevant, responsive documents within its possession, custody, or control located after a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 36:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO ANY AND ALL AGREEMENTS pursuant to which IMAGERIGHTS monitored and/or identified

1  purported infringement of YOUR PHOTOGRAPHS and ALL payments made in

2  connection with such agreement.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

4       August objects to "electronically stored information and/or other writings or

5  data," "monitored and/or identified," and "in connection with such agreement" as

6  vague, ambiguous, and undefined. August objects to this RFP as seeking a legal

7  conclusion as to "purported infringement." August objects to seeking "ALL

8  DOCUMENTS, COMMUNICATIONS, electronically stored information and/or

9  other writings or data RELATING TO ANY AND ALL AGREEMENTS pursuant

10  to which IMAGERIGHTS monitored and/or identified purported infringement of

11  YOUR PHOTOGRAPHS and ALL payments made in connection with such

12  agreement" as overbroad, unduly burdensome, disproportionate to the needs of the

13  case, unlimited in temporal scope, harassing, and oppressive. August objects to this

14  RFP as seeking information that is not relevant to the claims or defenses asserted

15  in the case. August objects to this RFP to the extent it seeks information protected

16  by the attorney-client privilege and/or work-product doctrine.

17  **REQUEST FOR PRODUCTION NO. 37:**

18       ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS,

19  electronically stored information and/or other writings or data RELATING TO

20  rights involving YOUR PHOTOGRAPHS, including, but not limited to,

21  AGREEMENTS and/or DOCUMENTS RELATING TO copyrights, ownership

22  rights, licensing rights, assignment rights, exclusivity rights and rights to pursue

23  claims to initiate litigation involving YOUR PHOTOGRAPHS.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

25       August objects to "electronically stored information and/or other writings or

26  data," "rights involving," and "RELATING TO copyrights, ownership rights,

27  licensing rights, assignment rights, exclusivity rights and rights to pursue claims to

28  initiate litigation involving YOUR PHOTOGRAPHS" as vague, ambiguous,

and/or undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, AGREEMENTS, electronically stored information and/or other writings or data RELATING TO rights involving YOUR PHOTOGRAPHS" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP to the extent it seeks information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

Subject to the above general and specific objections, and to the extent August understands this RFP, August will produce relevant, responsive documents within its possession, custody, or control located after a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 38:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the registration for each of YOUR PHOTOGRAPHS and who registered them.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

August objects to "electronically stored information and/or other writings or data" as vague, ambiguous, and/or undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the registration for each of YOUR PHOTOGRAPHS and who registered them" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP to the extent it seeks information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

Subject to the above general and specific objections, and to the extent August understands this RFP, August will produce relevant, responsive documents within its possession, custody, or control located after a reasonable and diligent search.

**REQUEST FOR PRODUCTION NO. 39:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the rights, terms and implementation of the "Recovery Service Agreement" between IMAGERIGHTS, on the one hand, and the PHOTOGRAPHERS and/or the YOU, on the other hand, pursuant to which IMAGERIGHTS is appointed as an agent or an "exclusive agent" to identify potentially unauthorized uses of YOUR PHOTOGRAPHS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

August objects to "electronically stored information and/or other writings or data," "rights, terms and implementation," and "pursuant to which IMAGERIGHTS is appointed as an agent or an 'exclusive agent' to identify potentially unauthorized uses" as vague, ambiguous, and undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the rights, terms and implementation of the 'Recovery Service Agreement' between IMAGERIGHTS, on the one hand, and the PHOTOGRAPHERS and/or the YOU, on the other hand, pursuant to which IMAGERIGHTS is appointed as an agent or an 'exclusive agent' to identify potentially unauthorized uses of YOUR PHOTOGRAPHS" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine. August objects to this RFP to the extent it seeks information not within August's possession, custody, or control.

Exhibit 116 (Excerpts) - 16

**REQUEST FOR PRODUCTION NO. 40:**

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the identity(ies) of and last known contact information for any person, business, company, corporation, limited liability company, partnership or any other individual or entity holding any rights RELATING TO YOUR PHOTOGRAPHS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

August objects to "electronically stored information and/or other writings or data," "RELATING TO the identity(ies) of and last known contact information for," and "holding any rights RELATING TO YOUR PHOTOGRAPHS" as vague, ambiguous, and/or undefined. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the identity(ies) of and last known contact information for any person, business, company, corporation, limited liability company, partnership or any other individual or entity holding any rights RELATING TO YOUR PHOTOGRAPHS" as overbroad, unduly burdensome, disproportionate to the needs of the case, unlimited in temporal scope, harassing, and oppressive. August objects to this RFP to the extent it seeks information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

Subject to the above general and specific objections, and to the extent August understands this RFP, August will produce relevant, responsive documents within its possession, custody, or control located after a reasonable and diligent search.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Subject to the above general and specific objections, to the extent August understands this RFP, and to the extent August was able to locate relevant,

Exhibit 116 (Excerpts) - 17

1  responsive, non-privileged documents within its possession, custody, or control after

2  a reasonable and diligent search, such documents have already been produced.

3  **REQUEST FOR PRODUCTION NO. 41:**

4           ALL DOCUMENTS, COMMUNICATIONS, electronically stored

5  information and/or other writings or data RELATING TO IMAGERIGHTS's

6  monitoring and identification of purported infringement of YOUR

7  PHOTOGRAPHS, including when such monitoring and/or identification began

8  and the means by which IMAGERIGHTS conducted such monitoring and/or

9  identification, and all payments made or received in connection with such work.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

11          August objects to "electronically stored information and/or other writings or

12 data," "monitoring and/or identification," "the means by which IMAGERIGHTS

13 conducted such monitoring and/or identification," and "all payments made or

14 received in connection with such work" as vague, ambiguous, and undefined.

15 August objects to this RFP as seeking a legal conclusion as to "purported

16 infringement." August objects to seeking "ALL DOCUMENTS,

17 COMMUNICATIONS, electronically stored information and/or other writings or

18 data RELATING TO IMAGERIGHTS's monitoring and identification of

19 purported infringement of YOUR PHOTOGRAPHS" as overbroad, unduly

20 burdensome, disproportionate to the needs of the case, unlimited in temporal

21 scope, harassing, and oppressive. August objects to this RFP as seeking

22 information that is not relevant to the claims or defenses asserted in the case.

23 August objects to this RFP to the extent it seeks information protected by the

24 attorney-client privilege and/or work-product doctrine. August objects to this RFP

25 to the extent it seeks information not within August's possession, custody, or

26 control.

27 **REQUEST FOR PRODUCTION NO. 42:**

28

1    ALL DOCUMENTS, COMMUNICATIONS, electronically stored

2  information and/or other writings or data RELATING TO IMAGERIGHTS

3  notifying YOU and/or any of the PHOTOGRAPHERS of infringement or potential

4  infringement of YOUR PHOTOGRAPHS.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

6    August objects to "electronically stored information and/or other writings or

7  data" and "notifying" as vague, ambiguous, and undefined. August objects to this

8  RFP as seeking a legal conclusion as to "infringement or potential infringement."

9  August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS,

10  electronically stored information and/or other writings or data RELATING TO

11  IMAGERIGHTS notifying YOU and/or any of the PHOTOGRAPHERS of

12  infringement or potential infringement of YOUR PHOTOGRAPHS" as overbroad,

13  unduly burdensome, disproportionate to the needs of the case, unlimited in

14  temporal scope, harassing, and oppressive. August objects to this RFP as seeking

15  information that is not relevant to the claims or defenses asserted in the case.

16  August objects to this RFP to the extent it seeks information protected by the

17  attorney-client privilege and/or work-product doctrine. August objects to this RFP

18  to the extent it seeks information not within August's possession, custody, or

19  control.

20  **REQUEST FOR PRODUCTION NO. 43:**

21    ALL DOCUMENTS, COMMUNICATIONS, electronically stored

22  information and/or other writings or data RELATING TO YOU and/or any of the

23  PHOTOGRAPHERS uploading the images of YOUR PHOTOGRAPHS to

24  IMAGERIGHTS. See https://www.imagerights.com/discovery (Step 1).

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

26    August objects to "electronically stored information and/or other writings or

27  data" and "uploading the images of YOUR PHOTOGRAPHS" as vague,

28  ambiguous, and undefined. August objects to seeking "ALL DOCUMENTS,

1  COMMUNICATIONS, electronically stored information and/or other writings or

2  data RELATING TO YOU and/or any of the PHOTOGRAPHERS uploading the

3  images of YOUR PHOTOGRAPHS to IMAGERIGHTS" as overbroad, unduly

4  burdensome, disproportionate to the needs of the case, unlimited in temporal

5  scope, harassing, and oppressive. August objects to this RFP as seeking

6  information that is not relevant to the claims or defenses asserted in the case.

7  August objects to this RFP to the extent it seeks information protected by the

8  attorney-client privilege and/or work-product doctrine. August objects to this RFP

9  to the extent it seeks information not within August's possession, custody, or

10  control.

11  **REQUEST FOR PRODUCTION NO. 44:**

12       ALL DOCUMENTS, COMMUNICATIONS, electronically stored

13  information and/or other writings or data RELATING TO IMAGERIGHTS's use

14  of "advanced mathematical algorithms to calculate a unique fingerprint for each of

15  [YOUR PHOTOGRAPHS]." See https://www.imagerights.com/discovery (Step 2).

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

17       August objects to "electronically stored information and/or other writings or

18  data" and "use of 'advanced mathematical algorithms to calculate a unique

19  fingerprint for each of [YOUR PHOTOGRAPHS]'" as vague, ambiguous, and

20  undefined. August objects to seeking "ALL DOCUMENTS,

21  COMMUNICATIONS, electronically stored information and/or other writings or

22  data RELATING TO IMAGERIGHTS's use of 'advanced mathematical

23  algorithms to calculate a unique fingerprint for each of [YOUR

24  PHOTOGRAPHS]'" as overbroad, unduly burdensome, disproportionate to the

25  needs of the case, unlimited in temporal scope, harassing, and oppressive. August

26  objects to this RFP as seeking information that is not relevant to the claims or

27  defenses asserted in the case. August objects to this RFP to the extent it seeks

28  information protected by the attorney-client privilege and/or work-product

1  doctrine. August objects to this RFP to the extent it seeks information not within

2  August's possession, custody, or control.

3  **REQUEST FOR PRODUCTION NO. 45:**

4      ALL DOCUMENTS, COMMUNICATIONS, electronically stored

5  information and/or other writings or data RELATING TO IMAGERIGHTS's

6  efforts to "search[] the internet and collect[] fingerprints for any image

7  [IMAGERIGHTS] see[s] online" RELATING TO the PHOTOGRAPHERS,

8  AUGUST and/or YOUR PHOTOGRAPHS. See

9  https://www.imagerights.com/discovery (Step 3).

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

11      August objects to "electronically stored information and/or other writings or

12  data" and "efforts to 'search[] the internet and collect[] fingerprints for any image

13  [IMAGERIGHTS] see[s] online'" as vague, ambiguous, and undefined. August

14  objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically

15  stored information and/or other writings or data RELATING TO

16  IMAGERIGHTS's efforts to 'search[] the internet and collect[] fingerprints for any

17  image [IMAGERIGHTS] see[s] online' RELATING TO the PHOTOGRAPHERS,

18  AUGUST and/or YOUR PHOTOGRAPHS" as overbroad, unduly burdensome,

19  disproportionate to the needs of the case, unlimited in temporal scope, harassing,

20  and oppressive. August objects to this RFP as seeking information that is not

21  relevant to the claims or defenses asserted in the case. August objects to this RFP

22  to the extent it seeks information protected by the attorney-client privilege and/or

23  work-product doctrine. August objects to this RFP to the extent it seeks

24  information not within August's possession, custody, or control.

25  **REQUEST FOR PRODUCTION NO. 46:**

26      ALL DOCUMENTS, COMMUNICATIONS, electronically stored

27  information and/or other writings or data RELATING TO ALL "sightings" that

28  were "analyzed, sorted and ranked, with the pursuable claims delivered to [YOUR

1 and/or any of the PHOTOGRAPHERS'] Inbox" or otherwise shared by

2 IMAGERIGHTS with YOU and/or any of the PHOTOGRAPHERS. See

3 https://www.imagerights.com/discovery (Step 4).

4 **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

5      August objects to "electronically stored information and/or other writings or

6 data" and "ALL 'sightings' that were 'analyzed, sorted and ranked, with the

7 pursuable claims delivered to [YOUR and/or any of the PHOTOGRAPHERS']

8 Inbox' or otherwise shared by IMAGERIGHTS with YOU and/or any of the

9 PHOTOGRAPHERS" as vague, ambiguous, and undefined. August objects to

10 seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically stored

11 information and/or other writings or data RELATING TO ALL 'sightings' that

12 were 'analyzed, sorted and ranked, with the pursuable claims delivered to [YOUR

13 and/or any of the PHOTOGRAPHERS'] Inbox' or otherwise shared by

14 IMAGERIGHTS with YOU and/or any of the PHOTOGRAPHERS" as overbroad,

15 unduly burdensome, disproportionate to the needs of the case, unlimited in

16 temporal scope, harassing, and oppressive. August objects to this RFP as seeking

17 information that is not relevant to the claims or defenses asserted in the case.

18 August objects to this RFP to the extent it seeks information protected by the

19 attorney-client privilege and/or work-product doctrine. August objects to this RFP

20 to the extent it seeks information not within August's possession, custody, or

21 control.

22 **REQUEST FOR PRODUCTION NO. 47:**

23      ALL DOCUMENTS, COMMUNICATIONS, electronically stored

24 information and/or other writings or data RELATING TO the total amount of

25 revenue IMAGERIGHTS received from YOU and/or any of the

26 PHOTOGRAPHERS for each year in 2018, 2019, 2020, 2021, 2022, 2023 and

27 2024 in connection with monitoring and identifying purported infringement of

28 copyrights.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

    August objects to "electronically stored information and/or other writings or data" and "in connection with monitoring and identifying purported infringement of copyrights" as vague, ambiguous, and undefined. August objects to this RFP as calling for a legal conclusion as to "purported infringement of copyrights." August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the total amount of revenue IMAGERIGHTS received from YOU and/or any of the PHOTOGRAPHERS for each year in 2018, 2019, 2020, 2021, 2022, 2023 and 2024 in connection with monitoring and identifying purported infringement of copyrights" as overbroad, unduly burdensome, disproportionate to the needs of the case, harassing, and oppressive. August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine. August objects to this RFP to the extent it seeks information not within August's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 48:**

    ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO YOUR and/or the PHOTOGRAPHERS' discovery of any instances of copyright infringement by LINE FINANCIAL, including, but not limited to, any instances of copyright infringement RELATING TO YOUR PHOTOGRAPHS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

    August objects to "electronically stored information and/or other writings or data" and "instances of copyright infringement RELATING TO YOUR PHOTOGRAPHS" as vague, ambiguous, and undefined. August objects to this RFP as seeking information that is not relevant to the claims or defenses asserted in the case. August objects to seeking "ALL DOCUMENTS,

1  COMMUNICATIONS, electronically stored information and/or other writings or

2  data RELATING TO YOUR and/or the PHOTOGRAPHERS' discovery of any

3  instances of copyright infringement by LINE FINANCIAL, including, but not

4  limited to, any instances of copyright infringement RELATING TO YOUR

5  PHOTOGRAPHS" as overbroad, unduly burdensome, and disproportionate to the

6  needs of the case. August objects to this RFP as seeking a legal conclusion as to

7  "instances of copyright infringement." August objects to this RFP to the extent it

8  seeks information protected by the attorney-client privilege and/or work-product

9  doctrine.

10     Subject to the above general and specific objections, and to the extent August

11  understands this RFP, August will produce relevant, responsive documents within its

12  possession, custody, or control located after a reasonable and diligent search.

13  **REQUEST FOR PRODUCTION NO. 49:**

14     ALL DOCUMENTS, COMMUNICATIONS, electronically stored

15  information and/or other writings or data RELATING TO ALL

16  COMMUNICATIONS between YOU, AUGUST, IMAGERIGHTS and/or LINE

17  FINANCIAL concerning LINE FINANCIAL's purported infringement of YOUR

18  PHOTOGRAPHS.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

20     August objects to "electronically stored information and/or other writings or

21  data," "ALL DOCUMENTS, COMMUNICATIONS . . . RELATING TO ALL

22  COMMUNICATIONS," "YOU, AUGUST," and "concerning" as vague,

23  ambiguous, and/or undefined. August objects to this RFP as seeking a legal

24  conclusion as to "purported infringement." August objects to this RFP as seeking

25  information that is not relevant to the claims or defenses asserted in the case.

26  August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS,

27  electronically stored information and/or other writings or data RELATING TO

28  ALL COMMUNICATIONS between YOU, AUGUST, IMAGERIGHTS and/or

1   LINE FINANCIAL concerning LINE FINANCIAL's purported infringement of

2   YOUR PHOTOGRAPHS" as overbroad, unduly burdensome, disproportionate to

3   the needs of the case, harassing, oppressive, confusing, and unintelligible. August

4   objects to this RFP to the extent it seeks information protected by the attorney-

5   client privilege and/or work-product doctrine.

6          Subject to the above general and specific objections, and to the extent August

7   understands this RFP, August will produce relevant, responsive documents within its

8   possession, custody, or control located after a reasonable and diligent search.

9   **FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION**

10  **NO. 49:**

11         Subject to the above general and specific objections, to the extent August

12  understands this RFP, and to the extent August was able to locate relevant,

13  responsive, non-privileged documents within its possession, custody, or control after

14  a reasonable and diligent search, such documents have already been produced.

15  **REQUEST FOR PRODUCTION NO. 50:**

16         ALL DOCUMENTS, COMMUNICATIONS, electronically stored

17  information and/or other writings or data RELATING TO any other payment made

18  or due to any person, business, company, corporation, limited liability company,

19  partnership or any other individual or entity RELATING TO YOU, YOUR

20  PHOTOGRAPHS, the SUBJECT PHOTOGRAPHS and/or the

21  PHOTOGRAPHERS.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

23         August objects to "electronically stored information and/or other writings or

24  data" as vague, ambiguous, and/or undefined. August objects to this RFP as

25  seeking information that is not relevant to the claims or defenses asserted in the

26  case. August objects to seeking "ALL DOCUMENTS, COMMUNICATIONS,

27  electronically stored information and/or other writings or data RELATING TO any

28  other payment made or due to any person, business, company, corporation, limited

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS

Exhibit 116 (Excerpts) - 25

liability company, partnership or any other individual or entity RELATING TO YOU, YOUR PHOTOGRAPHS, the SUBJECT PHOTOGRAPHS and/or the PHOTOGRAPHERS" as overbroad, unduly burdensome, disproportionate to the needs of the case, harassing, oppressive, confusing, and unintelligible. August objects to this RFP to the extent it seeks information protected by the attorney-client privilege and/or work-product doctrine.

Dated: August 23, 2024                    DONIGER / BURROUGHS

                        By:    */s/ Benjamin F. Tookey*
                               Stephen M. Doniger, Esq.
                               Benjamin F. Tookey, Esq.
                               DONIGER / BURROUGHS
                               *Attorneys for Plaintiff*

PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS
Exhibit 116 (Excerpts) - 26

# EXHIBIT 117

**2024.05.30 - Ps First Supp Initial Disclosures with Cover Email**

**Morgan Pietz**

---

| From: | Stephen Doniger <stephen@donigerlawfirm.com> |
|---|---|
| Sent: | Thursday, May 30, 2024 6:13 PM |
| To: | London Zamora; Morgan Pietz; Jessica Martinez; Admin |
| Cc: | Benjamin Tookey |
| Subject: | RE: August v Line Financial (CACD 2:23-cv-05492) -- Ps Supp Initial Disclosures |

Morgan,

For the non-party photographer depositions you have noticed, please let us know if/when you have served subpoenas on each proposed deponent. We have provided contact information for each photographer in our client's supplemental initial disclosures. Please note that while I anticipate that we may end up representing them if they testify in this case, at present we have not been retained to represent them and are not authorized to accept subpoenas on their behalf.

Best,

*Stephen M. Doniger, Esq.*
**DONIGER / BURROUGHS**
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

 Book time to meet with me



---

**From:** London Zamora <lzamora@donigerlawfirm.com>
**Sent:** Thursday, May 30, 2024 6:08 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Jessica Martinez <jessica@pstrials.com>; admin@pstrials.com
**Cc:** Benjamin Tookey <btookey@donigerlawfirm.com>; Stephen Doniger <stephen@donigerlawfirm.com>
**Subject:** August v Line Financial (CACD 2:23-cv-05492) -- Ps Supp Initial Disclosures

Counsel:

Please see attached.

Regards,

London L. Zamora

Litigation Paralegal

**DONIGER / BURROUGHS**

603 Rose Avenue

Venice, California 90291

Phone: (310) 590-1820

Electronic: lzamora@donigerlawfirm.com

Website: www.donigerlawfirm.com

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LINE FINANCIAL, PBC, et al.,<br><br>Defendants. | Case No. 2:23-cv-05492-WLH-AS<br>*Hon. Wesley L. Hsu Presiding*<br><br>**PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES** |

Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

August is still in the process of compiling evidence in this matter. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

**A.   <u>Witnesses</u>**

Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.     Bill Hannigan, Owner of August, reachable through counsel, regarding the creation and registration of the original photos at issue in this case (the "Subject Photographs"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.     Andrew Eccles, 4227 McLaughlin Ave PH 1, Los Angeles CA 90066, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs; his licensing histories and rates; as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

3.     Brian Bowen Smith, 5910 Fairview Pl., Agoura Hills, CA 91301, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

4.     Austin Hargrave, 1835 N Avenue 51, Los Angeles, CA 90042, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

5.     Art Streiber, 2239 Camden Ave, Los Angeles, CA 90064, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

6.     Joe Pugliese, 6311 Romaine Street, Suite 7307, Los Angeles, CA 90038, who has information regarding the creation, originality, ownership, and registration of

his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

7.     David Slijper, Flat 18, The Pryors, East Heath Road, London NW3 1BS, United Kingdom, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

8.     Alexi Lubomirski, 268 W. Hill Rd, Box 159, Austerlitz, NY 12017, who has information regarding the creation, originality, ownership, and registration of her respective Subject Photographs, her licensing histories and rates, as well as her appointment of August as the exclusive syndicator of his respective Subject Photographs.

9.     Shayan Asgharnia,165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs, his licensing histories and rates, as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

10.     Martin Schoeller, 105 Hudson St., #2N, New York, NY 10013, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photographs; his licensing histories and rates; as well as his appointment of August as the exclusive syndicator of his respective Subject Photographs.

11.     Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), regarding access to the Subject Photographs; use of the Subject Photographs, including but not limited to displaying the Accused Posts on useline.com (and any/all associated social media pages); any/all efforts to clear use of the Subject Photographs prior to the display of the Accused Posts; the total revenue and gross profit earned

from, and total costs and expenses incurred because of, the Accused Posts; viewership analytics for the Accused Posts; prior experience with obtaining licenses to use photographs, knowledge of and experience with copyright law and copyright infringement cases, and/or knowledge of ownership of the copyrights in (or knowledge that it did not own the copyrights in) the Subject Photographs; Defendant's Answer and the factual bases for their asserted affirmative defenses; Defendant's discovery responses and document production; Defendant's advertising practices; licenses, subscriptions, agreements, and/or permissions regarding the display of photographs on useline.com; and the actions and steps taken to investigate the claims asserted in this case upon notice of alleged infringement.

12. The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's employee(s), regarding the creation, dissemination, and exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.   <u>Documents</u>**

1. Documents reflecting the creation, ownership, and registration of the Subject Photographs;

2. Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

3. Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

4.   Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.   Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

6.   Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

7.   The discovery responses and documents produced in this case.

**C.   <u>Damages</u>**

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs. The amount of such fees will be determinable after the full scope of Defendant's exploitation of the Subject Photographs is established. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

August will also seek its costs and attorneys' fees incurred in prosecuting this case. *See* 17 U.S.C. § 505.

/ / /

/ / /

/ / /

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

**D.**   <u>**Insurance**</u>

August does not have insurance for the claims at issue.


Date: May 30, 2024                    By:    <u>*/s/ Stephen M. Doniger*</u>

                                               Stephen M. Doniger, Esq.
                                               Benjamin F. Tookey, Esq.
                                               DONIGER / BURROUGHS
                                               *Attorneys for Plaintiff*

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 603 Rose Ave, Venice, CA 90291.

On May 30, 2024 I served the ENCLOSED documents described as: **PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES;** on the following necessary part(ies) in this action:

| |
|---|
| Morgan E. Pietz |
| PIETZ & SHAHRIARI, LLP |
| 6700 S. Centinela Avenue, 2nd Floor |
| Culver City, CA 90230 |
| T: (310) 424-5557 |
| F: (310) 597-4626 |
| E: morgan@pstrials.com; |
| jessica@pstrials.com; admin@pstrials.com |
| **ATTORNEY TO BE NOTICE** |

☒ by placing ☐ the original ☒a true copy thereof enclosed in sealed envelopes addressed as follows:
☒ BY ELECTRONIC MAIL (E-MAIL)
    ☒ On this date I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

EXECUTED May 30, 2024 in Venice, California.

☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*London L. Zamora*
London L Zamora

7

# EXHIBIT 118

**2024.07.26 - Meet and Confer LT P's Counsel**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Matthew A. Trejo
matt@pstrials.com
July 26, 2024

**VIA ELECTRONIC MAIL**

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Re:    *August Image, LLV v. Line Financial, PBC* **(C.D. Cal., No.223-cv-05492)**

Dear Counsel,

I am writing to you pursuant to Local Rule 37-1 to arrange a meet-and-confer conference of counsel regarding the discovery issues discussed below. Please let me know a few dates and times when you are available within the next 10 days to discuss.

## ISSUE 1: Defendant's Motion to Compel Depositions of the Photographers

Defendant is entitled to notice the photographers' depositions under FRCP 30(b)(1), because they are managing agents of August.

" 'Under Rule 30(b)(1), if the party is a corporation, 'the notice compels it to produce any 'officer, director or managing agent' named in the deposition notice.' *Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. 15-cv-2288-SBA (EDL), 2016 WL 8222618, at *2 (N.D. Cal. June 30, 2016) (citation omitted); see also Fed. R. Civ. P. 37(d)(1)(A)(i) (permitting sanctions where a corporate party's officer, director, or managing agent fails, after being served with proper notice, to appear for deposition)." *Elasticsearch, Inc. v. GmbH*, No. 19-CV-05553-YGR(AGT), 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021).

Courts generally consider the following factors to determine if a proposed witness is a managing agent:

(1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation.

Letter to Benjamin F. Tookey
July 26, 2024

Id. at *2 (quoting *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012)).

For deposition testimony, '[i]t is not required that all factors work in favor of finding the proposed deponent to be a managing agent.' *Botell*, 2013 WL 360410, at *5; see also *Holloway*, 2019 WL 7172600, at *23 (finding witnesses to be managing agents because 'the witnesses' interests aligned with Defendant and the witnesses' general responsibilities [ ] related to the subject matter of the litigation')." *Lardizabal v. Arvest Cent. Mortg. Co.*, No. 22CV345-MMA(BLM), 2023 WL 2229261, at *4 (S.D. Cal. Feb. 24, 2023).

"Moreover, where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements... the witness's likely identification with the interests of the employer—is said to be the 'paramount test." *Elasticsearch, Inc.* at *2 (citations and quotations omitted).

At the discovery stage, "all doubts are to be resolved in favor of the party seeking discovery. Thus, if there is at least a 'close question' as to the managing agent status of a potential witness, doubts should be resolved in favor of allowing the deposition, with the final determination of whether the agent has the ability to bind the corporation to be left for trial." *Ibid.* (citations and quotations omitted).

Here, the second factor supports a finding that the photographers are August's managing agents. Because the photographers allegedly created the photographs and transferred them to August, there is no question that the photographers can be relied upon to provide testimony about the origin, creation, registration and transfer of their alleged photographs. Moreover, the third and fourth factors also support a finding that the photographers are Augusts managing agents. Even if a proposed witness "may not be considered a managing agent of the corporation in general, [they] may be considered such an agent for the purpose of giving testimony on a particular topic." *Symantec Corp. v. Acronis, Inc.*, No. 11-cv-5310-EMC (JSC), 2013 WL 503612, at *4 (N.D. Cal. Feb. 8, 2013). Here, as noted, the photographers allegedly created the photographs at issue, and their actions regarding the creation and development of the photographs are "highly relevant to this litigation." *Int'l Swimming League, Ltd. v. Fed'n Internationale de Natation*, No. 18-cv-7393-JSC, 2021 WL 629493, at *3 (N.D. Cal. Jan. 13, 2021); see also *Calgene, Inc. v. Enzo Biochem, Inc.*, No. 93-cv-0195-EJG (GGH), 1993 WL 645999, at *8 (E.D. Cal. Aug. 27, 1993) (*__finding that patent inventor was managing agent because he had "power regarding the subject matter of the instant litigation, among other facts__*") (emphasis added).

Most significantly, there is no question that the photographer's interests are aligned with August's. The agreements between the photographers and August specifically provide that net proceeds from recovery from the litigation are to be split between photographer (25%) and August (75%). *Elasticsearch, Inc.* at *2 ("…where the question is whether the deposition should occur, as opposed to whether the corporation may ultimately be bound by the employee's statements... the witness's

Letter to Benjamin F. Tookey
July 26, 2024

likely identification with the interests of the employer—is said to be the 'paramount test.")

We also note that the agreements between the photographers and August specifically state that "[the photographer] agree[s] to use best efforts to cooperate with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories, ***and appearances at deposition*** and trial provided your pre-approved expenses are reimbursed by Agency." (emphasis added). Therefore, August has the means to produce the photographers for a deposition and the photographers have agreed to cooperate.

In conclusion, the photographers are subject to deposition by notice under Federal Rule of Civil Procedure 30(b)(1), because they are managing agents of August for the purpose of a deposition in this litigation.

## ISSUE 2: Protective Order re NRG 30(b)(6) Deposition Topics

Your office served a fourth amended deposition notice on July 26, 2024. We have not had a chance to review the notice in detail. However, after a brief review, we can already tell that we are going to be seeking a protective order on at least one topic in the fourth amended notice, which is revised topic 37.

- Topic 37 requests testimony regarding Defendant's, "The factual bases for the information YOU provided in the 'Notice of Exempt Offering of Securities' forms that YOU filed publicly with the U.S. Securities and Exchange Commission. on February 2 and 3, 2022 (see AUGUST000306-15)."

With respect to topic 37, Defendant objects to producing a witness on the grounds that it is irrelevant and harassing. The factual basis for the information provided by my client in its SEC filings has no relevance to any issue in this case whatsoever. This information is not relevant to the elements Plaintiff needs to establish liability (*i.e.*, ownership and copying). This information is also wholly irrelevant to the issue of damages (*i.e.*, actual damages, profits, innocent infringement and willfulness).

We'll review the redline in detail and your email regarding same and will get back to you regarding concerns about the other topics. We'll respond to the rest of the revised topics in advance of our meet and confer call.

## ISSUE 3: Deficiencies in Plaintiff's Responses to Defendant's Discovery, Set One

**Interrogatories**

**ROGS 1, 2 and 5:** Your responses fail to provide the information requested by the interrogatory. Instead, your client provides a boilerplate response that the photographs in general are "original, "independently created," "did not incorporate pre-existing material" and "possess at least some minimal degree of creativity." Moreover, your responses discuss the photographs as a group generally but fail to discuss each

Letter to Benjamin F. Tookey
July 26, 2024

photograph as required by the request. Thus, the responses provided are non-responsive and are therefore incomplete and evasive and must be supplemented.

**ROGS 3, 10, 11, 15, 18 and 19:** Here, your client asserted boilerplate, meritless objections only and did not provide a substantive response. Under FRCP 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…. Information within this scope of discovery need not be admissible in evidence to be discoverable." "Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The information sought in these interrogatories is relevant, non-privileged and proportional to the needs of the case. Therefore, your client must provide substantive responses to these interrogatories,

**ROGS 4, 6, 7, 8, 12, 13, 14, 17:** Here, instead of providing a full response, your client states, "Pursuant to Fed. R. Civ. P. 33(d), August will produce documents from which the answer to this ROG may be ascertained." However, the procedure set forth in Rule 33(d) applies to business records. These interrogatories do not seek business records. Moreover, a party may only take advantage of the alternative procedure set forth in Rule 33(d) "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Rule 33 (d). Here, the burden of our office reviewing your client's document production to ascertain an answer to a straightforward question substantially outweighs your burden of providing this information in a written response. Finally, invoking the procedure under Rule 33(d) requires "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Rule 33(d)(1). Here, your client fails to specify the records in sufficient detail so that my client can identify the records that provide the response to the interrogatory. For these reasons, your responses must be supplemented to answer the interrogatory without invoking Rule 33(d), or, at the very least, specify the specific records in sufficient detail (i.e., bates numbers) to enable my office to ascertain the answer.

**Requests for Admission**

**RFA 10:** Here, your client asserted boilerplate, meritless objections only and did not provide a response. The request seeks relevant, non-privileged information that goes to incorporation of third-party materials into the subject photographs which may render the registrations invalid and/or limit the scope of protection. Your client must either admit or deny the response or state that it lacks sufficient information or knowledge to admit or deny. FRCP 36.

///

///

Letter to Benjamin F. Tookey
July 26, 2024

**Requests for Production**

**RPDS 3, 4, 11, 13, 14, 16, 20, 29, 40, 49:** Your responses to these requests state that, "August will produce relevant, responsive, non-privileged documents to this RFP within its possession, custody, or control located after a reasonable and diligent search." However, from what we can tell, no responsive documents were produced. If you believe responsive documents have been produced to these requests, please identify the bates numbers of the documents and which requests those bates numbers correspond to. If your client does not have these documents in its possession, custody or control, your client should amend its response to so state. If your client does have responsive documents but they are being held back on privilege grounds, please provide a privilege log.

**RPD 5, 6, 7, 8, 9, 12, 30, 31, 32, 36, 39, 41, 42, 43, 44, 45, 46, 47, 50:** For these requests, your client asserts boilerplate, meritless objections only and does not provide a response. As you know, the scope of discovery is broad and favors production. My client is entitled to these documents to the extent your client has non-privileged responsive documents in its possession, custody or control. If your client does not have these documents in its possession, custody or control, your client should amend its response to so state. If your client does have responsive documents but they are being held back on privilege grounds, please provide a privilege log.

In addition, the agreements between August and the photographers specifically provide that "[the photographer] agree[s] to use best efforts to cooperate with respect to such lawsuits, including without limitation, ***production of pertinent documents, responding to interrogatories***…." (emphasis added). Please be prepared to discuss whether or not plaintiff has sought and produced responsive information and documents from the photographers, which is clearly in plaintiff's control based on the agreements.

<u>**ISSUE 4: Further Responses to Plaintiff's Discovery, Set One**</u>

We agree to provide supplement responses to ROG 12 and RFPs 1-3, 7, 13-14, 16, 19 and 21. We also agree to provide supplemental responses to ROG 7 and RFP 20 stating that Line Financial is not relying on the fair uses analyses referenced on the privilege log for any purpose in this case, and we will also provide a supplemental privilege log setting forth the dates the analyses were written. We will do our best to provide further responses by the end of next week.

Best regards,
/s/ Matthew Trejo
Matthew A. Trejo
Attorney
PIETZ & SHAHRIARI, LLP

# EXHIBIT 119

**2024.08.02 - Excerpts from August's IDC Statement [Exh. 89]**

## REQUEST FOR INFORMAL DISCOVERY CONFERENCE

EXHIBIT
89

Email to: as_chambers@cacd.uscourts.gov

Case Caption and Number: August Image, LLC v. Line Financial, PBC, 2:23-cv-05492-WLH-AS

Dates of the two L.R. 37-1 conferences of counsel: 07/18/2024 ☑ Telephonic ☐ In Person    07/31/2024 ☑ Telephonic ☐ In Person

Counsel of Record who will be appearing at the informal telephonic conference

For Plaintiff(s):    Stephen M. Doniger and/or Benjamin F. Tookey

For Defendant(s):    Morgan E. Pietz and/or Matthew A. Trejo

Proposed, stipulated dates and times for telephonic conference:    08/06/2024  08/08/2024  08/13/2024

BRIEF, NEUTRAL STATEMENT OF DISPUTE:

ISSUE 1: Defendant seeks to compel Plaintiff to produce nine of the 13 photographers of the Subject Photographs at issue to appear for depositions based on Rule 30 deposition notices served on Plaintiff's counsel. Defendant contends that the photographers are managing agents of Plaintiff under Rule 30(b)(1). Plaintiff contends that the photographers are non-parties and must be personally served with subpoenas under Rule 45.

ISSUE 2: Defendant seeks a protective order against its Rule 30(b)(6) witness testifying to Topics 1, 2, 4, 6, 7, 8, 9, 24, 25, 26 and 37 in Plaintiff's Fourth Amended Deposition Notice of Defendant under 30(b)(6). Defendant contends that Topic 37 is irrelevant and harassing, and that the remainder are improper contention requests. Plaintiff contends that Defendant has shown no good cause and that the Topics are relevant, appropriate, and within Defendant's knowledge.

SPECIFIC RELIEF REQUESTED BY MOVING PARTY:

ISSUE 1: Defendant seeks an order: (1) compelling Plaintiff to produce the nine photographers for deposition and produce documents; and (2) specifying that Plaintiff will be precluded at trial from introducing testimony or documents from any photographer who fails to appear and produce documents. Plaintiff seeks its reasonable expenses incurred in opposing Defendant's request.

ISSUE 2: Defendant seeks an order striking Topic Nos. 1, 2, 4, 6, 7, 8, 9, 24, 25, 26 and 37 from the Plaintiff's 30(b)(6) deposition notice to Defendant. Plaintiff seeks its reasonable expenses incurred in opposing Defendant's request.

Exhibit 119 (Excxerpts of 89) - 1

BRIEF SUMMARY OF PARTIES' RESPECTIVE POSITIONS:

Plaintiff:

Defendant's contemplated motion to compel and motion for protective order are neither warranted nor substantially justified. Accordingly, Plaintiff seeks its reasonable expenses incurred in opposing the same.

First, Defendant cannot pass off the costs of complying with Rule 45 onto Plaintiff by using Rule 30 as pretext. The photographers of the Subject Photographs at issue are not parties to this case. Accordingly, they must be personally served with subpoenas under Rule 45. Defendant has not done that, though it has their contact information and can do so. The photographers do not work for Plaintiff, Plaintiff cannot compel the photographers to appear for deposition, and Plaintiff cannot accept service of subpoenas on their behalf. They are not Plaintiff's "managing agents," and it is not a close call.

Second, Defendant has no good cause to refuse to prepare its Rule 30(b)(6) representative to testify to the factual basis for particular admissions and denials in its answer, particular affirmative defenses, its written and verified discovery responses, particular factual assertions in its initial disclosures, and foundational information about its business and website on which it displayed the Subject Photographs. Testifying to this basic and relevant information within Defendant's knowledge is a standard part of trial prepartion, and Defendant has no basis to alter or limit August's choice of discovery methods.

Therefore, Defendant's contemplated motions are baseless, as set forth in greater detail in "Attachment A."


Defendant:

See Attachment B.

Exhibit 119 (Excxerpts of 89) - 2



Attorneys admitted in
California, New York,
Texas, Colorado, and
Illinois

Sender's contact:
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

August 2, 2024

Honorable Alka Sagar, United States Magistrate Judge
AS_Chambers@cacd.uscourts.gov

Re:    *August Image, LLC v. Line Financial, PBC, et al.*, Case No. 2:23-cv-05492-WLH-AS
       **Plaintiff's Submission on Defendant's IDC Request**

Dear Judge Sagar,

Below please find Plaintiff August Image, LLC's "Attachment A" to the parties' IDC form.

## I.  Because the photographers of the Subject Photographs at issue are non-parties, Defendant needs to comply with Rule 45 and personally serve them with deposition subpoenas

August works with an elite group of portrait, lifestyle, beauty, and fashion photographers for editorial and commercial licensing. Dkt. 45 ¶ 4. August and each photographer it works with enter into an arms-length agreement (the agreements vary somewhat from photographer to photographer) through which each photographer "retain[s] AUGUST as your exclusive agent to sell, syndicate, license, market or otherwise distribute your photographic works." Ex. 1 (one of the agreements involved in this case). August earns a commission on the exploitation of the photographs in its syndication portfolio (either from authorized licensees or from pursuing unauthorized exploitations), and pays the revenues generated by the exploitation to the corresponding photographers (minus its commission and deductions). *Id.* Each photographer "maintain[s] ownership of the copyright for the[ir] works," and transfers to August "the exclusive right to authorize the making of copies of your Copyrighted works and/or distribute copies of your copyrighted works to the public by rights-managed license, and to authorize and control the display of those copyrighted works publicly," and "to pursue infringement claims for violations of the exclusive copyright interests granted to AUGUST under this Agreement." *Id.*; *see* Dkt. 45 ¶ 4; *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 999–1000 (9th Cir. 2015).

Here, 19 photographs in August's portfolio (the "Subject Photographs"), created by 13 photographers—each an individual rightsholder—for whom August serves as exclusive licensing agent by agreement, were exploited without permission on Defendant's website. *See* Dkt. 45 ¶ 10, 45-1. Thus, August filed this suit to redress the infringement of its exclusive rights in the Subject Photographs, not as a surrogate or pass-through for the photographers. The photographers are not parties, and are not represented by August's counsel.

On May 22, Defendant served its first sets of RFAs, RFPs, and ROGs on August via email service to August's counsel. *See* Ex. 2. In that same email, Defendant also served a "notice of deposition" purportedly directed to nine of the non-party photographers whose photographs are at issue in the case "with requests for production of documents." *See id.* and Ex. 3 (a representative example). Each "notice" states that "defendant Line Financial PBC will take the deposition of [photographer]. Defendant further requests the production of the documents identified in the enclosed ATTACHMENT TO NOTICE OF DEPOSITION." Ex. 3. There is no mention of Rule 30(b)(1) or Rule 34. *See id.* The "attachment" is not directed to August, but rather to each "individual photographer as the deponent" and purports to require each "individual photographer" to search for and produce their own documents (not August's)—but fails to specify a time or place for purported compliance. *Id.* Each "attachment" includes 50 requests for production—450 in total to nine individual photographers. *Id.*

1

Exhibit 119 (Excxerpts of 89) - 3

Defendant did not subpoena (and has not subpoenaed), and has otherwise not served anything on, the photographers. *See id*. It has the ability to do so—August has provided the relevant photographers' contact information in August's initial disclosures because the photographers have relevant knowledge regarding the creation of the Subject Photographs, their registration with the U.S. Copyright Office, and their above-referenced agreements with August, respectively. *See* Ex. 4 at 2.

Defendant initially took the position that it need not issue subpoenas because the photographers are not "really" non-parties and "need to make themselves available for deposition via notice procedure, rather than forcing the defendant to incur the costs associated with personally serving of a Rule 45 subpoena," because August is the photographers' "agent," the photographers are listed in August's initial disclosures, and they "will presumably come testify at trial if their agent asks them to do so[.]" *Id*. Defendant then proposed that it "issues subpoenas to the photographers, for remote testimony and documents"—appearing to acknowledge that it needs to comply with Rule 45—but attached unreasonable conditions to the proposal to which August nor its counsel could agree. *See id*. But on July 26, Defendant asserted—for the first time, in an about-face from its prior position—that "Defendant is entitled to notice the photographers' depositions under FRCP 30(b)(1), because *they* are managing agents of *August*" (emphasis added) on the purported grounds that "the photographers allegedly created the photographs and transferred them to August," which are "relevant to this litigation," and "the photographer's interests are aligned with August's." Ex. 5 at 1-3. Defendant is wrong, and it is not a close call.

"Rule 30(b)(1) provides for the deposition by notice *of a corporation through* a particular officer, director[,] or managing agent of the corporation[.]" *Lott v. BSI Fin. Serv., Inc.*, 2024 WL 1655589, at *2 (C.D. Cal. Mar. 5, 2024) (emphasis added). But "[a] deposition notice without a subpoena is not the proper procedure to depose a non-party[.]" *See Phoenix Mut. Life Ins. Co. v. Coll. Court*, 1993 WL 840532, at *1 (D. Kan. May 17, 1993).[1] Instead, a non-party deponent's attendance "may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). Accordingly, if Defendant seeks testimony from the non-party photographers, it need only personally serve subpoenas on them. Instead, Defendant seeks to pass off the costs of complying with Rule 45 onto August by using Rule 30 as pretext. Defendant's assertion that each of roughly 115 photographers that August services (*see* https://www.augustimage.com/Photographers) can be considered a "managing agent" of August is absurd on its face and is based on a misunderstanding and misapplication of Rule 30(b)(1).

Defendant cannot meet its burden of proving that the "managing agent" analysis is applicable or satisfied here. *See Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, 2017 WL 11684607, at *3 (M.D. Tenn. Feb. 7, 2017) (holding that "[t]he analysis" for "[d]etermining whether an individual is a managing agent" "applies to individual employees, corporate entities acting as agents for the business, and independent contractors"). "[C]ourts generally agree a Rule 30(b)(1) notice cannot be used to compel a party to produce witnesses for a deposition who are not its own employees, regardless of whether (or to what extent) the party exercises control over the nonparty witnesses." *See Herron v. Progressive Car Fin., LLC*, 2023 WL 11762874, at *2 (W.D. Okla. Oct. 13, 2023); *Ethypharm S.A. France v. Abbott Labs.*, 271 F.R.D. 82, 90-92 (D. Del. 2010). The photographers of the Subject Photographs are not parties; they are not employees, independent contractors, consultants, or advisors for August; they hold no positions with August and are not part of August's organizational or ownership structure; and they are not (nor do or can they act as) agents for August. Defendant offered no argument or

---

[1] As shown in Ex. 5, Defendant failed to "directly address the issue of whether Rules 30 *and* 34 apply *instead of* Rule 45," and altogether failed to address with August how or why its "attachments" to its deposition notices to the photographers purportedly comply with Rule 34 (they do not). *See Harris v. 68-444 Perez, Inc.*, No. 519CV218, 2021 WL 4622395, at *4 (C.D. Cal. Aug. 5, 2021) (emphasis added). That silence is telling because those "attachments," non-compliant as they are, undermine Defendant's new position. Rule 34 requests are propounded to parties, not to individuals who are not named parties to produce their own (separate from a party's) documents. And Defendant cited no authority compelling an individual (even an officer, director, or managing agent) produce their personal (separate from a party's) documents in response to a 30(b)(1) deposition notice.

Exhibit 119 (Excerpts of 89) - 4

evidence to the contrary to August. *See* Ex. 5. The lack of that type of "relationship alone is fatal to a finding that" each individual photographer "qualifies as a 'managing agent'" of August. *Copan Italia S.P.A. v. Puritan Med. Prod. Co. LLC*, 2019 WL 6179224, at *4 (D. Me. Nov. 20, 2019).

Moreover, "[t]he 'managing agent' inquiry is not controlled by a potential deponent's knowledge of the matters in dispute" because "[d]irect knowledge about the subject matter at issue . . . is plainly not the test[.]" *Bridgestone Americas, Inc.*, 2017 WL 11684607 at *7; *Londono v. Am. Express Co.*, 2023 WL 386760, at *1 (E.D.N.Y. Jan. 24, 2023). The photographers' knowledge regarding the creation and registration of their respective Subject Photographs and agreements with August does not move the needle. Nor does the fact that the photographers are listed as having such knowledge on August's initial disclosures. *See, e.g.*, *Newmarkets Partners v. Oppenheim*, 2009 WL 1447504, at *1 (S.D.N.Y. 2009). Not all percipient witnesses are managing agents. *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2015 WL 848554, at *3–4 (N.D. Cal. Jan. 28, 2015).

Defendant also argues that "the photographer's interests are aligned with August's" (Ex. 5 at 2), but "expect[ation] to identify with the interests of the company . . . is not enough to make an individual a managing agent where the person has no decision-making authority in the company." *Bridgestone Americas, Inc.*, 2017 WL 11684607 at *7. The photographers have no authority or power to exercise judgment or discretion in August's corporate matters, have no (and cannot exercise any) managerial control over August's affairs (including this litigation), have no management responsibilities with respect to August's business, do not perform any day-to-day services for August, have no authority to act on August's behalf, have no authority to enter into contracts on August's behalf or bind August, and cannot testify on August's behalf. Defendant failed to argue or provide evidence otherwise. *See* Ex. 5; *Richmond v. Mission Bank*, 2015 WL 1637835, at *12 (E.D. Cal. Apr. 13, 2015); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2013 WL 6730165, at *3 (N.D. Cal. Dec. 20, 2013).

Defendant's reference to August's contracts with the non-party photographers further reinforces that Defendant's "managing agents" argument does not hold water. *See Lott*, 2024 WL 1655589 at *5. A non-party's arms-length contractual relationship with a party does not make the non-party a "managing agent" of the party. *See, e.g.*, *L.A. Triumph, Inc. v. Ciccone*, 2011 WL 13217376, at *3–4 (C.D. Cal. June 2, 2011); *Miller v. Equifax Info. Servs., LLC*, 508 F. Supp. 3d 1166, 1167-69, n.4 (N.D. Fla. 2020); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 349 (N.D. Ohio 1999). Defendant posited, albeit with no supporting authority, that the photographers are "managing agents" because they earn a portion of revenues August may recover on infringement claims involving the unauthorized exploitation of their respective photographs. That is just part and parcel of August's contractual obligations as their appointed exclusive licensing agent as described above, nothing more.

Moreover, Defendant attempted to seize on a provision that is only in approximately six of the 13 agreements that those six photographers agree to use "efforts to cooperate with respect to [] lawsuits" August may file involving their respective photographs. That ignores the portion of the same provision specifying that August "has complete authority to institute" a lawsuit and discretion on whether to do so. And it also ignores that August has no contractual obligation, and importantly no ability, to compel the photographers to appear for deposition. The photographers have no contractual obligation to testify on August's behalf (which is what Defendant seeks here)—nor could they even so testify, as discussed above—and August has no contractual obligation to accept subpoenas on their behalf. *See Miller v. Equifax Info. Servs., LLC*, 508 F. Supp. 3d 1166, 1168–69 (N.D. Fla. 2020). August is their exclusive licensing agent, not their registered agent for service of process.

As a result, there is simply no basis for Defendant's argument, and Defendant's cited authority does not counsel otherwise. *See* Ex. 4 at 7-8. At bottom, Defendant can simply subpoena the photographers, and this Court can deny the motion without prejudice to the right of Defendant to proceed under Rule 45—the appropriate rule. But the photographers have no notice of Defendant's request or deposition notices—August's counsel has not communicated with the photographers, and Defendant has not served them with anything. And the relief Defendant seeks, apparently intentionally, sets up August to be sanctioned. If the Court grants the relief Defendant seeks and the photographers fail to appear, August—even though it cannot compel them to appear—will face

Exhibit 119 (Excxerpts of 89) - 5

evidentiary sanctions or dismissal for non-appearances it had no ability to control. That would be fundamentally unfair and unduly prejudicial to August. Consequently, Defendant needs to comply with Rule 45.

**II.    Defendant has provided no good cause to refuse to prepare its Rule 30(b)(6) representative to testify to the factual basis for its answer and particular affirmative defenses, its written and verified responses, factual assertions in its initial disclosures, and foundational business information**

August served its initial Rule 30(b)(6) deposition notice on Defendant on April 3. *See* Ex. 4 at 9. It subsequently reset the date three times, but the topics remained the same and Defendant never raised any objections until July 18—when it objected to Topics 1-2 and 17-18 (in August's third amended notice) as "Overbroad, compound, really ought to be handled with other forms of discovery such as interrogatories" and Topic 29 as "Irrelevant and harassing," and stated it refused to prepare a witness to testify to those topics. *Id*. Those topics were directed to Defendant's answer, certain affirmative defenses, discovery responses, initial disclosures, and specific public filings it made. *See id*. In an effort to avoid involving this Court, August served a fourth amended notice on Defendant, along with a courtesy redline comparison against the third amended notice, revising the topics. *See* Ex. 6 at 5-11. Defendant's refusal to prepare a witness to testify to those topics remained, the only change was Defendant's purported basis for refusing. Defendant now seeks to preclude any discovery into Topic 37 as "irrelevant, not proportional to the needs of the case and harassing"; Topics 1-2, 4, 6-9, and 24-26 as "contention questions that ought to be interrogatories"; Topics 2, 4, and 6 as "compound"; and Topic 7 as "vague, ambiguous, unintelligible and calls for speculation." *See* Ex. 5 at 7-10. Those are not grounds for a protective order excusing Defendant from testifying to information that is a routine part of trial preparation.

The Court may, for good cause, issue a protective order under Rule 26(c). *Id*. It is Defendant's burden to prove "good cause" for the relief it seeks, which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011). Defendant concedes that the "challenged" topics are relevant (other than Topic 37), within Defendant's knowledge, and appropriate topics of discovery. The only "harm" Defendant articulated to August when conferring is that a 30(b)(6) deposition is not a "quiz," and its representative may "forget" a fact during the deposition. While "a 30(b)(6) deposition is not a quiz," "[August] has the right to have [Defendant's] corporate representative address . . . topic[s] [that] go[] to the heart of [the] claims" and defenses at issue. *See Dealer Computer Servs., Inc. v. Curry*, 2013 WL 499520, at *4 (S.D.N.Y. Feb. 7, 2013). Plus, "[a] designated corporate representative's testimony represents the knowledge of the corporation, not of the individual deponents." *Stamps.com, Inc. v. Endicia, Inc.*, 2008 WL 11338241, at *4 (C.D. Cal. Oct. 6, 2008). If appropriate and warranted, Defendant can serve a notice of errata or file supplemental discovery responses, or return to an answer to a question during the deposition if the deponent's memory is refreshed as to a "forgotten" fact. August has a right to conduct discovery using the sequences and methods it chooses, and Defendant has not shown any good cause to restrict that right or forbid inquiry into these matters. Defendant provided August no evidence demonstrating that the time or expense it would take to prepare a witness would be unduly burdensome.

Regarding Topic 37, the specific documents referenced therein are attached as Ex. 7. Defendant admits that those documents contain facts that Defendant itself provided and filed publicly (and thus knows about), are judicially noticeable and admissible, and could be introduced in deposition for impeachment. Defendant admits that those facts, separate from the documents, are fair game for questioning. And August already revised the Topic to show it does not seek to probe Defendant's compliance with securities laws. Yet Defendant still contends that it has no obligation to prepare a witness to testify thereto because the documents are not relevant—though it provided no authority showing the same. These documents go to Defendant's sophistication, which further goes to Defendant's willfulness. *See* Ex. 4 at 10. And they are relevant to Defendant's assertion of fair use. The first factor of the fair use analysis is the purpose and character of the unauthorized use of the copyrighted work, including whether the use is of a commercial nature. *See* 17 U.S.C. § 107. Defendant disputes that its business and website are commercial, and that its unauthorized use of the Subject Photographs on its website in furtherance of its business was commercial. These documents contain foundational, factual information going to the

4 of 6

Exhibit 119 (Excxerpts of 89) - 6

commercial nature of Defendant's business and website. If Defendant is concerned that questions may seek conclusions as to legal compliance with securities laws, its counsel can object on the record. But that concern is premature, and its assertion that the Topic is purportedly harassing and disproportionate is unsubstantiated.

Defendant's argument on Topics 1, 2, 4, 6, 8-9, and 24-26 is equally unavailing. Defendant does not dispute the relevance of these topics, nor does Defendant dispute that the information requested in these topics is known and available to it. Instead, Defendant's position is that "If you want discovery into the information sought in these topics, send us interrogatories." Ex. 5 at 8-9. It makes little sense to tell August to propound interrogatories it has already propounded. *Compare* Dkt. 36-6 at pp. 6-7 of 8 (interrogatories seeking all facts and documents supporting "fair use" and "innocent intent" affirmative defenses) *with* Ex. 6 ¶¶ 24, 26 (seeking testimony on factual basis for "fair use" and "innocent intent" affirmative defenses). The same is true of an argument that this information is discoverable in one form yet unavailable in another. These Topics are plainly fair game for a 30(b)(6) deposition. *See, e.g.*, Ex. 6 at 1-4; *Woods v. Standard Fire Ins. Co.*, 589 F. Supp. 3d 675, 685 (E.D. Ky. 2022). "[T]he Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request 'to elect to supply the answers in a written response to an interrogatory' in response to a Rule 30(b)(6) deposition notice[.]" *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012); *Lesley v. Spike TV*, 2005 WL 8156283, at *2–3 (C.D. Cal. Apr. 12, 2005). "There is a reason parties are permitted 'to depose one another and their witnesses during the discovery process': interrogatory responses, along with other written statements, 'are typically drafted by lawyers and by their nature are self-serving.' Nor do interrogatories permit the development and testing of factual information that can be achieved through the iterative question-and-answer process. [Defendant] has not offered any principled basis to force [August] to accept written interrogatory responses in lieu of deposition testimony." *See Baxter Int'l, Inc. v. Becton, Dickinson & Co.*, 2020 WL 424918, at *14–16 (N.D. Ill. Jan. 27, 2020). The authority Defendant relied on in arguing otherwise (*see* Ex. 5 at 8) was primarily, if not exclusively, patent cases, which some courts have treated differently because of their idiosyncratically complex and highly technical nature (*see* Ex. 4 at 11-12). Tellingly, Defendant does not argue that its "contention interrogatory" limitation should apply equally to it when it serves its 30(b)(6) deposition notice on August. But what's good for the goose is good for the gander. Thus, if the Court is inclined to grant Defendant's request on these Topics, it should apply Defendant's relief sought to all parties equally—i.e., that no party to this case can depose the other on the factual basis for its pleadings, discovery responses, or initial disclosures—to avoid conferring on Defendant the undue procedural advantage that its one-sided discovery limitation would cause. Or it should grant Defendant's request for relief without prejudice to August serving an amended notice revising these Topics as this Court deems appropriate.

Defendant argued that Topics 2, 4, and 6 are "impermissibly compound." Ex. 5 at 9. Defendant cited no authority showing that this is a ground for a protective order forbidding testimony on a topic, and August is aware of none. If defense counsel believes any questions asked during the Rule 30(b)(6) deposition are compound, they can state that objection on the record. And if this is a "reasonable particularity" argument in disguise, "the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *UniRAM Technology, Inc. v. Monolithic Sys. Tech., Inc.*, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007). That is because "[t]he reason for adopting Rule 30(b)(6) was not to provide greater notice or protections to corporate deponents, but rather to have the right person present at deposition." *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). Defendant's written and verified discovery responses are plainly within its knowledge. *See* Fed. R. Civ. P. 30(b)(6). And Rule 30(b)(6) does not limit Rule 26(b)(1)'s scope of discovery. Plus, it would inefficiently put form over function, and would unnecessarily increase the number of topics, if August were to amend these Topics to specify that it seeks the factual basis for each discovery response—especially because Defendant is already aware that August seeks the same.

Finally, Defendant contends that language from its own initial disclosures is somehow "vague, ambiguous, unintelligible and calls for speculation." Ex. 5 at 9-10. If Defendant cannot understand its own initial disclosures, it has only itself to blame. And Defendant presented no evidence to August that the time and expense of preparing a witness on this Topic would be unduly burdensome.

Exhibit 119 (Excerpts of 89) - 7

Respectfully submitted,

*/s/ Benjamin F. Tookey*
Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff August Image, LLC*

Exhibit 119 (Excxerpts of 89) - 8

# EXHIBIT 1

Exhibit 119 (Excxerpts of 89) - 9

# AUGUST

June 7, 2017

Dear Art-

We are delighted that you have agreed to work with AUGUST Image, LLC ("**AUGUST**", "we" or "us") as your exclusive worldwide agent, with the right of first refusal for the sale, licensing and other promotion of the photographic images that you create during the Term hereof (or have created in the past, insofar as such Images are available for licensing pursuant to the terms of any agreements you may have with any third parties) (together, the "Images"). This letter provides information regarding the terms and conditions of our services as well as your responsibilities to **AUGUST** (the "Agreement"). The basic terms are as follows and are more fully set forth below:

| | | | |
|---|---|---|---|
| Launch Date: | N/A | Images: | Portraits, Fashion, Lifestyle, Sport |
| Term: | Two years, automatically renewable annually | Survival Rights: | 1 year, exclusive to AUGUST |
| Your Commission: | | | |

**Term:** The Agreement will commence on the date first set forth above (the "Effective Date") and will expire two years from that date (the "Term") unless either party decides to terminate this agreement within ninety (90) days prior to the end of the two-year period. If the Agreement is not terminated, it will automatically renew for successive one (1) year periods, and each successive period shall be governed by the Agreement. During the Term, you agree that you will not sell or transfer any ownership interest in any Images accepted by us, as provided herein, or other Images substantially similar to any Image we have accepted to any person, licensing agent or other entity for sale, licensing or exploitation.

**Survival:** Upon termination of the Agreement, you agree that **AUGUST** will retain the rights granted herein regarding any and all Images that were transferred to us pursuant to the terms of the Agreement for a period up to but not to exceed one (1) year from the end of the Term (the "Survival Term"). Any images created after the date of termination are not included in the Survival Term. Paragraphs titled Images, Use of the Images, Commissions and Payments, License Fee Deductions, Responsibilities, Captions/Credits, and General Terms shall survive the termination of the Agreement.

**Images.** Throughout the Term, you shall submit all of your Images, (primarily fashion, beauty and lifestyle images) to us as they are created or become available, as the case may be, on a continuous, periodic basis, along with all related permissions, releases, agreements, and contracts which may govern reuse of the Images. With respect to all Images you submit which depict celebrities or personalities or a private home, you agree to provide **AUGUST** with any restrictions, including written or oral restrictions communicated by the subjects and/or their publicists and agents, including copies of any publicist agreements, which could limit our ability to license the Images to our clients. If you submit an Image to us without any restrictions indicated, you warrant that we may license such Images for editorial, non-commercial use without further permission from the celebrity, model or representatives.

**Use of the Images.** The Images are intended for editorial and commercial use/licensing by us and our clients.

**Launch Date: AUGUST** will attempt to make the Images available for licensing by____N/A_____, or such other date as may be agreed to between the parties (the "Launch Date"). You agree to terminate any existing agreements that would violate our appointment as your exclusive agent hereunder (the "Conflicting Agreements") no later than the Effective Date of the Agreement; provided, however, that until such Conflicting Agreements have been fully terminated you may continue to comply with such Conflicting Agreements. Beginning with the Effective Date, you will deliver Images to **AUGUST**. We acknowledge and agree that we will not use any such Images in any manner prior to the Launch Date, except to prepare for the Launch Date (i.e. uploading Images to our servers and preparing web pages for such Images).

**Commissions and Payments:** During the Term, you agree to direct all inquiries, solicitations and payments for the Images to **AUGUST**. **AUGUST** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which shall be defined as revenues received by **AUGUST** from the sale, licensing or other commercialization of the Images, including net fees received from our subagents, minus any Deductions, as defined herein. Within sixty (60) days from the conclusion of each month in which Fees are received, **AUGUST** will pay you your portion of such Fees and provide you with a statement detailing the payment breakdown. **AUGUST** will not be entitled to any Commission with respect to Fees paid or due prior to the Launch Date.

**License Fee Deductions:** "Deductions" shall be defined as (a) commissions paid to third parties, if any, including but not limited to referral fees and rights clearances; and (b) governmental fees and taxes, bank and wire transfer fees, and other reasonable transaction costs, if any.

**Responsibilities:** In addition to your costs and expenses related to creating, producing and retouching the Images, as the case may be, you are also solely responsible for obtaining insurance, permits, releases, and any third-party rights clearances if applicable (including model, property, and intellectual property releases). Images should be delivered in a form and format ready to be published to the **AUGUST** website.

**Captions/Credits:** You shall deliver Images with all caption information that we may require from time-to-time, and you assume all responsibility for claims resulting from insufficient, inaccurate or incorrect captioning. We shall use good faith efforts to advise clients and agents to credit you as the source of the Images, but we shall have no liability for any failure to provide such credit. You agree that credits may list **AUGUST** as your agent.

**General Terms:** In addition to the above, you agree to the following general terms and conditions:

- **AUGUST** may use your image, name, image, likeness and biographical material in connection with the promotion and marketing of the Images
- Each party shall be entitled to injunctive and other equitable relief to prevent or cure any breach or threatened breach of this Agreement, without the necessity to post bond or prove actual damages.
- The parties acknowledge and agree that all right, title and interest in and to your Images, including but not limited to copyright therein, shall be owned solely, in perpetuity, in any and all media, and throughout the world, by you.
- You represent and warrant to **AUGUST** as follows: (a) you do not hold membership in any trade group or collective society that would otherwise impair your obligations or impose additional requirements on **AUGUST**; (b) the Images do not, and will not, infringe the copyright of any third party, do not contain any matter which violates any applicable law or regulation and, if released, do not and will not defame, violate the right of privacy or publicity, or infringe the trademark or other personal or property interests of any party; (c) you are not a party to any existing agreement, and, during the Term, you will not enter into any agreement for the sale, licensing and other exploitation of the Images; and (d) you guarantee all work has been photographed by you, and you are the exclusive copyright holder of all images submitted to **AUGUST**.

CONFIDENTIAL

AUGUST000156

Exhibit 119 (Excxerpts of 89) - 10

- Each party (an "Indemnitor") agrees to defend, indemnify, and hold harmless the other party, and its affiliates, officers, directors, employees, and agents (each, an "Indemnitee") from and against any and all third-party claims, and accompanying losses, liabilities, costs, or expenses, including reasonable attorneys' fees, arising out of, or in connection with, any material breach of the Agreement by the Indemnitor, or any duty, representation, or warranty contained therein by, or any act or omission of the Indemnitor, or its employees or agents.

- **AUGUST** shall not be liable for any loss or damage to any images or other materials submitted to us nor shall **AUGUST** be liable for any claims on work submitted under your name that is not copyrighted and photographed by you. You shall be solely responsible for creating backup copies of Images you submit to us and maintaining adequate insurance for the protection of images and other materials. Under no circumstances shall **AUGUST's** liability (a) for loss or damage to any analog materials exceed ▉▉▉▉▉▉▉▉▉▉, regardless of the number of claims; and (b) arising out of or related to this Agreement exceed the total amount of Commissions received by **AUGUST** hereunder. **AUGUST** shall not be liable to you under any circumstances arising out of the misuse of the Images by any third party unless due to **AUGUST's** gross negligence or willful misconduct.

- This Agreement incorporates the entire understanding of the parties concerning the subject matter contained herein and supersedes any and all prior agreements and understandings, oral or written, with respect thereto and is to be construed in accordance with the laws of the State of New York; any controversy arising hereunder is to be litigated solely in the federal or state courts of competent jurisdiction in New York County, NY. Neither party may assign the Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld in the event of a change of control of the assigning party.

By signing below, you acknowledge that understand and agree to the terms described herein. Execution and delivery of this letter agreement may be in counterparts evidenced by facsimile or electronic transmission.

Sincerely,

**AUGUST**, LLC

By: _____
    Bill Hannigan, Co-founder

Acknowledged and agreed by Photographer:

Photographer Name: *William Arthur Streiber*



e | info@augustimage.com

CONFIDENTIAL

# AUGUST

As of August 7, 2017, AUGUST Image LLC ("AUGUST") and Art Streiber ("Artist") hereby enter into the following agreement ("Agreement"), which is an addendum to the parties prior agreement, supersedes said agreement to the extent there is any conflict as to terms.

As you know, you retained AUGUST as your exclusive agent to sell, syndicate, license, market or otherwise distribute your photographic works. This Addendum clarifies that during the term of the Agreement, and any renewals thereof, AUGUST shall have the exclusive right to authorize the making of copies of your Copyrighted work and/or distribute copies of your copyrighted works to the public by rights-managed license, and to authorize and control the display of those copyrighted works publicly to news, advertising, and media sources. In the interest of clarity, nothing in this grant of rights shall preclude you from selling or offering for sale copies of your work as fine art, and it is agreed that you shall have full rights to display copies of your work on your commercial and social media pages. You understand that you are conveying these exclusive rights to AUGUST during the term of the Agreement and any renewals thereof, and that you also convey the exclusive right and ability to AUGUST to pursue infringement claims for violations of the exclusive copyright interests granted to AUGUST under this Agreement. By signing this Addendum, you are affirming an intention that any rights necessary to convey standing to AUGUST to enforce your intellectual property rights in your photographic works have been transferred and/or assigned to AUGUST.

Per Section 501(b) of the Copyright Act, AUGUST will exclusively own and hold Artist's distribution, reproduction, and display rights in the Works, each of which is an exclusive right under Section 106 of the Copyright Act. This Agreement is an exclusive transfer of an exclusive right per Section 101 of the Copyright Act.

The Artist will maintain ownership of the copyright for the Works.

I HAVE READ, AND AGREE TO BE BOUND BY, THE ABOVE TERMS:

_____          _____
Art Streiber                               Bill Hannigan, Founder AUGUST

# EXHIBIT 120

**2024.08.09 - Meet and Confer LT P's Counsel**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com     t: (310) 424-5557     f: (310) 597-4626

Matthew A. Trejo
matt@pstrials.com
August 9, 2024

**VIA ELECTRONIC MAIL**

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Re:     *August Image, LLV v. Line Financial, PBC* (C.D. Cal., No.223-cv-05492)
        **Request for Production of Missing and Unredacted Documents Prior to IDC**

Dear Counsel,

        We write to meet and confer with you pursuant to L.R. 37-1 on defendant's motion to compel on the issues below, and to request that you immediately provide us with certain documents and information relevant to the arguments you made in connection with next week's IDC.

## 1.    Please Produce Missing Agreements and Addenda

        In your IDC statement you highlight the differences between the different versions of the agreements between the plaintiff August Image and the photographers who own the copyrights in suit.

        So that the Court can have the full picture of the facts at the IDC, on Monday, we intend to provide the Court with copies of all of the relevant agreements and addenda thereto that we have received from the plaintiff, along with a summary chart.

        Although you agreed to provide the photographers' agreements in response to Defendant's Request for Production No. 37, it appears that August Image has not yet produced all of the agreements and addenda thereto for all photographers at issue in this case.

        Specifically, for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde, it appears no agreements or addendums were produced.

        For Mark Mann, Miller Mobley, Shayan Asgharnia and Alexi Lubomirski, it appears no addendums were produced.

        Please produce the missing agreements and addenda immediately, so that we can include them in our Monday evidentiary submission.  If no such agreements exist for

Letter to Benjamin F. Tookey
August 9, 2024

a particular photographer, please advise us to that effect and update your written discovery response to state as much.

**2. Please Produce Unredacted Versions of the Agreements and Addenda**

A party may only withhold information if it is privileged or subject to protection as trial-preparation material. FRCP 26(b)(5). Redactions for relevancy or responsiveness are not permitted. *United States v. McGraw-Hill Companies, Inc.*, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014). "[A] party's concern about the disclosure of irrelevant information should be afforded particularly slight deference where there is a protective order in place" as there is in this case. *Found. for Glob. Sports Dev. v. United States Olympic Comm.*, 2021 WL 6618556, at *9 (C.D. Cal. June 24, 2021). Moreover, redactions in general are disfavored. See, e.g., *In re Medeva Securities Litigation*, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) ("The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured."). Finally, documents which are redacted based on privilege must be accounted for in a privilege log. See, e.g., Franco –Gonzalez v. Holder, 2013 WL 8116823, at *5 (C.D. Cal. May 3, 2013).

For many of the agreements, you redacted information that is relevant and non-privileged. Specifically, for the agreements for which splitting of the litigations proceeds is referenced, you redacted a portion of the sentence "All resulting net proceeds of recovery received by AUGUST shall be apportioned **[REDACTED TEXT]** to AUGUST after deductions for fees paid to copyright compliance partners, collection fees, legal fees, subagent commissions and/or other expenses incurred by AUGUST in its efforts to resolve the claim." See, e.g., AUGUST000152, AUGUST000596, AUGUST000423 and AUGUST000174.

However, you did not redact this language in at least one agreement. For example, "All resulting net proceeds of recovery received by AUGUST shall be apportioned twenty-five percent (25%) to you and seventy-five percent (75%) to AUGUST after deductions for fees paid to copyright compliance partners, collection fees, legal fees, subagent commissions and/or other expenses incurred by AUGUST in its efforts to resolve the claim." See, e.g., AUGUST000593.

Here, the redacted information is not privileged. Therefore, there is no legitimate basis for the redactions. Significantly, the same language was not redacted in an agreement that was produced. Moreover, the redacted information is directly relevant to the managing agent inquiry because it shows that the photographers' interests are aligned with August in the litigation. See, e.g., *Holloway v. 3M Co.*, 2019 WL 7172600, at *22 (C.D. Cal. Oct. 31, 2019) ("The term managing agent should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal….")

Please produce unredacted versions of all of the agreements and addenda immediately.

Letter to Benjamin F. Tookey
August 9, 2024

### 3.   Please State the Date Each Addendum was Executed

In your IDC statement, you argue that language contained in the addenda to the main agreements is relevant to the managing agent analysis.  The addenda all appear to be back-dated.  Accordingly, when these agreements actually went into effect, and how that compares to when the infringement occurred, and when the complaint was filed (which is the point in time at which standing to sue is evaluated) is now squarely before the Court in the IDC.

Accordingly, please immediately advise when the addenda you are relying upon in your IDC statement were executed.

### 4.   Please Clarify the Role of "Management Artists Organization"

Plaintiff produced an agreement between August on the one hand and Management Artists Organization on the other hand. See AUGUST000418-AUGUST000422.

However, none of the photographers listed in Exhibit 1 to the FAC are parties to the agreement. They are also not listed as parties in Appendix A to the agreement. We request clarification as to which photographer or photographers this agreement pertains to by no later than Monday afternoon so this can be added to the summary chart we are submitting to the court on Monday. Even if you do not provide the information by Monday or before the IDC, we still request clarification on this issue immediately.

Best regards,

/s/ Matthew Trejo

Matthew A. Trejo
Attorney
Pietz & Shahriari, LLP

# EXHIBIT 121

**2024.08.09 - Response Ltr from Plaintiff**

Attorneys admitted in
California, New York,
Texas, Colorado, and
Illinois

Sender's contact:
stephen@donigerlawfirm.com
btookey@donigerlawfirm.com
(310) 590-1820



Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

August 9, 2024

**<u>DELIVERED VIA EMAIL</u>**

Morgan E. Pietz (SBN 260629)
morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
matt@pstrial.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone: (310) 424-5557
*Attorneys for Defendant*

Re:     *August Image, LLC v. Line Financial, PBC, et al.*, Case No. 2:23-cv-05492

Dear Counsel,

We write in response to your August 9 letter.

First, on August 9, Defendant notified August, for the first time, that "on Monday [August 12], we intend to provide the Court with copies of all of the relevant agreements and addenda thereto that we have received from the plaintiff, along with a summary chart." Doing so *after* the parties already submitted their IDC materials, and with only one court day's notice to August, is not reasonable. Moreover, such an untimely, unilateral evidentiary submission is not permitted. *See* https://www.cacd.uscourts.gov/honorable-alka-sagar ("[T]he moving party should . . . provide the Clerk with the following information: . . . (b) a brief, neutral statement of the discovery dispute (limited to no more than 1-2 paragraphs) and the specific relief requested; (c) a brief summary of the parties' respective positions (limited to no more than 5 pages per party) . . . . Any attachments should be limited to no more than 25 pages per party . . . . If the parties' brief statement and attachments is over 25 pages, a courtesy copy must be delivered to Judge Sagar's drop box outside suite 1200 (12th floor) – Roybal Clerk's Office - no later than noon following the date of the e-mail."). The parties agreed that they would exchange all materials they intended to provide the Court at 5 p.m. on August 2. There is no reason why Defendant could not have provided the Court with the syndication agreements already produced as part of its IDC submission, and Defendant's letter provides no explanation for its untimeliness.

Accordingly, you do not have authority to submit a late, unilateral evidentiary submission and "summary chart" that August has not seen and had no prior notice of (and that, with respect to such "summary chart," is not evidence). However, because Defendant misrepresented to the Court that Ex. 3 to its IDC submission "is a representative example of August's agreements with the 9 photographers whose depositions were noticed," and because that Ex. 3 was also incomplete, you do have authority to submit the agreements

attached to this letter to Judge Sagar's chambers on Monday, August 12. These are the agreements August has produced so far. You do not have authority to submit anything else, and if you do so August reserves the right to provide this letter to the Court. August has been and is searching for, gathering, and producing documents on a rolling basis, and the Subject Photographs taken by Arielle Bobb-Willis as well as Bruno and Nicoletta Van Mossevelde were added into the case about a month ago. August intends to produce its syndication agreements with the photographers of the Subject Photographs. But demanding on August 9 a document production on August 12 is not reasonable.

Second, regarding Defendant's request (made for the first time on August 9) for unredacted agreements, August's counsel has asked August for unredacted versions of the syndication agreements with the relevant photographers. The redacted information, much of which is banking information (such as account and routing numbers), has no bearing on whether photographers with whom August has arms-length, contractual relationships are "managing agents" of August (they are not). Defendant continues to ignore that "where the proposed deponent does not have a direct employee relationship with the Defendants company and does not have responsibility relating directly to the subject matter of the lawsuit, it is much more difficult to find him aligned with the company's interests *in such a way that he can be expected to speak for the company as a 'managing agent.'*" *Nester v. Textron, Inc.*, 2015 WL 1020673, at *9 (W.D. Tex. Mar. 9, 2015) (emphasis added) (citing *Jackson v. Stevens Transp., Inc.*, 2015 WL 221087, at *4-5 (N.D. Tex. Jan. 15, 2015)).

And third, Defendant's request that August's *counsel* "state the date each addendum was executed" and "clarify the role of 'management artists organization'" is not an appropriate meet-and-confer request. Defendant can ask these questions to August in a deposition and/or in a discovery request. Because it has done neither, Defendant cannot request to meet and confer over a discovery request or issue that does not exist. Defendant's letter also posits that "when these agreements actually went into effect, and how that compares to when the infringement occurred, and when the complaint was filed (which is the point in time at which standing to sue is evaluated) is now squarely before the Court in the IDC." Not so. This IDC concerns Defendant's contemplated motion to compel depositions and motion for a protective order regarding certain deposition topics, it is not about (nor could a discovery conference be about determining) August's standing.

Regards,

*/s/ Benjamin F. Tookey*
Stephen M. Doniger
Benjamin F. Tookey
*Attorneys for Plaintiff August Image, LLC*

# EXHIBIT 122

**2024.08.13 - Reply re Addendum Dates, Serving Rog**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Matthew A. Trejo
matt@pstrials.com
August 13, 2024

*VIA ELECTRONIC MAIL*

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

**Re:**    *August Image, LLV v. Line Financial, PBC* **(C.D. Cal., No.223-cv-05492)**

Dear Counsel,

I am writing to you pursuant to Local Rule 37-1 to arrange a meet-and-confer conference of counsel regarding the discovery issues discussed below.

I believe it is critical for the IDC that we discuss issues 1- 4 prior to the IDC. Please let me know if you have availability tomorrow to discuss these issues. If you do not have availability tomorrow, please let me know a few dates and times when you are available within the next 10 days to discuss all the issues raised herein.

## ISSUES TO ADDRESS PRIOR TO THE IDC

### 1. Agreements and Addenda Not Produced

In my August 9, 2024, meet and confer letter, I indicated that although August agreed to provide the photographers' agreements in response to Defendant's Request for Production No. 37, it appears that August has not produced all the agreements and addenda thereto.

Specifically, for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde, it appears no agreements or addenda were produced.

For Mark Mann, Miller Mobley, Shayan Asgharnia and Alexi Lubomirski, it appears no addenda were produced.

In your response letter, you indicated that "Arielle Bobb-Willis as well as Bruno and Nicoletta Van Mossevelde were added into the case about a month ago. August intends to produce its syndication agreements with the photographers of the Subject Photographs."

The FAC was filed June 12, 2024. Your responses were served July 1, 2024. You had plenty of time to collect the responsive agreements and they should not be difficult to locate if

Letter to Benjamin F. Tookey
August 13, 2024

they actually exist, given that August is a party to the agreements and should have a copy. There is no excuse for such as delay.

Moreover, your response letter only states that August intends to produce the "syndication agreements" for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde. However, my letter also indicated that August has not produced *addenda* for Mark Mann, Miller Mobley, Shayan Asgharnia and Alexi Lubomirski. Your letter does not mention producing the addenda that has not been produced.

Please confirm that August will produce agreements, if the agreements exist, for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde immediately.

Please also confirm that August will produce addenda, if the addenda exist, for Arielle Bobb Willis, Bruno Van Mossevelde, Nicoletta Van Mossevelde, Mark Mann, Miller Mobley, Shayan Asgharnia and Alexi Lubomirski.

If August does not have some or all said agreements and/or addenda, please confirm that August will supplement its response to RPD 37 to indicate same.

## 2. When Each Addendum was Executed

In my August 9 letter, I asked you to please advise as to the date each addendum was executed prior to the IDC. Your response letter indicated that Defendant has not requested this information in discovery, and therefore it is not a proper meet and confer topic. Although Defendant will seek this information in discovery, the information is relevant to the IDC and therefore a proper meet-and-confer topic.

In your IDC statement, you argue that certain language in the addenda is relevant to show the photographers are not managing agents of August. Accordingly, when each addendum was fully executed, whether it was before filing the complaint or prior to issuance of the notices of deposition, is relevant to evaluating whether the addenda should be considered as part of the managing agent analysis.

Since you are arguing that language from the addenda is relevant to the managing agent analysis, we informally requested information as to when each addendum was executed. Given your arguments to the court, your refusal to provide this information on an informal basis is inappropriate and your insistence that Defendant propound formal discovery on this issue is obstructionist. However, concurrently herewith, we have served a ROG on this issue.

///

///

///

///

Letter to Benjamin F. Tookey
August 13, 2024

**3.  The Role of "Management Artists Organization"**

In my August 9 letter, I requested that you clarify the role of Management Artists Organization ("MAO"), because none of the photographers listed in Exhibit 1 to the FAC are parties to the agreement and they are also not listed as parties in Appendix A to the agreement.

Your response letter states that since Defendant has not requested this information in discovery, we cannot meet and confer on the issue. First, it is proper for a meet-and-confer on this issue, because it relates to the managing agent argument in the IDC. As you know, Defendant is arguing that the agreements support a finding that the photographers are managing agents of August. Currently, it is not clear which photographers, if any, the agreement relates to. And if we cannot determine who the agreement relates to, we are prevented from making an argument that the agreement supports a finding that whatever photographers are subject to the agreement are managing agents.

In addition, this issue does relate to a discovery request, RPD 37. As I noted in my August 9 letter, no agreements have been produced for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde. You indicated in your response letter that August intends to produce the agreements with Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde, which indicates that no agreements for these photographers have been produced. Therefore, since the MAO agreement has been produced, and August indicated that the agreements for Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde have not been produced, it can be deduced that the MAO agreement does not pertain to Arielle Bobb Willis, Bruno Van Mossevelde and Nicoletta Van Mossevelde. And if the MAO agreement does not relate to any of the photographers for which an agreement has not been produced, that indicates the MAO agreement is therefore non-responsive to RPD 37. Therefore, the request to meet-and-confer on this topic relates to Plaintiff's compliance with RPD 37.

**4.  Whether August has Sought Responsive Documents and Information from the Photographers**

Many of the agreements between August and the photographers specifically provide that the photographers use "best efforts" or "commercially efforts" "to cooperate with respect to such lawsuits, including without limitation, production of pertinent documents, responding to interrogatories…." (emphasis added). For example, the agreements with Andrew Eccles, Brian Bowen Smith, Mark Mann, David Slijper, Shayan Asgharnia and Alexi Lubomirski al lcontain such provisions.

Here, with respect to the photographers whose agreements with August contain this provision, August has the legal right to control any responsive documents and/or information that the photographers may have. This fact, by itself, is sufficient to require the plaintiff to seek and produce responsive information and documents from the photographers.  See *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (with

Letter to Benjamin F. Tookey
August 13, 2024

respect to possession, custody, or control of documents, "Control is defined as the legal right to obtain documents upon demand."); see also *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006) ("A party has an obligation to conduct a reasonably inquiry into the factual basis of his responses to discovery, and, based on that inquiry, a party responding to a production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.")

Please confirm whether or not plaintiff has sought and produced responsive information and documents from the photographers, which plaintiff clearly has a legal right to control based on the agreements with certain photographers.

**ADDITIONAL ISSUES**

5. **Copyright Registration Certificates Not Produced**

We have not received copyright registration certificates for the following photographers and works:

1. Art Streiber, Registration Nos. VA 2-201-766 <u>and</u> VA 2-204-089.
2. Bruno Van Mossevelde, Registration No. VA 2-110-334.

August agreed to produce these documents in response to Defendant's Request for Production No. 1. The request does not seek screenshots of the Copyright Office website; it seeks a copy of the registration certificates.

Please produce registration certificates for these photographers and works immediately.

If the registration certificates are not produced because they do not exist, please confirm that August will supplement its response to RPD 1 to indicate same.

6. **Defendant's Response to ROG 15, Set 2**

On our meet and confer call, Defendant agreed it would supplement its responses to ROGS 13, 14, and 16, set 2. Defendant requested additional information to evaluate how ROG 15 seeks information that has not already been provided in response to ROG 2, which is incorporated by reference in the ROG 15 response. Plaintiff provided additional information.

ROG 2 asks "IDENTIFY how, when, and by what means YOU accessed the SUBJECT PHOTOGRAPHS, including IDENTIFYING the source(s) from which YOU obtained copies of the SUBJECT PHOTOGRAPHS, whether any permission was sought or obtained, the PERSONS who participated in and/or were responsible for obtaining copies of the SUBJECT PHOTOGRAPHS, and the date(s) on which the foregoing occurred."

ROG 15 asks: "IDENTIFY and describe in detail any/all instances in which 'Photographs used in relation to articles Responding Party posted were obtained from rights cleared, free use resources or purchased through paid for subscriptions,' including but not limited to IDENTIFYING and describing in detail any/all 'rights cleared, free use resources' and/or 'paid

Letter to Benjamin F. Tookey
August 13, 2024

for subscriptions' from which YOU obtained photographs that YOU 'used in relation to articles [YOU] posted,' what photographs were obtained from which 'resources' or 'subscriptions,' who obtained them, when and how those photographs were obtained, how much YOU paid to obtain and use those photographs, the articles YOU posted for which those photographs were obtained, and any/all DOCUMENTS and/or communications reflecting the foregoing."

You argue that ROG 15 is different, because it is not limited to the subject photographs. However, to the extent ROG 15 is not limited to the subject photographs, it appears that it is not proportional to the needs of the case.

Moreover, the ROG 2 response identifies everything ROG 15 seeks with respect to the subject photographs. For example, ROG 2 states the specific photos at issue, where the photos were obtained from/what resource, who downloaded them, who posted them, when they were posted and when it was taken down and provides Plaintiff with the contact information of the individuals who posted and took the photos down. Therefore, we believe ROG 15 is duplicative of ROG 2.

Notwithstanding the foregoing, August will agree to supplement this response. August will attempt to provide further responses to ROGS 13, 14, 15 and 16, Set 2, by August 23, 2024.

### 7. Additional Information and Authorities Regarding Plaintiff's Responses to Defendant's Discovery, Set One

As agreed in our meet and confer call July 6, 2024, here is additional information and authority regarding Plaintiff's responses to discovery.

#### A. Problems with Objections

Defendant addresses August's objections to discovery requests globally, as they are primarily boiler plate, improper objections. Moreover, none of the objections asserted serve as a basis for not providing a substantive response, which is the issue here.

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635–36 (C.D. Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id*.

For the discovery at issue, August asserts general and/or boilerplate objections such as vague, ambiguous, overly broad, burdensome, oppressive, harassing, and irrelevant. However, general or boilerplate objections are not proper objections to discovery requests, especially when a party fails to submit any evidentiary declarations supporting such objections. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); *U.S. ex rel. O'Connell v.*

Letter to Benjamin F. Tookey
August 13, 2024

*Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007). Significantly, these objections cannot form the basis for a refusal to respond to the request, which is what August did.

August also objects on the grounds that certain interrogatories are compound. However, the requests are not compound as their subparts are part of a single common theme. *Trevino v. ACB American*, Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) ("[C]ourts generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question."); *In re Questcor Pharms., Inc. Sec. Litig.*, Case No. SACV 12-1623-DMG (JPRx), 2015 WL 12672130, at *1 (C.D. Cal. Jan. 21, 2015) (finding that interrogatories that ask about a single common theme are not compound). Since the interrogatories are not compound, this objection is improper and not a basis for not responding.

August also improperly asserts attorney-client privilege and work product as objections.

Not all communications between an attorney and his client are privileged. Rather, only "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, (1976); Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.1992). To show the applicability of the attorney-client privilege, a claimant must show the following eight essential elements: " '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.' " *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989), cert. denied, 495 U.S. 930 (1990); see also *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1569 (holding since attorney-client privilege "has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose"). Moreover, "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege[,]" *Martin*, 278 F.3d at 999–1000; *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995), cert. denied, 519 U.S. 911 (1996), and an assertion of a privilege without evidence to support it will not prevail. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985), cert. denied, 475 U.S. 1119 (1986); see also *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y.1996) (Meeting the burden of establishing the applicability of the attorney-client privilege "requires the submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege. Conclusory or ipse dixit assertions are not enough." (citations omitted)).

Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12 (1947). One of the

Letter to Benjamin F. Tookey
August 13, 2024

primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co.*, 881 F.2d at 1494; *Doubleday v. Ruh*, 149 F.R.D. 601, 605 n. 3 (E.D. Cal. 1993). The party claiming work product immunity has the burden of proving the applicability of the doctrine. United States v. City of Torrance, 163 F.R.D. 590, 593 (C.D. Cal. 1995).

Here, August has asserted attorney-client privilege and work-product objections to various requests at issue below. The objections are without merit, as no request seeks privileged information. To the extent that August is holding information back based on privilege or work product, August has the burden to prove it applies, including, but not limited to, providing a privilege log. Conclusory objections that discovery requests are privileged are insufficient. See *A . Farber & Partners, Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); FED. R. CIV. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must ... describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

Most significantly, none of the objections asserted serve as a basis for not responding to Defendant's, which is the issue here. If you believe an objection justifies August's refusal to respond to a specific request, please be prepared to discuss it on the call. Otherwise, please provide a response to the requests at issue below.

**B. Problems with Responses**

**1. ROGS**

Plaintiff agreed to supplement its responses to ROGS 1, 2, 4, 5-8, 11, 12-14, and 17, and that it would endeavor to do so by August 16.

Plaintiff indicated it is not inclined to supplement its responses to ROGS 3, 10, 15, 18 and 19.

INTERROGATORY NO. 3:

For each of the SUBJECT PHOTOGRAPHS, please IDENTIFY ALL aspects of each photograph that constitute original authorship and that YOU contend should be considered in evaluating the similarity between that photograph, and the ACCUSED POST(S) that YOU allege infringe that photograph, under the Ninth Circuit's "extrinsic test" for substantial similarity.

Letter to Benjamin F. Tookey
August 13, 2024

In other words, this interrogatory is asking you to conduct an objective comparison of specific expressive elements in the work and articulate the similarities between them. See *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For ROG 3, August just objected and did not respond. The interrogatory seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, what aspects of the photographs constitute original, protectable work of authorship to qualify for copyright protection. Many of the photographs at issue in the lawsuit were not registered within 5 years of publication so there is no rebuttable presumption of ownership of valid copyright. 17 U.S.C. § 410(c). The extrinsic test requires "analytical dissection of a work *__and__* expert testimony." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), as amended on denial of reh'g (Aug. 24, 2004) (emphasis added). " 'Analytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.' " *Ibid*. Here, the request is not seeking expert testimony. It's simply requesting that the photographers identify what parts of the subject photographer they believe are original works of authorship. Moreover, you did not object on the grounds the interrogatory seeks expert opinion or testimony, so that objection has been waived.

INTERROGATORY NO. 10:

For each of the SUBJECT PHOTOGRAPHS, please IDENTIFY each instance when YOU, or someone acting on your behalf, sent a copy of that photograph, such as a .JPEG image, a physical sample, or a print of the photograph, to any third party, such as to any prospective or actual customer, for any reason. To do this, please provide (a) the date on which the photograph was sent, (b) the legal name, address, telephone number, and email of the recipient, including the name of the individual at the company it was sent to, and (c) the relevant BATES number of the transmittal documentation, if applicable.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For ROG 10, August just objected and did not respond. The interrogatory seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, whether the subject photographs at issue in the lawsuit are the same as the photographs that were submitted as deposit copies to the Copyright Office, or whether they were modified in any way.

INTERROGATORY NO. 15:

For the period starting six months prior to the date when the oldest of the SUBJECT PHOTOGRAPHS at issue in this case was allegedly created and ending on the date the original complaint was filed in this action, IDENTIFY ALL PERSONS who did any work for YOU RELATING TO the SUBJECT PHOTOGRAPHS or the OTHER PHOTOGRAPHS, whether as an employee, independent contractor, or otherwise and give their job titles (or, if they did not have a formal job title, a description of their activities) and dates of employment or engagement

Letter to Benjamin F. Tookey
August 13, 2024

by YOU. This work includes creating or modifying photographs and also supervising the creation or modification of the photographs. If YOU IDENTIFY any entity (i.e., not an individual photographer) in response to this interrogatory, then YOU should IDENTIFY ALL individuals working for that entity who created, modified, or supervised the creation or modification of photographs or artwork for YOU during the relevant time period.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as ROG 10.

INTERROGATORY NO. 18:

For each of the SUBJECT PHOTOGRAPHS, explain in detail each manner of marketing or advertising that YOU or the PHOTOGRAPHERS engaged in for each photograph and how much money YOU and/or the photographer spent on that manner of marketing or advertising for the photograph. If you have displayed the SUBJECT PHOTOGRAPHS on a website or in any kind of show room or at conventions or similar gathering, you should IDENTIFY each such website, place or event and the timeframe when the photograph was displayed there.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For ROG 18, Augst just objected and did not respond. The interrogatory seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, actual damages, if any, and whether the value of any of the works has been diminished by the alleged unauthorized use. This circuit has noted that actual damages may be "awarded in the form of lost profits" or may be awarded based on "hypothetical-license damages," which are determined by "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014). The information sought is relevant to the alleged market value of the photographs and how much a willing buyer might pay. It also goes to whether the photograph that has been marketed is the same as the deposit copy. It is also relevant to see whether it is the same photo that was contained in the accused posts.

INTERROGATORY NO. 19:

For the period going back three years from the date the original complaint was filed in this action, for each of the SUBJECT PHOTOGRAPHS: (a) YOUR and/or the PHOTOGRAPHERS' total sales or licensing fees generated RELATING TO each photograph, on a monthly or quarterly basis; (b) YOUR and/or the PHOTOGRAPHERS' gross profits for each photograph, on a monthly or quarterly basis; and (c) IDENTIFY ALL PERSONS that you sold or licensed the photograph or images of the photograph to (e.g., names and addresses of companies or stores, etc.).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For ROG 19, August just objected and did not respond. The interrogatory seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, actual damages, if any. The

Letter to Benjamin F. Tookey
August 13, 2024

circuit has noted that actual damages may be "awarded in the form of lost profits" or may be awarded based on "hypothetical-license damages," which are determined by "the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's work." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014).

## 2. RFAs

Plaintiff indicated it is not inclined to supplement its responses to RFA 10.

REQUEST NO. 10:

Admit that the Copyright Office, when it processes applications for copyright registrations, does not check to see whether a design being registered looks like other designs that have been registered by other people in the past.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RFA 10, August just objected and did not respond. The request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, whether the photographs at issue in the case are original works of authorship. August has experience in registering copyrights and would have personal knowledge of whether the Copyright Office checks to see whether a work being registered looks like other works that are already registered.

## 3. RFPs

Plaintiff agreed to supplement RPD responses 3, 4, 11, 13-14, 16, 20, 29, 40, 49 and that it would endeavor to do so by August 16.

For RFPs 5-9, 12, 30-32, 36, 39, 41-47, and 50, I informed you of some of the reasons why I believed August should respond to these requests on our meet and confer call, but we didn't get into whether August will supplement, because we ran out of time. I indicated I would provide you with additional information and authority for these requests. I also asked you to think about your failure to respond to these requests and discuss my explanations in the meet and confer call with your team while you were waiting on more information.

REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any PERSON providing creative or other feedback as to any draft version of YOUR PHOTOGRAPHS.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 5, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, whether there may have been any co-authors and if so, whether the works are joint works and/or whether the works deposited with the Copyright Office are the same ones August is trying to enforce in this case.

Letter to Benjamin F. Tookey
August 13, 2024

This request seeks information that is relevant to assess whether August has standing to sue in this case. "[W]hen one co-owner independently attempts to grant an exclusive license of a particular copyright interest, that licensee…does not have standing to sue alleged third-party infringers." *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015). This is also relevant to assess whether the original subject photographs were modified and what version was deposited with the copyright office.


REQUEST FOR PRODUCTION NO. 6:
ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any public domain elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element (e.g., a copy of a source art image file used for inspiration).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 6, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, whether third-party materials were incorporated into the subject photographs and were not disclosed in the registrations, which could be reason to invalidate the registrations and which is relevant to August's Fifth Affirmative Defense (Incorrect Information Included in Copyright Registration Application 17 U.S.C. § 411(b)) and Sixth Affirmative Defense (Fraud on the Copyright Office).


REQUEST FOR PRODUCTION NO. 7:
ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any licensed elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element (e.g., a copy of the licensed artwork).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 6.

REQUEST FOR PRODUCTION NO. 8:
ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any non-original elements that were included in YOUR PHOTOGRAPHS, including a copy of any such element.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 6.

REQUEST FOR PRODUCTION NO. 9:
ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any prior work of authorship that was included in YOUR PHOTOGRAPHS, including a copy of any such work.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 6.

REQUEST FOR PRODUCTION NO. 12:
ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any payments made by YOU or the PHOTOGRAPHERS to ALL PERSON(S) that actually designed or created YOUR PHOTOGRAPHS.

Letter to Benjamin F. Tookey
August 13, 2024

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 5.

REQUEST FOR PRODUCTION NO. 30:
Financial DOCUMENTS YOU may rely upon to evidence the total revenue and profits
RELATING TO YOUR PHOTOGRAPHS within the last three years, such as sales summaries,
profit and loss reports, quarterly reports, or annual reports.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 30, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, information related to
August's actual damages, if any. The circuit has noted that actual damages may be "awarded
in the form of lost profits" or may be awarded based on "hypothetical-license damages," which are
determined by "the amount a willing buyer would have been reasonably required to pay a willing
seller at the time of the infringement for the actual use made by [the infringer] of the plaintiff's
work." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1087 (9th Cir. 2014); see also id. at 1088
(explaining that a rule disallowing "hypothetical-license damages . . . could operate unfairly,
given the difficulty [the copyright owner] might face in meeting the burden of proof for lost
profits and infringer's profits" (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir.
2001)). "[T]he market value approach is an objective, not a subjective, analysis." Jarvis v. K2
Inc., 486 F.3d 526, 534 (9th Cir. 2007) (quoting *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir.
2002)). This request seeks information related to August's revenue and profits, which is clearly
relevant to August's actual damages, if any. If August ha

REQUEST FOR PRODUCTION NO. 31:
For each expense that YOU claim it is appropriate to deduct as costs, expenses or overhead in
calculating the profits of YOUR PHOTOGRAPHS within the last three years, produce
DOCUMENTS sufficient to substantiate the amount of that expense.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 31.

REQUEST FOR PRODUCTION NO. 32:
A copy of any cease-and-desist letter sent by or to YOU and/or the PHOTOGRAPHERS' that
alleges infringement of any of YOUR PHOTOGRAPHS.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 31, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, whether the images in
the letters are the same as the ones deposited with the copyright office.

REQUEST FOR PRODUCTION NO. 36:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other
writings or data RELATING TO ANY AND ALL AGREEMENTS pursuant to which
IMAGERIGHTS monitored and/or identified purported infringement of YOUR
PHOTOGRAPHS and ALL payments made in connection with such agreement.

Letter to Benjamin F. Tookey
August 13, 2024

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 36, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, what photos are subject to the agreements and whether they are the same ones at issue here. The information sough is also relevant to whether August or the photographers may have transferred some rights to Imagerights that August is attempting to enforce in this lawsuit.

REQUEST FOR PRODUCTION NO. 39:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the rights, terms and implementation of the "Recovery Service Agreement" between IMAGERIGHTS, on the one hand, and the PHOTOGRAPHERS and/or the YOU, on the other hand, pursuant to which IMAGERIGHTS is appointed as an agent or an "exclusive agent" to identify potentially unauthorized uses of YOUR PHOTOGRAPHS.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: Same as RPD 36.

REQUEST FOR PRODUCTION NO. 41:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS's monitoring and identification of purported infringement of YOUR PHOTOGRAPHS, including when such monitoring and/or identification began and the means by which IMAGERIGHTS conducted such monitoring and/or identification, and all payments made or received in connection with such work.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 41, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, when infringement was discovered, proof of alleged copying and whether the photographs are the same as what was deposited with the copyright office, and the relationship between ImageRights, August and/or the photographers and whether the relationship affects August's purported status as an exclusive agent and/or rights holder.

REQUEST FOR PRODUCTION NO. 42:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO IMAGERIGHTS notifying YOU and/or any of the PHOTOGRAPHERS of infringement or potential infringement of YOUR PHOTOGRAPHS.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 41, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, when infringement was discovered and whether the photographs are the same as what was deposited with the copyright office.

REQUEST FOR PRODUCTION NO. 43:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO YOU and/or any of the PHOTOGRAPHERS uploading the

Letter to Benjamin F. Tookey
August 13, 2024

images of YOUR PHOTOGRAPHS to IMAGERIGHTS. See
https://www.imagerights.com/discovery (Step 1).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 43, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, whether the
photographs are the same as what was deposited with the copyright office.

REQUEST FOR PRODUCTION NO. 44:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other
writings or data RELATING TO IMAGERIGHTS's use of "advanced mathematical algorithms
to calculate a unique fingerprint for each of [YOUR PHOTOGRAPHS]." See
https://www.imagerights.com/discovery (Step 2).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 44, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, how and when
infringement is detected and whether the infringement detected was a work owned by you or
another work.

REQUEST FOR PRODUCTION NO. 45:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other
writings or data RELATING TO IMAGERIGHTS's efforts to "search[] the internet and collect[]
fingerprints for any image [IMAGERIGHTS] see[s] online" RELATING TO the
PHOTOGRAPHERS, AUGUST and/or YOUR PHOTOGRAPHS. See
https://www.imagerights.com/discovery (Step 3).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 45, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, how and when
infringement is detected and whether the infringement detected was a work owned by you or
another work, alleged proof of copying.

REQUEST FOR PRODUCTION NO. 46:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other
writings or data RELATING TO ALL "sightings" that were "analyzed, sorted and ranked, with
the pursuable claims delivered to [YOUR and/or any of the PHOTOGRAPHERS'] Inbox" or
otherwise shared by IMAGERIGHTS with YOU and/or any of the PHOTOGRAPHERS. See
https://www.imagerights.com/discovery (Step 4).

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 46, August just
objected and did not provide a response. This request seeks relevant, non-privileged information
that is proportional to the needs of the case, including, but not limited to, whether photos at issue
in the case are the same as the ones that were deposited with the copyright office.

REQUEST FOR PRODUCTION NO. 47:

Letter to Benjamin F. Tookey
August 13, 2024

ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO the total amount of revenue IMAGERIGHTS received from YOU and/or any of the PHOTOGRAPHERS for each year in 2018, 2019, 2020, 2021, 2022, 2023 and 2024 in connection with monitoring and identifying purported infringement of copyrights.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 47, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, the relationship between ImageRights, August and/or the photographers and whether the relationship affects August's purported status as an exclusive agent and/or rights holder.

REQUEST FOR PRODUCTION NO. 50:
ALL DOCUMENTS, COMMUNICATIONS, electronically stored information and/or other writings or data RELATING TO any other payment made or due to any person, business, company, corporation, limited liability company, partnership or any other individual or entity RELATING TO YOU, YOUR PHOTOGRAPHS, the SUBJECT PHOTOGRAPHS and/or the PHOTOGRAPHERS.

REASONS WHY A FURTHER RESPONSE IS WARRANTED: For RPD 50, August just objected and did not provide a response. This request seeks relevant, non-privileged information that is proportional to the needs of the case, including, but not limited to, whether there may be co-authors of the subject photograph what were not disclosed in the copyright applications, whether the subject photographs were modified after registration, and the relationship between ImageRights, August and/or the photographers and whether the relationship affects August's purported status as an exclusive agent and/or rights holder.

Thank you for your attention to these urgent matters, and I look forward to speaking with you soon.

Best regards,
/s/ Matthew Trejo
Matthew A. Trejo
Attorney
PIETZ & SHAHRIARI, LLP

Page 15 of 15

# EXHIBIT 123

**2024.08.13 - Rog 20 to August**

1  Morgan E. Pietz (SBN 260629)
    morgan@pstrials.com
2  Matthew A. Trejo (SBN 320464)
    matt@pstrials.com
3  PIETZ & SHAHRIARI, LLP
4  6700 S. Centinela Avenue, 2nd Floor
    Culver City, CA 90230
5  Telephone:  (310) 424-5557
    Facsimile:  (310) 597-4626
6
7  Attorneys for Defendant
    *LINE FINANCIAL PBC*
8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  AUGUST IMAGE, LLC, a New York     | Case No. 2:23-cv-05492-WLH-AS
    Limited Liability Company,
13                                     | Assigned for All Purposes to the
                                       | Honorable Wesley S. Hsu
14         Plaintiff,
15  v.                                 | **DEFENDANT LINE FINANCIAL
                                       | PBC'S INTERROGATORIES TO
16  LINE FINANCIAL PBC, a Delaware     | PLAINTIFF AUGUST IMAGE, LLC
    Corporation; and DOES 1-10,        | (SET TWO)**
17
18         Defendant(s).
                                       | Action Filed: July 10, 2023
19
20
21
22
23

24  PROPOUNDING PARTY:     Defendant, LINE FINANCIAL PBC
25  RESPONDING PARTY:      Plaintiff, AUGUST IMAGE, LLC
26  SET NUMBER:            Two (2)
27
28

-1-

DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST
IMAGE, LLC (SET TWO)

1    The PROPOUNDING PARTY hereby submits the following interrogatories
2  to the RESPONDING PARTY pursuant to Fed R. Civ. P. 33.

### **INSTRUCTIONS**

1.    These are general instructions. For time limitations, requirements for
service on other parties, and other details, see F.R.C.P. 16, 26, 33, 34, 36, and the
cases construing those Rules.

2.    Within thirty (30) days after you are served with these interrogatories,
you must serve your responses on the PROPOUNDING PARTY.

3.    Each answer must be as complete and straightforward as the
information reasonably available to you permits. If a discovery request cannot be
answered completely, answer it to the extent possible.

4.    Whenever a discovery request may be answered by referring to a
document, the document may be attached as an exhibit to the response and referred
to in the response. If the document has more than one page, refer to the page and
section where the answer to the discovery request can be found.

5.    Whenever an address and telephone number for the same person are
requested in more than one discovery request, you are required to furnish them in
answering only the first discovery request seeking that information.

6.    These discovery requests are continuing. If any information sought by
these is not discovered or learned until after they are answered, or if answers for any
reason should later become incorrect, there shall be a continuing duty on the party
answering these discovery requests to supplement or change answers previously
submitted pursuant to F.R.C.P. 26(e), and applicable case law. If any discovery
request cannot be answered in full, an answer shall be given to the greatest extent
possible.

7.    If refusal to answer a question is based on the grounds of
burdensomeness, identify the number and nature of documents needed to be
searched, the location of the documents, and the number of persons, hours and costs

-2-
DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST
IMAGE, LLC (SET TWO)

required to conduct the search. With respect to any request to which any privilege is asserted, in whole or in part, please state the exact privilege that is being asserted, identify the nature and substance of the applicable document, and provide the factual basis for the assertion of the privilege in an appropriate privilege log.

8.    Per Fed. R. Civ. P. 33(d), you may only produce documents or electronically stored information in response to an interrogatory if (i) the interrogatory calls for examining, auditing, compiling, abstracting or summarizing information, (ii) that is kept as part of your business records, and (iii) the burden of going through the business records to derive or ascertain the answer would not be easier for you than it would be for the requesting party.

## **DEFINITIONS**

The following definitions are applicable throughout this request:

1.    "RESPONDING PARTY," "AUGUST" or "YOU" means or refers to AUGUST IMAGE, LLC, and also includes any other name by which this party has been known and includes its present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of this corporation, as well as its parent corporations, subsidiaries, affiliates, divisions, predecessors, and successors in interest.

2.    "PROPOUNDING PARTY," "LINE FINANCIAL" and "DEFENDANT" means or refers to the defendant LINE FINANCIAL PBC, and also includes any other name by which this party has been known and includes its present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of this corporation, as well as its parent corporations, subsidiaries, affiliates, divisions, predecessors, and successors in interest.

3.    "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, public entity, public enterprise and/or public fund.

4.    "IDENTIFY" (1) when used in reference to an individual (i.e., a natural person), means stating that person's full name as well as his or her last known address, home and business telephone numbers, email address, and present occupation or business affiliation; (2) when used in reference to a person other than a natural person, means that entity or other organization's full name, a description of the type of entity or organization (that is, whether it is a corporation, partnership, etc.), and the entity's last known address, telephone number, and principal place of business; (3) when used in reference to DOCUMENTS or COMMUNICATIONS means specify them by Bates number, or, if Bates numbers are not available, to describe the nature and location of each such item with reasonable particularity, by providing information such as date, sender, receiver, people copied, subject line, and location where it is located, such as to allow PROPOUNDING PARTY to reasonably locate it; and (4) when used in reference to some other thing, means to provide all facts, evidence, information, and data necessary to understand YOUR response, as may be further indicated by the text of the request itself.

5.    "DOCUMENTS" or "WRITINGS" have the meanings set forth in Federal Rule of Evidence 1001(a) and also means the original or exact copies of any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical recordings and any transcripts thereof, draft, final, original, reproduced, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, computer data files, electronically stored information ("ESI") in the possession, custody, and/or control of Plaintiff or Plaintiffs agents and counsel or may through reasonable efforts be obtained of Plaintiffs agents and counsel, or known by Plaintiff to exist; it shall also mean all copies of documents by whatever means made, including intermediate or working

copies. "DOCUMENT(S)" includes all attachments and enclosures thereto including, but not limited to any correspondence, notes (whether handwritten or computerized), agreements, lists, memoranda, minutes, records, instruments, publications, reports, books, pamphlets, summaries, drafts, calendars, communications, telegrams, facsimiles, emails, manuals, guidelines, rules, instructions, electronic tapes, discs or other recordings, computer programs, hard drives, discs, printouts, data cards, computer files, back-up tapes, hard disks, litigation data bases, and other data compilations from which information can be obtained. Any copies of "DOCUMENTS" bearing notations or marks not found on the original shall be deemed to be different documents and shall also be produced.

6.      "COMMUNICATIONS" means all correspondence, inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, notes, emails, telegrams, telexes, facsimiles, social media posts or comments, other forms of communicating or transmitting information, including, but not limited to, oral, digital, and written communications and includes DOCUMENTS (as defined above) exchanged in relation to such communications.

7.      "RELATES TO", "RELATING TO" and "RELATED TO" means concerning, describing, discussing, evidencing, reflecting, compromising, illustrating, containing, embodying, constituting, analyzing, stating, identifying, referring to, commenting on, connected with, substantiating, establishing, memorializing, proving, disproving, contradicting, mentioning, regarding, reflecting, dealing with, in any way pertaining to, or supporting, directly or indirectly.

8.      "ALL" shall be construed as "all and each." "AND" and "OR" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

9.      "COMPLAINT" means the operative complaint filed by YOU against PROPOUNDING PARTY in the above-captioned matter.

DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)

10.  "SUBJECT PHOTOGRAPHS" means the purportedly copyrighted photographs that YOU are alleging that the PROPOUNDING PARTY infringed, as per YOUR COMPLAINT, which include the "Subject Photographs" as this term is defined in Paragraph 8 of the COMPLAINT and as depicted on Exhibit 1 to YOUR COMPLAINT.

11.  "PHOTOGRAPHERS" means and refers to the photographers of the SUBJECT PHOTOGRAPHS: Andrew Eccles, Brian Bowen Smith, Austian Hargrave, Art Streiber, Joe Pugliese, David Slijper, Alexi Lubomirski, Shayan Asgharnia, Martin Schoeller, Bruno Van Mossevelde, Nicoletta Van Mossevelde, Arielle Bobb Willis, Mark Mann and Miller Mobley.

12.  "OTHER PHOTOGRAPHS" means and refers to any photograph or image other than the Subject Photographs for which YOU contend DEFENDANT infringed upon YOUR or the PHOTOGRAPHERS' copyright(s) in said photograph or image.

13.  "AGREEMENT(S)" shall mean and include every proposal, contract, agreement, or understanding, whether reflected in writing, verbally, or implied, and documents reflecting such proposals, contracts, agreements, or understandings and the negotiations thereof, whether or not finalized.

14.  "ACCUSED POSTS" means and refers to the images on Line Financial's websites that allegedly infringe on AUGUST and/or YOUR copyrights in the SUBJECT PHOTOGRAPHS, including, but not limited to, the ACCUSED POSTS identified on Exhibit 1 to the Complaint.

15.  "IMAGERIGHTS" means and refers to IMAGERIGHTS INTERNATIONAL, INC., and also includes any other name by which IMAGERIGHTS has been known and includes its present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of this

-6-

1    corporation, as well as its parent corporations, subsidiaries, affiliates, divisions,

2    predecessors, and successors in interest.

3    **INTERROGATORIES**

4    **INTERROGATORY NO. 20:**

5            For each addendum between YOU and the PHOTOGRAPHERS, please state

6    the date on which each addendum was signed by YOU and the photographer.

7

8    Dated: August 13, 2024                    PIETZ & SHAHRIARI, LLP

9

10                                      By:   */s/ Matthew A. Trejo*

11                                            Morgan E. Pietz
                                             Matthew A. Trejo
12                                            *Attorney for Defendant*
                                             *Line Financial PBC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 6700 S. Centinela Ave., 2nd Floor, Culver City, CA 90230. On August 13, 2024, I served the foregoing document described as

**DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)**

on all interested parties in this action as follows:

☒By Electronic Service: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

### SERVICE LIST

*Person/Entity Served:*                    *Attorneys for Plaintiff*
Stephen M. Doniger (SBN 179314)
  stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
  btookey@donigerlawfirm.com
DONIGER/BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

        I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed on August 13, 2024 at Los Angeles, California

/s/ Matthew Trejo

_____

Matthew Trejo

-8-

DEFENDANT LINE FINANCIAL PBC'S INTERROGATORIES TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)

# EXHIBIT 124

**2024.08.15 - IDC Hearing Tr.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)


| | | |
|---|---|---|
| AUGUST IMAGE, LLC, | ) | CASE NO: 2:23-cv-05492-WLH-ASx |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| LINE FINANCIAL, PBC, ET AL, | ) | Thursday, August 15, 2024 |
| | ) | |
| Defendants. | ) | (9:59 a.m. to 10:48 a.m.) |


INFORMAL DISCOVERY CONFERENCE [DKT.NO.51]

BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE



<u>APPEARANCES</u>:

For Plaintiff:          BENJAMIN F. TOOKEY, ESQ.
                        Doniger Burroughs
                        603 Rose Ave.
                        Venice, CA 90291

For Defendants:         MATTHEW A. TREJO, ESQ.
                        MORGAN E. PIETZ, ESQ.
                        Pietz & Shahriari
                        6700 S. Centinela Ave., 2nd Floor
                        Culver City, CA 90230


Court Reporter:         Recorded; CourtSmart

Courtroom Deputy:       Alma Felix

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**Los Angeles, California; Thursday, August 15, 2024; 9:59 a.m.**

**(Messrs. Tookey, Trejo and Pietz Appearing Telephonically)**

**(Call to Order**

       **THE CLERK:**  Good morning.  Calling Case Number CV 23-5492-WLH(ASx), *August Image, LLC versus Line Financial, PBC, et al.*

       Beginning with Plaintiff's counsel, please state your appearance for the record.

       **MR. TOOKEY:**  Good morning.  This is Ben Tookey appearing on behalf of Plaintiff August Image.

       **MR. PIETZ:**  And good morning.  You've got Morgan Pietz and Matt Trejo appearing for the Defendant Line Financial, PBC.

       **MR. TREJO:**  Good morning.

       **THE COURT:**  Okay.  Good morning.  This is Judge Sagar and this is the hearing on the parties' request for an informal discovery conference.  The request was received on August 2nd and the Court was not available on the dates that the parties proposed for the hearing and so the hearing was set for today's date.

       The Court has received and reviewed the parties' submission regarding the request and the attachments to that request.  And on August 12th, Defendant submitted a supplement consisting of six exhibits and Plaintiff's counsel then submitted a letter to the Court stating their objections to the

3

1    submission by the Defendant.

2          Now, this is not a Rule 37 motion to compel and so

3    there's really no provision for submitting supplemental

4    memoranda.  And, in any event, the Court doesn't find its

5    cursory review of what was submitted by Defendant to be helpful

6    in resolving this dispute.  So the Court is not going to

7    consider Defendant's supplemental submission on August 12th.

8          The first issue is whether -- is Defendant seeking to

9    compel Plaintiff to produce nine of the 13 photographers of the

10   photographs at issue to appear for deposition.  Plaintiff

11   contends that these photographers need to be subpoenaed

12   pursuant to Rule 45.

13         In reviewing the parties' submission, the Court found

14   -- one moment.  Let me get my notes.  All right.

15         All right.  So in reviewing this submission, the

16   Court found that Defendant's proposed compromise was

17   reasonable.  Defendant proposed that it would issue subpoenas

18   to the photographers for remote depositions if Plaintiff would

19   accept service of all of the subpoenas for the photographers

20   and agree that any disputes about those subpoenas would be

21   adjudicated in this court.

22         I think that's a very reasonable compromise in this

23   case.  The Court doesn't find that -- or finds that these

24   photographers are not managing agents or officers or directors

25   of Plaintiff and so not persons that can be subpoenaed under

4

1   Rule 30(b).

2          But I also find that there is this relationship

3   between these photographers and Plaintiff.  Plaintiff in their

4   contractual agreements certainly has required these

5   photographers to cooperate in litigation and Plaintiff also has

6   the ability to institute litigation on behalf of the

7   photographs that it licenses from these photographers and I

8   think that Defendant's compromise is reasonable.

9          And I want to hear from Plaintiff as to whether --

10  why it is you won't agree to allow these photographers to

11  appear by deposition remotely and accept service on their

12  behalf for that purpose.

13         **MR. TOOKEY:**  Of course, Your Honor.  This is Ben

14  Tookey on behalf of Plaintiff August Image.  So on the Court's

15  finding on the compromise Defendant proposed, so our office

16  does not represent the photographers and August is not their

17  registered agent for service of process.  It's their exclusive

18  licensing agent.

19         And of -- there are 13 photographers whose

20  photographs are involved in this case.  Not all of August's

21  agreements with those photographers have the provision that the

22  Court is referencing with respect to litigations that are

23  initiated over the unauthorized use of those photographers'

24  photos.  So the provision doesn't apply across the board

25  because the agreements vary from photographer to photographer.

1          Those provisions are also specific to cases that are

2    brought in a photographer's name.  This is not a case.  This is

3    a case that August has brought in its own name to redress

4    violations of its exclusive rights in the photographs.  It

5    received those rights from the photographers through written

6    transfer and I have written transfers in the agency agreements

7    and the addenda thereto.

8          But those specific provisions are with respect to if

9    August instituted a name -- instituted a case in a

10   photographer's name which makes sense that that was the case

11   that it was bringing suit to redress the photographer's rights

12   as opposed to its rights, then it would meet need that

13   deference but that deference is not -- does not authorize

14   August to accept service of a subpoena for a photographer in

15   lieu of personal service to apply under Rule 45 and the

16   photographers have no notice of that.  There's no legal option

17   there.

18          **THE COURT:**  Let me ask you this.  If those

19   photographers were served with Rule 45 subpoenas, would August

20   be representing them during those depositions?

21          **MR. TOOKEY:**  No, August would not be.

22          **THE COURT:**  So they would be required, if they wish

23   to be represented, to get their own counsel for those

24   depositions, correct?

25          **MR. TOOKEY:**  The photographers would need to get

6

1   their own counsel; that's correct.

2        **THE COURT:**  All right.  And have you -- and you have

3   not -- and August has not reached out to these photographers,

4   these nine photographers, to determine whether they would

5   prefer to have their deposition taken remotely and have August

6   accept service of the deposition subpoena on their behalf?

7        **MR. TOOKEY:**  No, August has not done so.  My firm has

8   not done so.  The photographers have no notice of this

9   proceeding or what Defendant is attempting to do.

10        **THE COURT:**  All right.  And of those nine

11  photographers, how many of those photographers have that

12  provision in their agreement which requires them to cooperate

13  with Plaintiff in any lawsuit that Plaintiff initiates?

14        **MR. TOOKEY:**  So there are only -- so there are --

15  it's about six photographers.

16        **THE COURT:**  Okay.  And you say that that cooperation

17  provision is only with respect to those lawsuits that are filed

18  in the name of the photographer?

19        **MR. TOOKEY:**  Yes, that is correct.  And they're not

20  -- again, it's not a -- it's just a best-efforts provision.

21        **THE COURT:**  Right.

22        **MR. TOOKEY:**  There is no legal obligation to accept

23  service of a subpoena.  There's no legal ability of August to

24  compel them to appear if they refuse and they have no legal

25  obligation to appear either.  It's just a best-efforts

7

1    provision.

2         **THE COURT:**  All right.  So what if August wanted to

3    take their deposition testimony?  Would they be required to

4    appear for deposition?

5         **MR. TOOKEY:**  If August wanted to take their

6    deposition testimony, August would have to subpoena them

7    because they're non-parties.  I mean, notwithstanding that

8    August is their exclusive licensing agent because they're

9    non-parties and they have no otherwise -- outside of the

10   agreements, they have no affiliation with August.  August would

11   have to go through Rule 45.

12        **THE COURT:**  All right.  Let me hear from counsel for

13   Defendant.  I don't find that they are managing agents or

14   officers or directors. I don't find that they are the proper --

15   that they can be subpoenaed for deposition as Plaintiff's

16   30(b)(6) witness.  So I do -- or as an officer or director,

17   employee of the Plaintiff.  I think your compromise is a very

18   reasonable one but I'm hearing from Plaintiff that they -- if

19   they wanted to take their depositions, they would have to go

20   through the Rule 45 process.  So why shouldn't Defendant also

21   be required to go through that process?

22        **MR. PIETZ:**  Thank you, Your Honor, Morgan Pietz for

23   the Defendant.  And if the Plaintiff is going to subpoena them

24   and obtain their testimony that way and we will also have an

25   opportunity to ask questions and obtain documents from them, I

8

1    suppose we could live with that.  But my fundamental objection

2    to what's going on here is these photographers signed an

3    agreement that purports to give the Plaintiff the right to

4    initiate litigation based on copyrights that the photographers

5    themselves own.

6         The Plaintiffs then in their initial disclosures

7    identified that it expects to introduce both testimony and

8    documents from each of the photographers and states that the

9    photographers can be contacted through counsel for the

10   Plaintiff.  That's what the initial disclosures said and we've

11   provided copies of the original initial disclosures.

12        Taking the Plaintiff at their word, we then went

13   ahead and issued deposition notices pursuant to Rule 30 to the

14   Plaintiff seeking testimony of the photographers.  It was after

15   we served the deposition notice that we received an email and

16   amended initial disclosures which struck out the part about how

17   the photographers would be represented by counsel for the

18   Plaintiff and, instead, providing us with their addresses in

19   the United Kingdom and New York as well as other places and at

20   which the Plaintiff said, oh, no, if you're going to want

21   testimony from these people, you need to go through the whole

22   Rule 45 process.

23        At which point I said, well, okay, look.  There's not

24   that many differences between Rule 30 and Rule 45 except that

25   Rule 45 is obviously more expensive and certainly if we're

9

1  talking about photographers located in the United Kingdom, then

2  it becomes sort of exponentially more expensive.

3        But at the end of the day in terms of the traditional

4  agent/principal relationship, what's going on in this case, is

5  that August is the agent -- an exclusive licensing agent is

6  what the agreement says, although it's described differently in

7  the complaint and really it's the photographer that's the

8  principal who at the end of the day owns the copyrights and

9  this lawsuit is really being pursued on behalf of the

10  photographers.

11        Now, the Plaintiff disputes that.  They say, well,

12  we're an exclusive licensee and there's some law in the Ninth

13  Circuit, although other Circuits disagree, about whether or not

14  that gives them independent standing to pursue a claim.

15        **THE COURT:**  Okay.  So -- now what you're doing is

16  you're just really arguing the merits of your case and I have

17  reviewed the argument that was presented.  I understand your

18  argument but Plaintiff is taking the position that they are

19  filing this lawsuit on their own behalf as the exclusive

20  licensing agent for the photographs at issue.

21        So if you want to take the depositions of the

22  photographers, I think you will have to use the Rule 45 process

23  to do so if Plaintiff insists on not agreeing to your

24  compromise which I think is a very reasonable one, particularly

25  if the Plaintiff also needs to take these depositions or takes

10

1  -- needs testimony from these photographers, it seems to me

2  that that is the most efficient way to proceed in this case.

3          So I understand your argument that you believe that

4  these photographers are basically aligned with the Plaintiff in

5  this case and they -- Plaintiff should be able to have to

6  produce them for deposition.  But what I'm hearing from

7  Plaintiff's counsel is that they're under no obligation to do

8  so and that if they themselves wanted to take testimony from

9  these photographers, they would have to use the Rule 45

10 process.

11         I think what might be, I think, useful in this case

12 is if Plaintiff reaches out to these photographers, the nine

13 photographers, and then finds out from them if they want to

14 have their depositions taken remotely and allow August to

15 accept service of deposition notices on their behalf in lieu of

16 receiving -- being served with Rule 45 subpoenas and then

17 having to retain counsel to represent them at depositions if

18 they choose to proceed with it if they want to have counsel

19 represent them during the deposition.

20         So maybe Plaintiff should make that inquiry and then

21 you can meet and confer as to how -- whether you can proceed

22 with this proposed compromise or whether Rule 45 subpoenas will

23 need to be issued to these witnesses.

24         **MR. PIETZ:**  Your Honor, I appreciate those comments.

25 I think my issue here is I believe that if the Plaintiff snaps

11

1  their fingers, these photographers will show up at trial or if

2  the Plaintiff requests it, they will do so.  So if the

3  Plaintiff is actually committing here today that they are going

4  to issue Rule 45 subpoenas and we'll essentially also have an

5  opportunity to ask them some questions, then I don't have any

6  objection to the compromise.  In other words, that seems

7  reasonable to me.

8         But the situation that I'm trying to guard against

9  though is the Plaintiff not subpoenaing these photographers,

10  putting the burden on us to go track them down and spend

11  additional money to do so and I don't think that that's

12  appropriate and I -- there are some reasons I would disagree

13  with the Court's finding but I -- maybe today is not the time

14  to get into all those.

15         But my issue is that what I don't want to have happen

16  is the Plaintiff doesn't issue Rule 45 subpoenas, discovery

17  closes and then their position is, well, they were still on our

18  witness list.  So they're going to come and testify at trial

19  because we asked them to and they're aligned with us.  So

20  they're going to do what we say and it's going to be a surprise

21  to you what they testify to and what documents may or may not

22  be authenticate because you didn't go to the trouble of then

23  subpoenaing them under Rule 45 which is going to be

24  substantially more expensive.

25         I would also like to sort of circle back.  I don't

12

1   think that the particular context of this kind of case has

2   really ever been addressed before on this question of the

3   managing agent issue.  And I actually think it's a pretty

4   interesting question and that it's not -- and that it's the

5   Court's call that I think really ought to go our way.

6           In other words -- and to clarify -- apologies to the

7   Court.  I think it wasn't clear from the submission we

8   submitted on Monday.  All that we had added on Monday was

9   copies of all of the agreements, at least all of the agreements

10  that have been produced so far from each of the photographers

11  along with a summary chart that summarizes which provisions are

12  in which photographer's agreement.

13          I agree with Plaintiff's counsel that there are six

14  of the photographer agreements, whether it's sort of a specific

15  obligation cooperating -- obligating the photographer to

16  cooperate in discovery.  But the agreements do vary around a

17  little and I actually think that this may be an issue on which

18  briefing and then having it heard in a Rule 37 motion makes

19  sense.

20          My only other concern with the Court -- with the

21  proposed compromise is if these people -- well, I think there's

22  jurisdictional issues where -- in other words, if the

23  photographers to agree to allow the Plaintiff to accept service

24  on their behalf, then I think everything is copasetic.  There's

25  no issue.

13

1          But if at the end of the day, the photographers are

2     not going to agree to allow the Plaintiff to accept service on

3     their behalf, so I think we've got a potential problem under

4     that avenue where the Court may not properly have jurisdiction

5     over those photographers.  It, of course, has jurisdiction over

6     the Plaintiff, right?

7          But that's sort of circling back to my point about

8     why, at least from our perspective, it's really 30(b)(1) that

9     ought to be the appropriate mechanism for obtaining testimony

10    from photographers who at the end of the day, it's their

11    copyright and they're the ones who entered into this agreement

12    and they have the power to terminate that agreement.

13         At the end of the day -- and I understand the

14    Plaintiff's argument and I'm not trying to argue their merits

15    of that today.  I accept for purposes of the instant discovery

16    motion that the Plaintiff independently asserts that it has

17    standing to pursue this lawsuit.  I'm not disputing that for

18    today.

19         Rather, my point is, well, if that's true, given sort

20    of unusual and almost unique circumstances of this kind of

21    litigation where there's essentially a middle man pursuing a

22    lawsuit on behalf of somebody else, which is sort of a very

23    unusual circumstance in Federal litigation, right.  The general

24    rule is that representative litigation isn't allowed.  Only

25    attorneys are allowed to appear in court and pursue claims of

14

1    others.

2            But in other words, even if we assume that they have

3    standing to pursue the lawsuit, I think it's a much closer

4    question about whether or not, given this sort of flexible

5    managing agent analysis for purposes of this claim, these

6    photographers really are the managing agent of the Plaintiff.

7            And one of the points that the Plaintiffs made in

8    their IDC statement is well, look, we represent a hundred-plus

9    different photographers and it's absurd to assert that each of

10   the 100-plus photographers is a managing agent of the Plaintiff

11   which for purposes of a lawsuit against some competitor or

12   against a vendor, I think I agree with that.

13           But it's not absurd and I think, in fact, we're on

14   the right side to suggest that for purposes of this copyright

15   lawsuit, the specific photographers who own the copyright and

16   purported to give the Plaintiff the authority to pursue the

17   lawsuit and had the authority to take that away and have a

18   direct interest in the stake of the outcome and have an

19   obligation to cooperate in discovery, at least certain of them,

20   I don't think it is a stretch to assert that those

21   photographers are the managing agents of August Image, at least

22   for the purposes of discovery in this infringement action about

23   their photographs.

24           In other words, we've looked pretty comprehensively

25   and I haven't found an exact analog for this in a copyright

15

1    case.  There are a few other contexts where the Courts will

2    allow somebody who is not an attorney to pursue litigation on

3    behalf of essentially an unnamed real party in interest.  None

4    of those are --

5         **THE COURT:**  So I actually disagree with that.  I

6    think that the lawsuit has been filed by Plaintiff to assert

7    their own rights, their licensing, their exclusive licensing

8    agreement to display the photographs at issue.  So I don't --

9    it's because of this nature of this lawsuit and the way that's

10   been filed that I find that these photographers are nonparties

11   and they are not managing agents, officers or directors and,

12   therefore, Plaintiff is not required to produce them for

13   deposition.

14        So, anyway, I -- maybe this is a case that needs to

15   be briefed and then ruled on and then appealed and you'll get

16   some case law on this but the IDC that is before me is not the

17   appropriate means to do that.

18        So the only other thing I would suggest is that if --

19   well, let me ask Mr. Tookey.

20        Are you prepared to state whether or not Plaintiff

21   will be taking the depositions of these photographers or

22   calling them as witnesses at trial?

23        **MR. TOOKEY:**  Well, Your Honor, I'm a bit blindsided

24   by the question because this is on Defendant's motion to

25   compel.  So I have not spoken with my client about whether he

16

1    intends to issue his own subpoenas for discovery purposes.  But

2    they are listed on all the initial disclosures.  If this case

3    gets to trial, we do intend to call them at trial because they

4    created the photographs and they entered into their agency

5    agreements with August.  That's why they are on our initial

6    disclosures.

7            But as far as subpoenas for discovery, we haven't

8    decided yet.  I haven't spoken with my client about that.

9            **THE COURT:**  All right.  Well, if you are going to

10   take their depositions pursuant to Rule 45 and Defendants --

11   you don't agree to this compromise that the Defendants have

12   proposed, which I think is very reasonable, then maybe both

13   parties should split the cost of the Rule 45 subpoenas.  But,

14   anyway, I'll leave it at that.

15           I will deny the motion to compel these photographers

16   to appear for depositions based on the Rule 30 deposition

17   notices that were served on Plaintiff.

18           The second issue is Defendant is seeking a protective

19   order against its Rule 30(b)(6) witness testifying to Topics 1,

20   2, 4, 6, 7, 8, 9, 24, 25, 26 and 37.  With -- let's take Topic

21   37 first.  It seems to me that what Plaintiff is -- again, I

22   think that Defendant -- Defendant's argument on Topic 37 and

23   its proposal is reasonable.

24           Defendant proposes that Topic -- let me first state

25   -- what is -- Topic 37 asks the Defendant to have its witness

17

1   prepared to testify to the factual basis for the information

2   that Defendant provided in their notice of exempt offering

3   securities forms that they filed with the SEC.

4          And Defendant offered to stipulate that it had filed

5   the documents with the SEC and also offered that if Plaintiff

6   would identify the specific statements in that filing that it

7   wants to question the witness about to establish Defendant's

8   commerciality, then it would then be able to prepare its

9   witness to testify about those particular factual issues.

10         And I don't understand why Plaintiff refused to agree

11  to that because I think that's -- I do think that Topic 37 does

12  border on not being relevant.  I think it is relevant to -- I

13  mean, it's marginally relevant but I do think that as it's

14  phrased, it is overbroad and it does -- it doesn't seem to be

15  really tied into what's really at issue in this case.

16         And so let me hear from you, Mr. Tookey, as to why

17  you can't be more specific about those factual statements that

18  you're really intending to question the witness about.

19         **MR. TOOKEY:**  Well -- so if Your Honor's inclination

20  is to allow us to rewrite this topic to be more specific about

21  particular factual statements, I would accept that and would do

22  that.

23         **THE COURT:**  Okay.

24         **MR. TOOKEY:**  This -- we actually revised this topic

25  because Defense counsel's concern was that we were trying to

18

1  probe compliance with securities law which we're not trying to

2  do which one of the reasons why we pointed to specific Bates

3  number documents and then just the factual basis for the fact -

4  - for example and namely, the industry group that they have

5  identified themselves with, the fact that they sold equity in

6  their business, the fact that they have investors and they have

7  minimum investment and sales amounts and that they filed these

8  documents two days apart with the SEC.

9          And so all of that goes to the commercial nature of

10  their business and their use to their photographs on their

11  website was in furtherance of that business.  And it also shows

12  there's sophistication as a media company.

13          Defendant said -- we've agreed as parties that these

14  are traditionally noticeable documents and Defendant also

15  agreed that the facts, somehow separate from the documents, are

16  fair game for testimony.  So I just didn't see a good reason

17  because I didn't hear any -- why this would be proportionate --

18  disproportionate for me or -- to have to piece those things

19  together separately in the deposition if both of those things

20  are true.

21          **THE COURT:**  All right.  Well, then I will just order

22  you to rephrase Topic 37 and offer specificity as to what

23  specific statement in the SEC filing you want to question the

24  witness about.

25          I do also find that Topics 2, 4 and 6 are

19

1  impermissibly compound.  I understand that that's not a basis

2  for seeking a protective order and that those objections can be

3  made at the time of the deposition but I have some problems

4  with those topics asking for the factual basis for so many

5  discovery responses.

6        I agree with Defendants that it -- there -- multiple

7  -- I don't -- I haven't looked at those interrogatory responses

8  and the responses to the requests for admission and the

9  document production responses.  So I don't know whether they're

10 all related to the same issue but Defendant says these are the

11 -- actually go to multiple topics and I agree that that is

12 impermissibly compound.  So you'll have to narrow that or meet

13 and confer to narrow Topics 2, 4 and 6.

14        Topic Number --

15        **MR. TOOKEY:**  Your Honor, may I be heard on those

16 topics?

17        **THE COURT:**  Yes.

18        **MR. TOOKEY:**  So the -- I'm sorry.  I think I'm

19 hearing an echo.  Is anyone hearing -- else hearing that?

20        **THE COURT:**  I'm not hearing, no.

21        **MR. TOOKEY:**  Okay.  I think it went away.  My

22 apologies.

23        So the analysis of whether something is compound and

24 consists of subparts is analogous for counter interrogatories.

25 It's not about preparing and getting the right deponent to

20

1    testify topics.  And the fact that -- the points that

2    (inaudible) is just to get the right deponent.  It's not to

3    narrow what is otherwise relevant information.

4            The interrogatory responses and the requests for

5    admission responses were verified by Defendant and they were

6    verified on July 10th.  I asked during the meet-and-confer if

7    it would be more helpful if I broke it out as the factual basis

8    for your response to Interrogatory 1, 2, 3 and so on.  And

9    Defense counsel represented that that would not make a

10   difference.

11           So I -- both parties are entitled to explore the

12   factual basis for written discovery responses produced in these

13   cases.  We don't have to narrow ourselves beyond that.  The

14   point of the deposition is to explore those things specifically

15   in advance as part of trial preparation.

16           So because the compound analysis doesn't apply to,

17   like, good cause for a protective order, allowing them to not

18   prepare their witness to information that is undisputably

19   relevant, I am unsure about how to narrow these topics other

20   than just increasing the number of topics themselves which to

21   me just strikes me as more form over function because it's not

22   like they are -- it is so unwieldy or unduly burdensome that

23   they are just at a loss as to how to put their witness to

24   testify to these.

25           **THE COURT:**  Well, you want to -- you -- your -- you

1    want them to testify -- you want the witness to be able to be

2    prepared to testify to the factual basis for 16 interrogatory

3    responses, 26 requests for admission and 40 document production

4    responses.  You're going to ask this witness about each and

5    every one of these identified discovery requests?

6         **MR. TOOKEY:**  That's our intention, yes.  And if the

7    Court would like us to split it out by specific discovery

8    requests, then we'll -- I mean, we will do so but we intend to

9    ask about the documents that are sort of specific document

10   requests.  The documents are produced and if they have any

11   more, if they have withheld any, why they admitted or denied

12   certain specific requests for admissions, their -- and for

13   interrogatory responses, the same.

14        If -- we can number those individually but I think

15   it's just a longer, more circuitous route for the same end

16   which both parties are well aware of.

17        **THE COURT:**  All right.  Well, then I think that's

18   what you should do because Defendant, I think, reasonably takes

19   the position that if you have questions about specific

20   discovery requests, then ask those specific questions.  So I

21   think you should break it down and be more specific about what

22   it is you're asking about.

23        Then Topic Number 7, Defendant argues, is vague,

24   ambiguous and unintelligible and calls for speculation.  Topic

25   7 is the business records of Line Financial, PBC that are not

22

1   otherwise the subject of testimony of an individual with

2   personal knowledge and the custodian of record for Line

3   Financial who will introduce them.

4           The way that's phrase, I don't understand what that

5   means.  Defendant argues -- or claims that it may be that

6   you're trying to figure out who the custodian of record will

7   be, who will authenticate the business records.  Is that what

8   you're seeking in Topic Number 7 because I don't understand

9   what that means?

10          **MR. TOOKEY:**  So that is part of it and the reason we

11  used quotations is because we were -- we used the language as

12  it appears in Defendant's initial disclosures and so that's

13  part of it.  But the other part is identifying what documents

14  are being referred to and why they are business records in the

15  (indisc.) portion of business records of Line Financial that

16  are not otherwise the subject of testimony of an individual

17  with personal knowledge.

18          I don't know what those documents are and so the

19  purpose of this is to establish what those documents are.

20          **THE COURT:**  All right.  Mr. Pietz or Mr. Trejo, do

21  you understand what it is Plaintiff is requesting in Topic

22  Number 7?

23          **MR. PIETZ:**  I think so, Your Honor.  Morgan Pietz

24  again for the Defendant.  So this is a bit confusing just

25  because it's sort of how it was pasted together.  I mean, what

23

1    we were doing in the initial disclosures was -- and perhaps not

2    as clearly as we could have -- attempting to reserve our right

3    to put a custodian of records on the stand to introduce

4    documents that are business records of the company that we

5    don't have a witness who otherwise has personal knowledge to

6    testify.  That's all.

7         Now, as it turns out, the deponent that we anticipate

8    producing as the 30(b)(6) representative is likely also the

9    custodian of records.  That's why I think this is all kind of a

10   moot point and at this point, I don't know of any documents

11   that we're not going to be able -- that we're going to need to

12   introduce through a custodian of records as opposed to through

13   somebody with personal knowledge.  So I had --

14        **THE COURT:**  So, yeah, I'm going to just order the

15   parties then to meet and confer on this Topic Number 7.  I

16   think you can sort of figure it out, what exactly Plaintiff

17   wants to inquire about.

18        All right.  Then the next one is Defendant's argument

19   that certain Topics 1, 2, 4, 8, 24, 25 and 26 are improper

20   contention questions that ought to be interrogatories.  So it

21   certainly does appear that the way they are phrased, they are

22   probably -- should be propounded as contention interrogatories

23   but I don't think that Plaintiff can sort of direct Defendant

24   on how to -- I'm sorry.  I've got this mixed up -- that the

25   Defendant can't really tell the Plaintiff how to pursue

1    discovery.

2         And so if they want to seek this information through

3    a 30(b)(6) witness, that's their right to do so.  I don't see

4    anything otherwise improper about those topics and Defendant

5    certainly doesn't make the argument that these topics are --

6    that it will be unduly burdensome to prepare a witness to

7    testify to these topics.  And so I will permit those topics to

8    be part of that Rule 30(6)(b) witness deposition notice.  All

9    right.

10        **MR. TOOKEY:**  Your Honor, may I be heard?  Because I

11   do think that it's unduly burdensome but maybe not for the

12   traditional or the most articulable reason.  May I be heard on

13   that if the Court's order isn't final yet?

14        **THE COURT:**  Sure.  Go ahead.

15        **MR. TOOKEY:**  I appreciate that.  So there's a State

16   court case called Rifkin (phonetic) from California which is

17   right on point here and the gist of it is that each of these --

18   really the gist of these topics is tell us all the facts you

19   have that support such and such a legal argument that you've

20   made in this case.

21        And I agree that that's an appropriate topic for

22   discovery but why I think it's unduly burdensome and

23   inappropriate for a deposition at least as to these topics in

24   this case is that this is a copyright case where some of these

25   defenses involve things like fair use.  It's kind of

25

1   complicated even for IP practitioners to understand what some

2   of these defenses are about.

3          And what we're faced here is with a lay witness who

4   did have to get up there and essentially be prepared to do

5   things that really ought to be done with the assistance of

6   counsel to talk about which specific facts match up to which

7   particular legal arguments that have been made in this case.

8          And, moreover, like the earlier category of compound

9   requests that we discussed earlier, there are a lot of

10  different issues that are covered by these -- this group of

11  topics such that my fundamental objection here is that the way

12  the Plaintiff has done this turns the whole deposition into an

13  impermissible pop quiz where if the deponent is a lay person,

14  neglects to mention this fact or that fact in response to

15  questioning about what facts support this person's legal

16  argument, well, then at trial, they say, oh, no, wait a minute.

17  You didn't put it out at your deposition when we put you on the

18  spot in sort of wide-ranging questioning about tell us every

19  fact that supports every argument you've made in this case.

20         So I'm not opposed to producing a witness to testify

21  about the Defendants.  I'm not opposed to doing it by via

22  interrogatories if the Plaintiff would prefer but I do think at

23  a minimum in either event, we need a little bit more

24  specificity as to exactly what it is that they're inquiring

25  about in order that I can appropriately prepare the witness to

26

1    testify about this stuff.

2            It's a big ask as it stays currently and I think it

3    is unduly burdensome to have a lay person trying to understand

4    the finer points of copyright defenses.

5            **THE COURT:**  All right.  So as to Topic Number 1, I

6    think that the Plaintiff can be more specific as to what

7    exactly -- what are the facts that you're actually intending to

8    question the witness about.

9            As to Topic Number 8, the documents that you rely on

10   to support your defenses, I think that's fine.  It doesn't need

11   to be further clarified.

12           24, the factual basis for your affirmative defense

13   that Defendant's use of the photographs was lawful.  I think

14   that's clear.

15           And 25, the factual basis for the allegations that to

16   the extent Plaintiff or its agents induced the dissemination of

17   Plaintiff's design or failed to take reasonable action to stop

18   such dissemination, Plaintiff's conduct and representations

19   gave rise to an implied license.  I think that's fairly clear.

20           As is 26, the factual basis for the eleventh

21   affirmative defense that Defendant wasn't aware and had no

22   reason to believe that its acts constituted an infringement of

23   copyright.

24           So I think your argument with respect to Topic 1 is

25   well taken and I will order Plaintiffs to break down Topic

27

1    Number 1 and specify what are the facts -- what are the

2    particular admissions and denials that they want to get -- they

3    want information from -- they want to question the witness

4    about.

5          All right.  Have we addressed the matters that were

6    at issue in this IDC?  Do you need to -- do you need me to set

7    timing deadlines or can you meet and confer regarding when this

8    can be done?

9          **MR. PIETZ:**  Your Honor, Morgan Pietz for the

10   Defendant here.  I think you addressed everything but I think

11   maybe there's just one topic that we didn't get to which is

12   Topic Number 9.  And apologies if I missed it and maybe it was

13   meant to be included in one of the prior lists.

14         But I think maybe it was in the prior group but I

15   didn't hear any discussion of Number 9 which was one that we

16   had raised in our IDC statement.

17         **THE COURT:**  Was that -- let me see if I missed that.

18   Hold on one second.  Okay.  So Topic 9 is the documents that

19   you will rely on that relate to or establish the use of

20   photographs obtained from rights cleared for pre-use resources

21   or paid subscriptions.

22         Okay.  And what is the argument there?

23         **MR. PIETZ:**  Similar to the last group that -- in

24   other words, it's a bit tough to be asking a lay witness to

25   explain, well, what documents are you relying upon to support

28

```
 1  legal arguments?  But -- in other words, I think it probably

 2  fits into the last group that Your Honor has addressed.

 3          THE COURT:  That they -- the last group meaning it

 4  needs to be more specific?

 5          MR. PIETZ:  That's right, Your Honor.

 6          THE COURT:  Okay.  So was there a particular initial

 7  disclosure that is being -- that is at issue here?  It says, at

 8  some -- I don't have the initial disclosures before me but at

 9  some point in the initial disclosures, did Defendant say that

10  their use of the photographs was obtained from pre-use

11  resources or paid subscriptions?  So --

12          MR. PIETZ:  I'm not sure --

13          MR. TOOKEY:  Your Honor, this is Ben Tookey, counsel

14  for Plaintiff August Image.  Yes, that is -- so, again, this

15  courted language is courted because it is taken from

16  Defendant's initial disclosures --

17          THE COURT:  All right.

18          MR. TOOKEY:  -- and this is what -- yes.

19          THE COURT:  All right.  So maybe what you could do is

20  just identify where in the initial disclosures this quote is

21  from and then Defendant will be able to prepare its witness to

22  respond.  Okay?

23          All right.  Is there anything else we need to take up

24  regarding this informal discovery conference?

25          MR. PIETZ:  As to the Court's question of deadlines,
```

1    I'm hopeful we can work that out and if we can't, I think we

2    could come back to Your Honor.

3        I did just have one follow-up question which is to

4    clarify the Court's resolution on the first issue.  I

5    understand the Court's finding.  My only question is if I -- if

6    my client did want to potentially (indisc.) that issue, how

7    would -- in other words, how -- is there going to be some sort

8    of a statement that issues from the IDC so that we can evaluate

9    whether to do that?  I just wanted to make sure.  I'd like to -

10   - do we file a motion or do we file an appeal?  I wasn't clear

11   because it's an IDC exactly what the adjudicatory status of

12   that issue is.

13       **THE COURT:**  Oh, okay.  So you -- if you want to file

14   a Rule 37 motion to compel or joint stipulation on the issue to

15   get a ruling on then managing agent issue, then just go ahead

16   and meet and confer and file it.

17       **MR. PIETZ:**  Okay.  And if we did that, Your Honor, I

18   think this is one that could be better served without doing it

19   in the joint stipulation format.  Would it be okay with the

20   Court to do it in the format of a traditional motion where I

21   think we could wrangle the relevant facts within a page on it?

22       **THE COURT:**  I -- let me ask Plaintiff's counsel.  Do

23   you have any objection to this issue presented to the Court in

24   a traditional motion format as opposed to joint stipulation?

25       **MR. TOOKEY:**  I -- Your Honor, I don't see why we

30

1    would have to deviate from the Local Rule 37 format.  So I --

2    the answer on behalf of August is, no, we would not agree to

3    that.  We would just proceed as the Local rules provide.

4              **THE COURT:**  Okay.  All right.  Then you'll have to do

5    it pursuant to a joint stipulation and the -- go through the

6    meet-and-confer process and file a joint stipulation.  Okay?

7              **MR. PIETZ:**  Understood, Your Honor.

8              **THE COURT:**  All right.  If there's nothing else, then

9    we'll conclude this IDC and I'll issue a brief order.

10             **MR. PIETZ:**  Thank you, Your Honor.

11             **THE COURT:**  All right, thank you.

12             **MR. TREJO:**  Thank you, Your Honor.

13             **MR. TOOKEY:**  Thank you, Your Honor.

14             **THE COURT:**  Have a good rest of the day.

15         **(This proceeding adjourned at 10:48 a.m.)**

16

17

18

19

20

21

22

23

24

25

31

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>October 7, 2024</u>

            Signed                                            Dated

                  *TONI HUDSON, TRANSCRIBER*

# EXHIBIT 125

**2024.08.30 - Def RFAs to Plf Set 2 (Excerpts)**

Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
  matt@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:   (310) 424-5557
Facsimile:   (310) 597-4626

Attorneys for Defendant
*LINE FINANCIAL PBC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, a New York Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,<br><br>    Defendant(s). | Case No. 2:23-cv-05492-WLH-AS<br><br>Assigned for All Purposes to the Honorable Wesley S. Hsu<br><br>**DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)**<br><br>Action Filed: July 10, 2023 |

PROPOUNDING PARTY:      Defendant, LINE FINANCIAL PBC

RESPONDING PARTY:      Plaintiff, AUGUST IMAGE, LLC

SET NUMBER:      Two (2)

-1-

The PROPOUNDING PARTY hereby submits the following requests for admission to the RESPONDING PARTY pursuant to Fed R. Civ. P. 36.

## **INSTRUCTIONS**

1.     These are general instructions. For time limitations, requirements for service on other parties, and other details, see F.R.C.P. 16, 26, 33, 34, 36, and the cases construing those Rules.

2.     Within thirty (30) days after you are served with these interrogatories, you must serve your responses on the asking party.

3.     Each answer must be as complete and straightforward as the information reasonably available to you permits. If a discovery request cannot be answered completely, answer it to the extent possible.

4.     Whenever a discovery request may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the discovery request can be found.

5.     Whenever an address and telephone number for the same person are requested in more than one discovery request, you are required to furnish them in answering only the first discovery request seeking that information.

6.     These discovery requests are continuing. If any information sought by these is not discovered or learned until after they are answered, or if answers for any reason should later become incorrect, there shall be a continuing duty on the party answering these discovery requests to supplement or change answers previously submitted pursuant to F.R.C.P. 26(e), and applicable case law. If any discovery request cannot be answered in full, an answer shall be given to the greatest extent possible.

7.     If refusal to answer a question is based on the grounds of burdensomeness, identify the number and nature of documents needed to be searched, the location of the documents, and the number of persons, hours and costs

DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF
AUGUST IMAGE, LLC (SET TWO)

required to conduct the search. With respect to any request to which any privilege is asserted, in whole or in part, please state the exact privilege that is being asserted, identify the nature and substance of the applicable document, and provide the factual basis for the assertion of the privilege in an appropriate privilege log.

As a reminder, Fed. R. Civ. P. 36(a)(4) requires that if you can admit part of a matter, you should do so, while specifying how you are denying or qualifying your answer as to the rest of the matter. Further, per Fed. R. Civ. P. 37(c)(2), if you deny requests for admission for matters that are subsequently proven to be authentic or true, you may be liable to pay the requesting party's expenses, including attorneys' fees, incurred in proving such matters.

## DEFINITIONS

The following definitions are applicable throughout this request:

1.    "RESPONDING PARTY," "AUGUST" or "YOU" means or refers to AUGUST IMAGE, LLC, and also includes any other name by which this party has been known and includes its present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of this corporation, as well as its parent corporations, subsidiaries, affiliates, divisions, predecessors, and successors in interest.

2.    "PROPOUNDING PARTY," "LINE FINANCIAL" and "DEFENDANT" means or refers to the defendant LINE FINANCIAL PBC, and also includes any other name by which this party has been known and includes its present and former officers, executives, partners, directors, trustees, employees, attorneys, agents, representatives, and all other persons acting or purporting to act on behalf of this corporation, as well as its parent corporations, subsidiaries, affiliates, divisions, predecessors, and successors in interest.

DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)

3.    "<u>PERSON</u>" includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, public entity, public enterprise and/or public fund.

4.    "<u>IDENTIFY</u>" (1) when used in reference to an individual (i.e., a natural person), means stating that person's full name as well as his or her last known address, home and business telephone numbers, email address, and present occupation or business affiliation; (2) when used in reference to a person other than a natural person, means that entity or other organization's full name, a description of the type of entity or organization (that is, whether it is a corporation, partnership, etc.), and the entity's last known address, telephone number, and principal place of business; (3) when used in reference to DOCUMENTS or COMMUNICATIONS means specify them by Bates number, or, if Bates numbers are not available, to describe the nature and location of each such item with reasonable particularity, by providing information such as date, sender, receiver, people copied, subject line, and location where it is located, such as to allow PROPOUNDING PARTY to reasonably locate it; and (4) when used in reference to some other thing, means to provide all facts, evidence, information, and data necessary to understand YOUR response, as may be further indicated by the text of the request itself.

5.    "<u>DOCUMENTS</u>" or "<u>WRITINGS</u>" have the meanings set forth in Federal Rule of Evidence 1001(a) and also means the original or exact copies of any written, printed, typed, recorded, or other graphic matter of any kind or nature, and all mechanical and electrical recordings and any transcripts thereof, draft, final, original, reproduced, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, computer data files, electronically stored information ("ESI") in the possession, custody, and/or control of Plaintiff or Plaintiffs agents and counsel or may through reasonable efforts be obtained of Plaintiffs agents and counsel, or known by Plaintiff to exist; it shall also mean all copies of documents by whatever means made, including intermediate or working

-4-

1    copies. "DOCUMENT(S)" includes all attachments and enclosures thereto

2    including, but not limited to any correspondence, notes (whether handwritten or

3    computerized), agreements, lists, memoranda, minutes, records, instruments,

4    publications, reports, books, pamphlets, summaries, drafts, calendars,

5    communications, telegrams, facsimiles, emails, manuals, guidelines, rules,

6    instructions, electronic tapes, discs or other recordings, computer programs, hard

7    drives, discs, printouts, data cards, computer files, back-up tapes, hard disks,

8    litigation data bases, and other data compilations from which information can be

9    obtained. Any copies of "DOCUMENTS" bearing notations or marks not found on

10   the original shall be deemed to be different documents and shall also be produced.

11       6.       "COMMUNICATIONS" means all correspondence, inquiries,

12   discussions, conferences, conversations, negotiations, agreements, meetings, notes,

13   emails, telegrams, telexes, facsimiles, social media posts or comments, other forms

14   of communicating or transmitting information, including, but not limited to, oral,

15   digital, and written communications and includes DOCUMENTS (as defined above)

16   exchanged in relation to such communications.

17       7.       "RELATES TO", "RELATING TO" and "RELATED TO" means

18   concerning, describing, discussing, evidencing, reflecting, compromising,

19   illustrating, containing, embodying, constituting, analyzing, stating, identifying,

20   referring to, commenting on, connected with, substantiating, establishing,

21   memorializing, proving, disproving, contradicting, mentioning, regarding, reflecting,

22   dealing with, in any way pertaining to, or supporting, directly or indirectly.

23       8.       "ALL" shall be construed as "all and each." "AND" and "OR" shall be

24   construed either disjunctively or conjunctively as necessary to bring within the scope

25   of the discovery request all responses that might otherwise be construed to be

26   outside its scope.

27       9.       "COMPLAINT" means the operative complaint filed by YOU against

28   PROPOUNDING PARTY in the above-captioned matter.

-5-

DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF
AUGUST IMAGE, LLC (SET TWO)

10.     "<u>SUBJECT PHOTOGRAPHS</u>" means the purportedly copyrighted photographs that YOU are alleging that the PROPOUNDING PARTY infringed, as per YOUR COMPLAINT, which include the "Subject Photographs" as this term is defined in Paragraph 8 of the COMPLAINT and as depicted on Exhibit 1 to YOUR COMPLAINT.

11.     "<u>PHOTOGRAPHERS</u>" means and refers to the photographers of the SUBJECT PHOTOGRAPHS: Andrew Eccles, Brian Bowen Smith, Austian Hargrave, Art Streiber, Joe Pugliese, David Slijper, Alexi Lubomirski, Shayan Asgharnia, Martin Schoeller, Bruno Van Mossevelde, Nicoletta Van Mossevelde, Arielle Bobb Willis, Mark Mann and Miller Mobley.

12.     "<u>OTHER PHOTOGRAPHS</u>" means and refers to any photograph or image other than the Subject Photographs for which YOU contend DEFENDANT infringed upon YOUR or the PHOTOGRAPHERS' copyright(s) in said photograph or image.

13.     "<u>YOUR PHOTOGRAPHS</u>" means and refers to the SUBJECT PHOTOGRAPHS and the OTHER PHOTOGRAPHS, collectively.

14.     "<u>AGENCY AGREEMENT(S)</u>" shall mean and include the fully executed agreements between YOU and the PHOTOGRAPHERS, which purport to make YOU their exclusive worldwide agent with respect to their photographs.

15.     "<u>ADDENDUM</u>" or "<u>ADDENDA</u>" shall mean and refer to each fully executed Addendum to the AGENCY AGREEMENTS.

16.     "<u>ACCUSED POSTS</u>" means and refers to the images on Line Financial's websites that allegedly infringe on AUGUST and/or YOUR copyrights in the SUBJECT PHOTOGRAPHS, including, but not limited to, the ACCUSED POSTS identified on Exhibit 1 to the Complaint.

17.     "<u>IMAGERIGHTS</u>" means and refers to IMAGERIGHTS INTERNATIONAL, INC., and also includes any other name by which IMAGERIGHTS has been known and includes its present and former officers,

1  executives, partners, directors, trustees, employees, attorneys, agents,
2  representatives, and all other persons acting or purporting to act on behalf of this
3  corporation, as well as its parent corporations, subsidiaries, affiliates, divisions,
4  predecessors, and successors in interest.
5      18.    "<u>CERTIFICATE OF REGISTRATION</u>" means and refers to the
6  Certificate issued under seal of the Copyright Office in accordance with title 17,
7  United States Code, when a copyright is registered with the Copyright Office.

DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF
AUGUST IMAGE, LLC (SET TWO)

## <u>REQUESTS FOR ADMISSION</u>

**<u>REQUEST NO. 12:</u>**

Admit that, after YOU received document requests from the DEFENDANT in this case, YOU did not request any DOCUMENTS from the PHOTOGRPHERS that was responsive to those requests.

**<u>REQUEST NO. 13:</u>**

Admit that, after YOU received interrogatories from the DEFENDANT in this case, YOU did not request any information from the PHOTOGRPHERS that was responsive to those interrogatories.

**<u>REQUEST NO. 14:</u>**

Admit that the ADDENDUM between YOU and Art Streiber was executed after the AGENCY AGREEMENT was executed.

**<u>REQUEST NO. 15:</u>**

Admit that the ADDENDUM between YOU and Bruno Van Mossevelde was executed after the AGENCY AGREEMENT was executed.

**<u>REQUEST NO. 16:</u>**

Admit that the ADDENDUM between YOU and Nicoletta Van Mossevelde was executed after the AGENCY AGREEMENT was executed.

**<u>REQUEST NO. 17:</u>**

Admit that the ADDENDUM between YOU and Joe Pugliese was executed after the AGENCY AGREEMENT was executed.

**<u>REQUEST NO. 18:</u>**

Admit that the ADDENDUM between YOU and Alexi Lubomirski was executed after the AGENCY AGREEMENT was executed.

**<u>REQUEST NO. 19:</u>**

Admit that the ADDENDUM between YOU and Brian Bowen Smith was executed after the AGENCY AGREEMENT was executed.

///

1

**REQUEST NO. 78:**

2

     Admit that, in order for YOU to have standing to sue for copyright infringement

3

of the SUBJECT PHOTOGRAPHS, you must own the copyright or be an exclusive

4

licensee of one of the exclusive rights in 17 U.S.C. § 106.

5

6

Dated: August 30, 2024            P<small>IETZ</small> & S<small>HAHRIARI</small>, LLP

7

8

                     By:   */s/ Matthew A. Trejo*

9

                             Morgan E. Pietz

10

                             Matthew A. Trejo
                             *Attorney for Defendant*
                             *Line Financial PBC*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF
AUGUST IMAGE, LLC (SET TWO)

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 6700 S. Centinela Ave., 2nd Floor, Culver City, CA 90230. On August 30, 2024 I served the foregoing document described as

**DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)**

on all interested parties in this action as follows:

☒By Electronic Service: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed in the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

### *SERVICE LIST*

*Person/Entity Served:*                *Attorneys for Plaintiff*
Stephen M. Doniger (SBN 179314)
  stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
  btookey@donigerlawfirm.com
DONIGER/BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed on August 30, 2024 at Los Angeles, California

_____
Jessica Martinez

-17-
DEFENDANT LINE FINANCIAL PBC'S REQUESTS FOR ADMISSION TO PLAINTIFF AUGUST IMAGE, LLC (SET TWO)

# EXHIBIT 126

**2024.09.20 - August's Second Supp Initial Disclosures**

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AUGUST IMAGE, LLC,

Plaintiff,

v.

LINE FINANCIAL, PBC, et al.,

Defendants.

Case No. 2:23-cv-05492-WLH-AS
*Hon. Wesley L. Hsu Presiding*

**PLAINTIFF'S SECOND SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES**

    Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

    August is still in the process of compiling evidence in this matter. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

### A.  **Witnesses**

    Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.      Bill Hannigan, owner of August, reachable through counsel, regarding August's knowledge of the creation and registration of the original photographs at issue in this case (the "Subject Photographs"), August's syndication agreements with the photographers of the Subject Photographs (the "Photographers"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.      Lauren Kelly, Director of Copyright of August, reachable through counsel, regarding August's knowledge of the creation and registration of the Subject Photographs, August's syndication agreements with the Photographers, August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

3.      Alexi Lubomirski, contactable to August's knowledge at 268 W. Hill Rd, Box 159, Austerlitz, NY 12017, alexilubomirski.com, and/or as set forth in AUGUST000687-89, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

4.      Andrew Eccles, contactable to August's knowledge at 4227 McLaughlin Ave PH 1, Los Angeles, CA 90066, andreweccles.com, and/or as set forth in AUGUST000690-92, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

5.      Art Streiber, contactable to August's knowledge at 2239 Camden Ave, Los Angeles, CA 90064, artstreiber.com, and/or as set forth in AUGUST000693-95,

who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

6.    Austin Hargrave, contactable to August's knowledge at 1835 N. Avenue 51, Los Angeles, CA 90042, austinhargrave.com, and/or as set forth in AUGUST000696-98, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

7.    Brian Bowen Smith, contactable to August's knowledge at 5910 Fairview Pl., Agoura Hills, CA 91301, bowensmith.com, and/or as set forth in AUGUST000699-702, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

8.    David Slijper, contactable to August's knowledge at Flat 18, The Pryors, 6 E. Heath Rd., London NW3 1BP, United Kingdom, davidslijper.com, and/or as set forth in AUGUST000703-05, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

9.    Joe Pugliese, contactable to August's knowledge at 6311 Romaine Street, #7307, Los Angeles, CA 90038, joepug.com, and/or as set forth in AUGUST000706-08, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

10.    Mark Mann, contactable to August's knowledge at 161 Water St, Suite 711, New York, NY 10038, markmannphoto.com, and/or as set forth in AUGUST000709-12, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

11.    Martin Schoeller, contactable to August's knowledge at 105 Hudson St., #2N, New York, NY 10013, martinschoeller.com, and/or as set forth in AUGUST000713-15, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

12.    Miller Mobley, contactable to August's knowledge at 88 Leonard Street, #819, New York, NY 10013, millermobley.com, and/or as set forth in AUGUST000716-18, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

13.    Shayan Asgharnia, contactable to August's knowledge at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004, shayanasgharnia.com, and/or as set forth in AUGUST000719-21, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

14.    Bruno and Nicoletta Van Mossevelde, contactable to August's knowledge at Via Salaria 1401, Rome, 00138, Italy, brunoandnico.com, and/or as set forth in AUGUST000781-82, who have information regarding the creation, originality, ownership, and registration of Bruno Van Mossvelde's respective Subject

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

Photograph(s); his licensing histories and rates; and their appointment of August as the exclusive licensing agent and syndicator of Bruno Van Mossvelde's respective Subject Photograph(s).

15.    Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), regarding access to the Subject Photographs; use of the Subject Photographs, including but not limited to displaying the Accused Posts on useline.com (and any/all associated social media pages); any/all efforts to clear use of the Subject Photographs prior to the display of the Accused Posts; the total revenue and gross profit earned from, and total costs and expenses incurred because of, the Accused Posts; viewership analytics for the Accused Posts; prior experience with obtaining licenses to use photographs, knowledge of and experience with copyright law and copyright infringement cases, and/or knowledge of ownership of the copyrights in (or knowledge that it did not own the copyrights in) the Subject Photographs; Defendant's Answer and the factual bases for their asserted affirmative defenses; Defendant's discovery responses and document production; Defendant's advertising practices; licenses, subscriptions, agreements, and/or permissions regarding the display of photographs on useline.com; and the actions and steps taken to investigate the claims asserted in this case upon notice of alleged infringement.

16.    The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's employee(s) and/or contractors, regarding the creation, dissemination, and exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.     Documents**

1.     Documents reflecting the creation, ownership, and registration of the Subject Photographs;

2.     Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

3.     Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

4.     Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.     Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

6.     Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

7.     The discovery responses and documents produced in this case.

**C.     Damages**

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs. The amounts of such licensing fees may be determined based on, *inter alia*, the full scope of Defendant's exploitation of the Subject Photographs, and the licensing invoices set forth in AUGUST000725-77. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per timely registered Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

1    August will also seek its costs and attorneys' fees incurred in prosecuting this
2    case. *See* 17 U.S.C. § 505.

3    **D.    <u>Insurance</u>**

4    August does not have insurance for the claims at issue.

5

6    Date: September 20, 2024          By:    <u>*/s/ Stephen M. Doniger*</u>
7                                             Stephen M. Doniger, Esq.
                                             Benjamin F. Tookey, Esq.
8                                             DONIGER / BURROUGHS
9                                             *Attorneys for Plaintiff*

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 603 Rose Ave, Venice, CA 90291.

     On September 20, 2024 I served the ENCLOSED documents described as:
**PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES;** on the following necessary part(ies) in this action:

| |
|---|
| Morgan E. Pietz |
| PIETZ & SHAHRIARI, LLP |
| 6700 S. Centinela Avenue, 2nd Floor |
| Culver City, CA 90230 |
| T: (310) 424-5557 |
| F: (310) 597-4626 |
| E: morgan@pstrials.com; |
| jessica@pstrials.com; admin@pstrials.com |
| |
| **ATTORNEY TO BE NOTICE** |

☒ by placing ☐ the original ☒a true copy thereof enclosed in sealed envelopes addressed as follows:
☒ BY ELECTRONIC MAIL (E-MAIL)
     ☒ On this date I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     EXECUTED September 20, 2024 in Venice, California.
☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*Benjamin F. Tookey*
Benjamin F. Tookey

# EXHIBIT 127

**2024.09.23 - Meet and Confer LT re MSJ**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Matthew A. Trejo
matt@pstrials.com
September 23, 2024

***VIA ELECTRONIC MAIL***

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

**Re:**    *August Image, LLV v. Line Financial, PBC* **(C.D. Cal., No.223-cv-05492)**

Dear Counsel,

I am writing to you pursuant to Judge Hsu's MSJ Standing Order and Local Rule 7-3 to arrange a meet-and-confer conference of counsel regarding Defendant's contemplated Motion for Summary Judgment or Partial Summary Judgment under Rule 56. Please let me know some dates and times between September 25 and October 7 that you are available to discuss the issues raised in the letter.

Below is each issue Defendant intends to raise in its motion, along with law and evidence (or lack thereof) relevant to the issues.

## ISSUES TO BE RAISED IN MSJ/MSA

### I.    Legal Standard for Summary Judgment Motions

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden,

> [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, ***after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial***.

Page 1 of 6

Letter to Benjamin F. Tookey
September 23, 2024

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). (emphasis added). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

## II.     August Does Not Have Standing

### A.   Only Owners of a Copyright or an Exclusive Licensee of a Right Under 17 U.S.C. § 106 May Have Standing to Sue in the Ninth Circuit for Copyright Infringement

An exclusive licensee of an exclusive right under 17 U.S.C. § 106 "may sue to enforce that owned portion of an exclusive right." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005); see also Ninth Circuit Model Civil Jury Instructions, 17.13 Copyright Interests—Exclusive Licensee (17 U.S.C. § 201(d)(2)).

"Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).

"If a claimant is not a proper owner of copyright rights, then it cannot invoke copyright protection stemming from the exclusive rights belonging to the owner, including infringement of the copyright." *Silvers v. Sony Pictures Ent.*, *Inc.*, 402 F.3d 881, 884 (9th Cir. 2005); see also 17 U.S. Code § 501(b).

### B.   An Exclusive License Must Be in Writing

"An exclusive license, other than one granted by operation of law, must be in writing if it was granted after 1978." *See* P. Goldstein, Goldstein on Copyright § 5.2.1.1 (2016); 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A][1]; Ninth Circuit Model Civil Jury Instructions, 17.13 Copyright Interests—Exclusive Licensee (17 U.S.C. § 201(d)(2)) (comment).

### C.   August's Claims it is an Exclusive Licensee

August claims it is an exclusive licensee and is suing to enforce the infringement of the exclusive rights licensed to it by the photographers, namely, the right of distribution, reproduction, and display. In response to Defendant's Interrogatory No. 9, August states in relevant part that it "…has the exclusive rights to authorize the making of copies of those works and/or distribute copies of those works to the public, and to authorize and control the display of those works publicly."

///

Letter to Benjamin F. Tookey
September 23, 2024

### D.  The Agency Agreements Do Not Contain a Grant of Any Exclusive Rights Under 17 U.S.C. § 106 to August

The Agency Agreements, absent an Addenda thereto, do not contain an express grant of any of the exclusive rights listed in 17 U.S.C. § 106. Specifically, all the Agency Agreements produced contain the same provision that states the photographer retains copyright ownership: "The parties acknowledge and agree that all right, title and interest in and to your [Images and/or Works] Images, including but not limited to copyright therein, shall be owned solely, in perpetuity, in any and all media, and throughout the world, by you."

Therefore, the Agency Agreements, without Addenda, do not provide August with standing to sue with respect to the alleged infringement of the subject photographs.

### E.  The Only Potential Basis for August's Alleged Standing are the Addenda

It is undisputed that August's only potential basis for standing in this case is based solely on a purported exclusive license grant in the Addenda. The relevant portions of the Addenda as it relates to the alleged exclusive license grant are as follows:

"This Addendum clarifies that during the term of the Agreement, and any renewals thereof, AUGUST shall have the exclusive right to authorize the making of copies of your Copyrighted work and/or distribute copies of your copyrighted works to the public by rights-managed license, and to authorize and control the display of those copyrighted works publicly."[1]

"Per Section 501 (b) of the Copyright Act, AUGUST will exclusively own and hold Artist's distribution, reproduction, and display rights in the Works, each of which is an exclusive right under Section 106 of the Copyright Act. This Agreement is an exclusive transfer of an exclusive right per Section 101 of the Copyright Act."

### F.  Standing Is Determined at the Time the Original Complaint is Filed, and August Did Not Have Standing at that Time

"Whether a plaintiff has standing to file suit is evaluated by looking to 'the facts as they exist when the complaint is filed.' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (emphasis in original). See *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ('Standing is determined by the facts that exist at the time the complaint is filed.'). See also *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (statute permitting amendment of defective allegations of jurisdiction 'allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts'); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 11–16751, 2013 WL 1908876 (9th Cir. May 9, 2013) (noting that while there are some limited exceptions to the rule that standing is determined as of the time the complaint is filed, 'permitting standing based on a

---

[1] This language is slightly different in the Art Streiber and Martin Schoeller addendum.

Letter to Benjamin F. Tookey
September 23, 2024

property interest acquired after filing is not one of them').” *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2013 WL 1995208, at *8 (N.D. Cal. May 13, 2013).

### G.  All Photographers Except Joe Pugliese Signed the Addenda After the Complaint was Filed on July 10, 2023

Here, it is undisputed that August's only potential basis for standing in this case is based solely on a purported exclusive license grant in the Addenda. However, August's verified responses to Defendant's Interrogatories, Set 2, confirm that all but one photographer signed the Addenda after the complaint was filed on July 10, 2023:

Alexi Lubomirski: August 12, 2024
Andrew Eccles: May 15, 2024
Art Streiber: November 30, 2023
Austin Hargrave: August 7, 2023
Brian Bowen Smith: May 16, 2024
David Slijper: April 30, 2024
Joe Pugliese: June 8, 2023
Mark Mann: August 13, 2024
Martin Schoeller: October 31, 2023
Miller Mobley: August 12, 2024
Shayan Asgharnia: August 6, 2024

Therefore, August does not have standing to sue with respect to any of the foregoing photographers, except perhaps Joe Pugliese.

### H.  August Does Not Have Standing for Photographers' For Whom No Addenda Were Produced, Namely, Arielle Bobb Willis, Bruno Van Mossevelde or Nicoletta Van Mossevelde

As indicated above, August's only potential basis for arguing it has standing is based on the alleged exclusive license grant in the Addenda. Here, no Addenda or other writing evidencing a transfer of exclusive rights to August have been produced for Arielle Bobb Willis, Bruno Van Mossevelde or Nicoletta Van Mossevelde, even though we have requested it in discovery and meet-and-confer efforts. August has not met is burden of proving the existence of an exclusive license with respect to those photographers' photographs, and therefore does not have standing to sue with respect to the subject photographers for whom no Addenda have been provided.

Moreover, August has not produced an Agency Agreement for Arielle Bobb Willis. And the Agency Agreement for Bruno Van Mossevelde was not even signed by him, but rather an organization by the name of ATOMO Management SRL. See AUGUST000722-AUGUST000724. Even if August's position is that the Agency Agreements somehow grant August exclusive copyright rights so that it has standing, which they do not, August would not have standing with respect to these photographers, because they never signed the Agency Agreements.

Letter to Benjamin F. Tookey
September 23, 2024

Moreover, Exhibit 1 to the FAC lists Bruno Van Mossevelde and Nicoletta Van
Mossevelde as co-authors of their photograph at issue in this lawsuit. August must therefore have
an exclusive license agreement signed by both authors in order for August to have standing with
respect to this image. "[W]hen one co-owner independently attempts to grant an exclusive
license of a particular copyright interest, that licensee…does not have standing to sue alleged
third-party infringers." *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015). August has not
produced such an agreement.

### III.    Willfulness

#### A.  Plaintiff Does Not Have Enough Evidence to Prove Willfulness

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the
defendant was actually aware of the infringing activity, or (2) that the defendant's actions were
the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."
*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944  (9th Cir. 2011) (quoting
*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).
"A willfully blind defendant is one who takes deliberate actions to avoid confirming a high
probability of wrongdoing and who can almost be said to have actually known the critical facts.
By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk
of such wrongdoing." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (cleaned
up). A showing that the defendant was negligent, i.e., that the defendant "should have
known of a similar risk but, in fact, did not," cannot support a finding of willful infringement. *Id.*
at 833–34.

Here, Plaintiff does not have enough evidence to show that Defendant was aware of the
infringing activity prior to the cease-and-desist letter being sent in April 2023. Moreover,
Plaintiff does not have enough evidence to prove Defendant's actions were the result of reckless
disregard or willful blindness.

#### 1.  Defendant Has Produced Evidence to Refute a Finding of Willfulness

"To refute evidence of willful infringement, [the defendant] must not only establish its
good faith belief in the innocence of its conduct, it must also show that it was reasonable in
holding such a belief." *Peer Int'l*, 909 F.2d at 1336. Thus, to succeed on its motion, Defendant
must present sufficient facts proving it reasonably believed it had a right to display the disputed
photographs.

Defendant has produced evidence in discovery showing that, before it received the cease-
and-desist letter, Defendant honestly and reasonably believed that it had permission to use the
photographs and that such belief was reasonable, primarily because it obtained the photographs
from websites where the photos were offered free to use.

///

Letter to Benjamin F. Tookey
September 23, 2024

    **2.   Defendant's Prompt Takedown of the Photos Identified in the Cease-and-Desist Letter Demonstrates a Lack of Willful Infringement**

        Remedial action is probative of a defendant's lack of willful infringement when it shows a defendant was surprised to learn that it had been infringing the plaintiff's copyright and undertook a good faith effort to resolve the issue in a reasonable time. *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 300–01 (S.D.N.Y. 2001) (concluding infringement was not willful in part because defendant promptly responded to plaintiff's cease-and-desist letter by asking for more details).

        Here, Defendant has produced evidence that it had a good faith reasonable belief it was not infringing, including evidence showing the images were obtained from free wallpaper websites free of charge, and was therefore surprised to learn it had been infringing. Moreover, it is undisputed that Defendant acted promptly to take down the photographs. It is undisputed that August's cease and desist letter was sent on April 6, 2023. Defendant produced discovery, including its response to ROG 2, that shows all the images were all taken down by June 10, 2023, and Plaintiff has not produced any evidence to the contrary.

        Please let me know some dates and times between September 25 and October 7 that you are available to discuss the issues raised in this letter. Thank you for your attention to this urgent matter, and I look forward to hearing from you soon.

Best regards,
*/s/ Matthew A. Trejo*
Matthew A. Trejo
Attorney
PIETZ & SHAHRIARI, LLP

# EXHIBIT 128

**2024.09.25 - August's Third Supp Initial Disclosures**

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, | Case No. 2:23-cv-05492-WLH-AS |
| | *Hon. Wesley L. Hsu Presiding* |
| Plaintiff, | |
| | **PLAINTIFF'S THIRD** |
| v. | **SUPPLEMENTAL RULE 26(a)(1)** |
| | **INITIAL DISCLOSURES** |
| LINE FINANCIAL, PBC, et al., | |
| | |
| Defendants. | |

     Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

     August is still in the process of compiling evidence in this matter. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

## A.  <u>Witnesses</u>

     Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.    Bill Hannigan, owner of August, reachable through counsel, regarding August's knowledge of the creation and registration of the original photographs at issue in this case (the "Subject Photographs"), August's syndication agreements with the photographers of the Subject Photographs (the "Photographers"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.    Lauren Kelly, Director of Copyright of August, reachable through counsel, regarding August's knowledge of the creation and registration of the Subject Photographs, August's syndication agreements with the Photographers, August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

3.    Alexi Lubomirski, contactable to August's knowledge at 268 W. Hill Rd, Box 159, Austerlitz, NY 12017, alexilubomirski.com, and/or as set forth in AUGUST000687-89, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

4.    Andrew Eccles, contactable to August's knowledge at 4227 McLaughlin Ave PH 1, Los Angeles, CA 90066, andreweccles.com, and/or as set forth in AUGUST000690-92, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

5.    Art Streiber, contactable to August's knowledge at 2239 Camden Ave, Los Angeles, CA 90064, artstreiber.com, and/or as set forth in AUGUST000693-95,

who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

6.    Austin Hargrave, contactable to August's knowledge at 1835 N. Avenue 51, Los Angeles, CA 90042, austinhargrave.com, and/or as set forth in AUGUST000696-98, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

7.    Brian Bowen Smith, contactable to August's knowledge at 5910 Fairview Pl., Agoura Hills, CA 91301, bowensmith.com, and/or as set forth in AUGUST000699-702, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

8.    David Slijper, contactable to August's knowledge at Flat 18, The Pryors, 6 E. Heath Rd., London NW3 1BP, United Kingdom, davidslijper.com, and/or as set forth in AUGUST000703-05, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

9.    Joe Pugliese, contactable to August's knowledge at 6311 Romaine Street, #7307, Los Angeles, CA 90038, joepug.com, and/or as set forth in AUGUST000706-08, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

10.     Mark Mann, contactable to August's knowledge at 135 East 74th St, 10B, New York, NY 10021, markmannphoto.com, and/or as set forth in AUGUST000709-12, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

11.     Martin Schoeller, contactable to August's knowledge at 105 Hudson St., #2N, New York, NY 10013, martinschoeller.com, and/or as set forth in AUGUST000713-15, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

12.     Miller Mobley, contactable to August's knowledge at 41 Randolph Road, Birmingham, AL 35213, millermobley.com, and/or as set forth in AUGUST000716-18, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

13.     Shayan Asgharnia, contactable to August's knowledge at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004, shayanasgharnia.com, and/or as set forth in AUGUST000719-21, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

14.     Bruno and Nicoletta Van Mossevelde, contactable to August's knowledge at First Edit SRL, Via Del Plebiscito 107, Rome, 00186, Italy, brunoandnico.com, and/or as set forth in AUGUST000781-82, who have information regarding the creation, originality, ownership, and registration of Bruno Van

Mossevelde's respective Subject Photograph(s); his licensing histories and rates; and their appointment of August as the exclusive licensing agent and syndicator of Bruno Van Mossevelde's respective Subject Photograph(s).

15.    Pixmole Technologies Ltd., contactable to August's knowledge at Yarok - Ruppin Campus, POB 716, Kfar Monash, 4287500, Israel, +972 9 789 6781, info@pixmole.com, and/or pixmole.com/contact, regarding the discovery of Defendant's unauthorized exploitation of the Subject Photographs.

16.    ImageRights International, Inc., contactable to August's knowledge at Ten Post Office Square, Suite 800 South, Boston, MA 02109, 617-505-1572, support@imagerights.com, and/or imagerights.com/contact_us, regarding the discovery of Defendant's unauthorized exploitation of the Subject Photographs.

17.    Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), contactable to August's knowledge through Defendant's counsel of record; regarding:

a.    Defendant's admissions and denials in its operative Answer;

b.    Defendant's affirmative defenses;

c.    Defendant's discovery responses;

d.    Defendant's initial disclosures;

e.    Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

f.    Defendant's access to the Subject Photographs;

g.    The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

h.    The Accused Posts and their dates of first and last display;

i.    Any/all efforts to clear use of the Subject Photographs prior to use;

j.    Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

k.  Defendant's revenues and profits earned in connection with the Accused Posts;

l.  Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

m.  Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

n.  Defendant's notice of and investigation into the infringement at issue;

o.  Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p.  Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q.  Defendant's awareness of copyright protection for photographs;

r.  Any/all communications regarding the Subject Photographs and/or Accused Posts;

s.  The web traffic and views for the Accused Posts;

t.  Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

18.  Akshay Krishnaiah, Founder and/or CEO of Defendant Line Financial, PBC, contactable to August's knowledge through Defendant's counsel of record; regarding:

a.  Defendant's admissions and denials in its operative Answer;

b.  Defendant's affirmative defenses;

c.  Defendant's discovery responses;

d.  Defendant's initial disclosures;

e.  Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

f.  Defendant's access to the Subject Photographs;

g.  The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

h.  The Accused Posts and their dates of first and last display;

i.  Any/all efforts to clear use of the Subject Photographs prior to use;

j.  Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

k.  Defendant's revenues and profits earned in connection with the Accused Posts;

l.  Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

m.  Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

n.  Defendant's notice of and investigation into the infringement at issue;

o.  Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p.  Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q.  Defendant's awareness of copyright protection for photographs;

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

r.   Any/all communications regarding the Subject Photographs and/or Accused Posts;

s.   The web traffic and views for the Accused Posts;

t.   Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

19.   The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's employee(s) and/or contractors, regarding the creation, dissemination, and exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.  Documents**

1.   Documents reflecting August's syndication agreements with the Photographers;

2.   Documents reflecting the creation, ownership, and registration of the Subject Photographs;

3.   Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

4.   Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.   Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

6.   Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

7.      Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

8.      The discovery responses and documents produced in this case.

## C.   Damages

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs. The amounts of such licensing fees may be determined based on, *inter alia*, the full scope of Defendant's exploitation of the Subject Photographs, and the licensing invoices set forth in AUGUST000725-77. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per timely registered Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

August will also seek its costs and attorneys' fees incurred in prosecuting this case. *See* 17 U.S.C. § 505.

## D.   Insurance

August does not have insurance for the claims at issue.


Date: September 25, 2024              By:    */s/ Stephen M. Doniger*
                                             Stephen M. Doniger, Esq.
                                             Benjamin F. Tookey, Esq.
                                             DONIGER / BURROUGHS
                                             *Attorneys for Plaintiff*

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 603 Rose Ave, Venice, CA 90291.

     On September 25, 2024 I served the ENCLOSED documents described as:
**PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES;** on the following necessary part(ies) in this action:

| |
|---|
| Morgan E. Pietz |
| PIETZ & SHAHRIARI, LLP |
| 6700 S. Centinela Avenue, 2nd Floor |
| Culver City, CA 90230 |
| T: (310) 424-5557 |
| F: (310) 597-4626 |
| E: morgan@pstrials.com; |
| jessica@pstrials.com; admin@pstrials.com |
| |
| **ATTORNEY TO BE NOTICE** |

☒ by placing ☐ the original ☒a true copy thereof enclosed in sealed envelopes addressed as follows:
☒ BY ELECTRONIC MAIL (E-MAIL)
    ☒ On this date I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     EXECUTED September 25, 2024 in Venice, California.
☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*Benjamin F. Tookey*
Benjamin F. Tookey

# EXHIBIT 129

**2024.09.27 - Decl. of James Passmore re Non-Service**

1  Morgan E. Pietz (SBN 260629)
    morgan@pstrials.com
2  Matthew A. Trejo (SBN 320464)
    matt@pstrials.com
3  PIETZ & SHAHRIARI, LLP
   6700 S. Centinela Avenue, 2nd Floor
4  Culver City, CA 90230
   Telephone:   (310) 424-5557
5  Facsimile:    (310) 597-4626
6
   Attorneys for Defendant
7  LINE FINANCIAL PBC

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 AUGUST IMAGE, LLC, a New York        Case No. 2:23-cv-05492-WLH-AS
   Limited Liability Company,
12                                       Assigned for All Purposes to the
        Plaintiff,                       Honorable Wesley S. Hsu
13
   v.
14
   LINE FINANCIAL PBC, a Delaware
15 Corporation; and DOES 1-10,          **DECLARATION OF JAMES
                                        PASSMORE RE NON-SERVICE**
16
        Defendants.
17
18                                       Action Filed: July 11, 2023
19
20
21
22
23
24
25
26
27
28

                              -1-
              DECLARATION OF JAMES PASSMORE

## DECLARATION OF JAMES PASSMORE

I, James Passmore declare as follows:

1.    I am a registered process server. My registration number is 6108. The facts contained in this Declaration are known to me of my own personal knowledge, and I am competent to testify thereto.

2.    I am the owner of Full Force Attorney & Messenger Service, LLC.

3.    My phone number is (310) 981-5127 and my email address is fullforce@fullforcela.com.

4.    On September 16, 2024, Jessica Martinez from Pietz & Shahriari, LLP instructed me to personally serve two subpoenas to testify at a deposition in this civil action in the Central District of California, Case No. 2:23-cv-05492-WLH-AS, at the following locations:

    a. Joe Pugliese at 6311 Romaine Street, Suite 7307, Los Angeles, CA 90038

    b. Shayan Asgharnia at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004

## ATTEMPTS OF SERVICE

5.    On September 17, 2024, at 11:10 a.m. I attempted to serve Shayan Asgharnia at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004. I spoke to a possible Mediterranean woman that did not provide her name. She was about 5'3", in her 30's, had dark hair and was approximately 130lbs. She told me Shayan was in Texas with no return date. Service was unsuccessful.

6.    On September 17, 2024, at 11:45am I attempted to serve Joe Pugliese at 6311 Romaine Street, Suite 7307, Los Angeles, CA 90035. I spoke with Marcela "Doe" who was the security at the front desk. She was a Hispanic woman in her 30's with dark curly hair. She informed me Suite 7307 is vacant and did not have forwarding information on the previous tenant. Service was unsuccessful.

-2-

DECLARATION OF JAMES PASSMORE

I hereby declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on _9-27-24_, at Alhambra, California.

James Passmore
Declarant

-3-

DECLARATION OF JAMES PASSMORE

# EXHIBIT 130

**2024.09.27 - Meet and Confer LT P's Counsel**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Morgan E. Pietz
morgan@pstrials.com
September 27, 2024

***VIA ELECTRONIC MAIL***

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

**Re:**    ***August Image, LLV v. Line Financial, PBC*** **(C.D. Cal., No.223-cv-05492)**

Counsel,

I write to address several motions defendants intend to file in this action, and to request to confer with you on them per LR 7-3 and 37-1.

(1) Defendant's Motion for Summary Judgment on Standing

On September 23, 2024, Matt sent your office a detailed, 6-page, single-spaced meet and confer letter citing multiple binding authorities explaining why your client lacks standing to sue such that summary judgment must be granted in defendant's favor. As you know, our meet and confer call on that motion is scheduled for October 3 at 2 PM. I hereby reiterate our request that you provide us with any authorities or material facts you will rely upon to oppose summary judgment on standing at least 24 hours before our meet and confer conference. Please note that we will not be asking the Court to resolve willfulness or any other issue on summary judgment; the only issue will be whether your client has standing to sue.

Ben has recently indicated that your office intends to file some kind of cross-motion for partial summary judgment. Your office has not provided any authorities, identified any material facts in support of the motion, or explained exactly what relief will be sought. I hereby reiterate our request that you provide us with this information at least 24 hours before our meet and confer conference. If you decline to do so, we will not be conferring with you on your motion on 10/3.

One logistical issue I'd like you to be prepared to address on the call is that there appear to be some conflicting instructions about the procedure for summary judgment motions. The most current scheduling order (ECF No. 44) has one set of deadlines and seems to envision a regular motion process (motion, opposition, reply). However, Judge Hsu's standing order on summary judgment motions envisions a joint brief process (similar to a C.D. Cal. discovery stipulation) and provides for a slightly different set of deadlines. We are amenable to doing our motion either way. However, I think we should prepare and file a stipulation clarifying exactly what needs to be filed and by when and proposing a specific hearing date that works for both of our offices.

Letter to Plaintiff's Counsel
September 27, 2024

Finally, on our call please be prepared to address whether you intend to offer declarations from any of the photographers to oppose defendant's summary judgment motion on standing, or to support plaintiff's cross-motion for partial summary judgment.

(2) <u>Motion to Extend Fact Discovery, and all Related Deadlines Including Trial, by 60 Days</u>

Defendant also intends to file a motion asking the Court to extend the fact discovery cutoff, and all related deadlines including trial, by approximately 60 days.  Reasons for this include: (a) plaintiff's 11th hour production of new documents and disclosure of new witnesses including ImageRights and Pixmole Technologies Ltd., who were first disclosed as witnesses on September 25, 2024; (b) plaintiff's obstruction of discovery with respect to the photographers; and (c) to allow the motions to compel described below to heard and decided.

We can confer on this motion during our scheduled 10/3 call.  I assume you will oppose but ask that you please be prepared to address a set of dates we can agree on, in the event this motion is granted over your opposition.

In addition to the foregoing motions directed to Judge Hsu, we also intend to file the following discovery motions directed to Judge Sagar, which we also request to confer with you about during our scheduled call on 10/3, although we are available to do so before then.

(3) <u>Defendant's Motions to Compel Related to Requests for Production of Documents</u>

   A.  <u>Defendant's Motion to Compel Plaintiff to Provide Supplemental Responses and Produce Documents Responsive to RPDs 30, 31, 36, 39, 41-46</u>

August never supplemented responses to RPDs 30, 31, 36, 39 and 41-46, despite Ben agreeing to it on a meet and confer call with Matt, which Matt followed up with an email summarizing. (See Matt's follow up email dated 8.23.2024 at 4:06 pm.) The majority of these requests seek documents in August's possession, custody or control relating to ImageRights, who August only recently disclosed in its initial disclosures on September 25.

By this motion, we seek an order compelling the plaintiff to provide further responses (currently there are just objections) and produce responsive documents that are in August's possession, custody or control.

   B.  <u>Defendant's Motion to Compel Plaintiff to Produce Documents Possessed by the Photographers and all Communications with the Photographers</u>.

Defendants intend to move the Court for an order compelling the plaintiff to produce documents, which are in the possession and custody of the photographers that own the copyright the plaintiff is suing on in this lawsuit, and which are responsive to the RFPs served on the plaintiff, as well as all communications with the photographers.  Documents possessed by the photographers are within the "control" of the plaintiff because the plaintiff has the legal right to demand such documents from the photographers. Many of the agreements between August and the photographers specifically provide that the photographers use "best efforts" or

Letter to Plaintiff's Counsel
September 27, 2024

"commercially reasonable efforts" "to cooperate with respect to such lawsuits, including without limitation, production of pertinent documents …." (emphasis added). For example, the agreements with Andrew Eccles, Brian Bowen Smith, Mark Mann, David Slijper, Shayan Asgharnia and Alexi Lubomirski all contain such provisions. Here, with respect to the photographers whose agreements with August contain this provision, August has the legal right to control any responsive documents that the photographers may have. This fact, by itself, is sufficient to require the plaintiff to seek and produce responsive information and documents from the photographers.  See *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (with respect to possession, custody, or control of documents, "Control is defined as the legal right to obtain documents upon demand."); see also *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006) ("A party has an obligation to conduct a reasonably inquiry into the factual basis of his responses to discovery, and, based on that inquiry, a party responding to a production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.")

We have repeatedly asked you to confirm that the plaintiff has collected responsive documents from the photographers.  Per Matt's recap of the last meet and confer call, Ben's most recent answer on this issue was that your law firm has not requested any documents from the photographers, but you are not sure whether the plaintiff has done so or not.

Matt again reiterated this request in a meet and confer email sent yesterday, September 26, at 6:14 PM, requesting a response to this question by 2 PM today, September 27. You did not respond to the question. Instead, your office brushed off the question and stated that your office would meet and confer with us on October 3. We look forward to meeting and conferring with you on the topic.

By this motion, we seek an order compelling the plaintiff to collect and produce responsive documents from the photographers, including all written communications between the plaintiff, or plaintiff's counsel, and the photographers, including any communications asking the photographers to look for documents (if any such communications exist).

(4) <u>Defendant's Motion to Compel Plaintiff to Provide Further Responses to Interrogatories</u>

Defendant's interrogatory numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 14, 18 and 19 all request information that would require August to seek information from the photographers in order to provide a complete, full response, as required by Rule 33.

The federal civil rules provide for serving written interrogatories upon a party that relate to any matters that can be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The responding party must respond "fully" and any objections "stated with specificity." Fed. R. Civ. P. 33(b)(3)–(4). While "a responding party is not required to conduct extensive research in order to answer an interrogatory, ... a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (citation omitted). Indeed, "[a] party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009)

Letter to Plaintiff's Counsel
September 27, 2024

(emphasis added); see *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988), *aff'd*, 900 F.2d 388 (1st Cir. 1990) ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by filing misleading or evasive responses, or by failing to examine records within its control."); 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed.) ("interrogatories should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry"). Thus, in answering interrogatories, "a party is charged with knowledge of what its agents know, or what is in records available to it, or even, for purposes of Rule 33, information others have given it on which it intends to rely in its suit." 8B Fed. Prac. & Proc. Civ. § 2177 (3d ed.); see *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010), *order clarified*, No. 05 CV 1198, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) ("Rule 33 imposes a duty on the responding party to secure all information available to it.") (emphasis in original).

In addition to Rule 33 requiring August to obtain relevant information the photographers possess to fully respond to the interrogatories, certain photographers are contractually obligated to cooperate with August in responding to interrogatories. For example, many of the agreements between August and the photographers specifically provide that the photographers use "best efforts" or "commercially reasonable efforts" "to cooperate with respect to such lawsuits, including without limitation, … responding to interrogatories…." (emphasis added). The agreements with Andrew Eccles, Brian Bowen Smith, Mark Mann, David Slijper, Shayan Asgharnia and Alexi Lubomirski all contain such provisions.

We have repeatedly asked you to confirm that the plaintiff has sought information from the photographers that is responsive to Defendant's interrogatories. Per Matt's recap of the last meet and confer call, Ben's most recent answer on this issue was that your law firm has not requested any information from the photographers, but you are not sure whether the plaintiff has done so or not. (See Matt's email sent Thursday, September 19, 2024 12:14 PM.)

Matt again reiterated this request in a meet and confer email sent yesterday, September 26, at 6:14 PM, requesting a response to this question by 2 PM today, September 27. You did not respond to the question. Instead, your office brushed off the question and stated that your office would meet and confer with us on October 3. We look forward to meeting and conferring with you on the topic.

By this motion, we seek an order compelling the plaintiff to seek responsive information from the photographers and provide supplemental responses to the foregoing interrogatories with such information.

(5) <u>Defendant's Renewed Motion to Compel the Plaintiff to Produce Photographers for Deposition</u>

At the prior IDC, Judge Sagar ordered the parties to confer on the compromise suggested by defendant prior to the IDC, namely, that the plaintiff consider accepting service of subpoenas for the photographers and splitting the cost of any depositions. Your office has now rejected that compromise, noting that you do not intend to depose any of them, but that you reserve your right to call them as witnesses at trial. On the meet and confer call with Ben on September 19, Matt

Letter to Plaintiff's Counsel
September 27, 2024

notified Ben that the two photographers' addresses who we tried to subpoena for a deposition and to produce documents were not correct addresses. (See Matt's email sent Thursday, September 19, 2024 12:14 PM.) On September 25, you served amended initial disclosures that did not provide updated contact information for those photographers. We have been unable to serve any of the photographers with a subpoena. But, since it is their copyrights at issue and they have a direct financial stake in the outcome of this lawsuit, I remain convinced that all your client has to do is ask, and the photographers will appear and cooperate in discovery when and if the plaintiff asks them to do so.

Accordingly, defendant intends to renew its motion, albeit formally this time and not via an IDC, asking that the Court order the plaintiff produce for deposition any photographers whose declarations it intends to offer in connection with summary judgment, or whose testimony plaintiff intends to offer at trial. Although we are a bit unclear as to whether Judge Sagar made a formal finding on the "managing agent" issue at the IDC or not, circumstances have now changed in that plaintiff has rejected the proposed compromise re: accepting service of subpoenas, and it has become clear that contact information the plaintiff provided is inaccurate. Further, if the IDC order was intended as a formal finding on the "managing agent" issue, notwithstanding Judge Sagar's comments at the end of the hearing, then we believe reconsideration is warranted and that this issue should be fully briefed and formally decided, so that it can be appropriately appealed, if necessary.

Thank you for your attention to this urgent matter, and I look forward to hearing from you soon.

Best regards,
*/s/ Morgan E. Pietz*
Morgan E. Pietz
PIETZ & SHAHRIARI, LLP

# EXHIBIT 131

**2024.10.01 - Meet and Confer LT P's Counsel**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Matthew A. Trejo
matt@pstrials.com
October 1, 2024

*VIA ELECTRONIC MAIL*

Stephen M. Doniger
stephen@donigerlawfirm.com
Benjamin F. Tookey
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

**Re:**    ***August Image, LLV v. Line Financial, PBC*** **(C.D. Cal., No.223-cv-05492)**

Dear Counsel,

I am writing to you pursuant to Local Rule 37-1 to meet-and-confer regarding plaintiff's deficient responses to defendant's interrogatories, set 3, requests for admission, set 2, and requests for production, set 2, served on my office on September 30, 2024. In short, plaintiff asserted meritless objections and did not respond substantively to a single discovery request.

Please be prepared to discuss the following issues at our meet and confer conference set for October 3, 2024. Since August completely failed to respond substantively, and given the imminent discovery cut-off deadline of October 11, if August refuses to meet and confer on October 3 and confirm on October 3 that it will supplement the responses identified below to provide substantive responses on or before October 8, 2024, we will move to compel.

## 1. Deficiencies in Plaintiff's Responses to Defendant's Discovery, Set Two & Set Three

**Problems with Objections**

Defendant addresses August's objections to discovery requests globally, as they are primarily boiler plate, improper objections. Moreover, none of the objections asserted serve as a basis for not providing a substantive response, which is the issue here.

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 635–36 (C.D. Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd*., 179 F.R.D. 281, 283 (C.D. Cal. 1998)). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id*.

Letter to Benjamin F. Tookey
October 1, 2024

For the discovery at issue, August asserts general and/or boilerplate objections such as vague, ambiguous, overly broad, burdensome, oppressive, harassing, and irrelevant. However, general or boilerplate objections are not proper objections to discovery requests, especially when a party fails to submit any evidentiary declarations supporting such objections. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007). Significantly, these objections cannot form the basis for a refusal to respond to the request, which is what August did.

August also objects on the grounds that certain interrogatories are compound. However, the requests are not compound as their subparts are part of a single common theme. *Trevino v. ACB American*, Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) ("[C]ourts generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question."); *In re Questcor Pharms., Inc. Sec. Litig.*, Case No. SACV 12-1623-DMG (JPRx), 2015 WL 12672130, at *1 (C.D. Cal. Jan. 21, 2015) (finding that interrogatories that ask about a single common theme are not compound). Since the interrogatories are not compound, this objection is improper and not a basis for not responding.

August further objects on the grounds that the interrogatories propounded exceed the number of allowable ROGs under Fed. R. Civ. P. 33. However, Rule 33 permits a propounding party to serve 25 interrogatories. Here, defendant served 25 interrogatories, which is within the limits of Rule 33. Thus, this objection is meritless.

August also improperly asserts attorney-client privilege and work product as objections. Not all communications between an attorney and his client are privileged. Rather, only "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403, (1976); Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.1992). To show the applicability of the attorney-client privilege, a claimant must show the following eight essential elements: " '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.' " *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir.1992); *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). Because the attorney-client privilege is in derogation of the search for truth, it is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989), cert. denied, 495 U.S. 930 (1990); see also *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1569 (holding since attorney-client privilege "has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose"). Moreover, "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege[,]" *Martin*, 278 F.3d at 999–1000; *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir. 1995), cert. denied, 519 U.S. 911 (1996), and an assertion of a privilege

Letter to Benjamin F. Tookey
October 1, 2024

without evidence to support it will not prevail. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985), cert. denied, 475 U.S. 1119 (1986); see also *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 333 (E.D.N.Y.1996) (Meeting the burden of establishing the applicability of the attorney-client privilege "requires the submission of affidavits or other competent evidence to establish sufficient facts to prove the applicability of the privilege. Conclusory or ipse dixit assertions are not enough." (citations omitted)).

Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12 (1947). One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co.*, 881 F.2d at 1494; *Doubleday v. Ruh*, 149 F.R.D. 601, 605 n. 3 (E.D. Cal. 1993). The party claiming work product immunity has the burden of proving the applicability of the doctrine. United States v. City of Torrance, 163 F.R.D. 590, 593 (C.D. Cal. 1995).

Here, August has asserted attorney-client privilege and work-product objections to various requests at issue below. The objections are without merit, as no request seeks privileged information. To the extent that August is holding information back based on privilege or work product, August has the burden to prove it applies, including, but not limited to, providing a privilege log. Conclusory objections that discovery requests are privileged are insufficient. See *A. Farber & Partners, Inc.*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); FED. R. CIV. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must ... describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

Most significantly, none of the objections asserted serve as a basis for not responding to Defendant's discovery, which is the issue here. If you believe an objection justifies August's refusal to respond to a specific request, please be prepared to discuss it on the call. Otherwise, please provide a response to the requests at issue below.

///

///

///

///

Letter to Benjamin F. Tookey
October 1, 2024

**Problems with Responses (or lack thereof)**

**Interrogatories**

     **ROGS 21, 22, 23, 24, 25:** Here, as discussed above, your client asserted boilerplate, meritless objections only and <u>did not</u> provide a substantive response. Under FRCP 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…. Information within this scope of discovery need not be admissible in evidence to be discoverable." "Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The information sought in these interrogatories is relevant, non-privileged and proportional to the needs of the case. Therefore, your client must withdraw its meritless objections and also provide substantive responses to these interrogatories.

**Requests for Admission**

     **RFAs 12-78:** Here, as discussed above, your client asserted boilerplate, meritless objections only and <u>did not</u> provide a substantive response. Under FRCP 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…. Information within this scope of discovery need not be admissible in evidence to be discoverable." "Relevancy is broadly defined to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The information sought in these requests is relevant, non-privileged and proportional to the needs of the case. Therefore, your client must withdraw its meritless objections and also provide substantive responses to these requests.

**Requests for Production**

     **RPDs 51-85:** For these requests, your client asserts boilerplate, meritless objections only and does not provide a response. As you know, the scope of discovery is broad and favors production. The documents sought in these requests are relevant, non-privileged and proportional to the needs of the case. Thus, my client is entitled to these documents to the extent your client has non-privileged responsive documents in its possession, custody or control and/or the photographers have responsive documents in their possession, custody or control. If your client or the photographers do not have these documents in their possession, custody or control, your client should amend its response to so state. If your client and/or the photographers do have responsive documents, but they are being held back on privilege grounds, please provide a privilege log.

     In addition, the agreements between August and the photographers specifically provide that "[the photographer] agree[s] to use best efforts to cooperate with respect to such lawsuits, including without limitation, ***production of pertinent documents, responding to interrogatories***…." (emphasis added).

Letter to Benjamin F. Tookey
October 1, 2024

       As we have repeatedly requested, please be prepared to discuss whether or not plaintiff has sought and produced responsive information and documents from the photographers to respond to defendant's discovery. We note that we formalized this request in Requests for Admission, Set 2, Nos. 12-13, but August just objected to the requests regarding this information and did not provide a response.

Best regards,
/s/ Matthew Trejo
Matthew A. Trejo
Attorney
PIETZ & SHAHRIARI, LLP

# EXHIBIT 132

**2024.10.03 - August's Fourth Supp Initial Disclosures**

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LINE FINANCIAL, PBC, et al.,<br><br>Defendants. | Case No. 2:23-cv-05492-WLH-AS<br>*Hon. Wesley L. Hsu Presiding*<br><br>**PLAINTIFF'S FOURTH SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES** |

Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

August is still in the process of compiling evidence in this matter. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

## A.    Witnesses

Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.     Bill Hannigan, owner of August, reachable through counsel, regarding August's knowledge of the creation and registration of the original photographs at issue in this case (the "Subject Photographs"), August's syndication agreements with the photographers of the Subject Photographs (the "Photographers"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.     Lauren Kelly, Director of Copyright of August, reachable through counsel, regarding August's knowledge of the creation and registration of the Subject Photographs, August's syndication agreements with the Photographers, August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

3.     Alexi Lubomirski, contactable to August's knowledge at 268 W. Hill Rd, Box 159, Austerlitz, NY 12017, alexilubomirski.com, and/or as set forth in AUGUST000687-89, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

4.     Andrew Eccles, contactable to August's knowledge at 4227 McLaughlin Ave PH 1, Los Angeles, CA 90066, andreweccles.com, and/or as set forth in AUGUST000690-92, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

5.     Art Streiber, contactable to August's knowledge at 2239 Camden Ave, Los Angeles, CA 90064, artstreiber.com, and/or as set forth in AUGUST000693-95,

who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

6.    Austin Hargrave, contactable to August's knowledge at 1835 N. Avenue 51, Los Angeles, CA 90042, austinhargrave.com, and/or as set forth in AUGUST000696-98, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

7.    Brian Bowen Smith, contactable to August's knowledge at 5910 Fairview Pl., Agoura Hills, CA 91301, bowensmith.com, and/or as set forth in AUGUST000699-702, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

8.    David Slijper, contactable to August's knowledge at Flat 18, The Pryors, 6 E. Heath Rd., London NW3 1BP, United Kingdom, davidslijper.com, and/or as set forth in AUGUST000703-05, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

9.    Joe Pugliese, contactable to August's knowledge at 6311 Romaine Street, #7307, Los Angeles, CA 90038, joepug.com, and/or as set forth in AUGUST000706-08, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

10.    Mark Mann, contactable to August's knowledge at 135 East 74th St, 10B, New York, NY 10021, markmannphoto.com, and/or as set forth in AUGUST000709-12, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

11.    Martin Schoeller, contactable to August's knowledge at 105 Hudson St., #2N, New York, NY 10013, martinschoeller.com, and/or as set forth in AUGUST000713-15, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

12.    Miller Mobley, contactable to August's knowledge at 41 Randolph Road, Birmingham, AL 35213, millermobley.com, and/or as set forth in AUGUST000716-18, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

13.    Shayan Asgharnia, contactable to August's knowledge at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004, shayanasgharnia.com, and/or as set forth in AUGUST000719-21, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

14.    Bruno and Nicoletta Van Mossevelde, contactable to August's knowledge at First Edit SRL, Via Del Plebiscito 107, Rome, 00186, Italy, brunoandnico.com, and/or as set forth in AUGUST000781-82, who have information regarding the creation, originality, ownership, and registration of Bruno Van

Mossevelde's respective Subject Photograph(s); his licensing histories and rates; and their appointment of August as the exclusive licensing agent and syndicator of Bruno Van Mossevelde's respective Subject Photograph(s).

15. Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), contactable to August's knowledge through Defendant's counsel of record; regarding:

a. Defendant's admissions and denials in its operative Answer;

b. Defendant's affirmative defenses;

c. Defendant's discovery responses;

d. Defendant's initial disclosures;

e. Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

f. Defendant's access to the Subject Photographs;

g. The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

h. The Accused Posts and their dates of first and last display;

i. Any/all efforts to clear use of the Subject Photographs prior to use;

j. Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

k. Defendant's revenues and profits earned in connection with the Accused Posts;

l. Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

m. Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

n. Defendant's notice of and investigation into the infringement at issue;

o. Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p. Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q. Defendant's awareness of copyright protection for photographs;

r. Any/all communications regarding the Subject Photographs and/or Accused Posts;

s. The web traffic and views for the Accused Posts;

t. Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

16.    Akshay Krishnaiah, Founder and/or CEO of Defendant Line Financial, PBC, contactable to August's knowledge through Defendant's counsel of record; regarding:

a. Defendant's admissions and denials in its operative Answer;

b. Defendant's affirmative defenses;

c. Defendant's discovery responses;

d. Defendant's initial disclosures;

e. Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

f. Defendant's access to the Subject Photographs;

g. The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

h. The Accused Posts and their dates of first and last display;

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

i.  Any/all efforts to clear use of the Subject Photographs prior to use;

j.  Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

k.  Defendant's revenues and profits earned in connection with the Accused Posts;

l.  Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

m. Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

n.  Defendant's notice of and investigation into the infringement at issue;

o.  Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p.  Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q.  Defendant's awareness of copyright protection for photographs;

r.  Any/all communications regarding the Subject Photographs and/or Accused Posts;

s.  The web traffic and views for the Accused Posts;

t.  Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

17.    The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's employee(s) and/or contractors, regarding the creation, dissemination, and

exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.    <u>Documents</u>**

1.    Documents reflecting August's syndication agreements with the Photographers;

2.    Documents reflecting the creation, ownership, and registration of the Subject Photographs;

3.    Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

4.    Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.    Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

6.    Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

7.    Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

8.    The discovery responses and documents produced in this case.

**C.    <u>Damages</u>**

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs. The amounts of such licensing fees may be determined based on, *inter alia*, the full scope of Defendant's exploitation of the Subject Photographs, and the licensing invoices set forth in AUGUST000725-77. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per timely registered Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

August will also seek its costs and attorneys' fees incurred in prosecuting this case. *See* 17 U.S.C. § 505.

**D.    Insurance**

August does not have insurance for the claims at issue.


Date: October 3, 2024              By:     */s/ Stephen M. Doniger*
                                           Stephen M. Doniger, Esq.
                                           Benjamin F. Tookey, Esq.
                                           DONIGER / BURROUGHS
                                           *Attorneys for Plaintiff*

PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 603 Rose Ave, Venice, CA 90291.

     On October 3, 2024 I served the ENCLOSED documents described as: **PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES;** on the following necessary part(ies) in this action:

> Morgan E. Pietz
> PIETZ & SHAHRIARI, LLP
> 6700 S. Centinela Avenue, 2nd Floor
> Culver City, CA 90230
> T: (310) 424-5557
> F: (310) 597-4626
> E: morgan@pstrials.com;
> jessica@pstrials.com; admin@pstrials.com
>
> **ATTORNEY TO BE NOTICE**

☒ by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:
☒ BY ELECTRONIC MAIL (E-MAIL)
     ☒ On this date I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

     EXECUTED October 3, 2024 in Venice, California.
☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*Benjamin F. Tookey*
Benjamin F. Tookey

# EXHIBIT 133

**2024.10.04 – M&C Email Chain**

**Morgan Pietz**

| | |
|---|---|
| **From:** | Stephen Doniger <stephen@donigerlawfirm.com> |
| **Sent:** | Friday, October 4, 2024 11:34 AM |
| **To:** | Morgan Pietz; Benjamin Tookey; Matt Trejo |
| **Subject:** | RE: August Image v. Line Financial - TODAY'S M&C CALL |

Morgan,

Ben is out of the office today and Monday for personal reasons, so please allow me to respond to the below.

(1) MSJ: If I am understanding your proposal correctly, I think we can agree to it. Please send a draft proposed stipulation so we can confirm.

(2) Modifying scheduling Order: We see no good cause for "ex parte" relief, which is not simply for the convenience of the parties but requires a showing that your client's interests would otherwise be "irreparably prejudiced" and that the emergency is not of your own making. As I told you yesterday, Imagerights only relevant info is that it ALSO discovered some of the claims first otherwise discovered. That discovery is not how our client learned about the claims and is not evidence we will use to establish either element of our client's claim (ownership or copying). Perhaps you can explain how you believe your client's case would be irreparably prejudiced if it is unable to subpoena ImageRights—If I am missing something I am willing to reconsider.

(3) Motions to Compel: As noted below, we do not believe we have yet conferred over your letter sent earlier this week as we have not had a reasonable chance to consider it. As to the other requests, we have agreed to supplement by Monday, by when I believe you will have everything we have to provide.

(4) Dismissal of Claim re AU2235159: Your added language is not agreeable. If that is your final position feel free to include it in your MSJ and we can go from there.

Thanks,

*Stephen M. Doniger, Esq.*
**DONIGER / BURROUGHS**
603 ROSE AVENUE
VENICE, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

 Book time to meet with me



**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Friday, October 4, 2024 10:47 AM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - TODAY'S M&C CALL

Ben,

I have received your own recap email, thank you.  As a preliminary matter, I'll note that I didn't "doctor" an email chain – I pasted together all of our emails into chronological order and then told you I was doing that, to show the full history of our four prior attempts, leading up to the M&C call, when we asked you for the law and evidence you will rely upon in connection with the summary judgment motions being discussed. Moreover, I am prepared to aver to the accuracy of absolutely everything written in my recap below, if necessary, despite you purporting to say any of it was "inaccurate," mostly without specifically explaining why or how.

### (1) MSJ

Regarding the 'moving party' issue in the MSJ, no, we do not agree that plaintiff is the moving party.   Since the parties disagree on this issue, the defendant is deemed the moving party under the standing order.  Moreover, there should be no issue about who gets the 'last word' because, if you will look more closely at the briefing schedule I proposed, it provides that both sides would file reply briefs in support of their respective motions, which is actually a departure from the MSJ standing order, if one reads it strictly, but which I was prepared to agree to in the interest of clarity, provided we file and obtain court approval of a stipulation to that effect.

Although I think it would be helpful to stipulate to the briefing schedule, so that we can reserve the hearing date, and generally make it clear who is doing what by when, I am starting to sense that further communication with you on the particulars will not be productive, given your insistence that the plaintiff should be deemed the moving party (on a motion you have yet to describe beyond two paragraphs in an email).   If we cannot agree on the schedule I proposed, or something similar to it, then we will simply proceed according to the standing order re MSJ, and we will expect you to follow it as well.

Finally, I am disappointed, although not entirely surprised, to see that the sixth time will not be the charm, and that you have apparently elected to mainly keep us guessing as to the law and evidence you intend to rely upon in connection with the MSJ issues until you serve us with some kind of brief.  Again, we intend to move to strike portions of your brief that depart from what was properly discussed and has been memorialized below.

### (2) Motion to Modify the Scheduling Order

Your further amendment of plaintiff's initial disclosures, which remove ImageRights and PixMole as witnesses, and which  you served last night after receiving my below email is appreciated.  However, it does not cure the prejudice because both the penultimate version of plaintiff's initial disclosures and your email of last night substantiate what we have suspected all along, but which Stepehen denied prior to and during the mediation in March, namely that ImageRights and PixMole have information that is relevant to the plaintiff's claims.  Accordingly, we still intend to subpoena ImageRights although PixMole seems to be a foreign entity such that we cannot practicably do so without a much longer continuance.  We will be moving forward with this motion for all the reasons previously explained and discussed.

## a. Notice of Ex Parte Application for Expedited Filing / Briefing Schedule

In view of your comment that the earliest we can file a motion to modify the scheduling order would be October 10th, I take it you will object to the motion as premature if we file it before then? Please confirm.

Further, and relatedly, please advise if you will stipulate to an expedited briefing schedule for the motion to modify the scheduling order. If you do not, we will prepare an ex parte application to be filed early next week asking the Court to decide that issue on an expedited timeframe, so that we can keep to a minimum any resulting trial continuance to allow the discovery motions to proceed.

## (3) Motions to Compel

**a.** <u>RFPs Related to ImageRights / Completion of Production</u>. Thank you for confirming that "we will produce documents by Monday which should substantially complete our document production, and included within that will be ImageRights-related documents." By when do you intend to fully complete plaintiff's document production? What documents will **not** be in the Monday production but which you intend to produce later? (Which is me repeating again a question I asked yesterday and which you also refused to answer during yesterday's call).

**b.** <u>RFPs and Rogs Related to the Photographers</u>. The fundamental issue here is that it is not supposed to be the defendant's burden to seek information from the photographers ***who own the copyrights that the plaintiff, the photographers purported "exclusive agent", is suing on in this case.*** Rule 33 and Rule 34 make it the plaintiff's responsibility to obtain information and documents from the photographers for the reasons explained in our letters. We have been asking you to confirm, in writing, that the plaintiff has done so for months. Even after warning you we would want a final answer on that question by yesterday's call, you still will not say so. We will be proceeding with this motion.

**c.** <u>Photographer Depositions</u>. Your sanctions threat is noted. But I think you are wrong on the substance of the "managing agent" issue, and you are definitely wrong about the procedural posture, given Judge Sagar's comments at the end of the hearing in response to my question about whether a formal motion would be required to appeal the issue and her saying yes.

d. <u>Objections-Only as to RFPs 2, RFAs 2, and Rogs 3</u>. What I asked you to take a position on during yesterdays call was whether you would agree to go through and respond to these individually and in good faith instead of just standing on your objections-only responses and trying to run out the clock. You insisted you could not decide that yet and that the soonest you could possibly meet and confer would be two days before the discovery cutoff. So, reading between the lines, I think I have a pretty good idea of which option you are going to choose. I hope I am wrong and will welcome some good faith responses being served before then. Otherwise, we'll move to compel after having a further meet and confer call with you on 10/9 as scheduled.

## (4) Stipulation of Dismissal.

I have now looked into it as promised, and, as I vaguely recollected, there is a complicated body of law about when a party may seek prevailing party costs and fees after stipulating to a dismissal with prejudice; sometimes yes, sometimes no.  Compare _Keith Manufacturing Co. v. Butterfield,_ with Microsoft Corp. v. Baker, 137 S. Ct. 1702 (2017).

Accordingly, I propose modifying the stipulation from this:

> Plaintiff August Image, LLC, and Defendant Line Financial, PBC, hereby stipulate and agree that Plaintiff's claims regarding Subject Photograph AU2235159 are hereby dismissed with prejudice.

To this:

> Plaintiff August Image, LLC, and Defendant Line Financial, PBC, hereby stipulate and agree that Plaintiff's claim regarding Subject Photograph AU2235159 is hereby dismissed with prejudice and that the defendant shall be deemed the prevailing party with respect to this claim and free to move for costs and attorneys' fees on this claim in connection with entry of final judgment in the case.

If you do not agree to revisions along those lines, we will include this claim in our MSJ and see it dismissed and defendant deemed to prevail on this claim via that mechanism, which seems assured, since, as we pointed out in our MSJ M&C letter, no agreement or addendum purporting to confer standing on the plaintiff has been produced for this photographer and we assume there is none.  You shouldn't have sued on this one.  Or forced us to do extensive discovery on it, including at Tuesday's deposition when you noticed 103 topics and asked questions on six of them, including questions about this this photograph.  You should agree now that the defendant is the prevailing party on this claim so that we don't have to brief it in the MSJ, which will only increase your clients' attorney fee exposure.

Best regards,
Morgan

---

**From:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Sent:** Thursday, October 3, 2024 10:20 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Matt Trejo <matt@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - TODAY'S M&C CALL

Morgan,

My responses are below in red. Do not doctor or modify an email chain again, which you did below. You are obligated not to "write letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create 'a record' of events that have not occurred."

Sincerely,
Ben

Benjamin F. Tookey (he/him)
DONIGER / BURROUGHS
603 Rose Avenue

Venice, California 90291
(310) 590-1820
btookey@donigerlawfirm.com

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, October 3, 2024 4:56 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>; Stephen Doniger <stephen@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - TODAY'S M&C CALL

Ben,

Thank you for your time on today's hour-long meet and confer call on the below issues.

Please find my recap of the issues below in blue.

Best regards,
Morgan

---

**From:** Morgan Pietz
**Sent:** Thursday, October 3, 2024 12:34 PM
**To:** stephen@donigerlawfirm.com; Benjamin Tookey <btookey@donigerlawfirm.com>
**Cc:** lzamora@donigerlawfirm.com; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Subject:** FW: August Image v. Line Financial - TODAY'S M&C CALL

Stephen and Ben,

We look forward to our meet and confer call with you today at 2 pm.

Please find below a proposed agenda, in the form of a list of the issues we are planning to confer with you about this afternoon during our call.

**(1) Defendant's Motion for Summary Judgment**

For a list of specific issues, please see our letters of 9/23 (identifying the law and evidence defendant will rely upon in seeking summary judgment for lack of standing) and 9/27 (re-iterating our request that the plaintiff provide its own law and evidence relevant to defendant's motion and to plaintiff's vaguely-explained cross motion, at least 24 hours in advance of today's call), which were transmitted in the email chains pasted below.

In addition to please identifying the relevant law and evidence you will be relying upon to oppose defendant's MSJ on standing, please be prepared to identify whether any of the photographers, or a representative of ImageRights, will be offering declarations in opposition to defendant's summary judgment.

5

Further, as referenced in the letters, we need to address and agree on a briefing schedule.

Stephen was not present for this portion of the call. You indicated that the plaintiff would be opposing defendant's MSJ. At the top of the call, when we began discussing this issue, I specifically pointed you to Judge Hsu's standing order on summary judgment (ECF No. 29), noted that we have already provided our law and evidence in relation to our motion, and again asked that you to provide the plaintiff's law and evidence that it will be relying upon to oppose defendant's motion on standing, so that we could discuss it.

With respect to law that plaintiff intends to rely upon in opposition to defendant's MSJ, you noted to *Minden v John C. Wiley & Sons* which I noted was addressed in Matt's letter. When I pressed you to identify any other cases, authorities or legal arguments that the plaintiff would rely upon in opposition to the MSJ, you said, and I quote, "I don't have to tell you any others." I noted that the authorities we intend to rely upon are set out in Matt's letter, and noted that we have an additional one not mentioned in the letter, which is the CPI case from Georgia, which I know you are already familiar with, *Creative Photographers, Inc. v. Julie Torres Art*, LLC et al, N.D. Ga. No. 22-cv-655, ECF No. 43.

With respect to the evidence relevant to defendant's MSJ, you stated it was plaintiff's position that "the agreements" established standing. I asked you to clarify whether agreements meant the original agreements between the photographers and the plaintiff, the addenda executed after the lawsuit was filed (except for one photographer), or both, and you said both. I asked you if there was any other evidence you intended to rely upon to oppose summary judgment, such as deposition transcripts, discovery responses, etc., and you said, quote "I'm not going to tell you that at this point." When I asked you to confirm whether any of the photographers, or any representative of ImageRights would be providing a declaration in opposition to defendnat's MSJ (or in support of plaintiff's cross motion, which is discussed below) you indicated you were not sure yet.

On our call, you agreed with me that those quotes I am attributing to you were accurate. Toward the end of our discussion of defendant's MSJ, I again referenced Judge Hsu's standing order requirement that the parties discuss the relevant law and evidence (*see* ECF No. 29 at 2:5-8) and advised that if you did not provide us with a more thorough statement of the law and evidence you would be relying upon to oppose our motion, then we would be reserving our rights to ask that the Court strike the plaintiff's potion of the MSJ brief, to the extent it departs from the one category of evidence (the "agreements") and the one case (*Minden v. John C. Wiley & Sons*) that you articulated during your call. I'll note that, as memorialized below, we specifically requested that you provide your law and evidence in opposition to our motion on 9/23, 9/25, 9/27, and again today an hour and a half before our meet and confer call (10/3 at 12:34 PM), which makes me again requesting that information from you during the call this afternoon (10/3 at 2 pm) the defendant's fifth request for this information.

Perhaps the sixth time will be the charm.   If there is any other law or evidence you would like us to consider as relevant to your opposition to defendant's MSJ on standing, please provide it by Monday, so we can address it in our portion of the MSJ brief.

As for briefing schedule, we agreed to follow the procedure in Judge Hsu's standing order on MSJ (ECF No. 29). I agreed to prepare a stipulation addressing the dates by

6

which briefs must be served that is consistent with that order (which, as I noted, arguably diverges from what is in the scheduling order with respect to the due dates and format for briefs).

Here is what I propose including in the stipulation:

1. For purposes of the briefing schedule, defendant is the "Moving Party."  See ECF No. 29 at 2:9-18 (noting, among other things "If the parties are unable to agree, the defendant(s) shall be deemed the moving party").
2. Defendant to serve the Moving Party's Portion of the Joint Brief in support of defendant's motion re: standing, and plaintiff to serve Opposing Party's brief in support of cross-motion re: liability, by 10/17 which is 14 days from today.  Id.  at 7:1-7.
3. Plaintiff to serve Opposing Party's Portion of the Joint Brief, and defendant to serve opposition to cross-motion, by 10/31, which is 14 days after the first part was served.  Id. at 7:8-14
4. Defendant files Joint Brief by 11/4.  Id. at 7:15-25.
5. Defendant files Reply Brief and plaintiff files reply in support of cross-motion, by 11/15.  Id. at 7:26-8:4.
6. Hearing on 12/6

**Please confirm your agreement to the foregoing briefing schedule.**

Your editorializing and purported play-by-play is self-serving, disingenuous, inaccurate, and largely serves no purpose other than to attempt to ascribe malfeasance to our firm. I will not engage in this type of conduct with you, your characterization is disputed.

There is no requirement that either side exhaustively cite to each other, during a meet-and-confer, every exhibit and authority they intend to cite in a dispositive motion or opposition thereto. You have not even done what you're asking us to do. I am unable as of today to exhaustively cite every exhibit and authority we intend to cite in a dispositive motion or opposition because our motion and opposition is not yet drafted. There is no rule that a party is precluded from citing any evidence or authority not raised during a meet-and-confer, and you know that. Be reasonable.

Standing is straightforward: you think that August's agreements with the photographers do not confer standing on August, and we disagree. Liability is also straightforward: we believe the copyrights in the photographs are valid and Defendant copied those photographs on its website/Instagram, and you disagree. We discussed the grounds each side is moving on and now each side will so move.

You did not cite or point to any specific evidence disputing registration/originality/copying during our conference, but said your position is that the photos are different and you will not stipulate to any of the elements of liability to streamline briefing, which is your prerogative. You will confirm by Monday exactly which affirmative defenses to liability you will pursue on summary judgment. You refused to stipulate that August has standing at least as to the two subject photographs taken by Joe Pugliese, even though you stated in your previous letter your view that "August does not have standing to sue with respect to any of the foregoing photographers, except perhaps Joe Pugliese." And you will confirm by Monday whether you will stipulate to the dismissal of AU2235159 with prejudice.

Re: briefing: As I've stated twice now, the cleanest way to do this is for there to be a single brief on liability: August's. There is no reason you need to be the moving party, you're only addressing standing which is part of our prima facie case, and you seem to be set on your position based just on

(1) the default presumption in Judge Hsu's MSJ Order, and (2) you wanting the last word. You're not disadvantaged, a court can grant summary judgment sua sponte in favor of the non-movant, and if you agree to a single brief on liability, we will agree to you getting a reply as well. Please confirm whether you agree, after which I can respond to you about the schedule.

**(2) Defendant's Motion to Modify the Scheduling Order**

Please see our letter of 9/27, the transmittal for which is below, for a list of specific issues.  Please note that we will be seeking to keep discovery open only in connection with: (1) the Photographers; (2) ImageRights; and (3) Other issues related to standing and plaintiff's prima facie case, including a deposition of the plaintiff's 30(b)(6) witness in which we have an opportunity to address the foregoing other issues.

At the 30(b)(6) deposition of Line Financial conducted on Tuesday of this week, the witness was fully prepared to testify on all 103 topics included in your deposition notice.  Since you only asked questions on about 6 of those topics, I assume plaintiff has already fully completed discovery from the defendant on all other issues.

> Stephen was present for this portion of the conversation.  Ben indicated that the plaintiff would oppose the motion and asked for our grounds for bringing it.  I referred him to Matt's letter of 9/27, noting it stated several grounds, and also engaged in a discussion of those grounds.  The first one we discussed was that plaintiff added ImageRights and PixMole as a witnesses at the 11th hour.  I reminded you both that Stephen had previously insisted, both before and during the mediation on March 24, 2024, that ImageRights had nothing to do with this case.  Whereupon Stephen corrected me to clarify that what he represented previously was that ImageRights *did not discover* the alleged infringement at issue.  Whereupon Matt pulled out plaintiff's third supplemental amended initial disclosures, served 9/25/24, and noted that what it says is that an unidentified witness from ImageRights will be offered by the plaintiff "regarding the discovery of Defendant's unauthorized exploitation of the Subject Photographs" (at 5:8-16), which seemed to directly contradict the assertion Stephen was now making on today's call.  I won't attempt to recap Stephen's further explanation: I would like you to please explain in writing why ImageRights was not identified as a witness prior to 9/26.

> Next, we discussed our assertion that plaintiff has obstructed discovery related to the photographers; Ben insisted that the contact information provided for the photographers most recently was the last known information possessed by the plaintiff.  After that, we discussed the discovery motions we intend to file, which are addressed below.  We agreed that the parties are at an impasse and we notified you we would be proceeding with filing this motion as promptly as possible, which was right around when Stephen had to drop off the call.

As stated above, your editorializing and purported play-by-play is self-serving, disingenuous, inaccurate, and largely serves no purpose other than to attempt to ascribe malfeasance to our firm. I will not engage in this type of conduct with you, your characterization is disputed. I'm also not going to respond regarding your client's deposition, your characterization is disputed.

You have known about ImageRights since March of this year—you mentioned them explicitly in your mediation brief. You served discovery in May regarding ImageRights. You have not attempted to take any discovery from ImageRights. Nothing you write above says otherwise. You also omit that this is a non-issue. As we told you, we do not intend to call ImageRights at trial (same with Pixmole). They

were listed on the disclosures in the first place not because we intend to call them at trial, but rather out of an abundance of caution because they may have relevant information and in the event the name ImageRights is mentioned during deposition, which you would have complained about had ImageRights *not* been on the initial disclosures. To put this to bed, we have removed ImageRights and Pixmole from our initial disclosures.

August provided the contact information it has for the photographers. You've known about the photographers since the beginning of this case, and they have publicly available websites with contact information. You've had contact information for them from August since May. Your motion to deem them managing agents of August for depositions was denied on August 15—which you decided to pursue instead of subpoenaing any photographers—and after that you only attempted to subpoena two of the photographers. You never sought to take discovery from any others. Nothing you write above says otherwise. You cannot in good faith accuse us of "obstruction" to deflect your lack of diligence.

I confirm that the above two paragraphs are the only grounds you stated would be the basis for your request to modify the scheduling order. Based on that representation from you, you're correct that we disagree that you're entitled to the relief you seek. Under LR 7, the earliest you can file such motion is October 10.

**(3) Defendant's Motions to Compel**

Please see our letters of 9/27 (addressing August's failure to seek or obtain documents and information from the photographers) and 10/2 (addressing August serving only objections to the entirety of defendant's discovery sets two and three) for a list of specific issues.

The specific discovery issues raised in these letters in greater detail, are:

(a) <u>RFPs Related to ImageRights</u>.  August's Failure to Supplement Certain RFPs it Promised to Supplement Which Relate to ImageRights;

> Stephen was not present for this portion of the call or for the discussion of the other discovery issues.  On this first issue, Ben promised to both supplement written responses to these RFPs, and produce all responsive documents, by this Monday 10/7.  I noted that the plaintiff has promised to make a further document production in this case, even though the discovery cutoff is 10/11, and asked Ben to identify the types of documents that would be produced.  Ben indicated that apart from responsive ImageRights documents, he could not tell me what additional documents remain to be produced.

Inaccurate. You asked us to supplement, and we will supplement, written responses to RFPs 30-31, 36, 39, 41-46. We will do so by Monday. I said that we will produce documents by Monday which should substantially complete our document production, and included within that will be ImageRights-related documents.

(b) <u>RFPs and Rogs Related to the Photographers</u>.  RPFAugust's failure to seek  documents and information from the photographers that is responsive to the discovery served on August by the Defendant

> On this issue, we discussed the applicable legal standards under Rule 34 (control is legal right to demand) and Rule 33 (duty to gather responsive information from third

parties such as agents), and noted that these were different issues than the "managing agent" issue Judge Sagar has already decided with respect to compelling depositions via notice.  I reiterated that, for months, we have been asking the plaintiff to provide a final answer as to whether documents responsive to the RFPs served on the plaintiff were, or were not, sought from the photographers and that your office has steadfastly refused to make such a representation in writing.  I recapped that what Ben had said previously was that your law firm has not communicated with the photographers about collecting documents and asked you whether that was still true and you indicated that it was.  Stephen interjected that the problem was that to the extent the plaintiff had communicated with the photographers, and then told your office about what the plaintiff learned, that conversation was attorney-client privileged, but he intimated that there may have been some kind of "conversations" about "some" categories of documents between the plaintiff and the photographers.

To avoid a motion on this issue, please put your position in writing, in a declaration from your client (which will avoid the privilege issue Stephen purports to be concerned about).  Specifically, the plaintiff's declaration should address:

- Which photographers have been contacted by the plaintiff or its representatives about discovery in this lawsuit?
- When?
- How (i.e., email, phone, Zoom, etc)?
- Whether each photographer was provided with the RFPs served on the plaintiff, or requested to provide certain categories of documents, and if so, exactly what they were asked to look for?
- Whether each photographer was asked for any information responsive to the list of 13 interrogatories identified on page 3 of our 9/27 letter.
  - On this issue, Ben purported to not have enough specifics, and claimed he needed specific examples of the kinds of information requested by this list of 13 interrogatories that the photographers might have that the plaintiff did not.  Matt gave two examples on the call, namely information about the creation of the photos at issue, and information about the initial publication of the photos at issue.  We agreed to provide additional, specific examples by Monday.
- What the photographer said back in response to these inquiries
  - Ben said during the call that as far as he was aware, the only thing he could be sure that the photographers were asked was whether they would agree to allow the plaintiff to accept service of a subpoena on their behalves (as ordered by Judge Sagar).
    - Please immediately produce copies of these communications between the plaintiff and the photographers about accepting service of the subpoena.  See RFP 34 requesting these communications.

Morgan, this is bordering on harassing. What we told you today was that you have not pointed to any specific information or document that you think is missing from any specific response and called for by the request. Instead, you're asking an abstract question—and now you're asking for a declaration—in an improper attempt to take discovery on discovery. You have yet to point to anything specific that you think is deficient/missing in any particular responses, so I don't even know what requests or purported deficiencies would be at "issue." If you wanted to seek information from the photographers, you had ample time to do so. If you wanted to seek Judge Sagar's opinion on August's responses, you had ample time to do so. We will wait to receive your examples on Monday.

(c) <u>Photographer Depositions</u>.  Renewed Motion to Compel August to Produce the Photographers for Deposition

> Ben indicated your office would seek sanctions if we raised this issue formally.  I indicated that I thought we were on the right side of the issue and would raise it in our forthcoming motions.

On August 20, Judge Sagar found that "The 9 Photographers Are Not Plaintiff's Managing Agents and Must Be Served Subpoena Notices through FRCP Rule 45." She explicitly held that "Defendant's motion to compel Plaintiff to produce the nine photographers for deposition is denied." You had 14 days from the date of that Order to seek reconsideration under LR 7. You had 14 days from the date of that Order to object to that Order and seek Judge Hsu's review under LR 72 and Fed. R. Civ. P. 72. You did neither within that time, and you did not address that today. If you nonetheless renew your already-decided motion, we will seek sanctions, including potentially Rule 11 sanctions. Please reconsider doing so.

(d) <u>Objections-Only as to RFPs 2, RFAs 2, and Rogs 3</u>.  August's Obviously-Deficient, Objections-Only Responses to the Entirety of Defendant's RFPs 2, RFAs 2 and Rogs 3.

- I'll note that in the attached email chain from yesterday, Ben is taking the position that you are going to refuse to meet and confer on your firm's service of only objections as to defendant's set two and three discovery during today's meet and confer call.

  > Ben refused to meet and confer on this set of issues until 10/9 or 10/11.  I asked him if the plaintiff was realistically going to consider supplementing, or if the plan was simply to try and run out the clock and argue the defendant should have propounded the requests sooner.  Ben refused to say on today's call, refused to meet and confer on this issue tomorrow following the Internet Archive deposition, and insisted that 10/9, two days before the discovery cutoff, was the first day he could possibly make himself available to confer.

Inaccurate. I have not refused to confer at all. You sent a letter asking to confer on RFPs 2, RFAs 2, and ROGs 3 at 5 pm on Monday, while Defendant's deposition was still going. Those items were not included in what you wanted to discuss when you asked for today's meeting, and you cannot in good faith try to shoehorn them in under the false pretense of me "refusing to meet and confer." I told you that I have not yet had the time or ability to digest Defendant's letter from 5 pm on October 1, and that I am available to confer about that letter on October 9 at 4 pm or October 11 at 4 pm. You still have not confirmed which of those days/times works for you. I also already told you that I'm not available October 4, 7-8, or 10.

## (4) Final Request for Law and Evidence Relevant to Plaintiff's Cross-Motion for Summary Judgment

We have repeatedly requested that the plaintiff provide the law and evidence in plans to rely upon in connection with both defendant's motion for summary judgment, and in support of a vaguely-explained cross motion, in the correspondence below.  I'll note that apart from Stepehen's suggestion that I re-read LR 7-3, and Ben's short emails below, none of which cite any law, nor evidence, we still have yet to receive this information.  This is a final request that you please provide it in advance of the call.

Given your refusal to put any of your cards on the table, I am skeptical that it is going to be possible to have a good faith meet and confer call today in which we thoroughly discuss each issue to be raised and the law and evidence relevant to that issue, with respect to plaintiff's cross motion for summary judgment on certain issues,.  We will, however, be happy to listen to whatever you have to say.

We look forward to speaking with you at 2.

This issue was discussed in between our discussion defendant's MSJ and the briefing schedule, prior to Stephen joining the call.  With respect to plaintiff's purported cross motion to establish liability, I indicated that, in addition to the standing issue that defendant  was moving on, defendant would be disputing both ownership of a valid copyright (because, among other issues including standing problems, the plaintiff that sued does not own the copyright at issue) and copying (because, among other reasons, the photographs the defendants copied from free wallpaper websites are not exactly the same as the photographs the plaintiff claims to have rights to monetize through litigation).

Ben asked us to clarify whether we would cite to any of our affirmative defenses in opposition to plaintiff's motion for summary judgment.  I said that I did not think so, there were plenty of other reasons a plaintiff-side MSJ should be denied without getting into that, including standing, such that we might not raise these issues to oppose MSJ.  I promised we would review that issue and get back to you by Monday.

As with my repeated written requests that you provide us with the law and evidence that plaintiff will rely upon in opposing defendant's summary judgment motion, I have similarly requested that plaintiff provide the law and evidence it will rely upon in support of plaintiff's motion that Ben describes in a single paragraph in his 9/23 email near the bottom of the chain below, which cites no case or authorities.

During today's call, Ben indicated that plaintiff's motion would be based on "the screenshots we provided," "photographs" and the "registrations."

When I asked Ben to cite to any law he would rely upon, he again mentioned *Minden v John C Wiley & Sons*, and nothing else.

I do not believe that the information by the plaintiff thus far is consistent with either the letter or the spiring of Judge Hsu's standing order on summary judgment and we will reserve our rights to ask that the opposing portions of the joint brief raising these issues be stricken, to the extent they depart from the law and evidence that Ben articulated today.

Finally, there was an additional issue, discussed near the top of the call, namely whether the defendant would stipulate to a with prejudice dismissal of the claim on the Megan Thee Stallion photo, purportedly registered under No. AU2235159.  I indicated that defendant would stipulate to a dismissal of this claim with prejudice, but not to a cost waiver.  Ben said he would circulate a proposed stipulation not mentioning anything about costs and I said I would get back to him by Monday as to whether he we feel compelled to add language clarifying that defendant shall be deemed the prevailing

party on this claim, given that there is an MSJ pending, or if simply stipulating to the dismissal with prejudice and not saying anything about costs was sufficient.

I'm incorporating by reference what I stated above re: MSJs. There is no MSJ pending, the whole point of this is to streamline what the parties need to brief before any MSJ draft is exchanged.

A draft stipulation to dismiss the '5159 photo is attached. As I said earlier, if you refuse to stipulate without adding conditions, we will not agree, and we will notify the Court in our brief of your refusal to agree to a basic stipulation to streamline the case.

Best regards,
Morgan


**From:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Sent:** Wednesday, October 2, 2024 7:15 PM
**To:** Matt Trejo <matt@pstrials.com>; Morgan Pietz <morgan@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial

Matt,

I'm responding to your email about MSJs in this chain, i.e., the chain your firm started regarding MSJs. Please see the below correspondence and the correspondence we exchanged last week.

You know the basis of August's motion, it is not complicated. We haven't gotten an answer from you confirming exactly which asserted affirmative defenses to liability Defendant genuinely intends to pursue, as we requested of you last week. The parties will be briefing standing, so aside from standing if you genuinely contend there are "serious issues" as to ownership of valid copyrights and copying you'll need to address what those issues are tomorrow. We'll also need to know, as requested last week, whether you will stipulate to the dismissal of AU2235159 from the case so the parties do not have to address that photograph and briefing is more streamlined. If you refuse to do any of the foregoing, or confer with us over our motion, we will so advise the Court in our motion.

Sincerely,
Ben

Benjamin F. Tookey (he/him)
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
(310) 590-1820
btookey@donigerlawfirm.com

**From:** Stephen Doniger <stephen@donigerlawfirm.com>
**Sent:** Friday, September 27, 2024 5:06 PM
**To:** Jessica Martinez <jessica@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Cc:** Matt Trejo <matt@pstrials.com>; Morgan Pietz <morgan@pstrials.com>
**Subject:** RE: August Image v. Line Financial

Morgan,

Earlier this week you took the absurd position that you were not going to produce your client for deposition until we first convinced you that we had standing. Now you are taking the absurd position that you are not going to meet and confer over our summary judgment motion unless we first provide you with authorities and facts supporting our entitlement to an adjudication in our favor? This is getting tiring and will not be well taken by the Court.

I suggest you review Local Rule 7-3 which provides that "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." It does not provide that a party may refuse to meet and confer unless the other party first provides "any authorities or material facts you will rely upon to oppose summary judgment on standing at least 24 hours before our meet and confer conference" as requested in your letter. Your request is therefore denied. If you refuse to confer with us we will so advise the Court in our motion.

With regard to your other requests, we will consider them and discuss them at our meet and confer call. At that time, please be prepared to discuss with specificity what steps you have taken to serve deposition subpoenas on each photographer, how, through who, on what dates, and to what result.

Thank you,

Stephen M. Doniger, Esq.
**DONIGER / BURROUGHS**
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

 Book time to meet with me




---

**From:** Jessica Martinez <jessica@pstrials.com>
**Sent:** Friday, September 27, 2024 4:36 PM
**To:** Stephen Doniger <stephen@donigerlawfirm.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>

**Cc:** Matt Trejo <matt@pstrials.com>; Morgan Pietz <morgan@pstrials.com>
**Subject:** August Image v. Line Financial

Counsel,

Please see the attached meet and confer letter sent on behalf of Morgan Pietz.

Jessica Martinez
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Jessica@pstrials.com
Tel: (310) 424-5557

This transmission is from a law firm and may contain information that is privileged, confidential, and protected by the attorney-client or attorney work product privileges.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.  If you have received this transmission in error, please destroy it and notify us immediately at the telephone number above.

**From:** Morgan Pietz
**Sent:** Wednesday, September 25, 2024 3:35 PM
**To:** Stephen Doniger stephen@donigerlawfirm.com; Matt Trejo matt@pstrials.com; Benjamin Tookey btookey@donigerlawfirm.com; Julie Goerlinger julie@pstrials.com; Jessica Martinez jessica@pstrials.com
**Cc:** London Zamora lzamora@donigerlawfirm.com
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

I'll take that as a 'no' then.  Thanks for clarifying your position.

Best regards,
Morgan

**From:** Stephen Doniger <stephen@donigerlawfirm.com>
**Sent:** Wednesday, September 25, 2024 3:34 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Matt Trejo <matt@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Morgan,

If you think you have grounds for a protective order from the deposition moving forward, bring that motion. Otherwise as long as this case is in the discovery phase we have a right to depose your client

an will plan to move forward with that deposition on 10/1 without any other statement of our position on any collateral matter as a precondition.

Stephen M. Doniger, Esq.
**DONIGER / BURROUGHS**
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

☐ Book time to meet with me



**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, September 25, 2024 3:27 PM
**To:** Stephen Doniger <stephen@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Will you be getting back to us with a statement of the plaintiff's position on standing my mid-day Friday or not?

If so, I'll set aside time on Friday afternoon to review whatever you send and plan to get back to you with an answer about whether the deposition will move ahead or not by Friday evening.

However, at present, I cannot imagine what basis the plaintiff has to oppose the dismissal of this suit for lack of standing.

Best regards,
Morgan

**From:** Stephen Doniger <stephen@donigerlawfirm.com>
**Sent:** Wednesday, September 25, 2024 3:22 PM
**To:** Morgan Pietz <morgan@pstrials.com>; Matt Trejo <matt@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Morgan,

You previously agreed to produce your client for deposition on October 1. We will be moving forward with that deposition. Again, if your client does not appear we will bring an ex parte to compel its attendance, seek sanctions, and/or move to exclude Line from offering a witness to testify at trial.

Thank you,

Stephen M. Doniger, Esq.
**DONIGER / BURROUGHS**
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

☐   Book time to meet with me



**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, September 25, 2024 3:18 PM
**To:** Stephen Doniger <stephen@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Steve,

If the plaintiff lacks standing to sue, yes, I do believe it is potentially proper to put a hold on my client's deposition on dozens of topics, all of which  have nothing to do with that issue.   *See* FRCP 1, 26, 37, 42.

Moreover, we *have* raised the standing issue—formally, via a 6-page, single-spaced letter citing multiple binding authorities and seeking to confer with you on defendant's forthcoming motion for summary judgment on that precise issue, which we sent you on Monday 9/23.

Since then, apart from Ben noting that the plaintiff intends to file some kind of cross-motion for summary judgment of its own  (the parameters of which have been explained in only the vaguest of terms; Ben's email cites no cases and identifies no purportedly undisputed facts), your office has yet to respond on the merits of the standing issue.

Please get back us with at least a basic statement of your client's position on standing by mid-day on Friday, and, after you do so, we will evaluate appropriate next steps with respect to outstanding discovery and/or further motion practice.

I'll note that we would have preferred to raise this issue sooner, but we couldn't, because: (1) someone—presumably the plaintiff—back-dated the Addenda to make it look like they were signed before they were dated; (2) the Addenda were not included in your client's initional document production; (3) we asked Ben to provide us the dates when the Addenda were executed, informally, in connection with an IDC, but he refused to do so; (4) thus, we had to serve formal written discovery investigating the back-dating issue, which the plaintiff then waited a full 30-days to respond to, and another week to verify, such that we only received the dates the Addenda were executed last Friday 9/20.

Best regards,
Morgan

**From:** Stephen Doniger <stephen@donigerlawfirm.com>
**Sent:** Wednesday, September 25, 2024 2:46 PM
**To:** Matt Trejo <matt@pstrials.com>; Benjamin Tookey <btookey@donigerlawfirm.com>; Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Matt,

Do you actually believe it is proper to "demand" that the deposition of your client "be continued until [August] has provided authority as to why the case shouldn't be dismissed for lack of standing"?  That is absurd. If you think you have a defense you are, of course, free to assert it but you are not entitled to refuse to participate in discovery until we establish to your satisfaction that your putative defense fails.

Discovery closes October 11 and it is clear that you have been doing everything possible to avoid your clients being deposed—undoubtedly because you know their testimony will establish their abject willfulness in this case. You made clear they are available October 1 and will not agree to continue that deposition again. If your client does not appear we will bring an ex parte to compel its attendance, seek sanctions, and/or move to exclude Line from offering a witness to testify at trial.

Stephen M. Doniger, Esq.
**DONIGER / BURROUGHS**
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

Book time to meet with me



**From:** Matt Trejo <matt@pstrials.com>
**Sent:** Wednesday, September 25, 2024 2:27 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Morgan Pietz <morgan@pstrials.com>; Julie Goerlinger <julie@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Ben,

We are available for the meet and confer call on October 3 at 2 PM. We will send a Zoom link. Please provide facts and/or authorities you intend to raise in opposing defendant's motion at least 24 hours in advance of the conference so that we can have a meaningful discussion.

We are amendable to stipulating to a briefing schedule (*i.e.*, due dates). But we will not stipulate to any differentiations to Judge Hsu's MSJ standing order beyond the dates when the parties' respective filings are due.

There is no doubt that we are the moving party, as we served you with a meet and confer letter indicating we intended to move for summary judgment. It was not until after this letter was sent that you sent your correspondence about your contemplated motion, which was not an adequate meet and confer to begin with.

In addition, we will not stipulate to anything else you prosed in the below email. Your client has the burden of proof to prove ownership of a valid copyright and copying. We believe your client has serious issues with their ability to prove these elements.

Givin the significant standing issues, we are skeptical how August has grounds to even bring such a cross-motion. If you insist on bringing such a cross-motion, we intend to follow judge Hsu's standing order re MSJs.

Moreover, in view of the substantial issues with standing and proving liability and the fact that we made a Rule 68 offer of $30,000 that was rejected, are you sure you want to proceed with deposing my client, as these are fees your client is likely to be ordered to pay. We are demanding that the deposition of our client be continued until your client has provided authority as to why the case shouldn't be dismissed for lack of standing.

Matt

**From:** Benjamin Tookey btookey@donigerlawfirm.com
**Sent:** Monday, September 23, 2024 6:11 PM
**To:** Matt Trejo matt@pstrials.com; Morgan Pietz morgan@pstrials.com; Julie Goerlinger julie@pstrials.com; Jessica Martinez jessica@pstrials.com

19

**Cc:** Stephen Doniger stephen@donigerlawfirm.com; London Zamora lzamora@donigerlawfirm.com
**Subject:** RE: August Image v. Line Financial - Meet and Confer re MSJ

Matt,

We confirm receipt of your letter.

We intend to move for summary judgment on Defendant's liability for copyright infringement because we believe there is no genuine dispute of material fact as to the prima facie elements (i.e., ownership of valid copyrights and copying). There is no genuine dispute that the photographs are original and registered, Defendant displayed copies of the photographs on its website and social media page, and Defendant has no meritorious affirmative defenses to liability. As you know from Judge Hsu's MSJ Order, joint briefs are required, and multiple joint briefs as well as cross motions on the same legal issues are disfavored. Accordingly, we propose the following to streamline briefing:

- The parties file one joint motion on which Defendant will be the movant. Defendant stipulates that, other than standing, the elements of ownership and copying are conclusively established, and that, other than challenging standing, Defendant does not intend to pursue any affirmative defenses to liability. This would eliminate the need for a majority of August's motion, which would in turn allow for a single brief (and statement of facts) focusing just on standing and willfulness. Because Defendant is the movant, Defendant gets a 10-page reply. However, because liability is ultimately August's burden to prove, and because August would be compromising in agreeing to Defendant being the movant, August gets a five-page sur-reply limited to standing to be filed one week after Defendant's reply.
- August will also stipulate to the dismissal of AU2235159 from the case so the parties do not have to address that photograph.
- If Defendant will not so stipulate to streamline briefing, August will have to move forward with its contemplated motion on Defendant's liability. We'll need confirmation of exactly which asserted affirmative defenses to liability Defendant genuinely intends to pursue. The parties exchange their portions of their respective MSJs and oppositions on the same days, file them on the same day, and notice them for hearing on the same day/time.

Please advise as to your position on our proposal. We can confer on October 3.

Sincerely,
Ben

Benjamin F. Tookey (he/him)
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
(310) 590-1820
btookey@donigerlawfirm.com


**From:** Matt Trejo <matt@pstrials.com>
**Sent:** Monday, September 23, 2024 10:34 AM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora
<lzamora@donigerlawfirm.com>; Morgan Pietz <morgan@pstrials.com>; Jessica Martinez
<jessica@pstrials.com>; Julie Goerlinger <julie@pstrials.com>

**Subject:** August Image v. Line Financial - Meet and Confer re MSJ
**Importance:** High

Ben,

Please find attached Defendant's meet and confer letter regarding its contemplated motion for summary judgment or partial summary judgment under Rule 56. Please let me know some dates and times between September 25 and October 7 that you are available to discuss the issues raised in the letter.

Matt

# EXHIBIT 134

## SUBJECT OF APPLICATION TO SEAL

# EXHIBIT 135

## SUBJECT OF APPLICATION TO SEAL

# EXHIBIT 136

**2024.10.11 - August's Fifth Supp Initial Disclosures**

Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Benjamin F. Tookey (SBN 330508)
btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, | Case No. 2:23-cv-05492-WLH-AS |
| | *Hon. Wesley L. Hsu Presiding* |
| Plaintiff, | |
| | **PLAINTIFF'S FIFTH** |
| v. | **SUPPLEMENTAL RULE 26(a)(1)** |
| | **INITIAL DISCLOSURES** |
| LINE FINANCIAL, PBC, et al., | |
| | |
| Defendants. | |

Plaintiff August Image, LLC hereby makes the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

August is still in the process of compiling evidence in this matter. Accordingly, in making these disclosures, August does not represent it is identifying every document, tangible thing, or witness possibly relevant to the case, but rather that these disclosures are a good faith effort to identify all information August reasonably believes is required by Fed. R. Civ. P. 26(a)(1).

## A.     Witnesses

Other than the witnesses identified in the parties' pleadings and filings and/or represented by the parties' respective counsel of record, the following other witnesses may have relevant information, as indicated:

1.    Bill Hannigan, owner of August, reachable through counsel, regarding August's knowledge of the creation and registration of the original photographs at issue in this case (the "Subject Photographs"), August's syndication agreements with the photographers of the Subject Photographs (the "Photographers"), August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

2.    Lauren Kelly, Director of Copyright of August, reachable through counsel, regarding August's knowledge of the creation and registration of the Subject Photographs, August's syndication agreements with the Photographers, August's rights in the Subject Photographs, August's and the Subject Photographs' licensing rates and practices, the discovery and documentation of Defendant's unauthorized exploitation of the Subject Photographs, and early efforts to amicably resolve this dispute.

3.    Alexi Lubomirski, contactable to August's knowledge at 268 W. Hill Rd, Box 159, Austerlitz, NY 12017, alexilubomirski.com, and/or as set forth in AUGUST000687-89, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

4.    Andrew Eccles, contactable to August's knowledge at 4227 McLaughlin Ave PH 1, Los Angeles, CA 90066, andreweccles.com, and/or as set forth in AUGUST000690-92, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

5.    Art Streiber, contactable to August's knowledge at 2239 Camden Ave, Los Angeles, CA 90064, artstreiber.com, and/or as set forth in AUGUST000693-95,

who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

6.     Austin Hargrave, contactable to August's knowledge at 1835 N. Avenue 51, Los Angeles, CA 90042, austinhargrave.com, and/or as set forth in AUGUST000696-98, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

7.     Brian Bowen Smith, contactable to August's knowledge at 5910 Fairview Pl., Agoura Hills, CA 91301, bowensmith.com, and/or as set forth in AUGUST000699-702, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

8.     David Slijper, contactable to August's knowledge at Flat 18, The Pryors, 6 E. Heath Rd., London NW3 1BP, United Kingdom, davidslijper.com, and/or as set forth in AUGUST000703-05, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

9.     Joe Pugliese, contactable to August's knowledge at 6311 Romaine Street, #7307, Los Angeles, CA 90038, joepug.com, and/or as set forth in AUGUST000706-08, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

10.     Mark Mann, contactable to August's knowledge at 135 East 74th St, 10B, New York, NY 10021, markmannphoto.com, and/or as set forth in AUGUST000709-12, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

11.     Martin Schoeller, contactable to August's knowledge at 105 Hudson St., #2N, New York, NY 10013, martinschoeller.com, and/or as set forth in AUGUST000713-15, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

12.     Miller Mobley, contactable to August's knowledge at 41 Randolph Road, Birmingham, AL 35213, millermobley.com, and/or as set forth in AUGUST000716-18, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

13.     Shayan Asgharnia, contactable to August's knowledge at 165 N. Kenmore Ave, Apt. 4, Los Angeles, CA 90004, shayanasgharnia.com, and/or as set forth in AUGUST000719-21, who has information regarding the creation, originality, ownership, and registration of his respective Subject Photograph(s); his licensing histories and rates; and his appointment of August as the exclusive licensing agent and syndicator of his respective Subject Photograph(s).

14.     Bruno and Nicoletta Van Mossevelde, contactable to August's knowledge at First Edit SRL, Via Del Plebiscito 107, Rome, 00186, Italy, brunoandnico.com, and/or as set forth in AUGUST000781-82, who have information regarding the creation, originality, ownership, and registration of Bruno Van

Mossevelde's respective Subject Photograph(s); his licensing histories and rates; and their appointment of August as the exclusive licensing agent and syndicator of Bruno Van Mossevelde's respective Subject Photograph(s).

15.    Defendant Line Financial, PBC's Rule 30(b)(6) representative(s), contactable to August's knowledge through Defendant's counsel of record; regarding:

     a. Defendant's admissions and denials in its operative Answer;

     b. Defendant's affirmative defenses;

     c. Defendant's discovery responses;

     d. Defendant's initial disclosures;

     e. Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

     f. Defendant's access to the Subject Photographs;

     g. The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

     h. The Accused Posts and their dates of first and last display;

     i. Any/all efforts to clear use of the Subject Photographs prior to use;

     j. Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

     k. Defendant's revenues and profits earned in connection with the Accused Posts;

     l. Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

     m. Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

     n. Defendant's notice of and investigation into the infringement at issue;

o.  Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p.  Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q.  Defendant's awareness of copyright protection for photographs;

r.  Any/all communications regarding the Subject Photographs and/or Accused Posts;

s.  The web traffic and views for the Accused Posts;

t.  Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

16.  Akshay Krishnaiah, Founder and/or CEO of Defendant Line Financial, PBC, contactable to August's knowledge through Defendant's counsel of record; regarding:

a.  Defendant's admissions and denials in its operative Answer;

b.  Defendant's affirmative defenses;

c.  Defendant's discovery responses;

d.  Defendant's initial disclosures;

e.  Defendant's document production, who has undertaken searches for documents in this case, what searches were done, and how and where Defendant's records are maintained in the ordinary course of business;

f.  Defendant's access to the Subject Photographs;

g.  The creation, display, distribution, modification, and/or removal of the Accused Posts and the persons involved therewith;

h.  The Accused Posts and their dates of first and last display;

i.   Any/all efforts to clear use of the Subject Photographs prior to use;

j.   Any/all documents Defendant contends constitute permission for it to exploit the Subject Photographs;

k.   Defendant's revenues and profits earned in connection with the Accused Posts;

l.   Any/all fair uses and/or rights clearance analyses conducted prior to or as of the display of the Accused Posts;

m.  Defendant's terms of use, privacy policy, and copyright-related policies, practices, procedures, guidelines, and/or trainings regarding the display and/or distribution of third-party content on its website;

n.   Defendant's notice of and investigation into the infringement at issue;

o.   Defendant's ownership, operation, and/or control of useline.com, trybeem.com, and any/all associated social media pages, Defendant's advertising practices in connection with the same, and how Defendant generates revenues and profits in connection with the same;

p.   Defendant's experience with clearing use of photographs on its website prior to use, including all licenses Defendant has sought or obtained to use third-party photographs on its website since 2019, and all photographs of celebrities Defendants have used during the same time;

q.   Defendant's awareness of copyright protection for photographs;

r.   Any/all communications regarding the Subject Photographs and/or Accused Posts;

s.   The web traffic and views for the Accused Posts;

t.   Defendant's February 2-3, 2022 filings with the U.S. Securities & Exchange Commission.

17.   The authors of the useline.com blogs or web stories displaying the Accused Posts, who (to August's knowledge) are (or were at the time) Defendant's employee(s) and/or contractors, regarding the creation, dissemination, and

exploitation of those Posts (including access to and display of the Subject Photographs); the analytics and statistics for the Accused Posts; their work as Defendant's employee(s); their history of and experience with clearing rights in and using photos in useline.com blogs or web stories; downloading photos from google.com; actions and steps taken in response to August's notice of the alleged infringement regarding the claims asserted in this case; and Defendant's policies and practices regarding the clearance and use of copyrighted content on useline.com.

**B.    Documents**

1.    Documents reflecting August's syndication agreements with the Photographers;

2.    Documents reflecting the creation, ownership, and registration of the Subject Photographs;

3.    Documents showing the source(s) from which Defendants obtained unauthorized copies of the Subject Photographs;

4.    Documents showing the Accused Posts and the full scope of Defendants' unauthorized display and/or other exploitation of the Subject Photographs;

5.    Defendants' knowledge or awareness that the Subject Photographs were copyrighted works that required a license, authorization, or consent prior to use;

6.    Documents showing Defendants' revenue, profit, costs, and expenses earned and incurred in connection with the Accused Posts;

7.    Documents reflecting August's licensing histories and practices (including for the Subject Photographs), as well as the licensing value of the full scope of Defendant's unauthorized uses of the Subject Photographs;

8.    The discovery responses and documents produced in this case.

**C.    Damages**

August can elect to recover either actual damages and profits, or statutory damages. *See* 17 U.S.C. § 504.

With respect to actual damages and profits, August is entitled to the licensing fees it would have earned had Defendant properly licensed the Subject Photographs. The amounts of such licensing fees may be determined based on, *inter alia*, the full scope of Defendant's exploitation of the Subject Photographs, and the licensing invoices set forth in AUGUST000176-97, AUGUST000725-77, AUGUST861-68, and AUGUST001103-13. August is also entitled to Defendant's profits earned in connection with their exploitation of the Subject Photographs.

With respect to statutory damages, August is entitled to $750-$30,000 per timely registered Subject Photograph, with the higher end of the range increased to $150,000 upon a finding of willful infringement.

August will make its damages election at the appropriate time.

August will also seek its costs and attorneys' fees incurred in prosecuting this case. *See* 17 U.S.C. § 505.

**D.** **Insurance**

August does not have insurance for the claims at issue.


Date: October 11, 2024              By:    */s/ Stephen M. Doniger*
                                           Stephen M. Doniger, Esq.
                                           Benjamin F. Tookey, Esq.
                                           DONIGER / BURROUGHS
                                           *Attorneys for Plaintiff*

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 603 Rose Ave, Venice, CA 90291.

On October 11, 2024 I served the ENCLOSED documents described as:
**PLAINTIFF'S SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES;** on the following necessary part(ies) in this action:

| |
|---|
| Morgan E. Pietz |
| PIETZ & SHAHRIARI, LLP |
| 6700 S. Centinela Avenue, 2nd Floor |
| Culver City, CA 90230 |
| T: (310) 424-5557 |
| F: (310) 597-4626 |
| E: morgan@pstrials.com; |
| jessica@pstrials.com; admin@pstrials.com |
| |
| **ATTORNEY TO BE NOTICE** |

☒ by placing ☐ the original ☒a true copy thereof enclosed in sealed envelopes addressed as follows:
☒ BY ELECTRONIC MAIL (E-MAIL)
    ☒ On this date I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

EXECUTED October 11, 2024 in Venice, California.
☒ I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made.

*Benjamin F. Tookey*
Benjamin F. Tookey

# EXHIBIT 137

**2024.10.25 - M&C Ltr re Motion for Sanctions**

# Pietz & Shahriari, LLP

6700 S. Centinela Ave., Second Floor, Culver City, CA 90230
www.pstrials.com    t: (310) 424-5557    f: (310) 597-4626

Morgan E. Pietz
morgan@pstrials.com
October 25, 2024

***VIA ELECTRONIC MAIL***

Stephen M. Doniger
  stephen@donigerlawfirm.com
Benjamin F. Tookey
  btookey@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

**Re:**    ***August Image, LLV v. Line Financial, PBC*** **(C.D. Cal., No. 2:23-cv-05492-WLH-AS)**
        **Request to Confer on Line PBC's Motion for Sanctions**

Counsel,

I am writing to request a meet and confer conference, per L.R. 7-3, on defendant Line PBC's motion for sanctions.

This motion is being brought pursuant to Federal Rules of Civil Procedure, Rule 26(a)(1)(A) (required disclosures), Rule 37(c)(1) (providing for sanctions when required disclosures are not made), Rule 37(b)(2)(A)(i)-(vi) (additional specific sanctions available for failure to make required disclosures), and Rule 1 (civil litigation shall be "just, speedy, and inexpensive");  the Court's inherent power to sanction bad faith misconduct and manage its own docket (*Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (in the Ninth Circuit, "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice,"); *Minden Pictures, Inc. v. Pearson Educ.*, Inc., 929 F. Supp. 2d 962, 965 (N.D. Cal. 2013) ("*Pearson*"); and pursuant to Judge Hsu's Standing Order For Motions For Summary Judgment (ECF No. 29) at § A(1) (requiring, for summary judgment motions, that the parties "thoroughly discuss each issue to be raised and the law and evidence relevant to that issue").

Specifically, Line PBC is moving for an order that the Court:

   a. **Strike certain evidence offered by August on summary judgment and preclude August from attempting to introduce this evidence at trial**.  Specifically:

      1. All of the "**Photographer Declarations**" offered by the plaintiff in connection with summary judgment, namely the declarations purportedly from Art Streiber, Joe Pugliese, Alexi Lubomirski, Brian Bowen Smith, David Slijper, Shayan Asgharnia, Andrew Eccles, Austin Hargrave, Miller Mobley, Martin Schoeller, Bruno Van Mossevelde, and Mark Mann, the existence of which August first disclosed to Line PBC when it served copies of these declarations on October 11, 2024 at 5:31 p.m.

Request to Confer on Line PBC's Motion for Sanctions
October 25, 2024

2. <u>All of the "**Addendums**" to the Agency Agreements</u>, namely deposition Exhibit Nos.[1] 42 (Art Streiber), 45 (Joe Pugliese), 48 (Alexi Lubomirski), 51 (Brian Bowen Smith), 54 (David Slijper), 57 (Shayan Asgharnia), 60 (Andrew Eccles), 63 (Austin Hargrave), 66 (Miller Mobley), 69 (Martin Shcoeller), and 72 (Mark Mann).

3. <u>All of the "**ImageRights and PixMole Pictures**"</u> offered by the plaintiff as purported evidence of copying. This means all of the pictures captured by the ImageRights and PixMole software systems. Based on the plaintiff's deposition testimony, this specifically includes ***all of the purported screenshots*** depicted in deposition Exhibit No. 7, ***except*** for the four images found at AUGUST000587, AUGUST000589, AUGUST000591, and AUGUST000592 (*i.e.*, the ones with the blue search bar on top, which Ms. Kelly testified she captured personally).

b. <u>**Preclude the plaintiff from calling certain witnesses at trial.**</u> Specifically:

4. <u>**All of the "Photographers".**</u> Specifically, all of the photographer witnesses identified by the plaintiff in its fifth supplement initial disclosures served October 11, 2204, namely: Alexi Lubomirski, Andrew Eccles, Art Streiber, Austin Hargrave, Brian Bowen Smith, David Slijper, Joe Pugliese, Mark Mann, Martin Schoeller, Miller Mobley, Shayan Asgharnia, and Bruno & Nicoletta Van Mossevelde.

5. <u>**Any representative of ImageRights International, Inc. or Pixmole Technologies, Ltd.**</u> As you know, you identified both of these companies as potential witnesses for the plaintiff in August's third supplemental initial disclosures served September 25, 2024. However, you then deleted these entities as witness in August's fourth supplemental initial disclosures that you served late in the evening of October 3, 2024, shortly after the meet and confer videoconference on Line PBC's MSJ re: standing and motion to continue the discovery cutoff.

---

[1] Plaintiff's cross-motion for summary judgment confusingly refers to certain exhibits not by the exhibit number assigned to the document at the depositions conducted in this case, but by an exhibit numbering scheme the plaintiff invented without coordination with the defendant. We advised you in advance that we would be using deposition exhibit numbers in connection with defendant's motion for summary judgment on standing. In order to comply with Judge Hsu's standing order, we request that you update the references in your brief to refer to the versions of the agreements, addendums, and other documents that were used at the depositions, and refer to them by those deposition exhibit numbers, to avoid having conflicting exhibit numbers in the same JAE, and to avoid submitting duplicates of the same evidence. You have also ignored several requests to conduct a meet and confer call on the application to seal, and refused to provide us with highlighted proposed redactions, all as required by the Local Rules. We again request that you set a time to confer with us on these issues, as soon as possible.

Request to Confer on Line PBC's Motion for Sanctions
October 25, 2024

      c.    <u>**Preclude the plaintiff from introducing certain evidence at trial.**</u> Specifically:

          6.    <u>**The prior licenses provided for the photographers and any evidence of plaintiff's purported lost profits**</u>.  While this evidence does not appear to be at issue on summary judgment, the plaintiff should be precluded from introducing it at trial.  Specifically, all of the prior licenses produced by the plaintiff, including the redacted, high-dollar amount licenses for photos not at issue served on April 24, 2024 (AUGUST 176-197), the redacted, high-dollar amount licenses for photos not at issue served on October 7th (AUGUST 861-68), and the unredacted, low-dollar amount licenses for photos that *are* at issue served at 5:31 pm on October 11, 2024 (AUGUST 1103-1113).

      d.    <u>**Issuing an instruction that will inform the jury of August's failure to disclose evidence**</u>.  If this case gets to trial, the jury should be informed about August's failure to disclose evidence.  Fed. R. Civ. Proc., Rule 37(c)(1)(B).

      e.    <u>**Awarding Line PBC monetary sanctions.**</u>  In addition to seeking reimbursement of all of its costs and attorneys' fees incurred attempting to remedy the issues stated above, Line PBC will also seek reimbursement for the plaintiff serving a 30(b)(6) deposition notice on Line PBC with 103 topics, and then asking about only six of them.  Fed. R. Civ. Proc., Rule 37(c)(1)(A).

Please provide some times next week when you are available to meet and confer on this motion, and on the other issues mentioned in the footnote above.  Please note that we will be filing this motion by Friday November 8, 2024, so you will need to confer with us by next Friday November 1st at the latest.

Best regards,

DATED: October 25, 2024        BY: *<u>/s/ Morgan E. Pietz</u>*
                              PIETZ & SHAHRIARI, LLP

                              *Attorneys for defendant Line Financial, PBC*

Enclosures:    n/a

Cc(s):        Matthew Trejo (matt@pstrials.com)

# EXHIBIT 138

**2024.11.07 - M&C Emails re Mtn for Sanctions**

**Morgan Pietz**

---

| | |
|---|---|
| **From:** | Stephen Doniger <stephen@donigerlawfirm.com> |
| **Sent:** | Thursday, November 7, 2024 2:56 PM |
| **To:** | Morgan Pietz; Benjamin Tookey; Matt Trejo; Jessica Martinez |
| **Cc:** | London Zamora |
| **Subject:** | RE: August Image v. Line Financial - 10.29.24 Call Recap |

Morgan,

It depends. If you put something at issue that reasonably requires rebuttal testimony I see no reason we would waive the right to offer such testimony, particularly if that issue is outside of what your client sought discovery on. We thus cannot give you a categorical "yes" or "no."

*Stephen M. Doniger, Esq.*
**DONIGER / BURROUGHS**
603 ROSE AVENUE
VENICE, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

Book time to meet with me



---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Thursday, November 7, 2024 2:38 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Counsel,

Following up again.  Could you please provide me with the courtesy of a response to my inquiry below, so I know whether this issue will need to be addressed in the sanctions motion or not?

Best regards,
Morgan

---

**From:** Morgan Pietz
**Sent:** Wednesday, November 6, 2024 1:04 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez

<jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Pardon, I meant, are you seeking to reserve your right to call ImageRights and Pixmole *as witnesses,* in rebuttal.  Yes or no?

---

**From:** Morgan Pietz
**Sent:** Wednesday, November 6, 2024 12:58 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Hi Ben,

With respect to point 1 in the email below, please advise today, so we can address this issue in the sanctions motion (or not): are you saying you are reserving your right to try and use ImageRights and PixMole Pictures as rebuttal evidence -- yes or no?

Best regards,
Morgan

---

**From:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Sent:** Wednesday, October 30, 2024 11:23 AM
**To:** Morgan Pietz <morgan@pstrials.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Morgan,

1. Correcting your firm's inaccurate confirmatory email is not backtracking.
2. You did not remove Lubomirski's percentage, please correct that. The footnote is fine. You need to remove the same things from your JAF.
3. Matt and I already discussed this, which you were not present for, and as already agreed we will be providing you with what you have asked us to update by Thursday. Because we are going with your proposal at your request, and you have put the lion's share of adjustments on our shoulders, you will then need to make your own citation-only adjustments on Friday when you integrate the briefs, JAFs, and JAE, and then send them to us that same day—and of course you have no authority to make any substantive changes. The notice and legal standard sections are fine.

Ben

---

**From:** Morgan Pietz <morgan@pstrials.com>
**Sent:** Wednesday, October 30, 2024 10:41 AM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>; Matt Trejo <matt@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Ben,

My response to your three points below:

1. We did discuss impeachment, I was there for that, in fact I read aloud that part of Rule 26(a), and you clarified that you were not planning to call ImageRights or PixMole witnesses for any purposes, including "solely for impeachment" (words that came out of my mouth) so we agreed to drop that issue from the sanctions motion. If you are now backtracking on that representation, we will add that issue back into the sanctions motion. Which would be too bad, because I thought we had succeeded in narrowing at least one issue. Please clarify.

2. OK, thanks re application to seal. Please confirm that the addition of brackets where the percentages used to be, plus the related footnote, in the combined joint brief that Matt circulated yesterday evening fully resolve any need to seal the joint brief itself. We'll turn around a revised application to seal to you today. We are happy to file it, once it has been expanded to address all of the information you are insisting needs be sealed in connection with both motions.

3. Understood that you would like to exchange oppositions tomorrow as stipulated. I think Matt's suggestion of pushing the exchange to Friday 11/1 was designed to give you some more time to get us a version of your brief and supporting papers that updates the JAF numbers and JAE  numbers as agreed yesterday (so that there will not be any duplicate numbers or evidence). If you would like to have a finalized opposition by tomorrow, then you will need to **please provide us with the following by 4 pm today:**
   a. An updated version of the joint word brief we circulated yesterday, updated to use your new JAF numbers;
   b. An updated JAF, which uses the agreed exhibit numbering scheme;
   c. An updated JAE, which updates the exhibits as agreed (notably getting rid of non-deposition exhibits, and citing to the deposition version included in our JAE, where available).

   If you will not be able to get all of that to us today, then we will still plan to provide you with our opposition tomorrow, however, it will necessarily not be final, because it will not contain the updated JAF and JAE numbering that you still need to provide to us, and which we need to respond to. Thus, I think it may be helpful to spend some time on Friday 11/1 making sure that all of the JAF and JAE numbering that is changing has been done correctly. Finally, I'll note that nothing substantive should be changing at this point (except as expressly agreed, such as with respect to the notice of motion or legal standard sections). The only things that should be changing in the parts of the brief and supporting that are already written are numbers used to identify the relevant JAF, JAE, or exhibit. That is, the pieces of evidence cited, or the relevant parts of the pieces of evidence pin cited to, should not be changing, just the numbering scheme, as agreed.

   Please let us know if we should expect to receive those a,b,c, materials today.

Best regards,
Morgan

---

**From:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Sent:** Wednesday, October 30, 2024 10:03 AM
**To:** Matt Trejo <matt@pstrials.com>; Morgan Pietz <morgan@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>
**Subject:** RE: August Image v. Line Financial - 10.29.24 Call Recap

Thanks, Matt. My handful of corrections/responses are below:
1. I said that, as we previously stated, we do not intend to call ImageRights or Pixmole at trial. The "and would not be using them for impeachment" addition below was not discussed.

2. A word version of the app to seal we sent a couple weeks ago is attached. This is for the summary judgment papers and we discussed you adding whichever confidential-marked documents you're introducing in your opposition. You'll need to do your own separate application for your Rule 37 motion, we will not be filing that one for you.

3. We do not agree to push the opposition brief exchange date back, that will remain October 31 as stipulated to.

Sincerely,
Ben

**From:** Matt Trejo <matt@pstrials.com>
**Sent:** Tuesday, October 29, 2024 6:51 PM
**To:** Benjamin Tookey <btookey@donigerlawfirm.com>
**Cc:** Stephen Doniger <stephen@donigerlawfirm.com>; London Zamora <lzamora@donigerlawfirm.com>; Morgan Pietz <morgan@pstrials.com>; Jessica Martinez <jessica@pstrials.com>
**Subject:** August Image v. Line Financial - 10.29.24 Call Recap

Ben,

Thanks for taking the time to speak with us today. Here is a recap of what was discussed and agreed to on our call:

1. **Defendant's Motion for Sanctions (Ben, Morgan and Matt present)**
   - Defendant will bring its motion for sanctions on all the grounds and issues raised in its meet and confer letter dated October 25, 2024, which were discussed on the call.
   - Defendant will not be moving for sanctions with respect to issue 5b in its meet and confer letter, because plaintiff represented it would not be calling ImageRights or PixMole at trial and would not be using them for impeachment.
   - Since December 6 (motion cut-off) is closed on the court's calendar, Defendant will notice the motion for December 13, the same day that the parties' respective MSJs are set to be heard.
   - Plaintiff agreed to stipulate to the filing of the motion for sanctions on December 13 (and corresponding briefing schedule). We will circulate a stipulation tomorrow to be filed concurrently with the application to seal.

2. **Application to Seal (Ben, Morgan and Matt present)**
   - Plaintiff will send a Word version of its application to seal to Defendant by tomorrow morning.
   - Defendant will then add documents that it intends to file under seal with its respective sanctions motion and send to plaintiff.
   - Plaintiff will then add any arguments it needs to and file the application by tomorrow.

3. **Joint Brief Formatting (Ben and Matt present)**
   - The parties will submit one joint JAF. Plaintiff will renumber its JAFs to begin with 100. Plaintiff is assigned JAFs 100 plus. Defendant is assigned JAFs 1-99.
   - The parties will submit one joint JAE. The parties will use the same exhibit numbers as the deposition exhibit numbers. Deposition exhibit numbers are 1-105. For the Exhibits used

by the parties that were not used in depositions, plaintiff is assigned Exhibit Nos. 200 plus. Defendant is assigned Exhibit Nos. 106-199.

- Plaintiff will renumber its Brief, JAF and JAE accordingly, and circulate to defendant by October 31.
- The parties agreed that no changes would be made to the briefs besides the updated JAF and Exhibit numbering and other minor changes that may need to be made to effectuate the changes to the numbering, such as having a different date on your client's declaration since it will need to be resigned by them after the Exhibit numbers have been updated.
- The parties do not need to include table of authorities and contents. This will be added by Defendant at the end prior to filing.

Please feel free to comment on anything that does not reflect your understanding as to what was agreed to.

Although not expressly agreed to on the call, I indicated that the opposition brief exchange date might need to be pushed back to November 1 given above adjustments to the JAF and JAE which will affect Defendant's citations in its opposition. Instead of leaving it uncertain, let's just agree that the new opposition exchange date for both parties is November 1.

Finally, I think it is easier for formatting purposes if we had a "master brief" which includes both parties' respective motions that the parties can work from.

Please find attached a joint brief that combines our opening MSJ brief with the plaintiff's opening cross-motion brief.

Please note that I revised the notice of motion sections to reflect the new hearing date and time.  And, I also used our Legal Standard section, which actually cited most of the same cases as the plaintiff's, but I borrowed two cases, and combined it all to fit on one page, so we won't have competing legal standard sections.  As part of combining the briefs, the second level of plaintiff's outline numbering scheme was switched from uppercase to lowercase letters, but the section numbering otherwise remains intact.  I also added joint caption info and signature blocks.  Otherwise, the substance of the attached tracks with both parties' respective word versions.

If both parties can work from this same template, it will greatly simplify the process of preparing the combined brief that lies before us on Friday and Monday.

Matt

# EXHIBIT 139

**SDNY Defendants Letter**



MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

August 24, 2023

**VIA ECF**

The Honorable Valerie Caproni
Thurgood Marshall
United States Courthouse
40 Foley Street, Courtroom 443
New York, New York 10007

Re:     **August Image LLC; et al. v. Girard Entertainment & Media, LLC, et al.; 1:23-cv-1492-VEC**

Dear Judge Caproni:

This firm represents defendant Girard Entertainment & Media, LLC and Keith Girard ("Girard") in connection with the above captioned action. We write briefly to preview certain concerns with Tuesday's submission (ECF No. 31), request time at tomorrow's hearing to further discuss the order to show cause presently under consideration, and address an unrelated allegation in plaintiffs' submission.

As a threshold matter, the short affidavit of Mr. Seliger's assistant is no substitute for sworn testimony of counsel. Rather, it seeks to pass the buck to the client's assistant: a sophisticated party who undoubtedly knows what a license is and is not. Notably omitted is any reference to her checking with Seliger that these four proposals were actually completed and paid. The affidavit also fails to mention any additional correspondence with counsel, even though we followed up with counsel on multiple occasions regarding the completeness of the four purported licenses. The referenced summary was not produced and never identified to us prior to reading about it this week in the affidavit. The affidavit even seems to suggest that nothing further was disclosed because Seliger's authorized agent believed that court-ordered documents involving US parties are protected by an EU privacy regulation, the GDPR. Nobody mentioned anything about this issue, which appears to be concocted as a weak excuse in any event.

What the affidavit does admit is that everyone on the plaintiffs' side knew at the time of filing that August Image has no standing to sue because it was not the authorized licensor at the time the image at issue was used. Trunk Archive was, although it has no standing for other reasons. Knowing that the wrong party had sued certainly would have been relevant to settlement leverage. As noted below, it also dramatically impacted Girard's—and the mediator's— perceived value of the case.

Further, as we can explain tomorrow as the Court wishes, I made numerous efforts to try to get the key documents. As part of our diligence, I even offered a document from our side in exchange for another that Mr. Doniger's associate agreed to provide. After I did so, it then took three months (up to the eve of the mediation) to get this document. The delay makes sense given

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone: (212) 509-3900 Fax: (212) 509-7239 Website: WWW.MSK.COM

15733490.1



that this document indicates that Seliger created the photograph on a for-hire basis, thus confirming Seliger has no standing. These efforts also included my following up repeatedly on the accuracy of the purported licenses. Given the length of the detail, we will relay it to the Court tomorrow as it wishes to hear it. Mr. Doniger is silent on this important point.

Counsel's reflexive election to try to equate the time, energy, and effort spent on a fruitless mediation—premised on false information, which informed the drafting of the statements and the discussions—to the timing of the filing of a notice of appearance is inappropriate and non-responsive. *See* ECF No. 31, at 1 & footnote a. It is yet another characteristic potshot that also suggests that counsel does not appreciate the seriousness of his error regarding compliance with the Court's order.

Suffice it to say that had the real licenses been provided timely not to mention before the mediation rather than a *full week afterward*, the parties would not have wasted time discussing the relevance of the two high-priced commercial licenses that were represented to us as consummated but in fact were not. The parties would have focused on a much lower monetary ceiling. They might also have explored how the images were used—without license—commercially by a production studio that purportedly licensed the image to the licensing agency that sublicensed the image to Girard. And there is the standing issue noted above. Simply put, had all documents been provided as required and promised sufficiently and in advance of the mediation, the discussion would have centered on what Mr. Seliger and August Image were going to pay to Girard to make things right. This is a far cry from overlooking a notice of appearance for very explainable reasons, which were due to plaintiff's counsel's tactics.

Counsel's allegation fails to note that he reached out on February 28, 2023 regarding service, and I indicated shortly thereafter that we would waive service. But then, on April 11, counsel's paralegal informed me that they had proceeded to effectuate personal service on March 28, with answers due the following week (notwithstanding the Court's stay pending mediation). When I asked my client about the service, he said he did not mention it because he understood that he had already waived service weeks earlier: an understandable view from the owner of a very small online publishing business. Of course, once we learned what was going on and opposing counsel flagged the issue, we immediately addressed it. In contrast, our firm's repeated flagging of the issue of the licenses was met with obfuscation and resistance, despite there being every opportunity to avoid the time and cost, as well as time that the mediator could have been spent on true issues that likely would have led to a dismissal of the case.[1]

We look forward to appearing before Your Honor tomorrow.

---

[1] We note that this sort of meritless use of court procedures by the Doniger/Burroughs firm resulted in sanctions of $22,073.22 issued last week by Magistrate Judge Wang. *White v. UMG Recordings, Inc.*, 20-cv-9971 (AT) (OTW), ECF No. 204 (S.D.N.Y. Aug. 14, 2023).



The Honorable Valerie Caproni
August 24, 2023
Page 3

Respectfully submitted,

Eleanor M. Lackman

cc:     All counsel of record (via ECF)

# EXHIBIT 140

**SDNY Order re Sanctions**

Case 2:23-cv-05429-WSC-RTC Document 48 Filed 08/04/24 Page 263 of 296 Page
Case 1:23-cv-01492-VEC Document 47 Filed 04/01/24 Page 1 of 6 Page
ID #:1997

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/01/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
AUGUST IMAGE, LLC and MARK SELIGER,    :
    :
                       Plaintiffs,    :
    :
        -against-    :          23-CV-1492 (VEC)
    :
GIRARD ENTERTAINMENT & MEDIA LLC    :      OPINION & ORDER
and KEITH GIRARD,    :
    :
    :
                   Defendants.    :
----------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Photographer Mark Seliger and his agency August Image, LLC, sued Defendants, who

own and operate news sites, for an alleged copyright violation stemming from the publication of

an article depicting an Instagram post that featured a photograph of the cast of Friends taken by

Mr. Seliger.  Am. Compl., Dkt. 11.  On June 16, 2023, the Court ordered Plaintiffs' counsel to

show cause why they should not be sanctioned for failing to comply with the Court's Mediation

Referral Order.  Order, Dkt. 25.  On September 22, 2023, Defendants moved for judgment on the

pleadings, and Plaintiffs opposed the motion.  Defs. Mem., Dkt. 41; Pls. Opp., Dkt. 44.   For the

following reasons, the motion for judgment on the pleadings is GRANTED, the Court declines to

impose sanctions, and the case is DISMISSED without leave to amend.

## BACKGROUND

       As relevant to this motion, in 1995 Mr. Seliger took a photograph of the cast of Friends

(the "Photograph") as part of an editorial photoshoot; the Photograph subsequently appeared on

the cover of the May 1995 issue of *Rolling Stone Magazine*.[1]  Am. Compl. ¶ 10.  Mr. Seliger

---

[1]    *See 1995 Rolling Stone Covers*, Rolling Stone (May 12, 2004), https://perma.cc/2C4K-4HZY.

owns the Photograph's copyright but contractually authorized August Image, LLC to sue for copyright infringement of the Photograph. *Id*. ¶¶ 10–11.

Defendants own and control the website thenyindependent.com (the "Website"). *Id*. ¶ 8. David Schwimmer, a cast member of Friends, used the Photograph in an Instagram Post (the "Post"). *Id*. ¶ 15. Defendants, in turn, used a screenshot of the Post to illustrate an article (the "Article") titled: "Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show?"[2] *See* Keith Girard, *Can Friends Reboot Count on Aging Fans to Rekindle Love of TV Show?*, N.Y. Indep. (Feb. 24, 2020), https://perma.cc/UG57-GDEL (hereinafter "Girard Article").[3] The caption of the screenshot was: "It's happening."[4] Am. Compl. ¶ 15. .



_____

[2]        Although the Amended Complaint does not include a full copy of the allegedly infringing Article, it includes photos from and a link to the Article, which is the subject of the complaint. Am. Compl., Dkt. 11 ¶ 15. Accordingly, the Court finds that the Amended Complaint incorporates the Article by reference and considers the full Article for the purposes of deciding the motion for judgment on the pleading. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).

[3]        Plaintiffs also include a link to a page of the New York Independent that ends in .jpg. Am. Compl. ¶ 15. That page appears to have since been removed from the Website. As Defendants explain, and Plaintiffs do not dispute, this second link does not represent a separate post of the Photograph but was instead an artifact of the code used to link to the Post. *See* Defs. Mem., Dkt. 34 at 4 n.3 (citing *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1063–65 (9th Cir. 2023) (explaining process for embedding)).

[4]        As of this Opinion, the version of the Article available online appears without the Photograph. Defendants do not dispute that, as of the filing of the complaint, the Article depicted the Post, and therefore, the Photograph.

The Article stated, "Schwimmer, who played Ross, confirmed in an Instagram post that the cast had agreed on a 'Friends' special." *See* Girard Article.

On February 22, 2023, Plaintiffs sued for copyright infringement. Compl., Dkt. 1. On February 23, 2023, the Court referred the parties to mediation and ordered Plaintiffs to produce to Defendants in advance of mediation "copies of records sufficient to show the royalty paid the last three times the [Photograph] was licensed, as well as the number of times the picture was licensed in the last five years . . . ." Order, Dkt. 8 at 2. On February 24, 2023, Plaintiffs amended the complaint. Am. Compl., Dkt. 11.

On June 16, 2023, following a joint report form the parties in which Defendants stated that Plaintiffs' counsel had failed to comply with the terms of the mediation referral order, *see* Letter, Dkt. 23 at 3, the Court ordered Plaintiffs' counsel to show cause why they should not be sanctioned, Order, Dkt. 25. On August 25, 2023, the parties appeared before the Undersigned for an initial pretrial conference, at which the Court took under advisement the order to show cause why sanctions should not be imposed. Order, Dkt. 33.

## DISCUSSION

### I. The Motion for Judgment on the Pleadings Is Granted

#### A. Standard of Review

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citation omitted). The Court must "accept all factual

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (cleaned up). In adjudicating a Rule 12(c) motion, the court examines "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation omitted).

## B. Fair Use

Defendants argue that the Article's use of the Photograph constituted fair use.[5] *See* Defs. Mem. at 15. "The fair use doctrine is a statutory exception to copyright infringement." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006). As codified in the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting. . . is not an infringement of copyright." 17 U.S.C. § 107. To determine whether a particular use is fair use, courts engage in a case-by-case evaluation using four statutory factors and considering the purposes of copyright.[6] *Bill Graham*, 448 F.3d at 608. Those factors are:

---

[5]     Defendants also argue that Plaintiffs fail adequately to plead that August Image, LLC has standing because it is only a licensing agent. *See* Defs. Mem. at 10. At this stage, the Court credits Plaintiffs' claim that Mr. Seliger retained ownership rights to the Photograph, which is sufficient to allege that he has standing to sue. *See* Am. Compl. ¶ 10; *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 276 (S.D.N.Y. 2014) (noting that the Copyright Act authorizes "owners of copyrights" to sue under that statute). Because the Court dismisses this case, and "at least some [plaintiffs] have Article III standing," that is enough "to satisfy Article III;" accordingly, the Court need not decide whether August Image, LLC, has standing. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2555 (2019).

[6]     Fair use is a "mixed question of law and fact," *Cariou v. Prince*, 714 F.3d 694, 704 (2d Cir. 2013), necessitating "an open-ended and context-sensitive inquiry," *id.* at 705. For that reason, courts generally wait until the summary judgement phase to address fair use, but dismissal of a copyright infringement claim is warranted where fair use is clearly established on the face of the complaint. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016). Cases such as this, in which transformativeness can be determined by doing a side-by-side comparison of the original work and the secondary use, are particularly appropriate for early disposition. *Donald Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017) (describing transformativeness as whether "the allegedly offending use of the original work . . . alters the first work with new expression, meaning, or message" (cleaned up)).

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  Although a court must weigh all the factors, the first — particularly whether the use is "transformative" — is most important and "has a significant impact on the remainder of the fair use inquiry."  *Donald Graham v. Prince*, 265 F. Supp. 3d 366, 380 (S.D.N.Y. 2017).

## C.  Application of Factors

### 1.  Purpose and Character of the Use

The purpose and character of the use sits at "[t]he heart of the fair use inquiry."  *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  It includes two considerations: "the transformative nature of the work," and whether the "use is of a commercial nature or is for nonprofit educational purposes."  *Bill Graham*, 448 F.3d at 608 (quoting 17 U.S.C. § 107(1)).  "The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

### (i)  Transformative Use

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts."  *Baraban v. Time Warner, Inc.*, 2000 WL 358375, at *2 (S.D.N.Y. Apr. 6, 2000) (citing *Campbell*, 510 U.S. at 579).  To determine whether the secondary use is transformative, "[t]he question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression,

5

meaning, or message." *Bill Graham*, 448 F.3d at 608 (quotation omitted); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015) ("[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge."). A secondary use "can be transformative in function or purpose without altering or actually adding to the original work." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (quotation omitted).

In cases involving news about celebrities, courts have held that publishing a copyrighted photograph included in a social media post is transformative when the purpose is to report or comment on the post, which is "itself the subject of the story." *Barcroft Media, Ltd. v. Coed Media Grp.*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) ("Display of a copyrighted image or video may be transformative where the use serves to illustrate . . . a news story *about* that work."); *see also Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (same). Such inclusion is transformative because it goes beyond merely displaying the photograph "for the precise reason it was created." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 407 (S.D.N.Y. 2016) (holding that a photograph of a celebrity could not be used solely to depict or report on that celebrity).

*Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570 (S.D.N.Y. 2020), considered the use of a copyrighted photograph of musician Cardi B taken at a Tom Ford Fashion Show. An online article about the collaboration between Tom Ford and Cardi B to sell lipstick used three Instagram posts as illustrations. *Id*. at 577. One of those posts showed the copyrighted photograph of Cardi B next to a photograph of Tom Ford lipstick under the headline: "Cardi B's Tom Ford Lipstick has already SOLD OUT!!!" *Id*. at 578. The Court held that use was

transformative; "Defendant published the Post, which incidentally contained the Photograph, because . . . the fact that Cardi B had disseminated the Post [] was the very thing the Article was reporting on." *Id*. at 582.

As in *Walsh*, the Article's focus was on the fact that Schwimmer's Instagram Post of the Photograph with the caption "It's happening[]" suggested that the popular sitcom would return; the inclusion of the Photograph was incidental. Am. Compl. ¶ 15. That purpose is wholly distinct from the purpose for which the Photograph was taken, which was to depict the cast of Friends. Although Plaintiffs argue that the Article never directly discussed the Photograph, *see* Pls. Opp. at 17, a secondary use need not "comment[] on the Photo *per se*" to be transformative. *Marano v. Met. Museum of Art*, 472 F. Supp. 3d 76, 85 (S.D.N.Y. 2020) (holding that inclusion of photograph in museum's online catalogue was fair use). What indicates a transformative use is that "no other image — not even the Photograph itself as a standalone image — would have fulfilled the same purpose as the Post itself." *Walsh*, 464 F. Supp. 3d at 583 (cleaned up).

Because the Article "communicates something new and different from the original," the Court finds that its use is transformative. *Authors Guild*, 804 F.3d at 214.

### (ii)     Commercial Nature

"The commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). But "because nearly all fair uses of copyrighted works are conducted for profit, the Second Circuit has cautioned that the more transformative the new work, the less will be the significance of the commercial sub-factor." *Donald Graham*, 265 F. Supp. 3d at 382 (cleaned up). Accordingly, the Second Circuit has "repeatedly rejected the

contention that commercial motivation should outweigh a convincing transformative purpose and absence of significant substitute competition with the original." *Authors Guild*, 804 F.3d at 219.

Plaintiffs allege, in a conclusory way, that Defendants used the Photograph "for commercial purposes in various ways . . . ." Am. Compl. ¶ 13. Assuming that Defendants publish the Website, which bills itself as an online magazine,[7] for commercial purposes, that is of limited import; "almost all newspapers, books and magazines are published by commercial enterprises that seek a profit." *Swatch Grp.*, 756 F.3d at 83 (cleaned up) (holding publication of copyrighted financial information to Bloomberg's paying subscribers was transformative as news reporting). The instant use of the Photograph in a single Article "is but one small part" of the online magazine. *Id.* Any indirect financial gain is outweighed by the public benefit in reporting on matters of public interest. *See Am. Geophysical Union*, 60 F.3d at 922 (noting that courts are less likely to find unfair commercial exploitation where the secondary use "produces a value that benefits the broader public interest").

Accordingly, any commercial purpose is outweighed by the public benefit generated and the transformative nature of Defendants' use. For those reasons, the first factor weighs heavily in favor of a finding of fair use.

### 2. Nature of the Copyrighted Work

The second fair use factor considers "(1) whether the work is expressive or creative with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Cariou v. Prince*, 714 F.3d 694, 709–10 (2d Cir. 2013 (cleaned up).

---

[7] *See About Us*, N.Y. Indep., available at https://perma.cc/V88J-95RV (last visited Mar. 13, 2024).

The Photograph is indisputably creative and had been published. *See Monster Commc'ns, Inc. v. Turner Broad. Sys., Inc.*, 935 F. Supp. 490, 494 (S.D.N.Y. 1996) ("[P]hotographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations."). While ordinarily the creative nature of the Photograph would weigh in favor of the copyright holder, the Court affords this factor limited weight because of the secondary use's transformative purpose. *See Blanch*, 467 F.3d at 257 ("[T]he second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose." (quotation omitted)); *see also Authors Guild*, 804 F.3d at 220 ("The second factor has rarely played a significant role in the determination of a fair use dispute.").

For all these reasons, the Court affords little weight to the second fair use factor, which weighs weakly against a finding of fair use.

### 3.   Amount and Substantiality of the Portion Used

The third fair use factor asks whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (cleaned up). Although the Second Circuit has never "ruled that the copying of an entire work *favors* fair use," "such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image." *Bill Graham*, 448 F.3d at 613 (citing *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000)). Thus, "the third-factor inquiry must take into account that 'the extent of permissible copying varies with the purpose and character of the use.'" *Id.* (quoting *Campbell*, 510 U.S. at 586–87).

The Article displays the Photograph in its entirely because Schwimmer's Post included the entire Photograph. *See* Am. Compl. ¶ 15. Because the Article's purpose was to report on the

implications of the Post for a reunion the popular TV show's cast, "to copy any less would have made the picture useless to the story." *Nunez*, 235 F.3d at 24.

The third fair use factor is neutral.

### 4. Effect of the Use Upon the Market for or Value of the Original

The final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This analysis is concerned with "whether the secondary use usurps the market of the original work." *Blanch*, 467 F.3d at 258 (quotation omitted). It "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild*, 804 F.3d at 223. The Supreme Court has "stressed the close linkage between the first and fourth factors, in that the more the copying is done to achieve a purpose that differs from the purpose of the original, the less likely it is that the copy will serve as a satisfactory substitute for the original." *Id.* (citing *Campbell*, 510 U.S. at 591).

Because "the Photograph did not appear on its own," but as part of the Instagram Post that was used to illustrate the Article, the Photograph is not in competition with the Article. *Clark v. Transp. Alternatives, Inc.*, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019); *see also Walsh*, 464 F. Supp. 3d at 586 ("Here, because the Photograph did not appear on its own, but as part of the Post . . . it is implausible that Defendant's use would compete with Plaintiff's business or affect the market or value of her work."). In short, Plaintiffs do not plausibly allege that the secondary use "could, in any way, impair any other market for commercial use of the Photo, or diminish its value." *Marano v. Met. Museum of Art*, 844 F. App'x 436, 439 (2d Cir. 2021). Accordingly, this factor is neutral.

For all of these reasons, the Court finds that, as a matter of law, the balance of the factors necessitates a finding of fair use. Accordingly, the motion for judgment on the pleadings is granted.

The Court declines to grant leave to amend as Plaintiffs have not demonstrate that, if given the opportunity to amend, they would be able to allege sufficient facts to establish that the secondary use was not fair use; rather, they allege only, in a conclusory manner, that "Plaintiffs can certainly further amend their claims to include . . . any other matter the Court finds lacking . . . ." Pls. Opp. at 16; *see also Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (noting that, though courts should freely grant leave to amend, "a district court has discretion to deny it for . . . futility" (cleaned up)).

## II.     Plaintiffs' Counsel Will Not Be Sanctioned

Plaintiffs' counsel represent that their failure to comply with this Court's order to disclose "copies of records sufficient to show the royalty paid the last three times the picture that is at issue in this case was licensed," Order, Dkt. 8, was due at least in part to a gap in their client's records, Tr., Dkt. 37 at 6. The Court's order was quite clear, and counsel's efforts to comply were lackadaisical, at best. Counsel should have done a better job gathering the required information and, if their client's recordkeeping prevented compliance, they should have notified the Court and obtained either more time to gather the required materials or permission not to comply.

While the Court will not sanction Plaintiffs' counsel, David Jenkins, Stephen M. Doniger, and Scott Burroughs, or their law firm Doniger / Burroughs, counsel are admonished that the Court will not be so understanding in the future.

11

## CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED, the case is DISMISSED, and the Court declines to sanction Plaintiffs' counsel.  The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.


**SO ORDERED.**


**Date:   April 1, 2024**
      **New York, New York**                 **VALERIE CAPRONI**
                                                    **United States District Judge**

# EXHIBIT 141

## Excerpts of August's Depo Transcripts

```
 1                 UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4    AUGUST IMAGE, LLC, a         )
      New York Limited Liability )
 5    Company,                     )
                                   )
 6                 Plaintiff,      )
                                   )
 7          vs.                    ) Case No. 2:23-cv-05492-
                                   )               WLH-AS
 8    LINE FINANCIAL, PBC, a       )
      Delaware Corporation,        )
 9    et al.,                      )
                                   )
10                 Defendant.      )
      _____)
11
12
13
14
15       VIDEO-RECORDED, VIDEOCONFERENCE DEPOSITION OF
16                    AUGUST Image, LLC
17                   New York, New York
18               Thursday, October 10, 2024
19
20
21    Reported by
      Sheryl L. Franco,
22    CSR 11593
23    PAGES 1-312
24    PAGES 276 - 292 ARE CONFIDENTIAL AND BOUND
      SEPARATELY
25
```

                                              Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4    AUGUST IMAGE, LLC, a          )
      New York Limited Liability )
 5    Company,                      )
                                    )
 6                   Plaintiff,     )
                                    )
 7          vs.                     ) Case No. 2:23-cv-05492-
                                    )           WLH-AS
 8    LINE FINANCIAL, PBC, a        )
      Delaware Corporation,         )
 9    et al.,                       )
                                    )
10                   Defendant.     )
      _____  )
11
12
13
14
15              The video-recorded, videoconference
16    deposition of AUGUST Image, LLC, testimony given by
17    LAUREN KELLY, taken on behalf of Defendant, at
18    New York, New York, beginning at 9:36 a.m., and
19    ending at 7:18 p.m., on Thursday, October 10, 2024,
20    before Sheryl L. Franco, Certified Shorthand
21    Reporter No. 11593.
22
23
24
25
```

                                                    Page  2

```
 1    APPEARANCES:
 2    (ALL APPEARANCES MADE VIA VIDEOCONFERENCE)
 3
      For Plaintiff:
 4
      DONIGER / BURROUGHS
 5    BY:  STEPHEN M. DONIGER, ESQ.
      603 Rose Avenue
 6    Venice, California 90291
      Telephone (310) 596-1820
 7    stephen@donigerlawfirm.com
 8
 9    For Defendant:
10    PIETZ & SHAHRIARI, LLP
      BY:  MORGAN E. PIETZ, ESQ.
11    6700 South Centinela Avenue, 2nd Floor
      Culver City, California 90230
12    Telephone (310) 424-5557
      morgan@pstrials.com
13
14
      Videographer:
15
      Alex Klyusner, Veritext Legal Solutions
16
17
18
19
20
21
22
23
24
25
```

                                              Page 3

```
 1                    I N D E X

 2

 3     WITNESS:

 4     LAUREN KELLY

 5

       EXAMINATION                                    PAGE

 6

                  BY MR. PIETZ                          7

 7

 8

 9                  E X H I B I T S

10       (Confidential Exhibits Are Bound Separately)

11

12     EXHIBIT        DESCRIPTION                    PAGE

13     Exhibit 39    Second Amended Deposition Notice   10

14     Exhibit 74    Pugliese registration              95

15     Exhibit 75    Lubomirski registration            95

16     Exhibit 76    Streiber registration              95

17     Exhibit 77    Bowen-Smith registration           95

18     Exhibit 78    Slijper registration               95

19     Exhibit 79    Lubomirski registration            95

20     Exhibit 80    Asgharnia registration             95

21     Exhibit 81    Eccles registration                95

22     Exhibit 82    Hargrave registration              95

23     Exhibit 83    Mobley registration                95

24     Exhibit 84    Schoeller registration             95

25     Exhibit 85    Van Mossevelde registration        95

                                             Page  4
```

1              E X H I B I T S (Cont'd.)

2    EXHIBIT        DESCRIPTION                      PAGE

3    Exhibit 86    Bobb-Willis registration          95

4    Exhibit 87    Mann registration                 95

5    Exhibit 88    Plaintiff's responses, Set 2      79

6    Exhibit 89    Completed Request for IDC form    167

7    Exhibit 91    AUGUST reports                    178

8    Exhibit 92    Deposit copies                    225

9    Exhibit 100   Editorial shoots                  234

10   Exhibit 101   Examples of pink robot bar pics   257

11   Exhibit 102   Plaintiff responses to RFP        266

12   Exhibit 103   Defendant responses to RFP, 2     266

13   Exhibit 104   Notice of Interested Parties      293

14   Exhibit 105   Plaintiff responses to ROGS, 1    301

15

16        QUESTIONS INSTRUCTED NOT TO ANSWER

17        Page     Line          Page     Line

18         49       5            169       17

19         72       3            170       11

20         73       6            171       3

21         75       8            171       17

22         82      24            172       28

23         96       3

24

25

                                        Page  5

```
 1        New York, California, Thursday, October 10, 2024

 2                    9:36 a.m. - 7:18 p.m.

 3              (Times noted in transcript are PDT)

 4                           * * *

 5        THE VIDEOGRAPHER:  Good morning.  We are going     09:14:54

 6    on the record at 9:36 a.m. on October 10th, 2024.       09:36:57

 7    Please note that the deposition is being conducted

 8    virtually.  Quality of recording depends on the

 9    quality of camera and Internet connection of

10    participants.  What is seen from the witness and

11    heard on screen will be recorded.  Audio and video

12    recording will continue to take place unless all

13    parties agree to go off the record.

14            This is Media Unit 1 of the video-recorded

15    deposition of Lauren Kelly, taken by Counsel for

16    Defendant, in the matter of "AUGUST Image, LLC,

17    versus Line Financial, PBC, et al.," filed in the     09:37:29

18    United States District Court, Central District of

19    California, case Number 2:23-cv-05492-WLH-AS.

20            The location -- oh.  My name is

21    Alex Klyusner, representing Veritext Legal

22    Solutions.  I am the videographer.  The court

23    reporter is Sheryl Franco, from Veritext.  I'm not    09:37:57

24    related to any party in this action, nor am I

25    financially interested in the outcome.
```

Page 6

```
 1              If there are any objections to proceeding,

 2      please state them at the time of your appearance.

 3      Counsel and all present remotely will now state

 4      their appearances and affiliations for the record,

 5      beginning with the noticing attorney.

 6          MR. PIETZ:  Good morning, Ms. Kelly.  My name

 7      is Morgan Pietz.  I am one of the attorneys for the

 8      defendant in this case, Line Financial PBC, Public

 9      Benefit Corporation.  Nice to meet you.  Thanks for

10      coming this morning.  Appearing for the defendant.      09:38:29

11          MR. DONIGER:  Steve Doniger of Doniger

12      Burroughs, counsel for AUGUST, the deponent.

13          THE VIDEOGRAPHER:  Thank you.

14              Will the reporter please swear in the

15      witness, and Counsel, you may proceed.

16                      LAUREN KELLY,

17      having been first duly sworn by the certified

18      shorthand reporter, was examined and testified as

19      follows:

20                      EXAMINATION

21          MR. PIETZ:  Thank you.

22          Q    Ms. Kelly, can you please state and spell

23      your full legal name for the record, please.          09:38:58

24          A    Sure.  Lauren Ann Kelly.

25          Q    And is there an E at the end of the Ann?
```

Page 7

1    BY MR. PIETZ:

2        Q    Sure.  Have any of the photographers at

3    issue in this case terminated their agreement or

4    agreements with AUGUST Image?

5        A    Yes.

6        Q    Who?

7        A    I believe the only photographer who has

8    terminated is Alexi Lubomirski.                    10:00:58

9        Q    And when did Mr. Lubomirski terminate his

10   agreement with AUGUST Image?

11       A    I don't know the exact date, but I do know

12   it was after this case was put into motion.

13       Q    Meaning after the complaint was filed?    10:01:27

14       A    I believe so, yes.

15       Q    All right.  Is there any documentation,

16   like a notice of termination, related to

17   Mr. Lubomirski's termination of his agreement with

18   AUGUST Image?

19       MR. DONIGER:  Objection; exceeds the scope,

20   calls for speculation, lacks foundation.

21       THE WITNESS:  I'm not sure.                     10:01:59

22   BY MR. PIETZ:

23       Q    Okay.  Is that something you've ever

24   looked for?

25       MR. DONIGER:  Her personally?

                                                    Page 26

```
 1   digital signature program to wrangle the signatures

 2   on the addenda; is that correct?

 3       A    Correct.

 4       Q    Okay.  So what would have happened is that

 5   an Adobe file would have been emailed to each of the

 6   photographers with a .pdf that they were to sign

 7   with respect to the addenda; is that correct?

 8       A    Correct.

 9       Q    And would you have been the person

10   emailing the photographers at issue in this case,        11:37:29

11   asking them to sign the addendum?

12       A    I believe the majority were emailed from

13   me, yes.

14       Q    And have those emails been produced in

15   this litigation?

16       A    I believe so.

17       Q    All right.  Is that something -- when did

18   you first -- strike that.                                11:38:00

19            When did you provide emails between you

20   and the photographers to your counsel?

21       MR. DONIGER:  Hold on a second.  Let me get

22   that question rad back, please.                          11:38:13

23            (The record was read as requested.)

24       MR. DONIGER:  Well, I'm going to object as

25   calling for attorney/client communications and
```

                                                            Page 81

```
 1    instruct the client not to answer.

 2         MR. PIETZ:  No.  "When" is not an

 3    attorney/client communication, Stephen.  This is an

 4    improper instruction, and we're going to end up in

 5    front of the judge if you stand on this one.  "When"

 6    is not attorney/client information.

 7         MR. DONIGER:  I've made my instruction.

 8    BY MR. PIETZ:

 9         Q    All right.  Are you going to follow your      11:39:00

10    counsel's instruction and refuse to answer that

11    question?

12         A    I'm going to defer to my counsel on it.

13    BY MR. PIETZ:

14         Q    Okay.  Have you ever provided copies of

15    emails between you and the photographers at issue in

16    this case to your attorneys in this case, meaning

17    Mr. Doniger and his law firm?

18         MR. DONIGER:  You can answer that.

19         THE WITNESS:  Yes.

20    BY MR. PIETZ:

21         Q    Okay.  And was there anyone who assisted      11:39:25

22    you in looking for emails related to communications

23    with the photographers in response to discovery

24    served in this litigation?

25         A    Yes.
```

Page 82

```
 1    Exhibit 42, dated exactly two months after the date
 2    of the original agreement?
 3        A    My best estimate would be that it's just       11:49:28
 4    simply a typo, considering it reflects the day as 7.
 5    I think it's just a typo.
 6        Q    Okay.  All right.  Are there any other --
 7    would there be anybody else who has an addendum
 8    that's dated differently than Mr. Streiber or the
 9    other people we've looked at?                           11:49:59
10        Meaning, I guess, if you're saying
11    Mr. Streiber is a typo, is it your testimony that
12    everybody else, the addendum should reference the
13    date of the original agreement?
14        A    Correct.  It should reference the date of
15    the original agreement.
16        Q    Okay.  And were you involved in the
17    negotiations of the original agreements for any of     11:50:25
18    these photographers at issue in this case?
19        A    No.
20        Q    Who was?
21        A    Sorry.  Did you say, "Who was?"
22        Q    I said, "Who was?"
23        A    From AUGUST, it would, to my knowledge,
24    just be Bill Hannigan and whatever attorney he was
25    using to create these templates or whatnot.
```

Page 90

1    BY MR. PIETZ:

2        Q    What was that answer you said, the

3    majority predate --

4        A    Predates my being with the company.

5        Q    So your testimony is that AUGUST doesn't

6    know what was said during the negotiations between

7    AUGUST and the photographers; is that correct?

8        A    I personally don't know what was said in

9    meetings that -- from 2017.

10       Q    So I'm not asking for your personal            11:52:29

11   testimony.  I'm asking for the testimony of AUGUST

12   Image on that topic.

13       A    So I don't have that information.

14       Q    Okay.  All right.  And were there any

15   subsequent oral conversations between any of the

16   photographers at issue here and AUGUST Image between

17   the date of the original agreements and the date      11:52:57

18   when you joined the company?

19       MR. DONIGER:  Can I get that question read

20   back, please.

21           (The record was read as requested.)          11:53:28

22       MR. DONIGER:  Go ahead, if you know.

23       THE WITNESS:  I don't -- I don't have any

24   knowledge of conversations that occurred prior to my

25   hire.

                                                  Page 92

```
 1    the photographer whose photograph is at issue here,

 2    would be that photographer's assignment agent; is

 3    that right?

 4         A    Correct.

 5         Q    Okay.  Have you ever requested any

 6    agreements between the photographer and the magazine

 7    from the assignment agents for the photographs at

 8    issue in this case?

 9         A    Not that I recall.                    14:26:04

10         Q    Have you requested any documents from the

11    photographers who are involved in this case at any

12    point since the litigation began?

13         A    Sorry.  Could you just repeat that one

14    more time.

15         Q    Sure.  Since the litigation began, have

16    you requested any documents from any of the

17    photographers involved in this lawsuit?          14:26:29

18         MR. DONIGER:  With regard to this lawsuit or in

19    general?

20         MR. PIETZ:  With regard to this lawsuit.  I'll

21    add that part to the question.

22         THE WITNESS:  Not that I recall.            14:26:59

23    BY MR. PIETZ:

24         Q    All right.  When you received the requests

25    for production that were served by the defendant in
```

Page 159

```
 1    this case, did you make any effort to obtain

 2    documents responsive to those requests from the

 3    photographers or their assignment agents?          14:27:25

 4         A    I apologize.  It's a bit of a memory game

 5    because I respond to these kinds of document

 6    requests frequently.  But I don't recall, off the

 7    top of my head.

 8         Q    If you had done so, how would you normally

 9    have done so, email, would you pick up the phone and

10    call somebody, would it be a note that you leave     14:27:59

11    them in an AUGUST Image system?

12              How would you go about requesting

13    documents from a photographer in a case like this

14    one?

15         A    Either email or a phone call.

16         Q    Okay.  Does ImageRights have any knowledge

17    of whether any of the photographs at issue in this

18    case were work-for-hires for the magazines that     14:28:27

19    commissioned the photographer to take the

20    pictures?

21         MR. DONIGER:  Calls for speculation, lacks

22    foundation, beyond the scope of the designated

23    topics.

24         THE WITNESS:  Just to clarify, did you say is

25    ImageRights aware?
```

Page 160

1          Is it AUGUST Image's understanding that        15:15:29

2     those registrations, meaning Ms. Willis's 589

3     registration and Mr. Slijper's 663 registration also

4     were not timely registered?

5          MR. DONIGER:  Same objections, calls for a

6     legal conclusion.

7          THE WITNESS:  That appears to be what the

8     report from ImageRights says.                        15:15:59

9          But just to clarify again, if this was a

10    document straight from ImageRights, sometimes there

11    are mistakes.

12    BY MR. PIETZ:

13         Q    What kind of mistakes are there in

14    ImageRights reports normally?

15         A    I don't know.  I got your documents.

16         MR. DONIGER:  Objection; incomplete

17    hypothetical, calls for speculation, lacks

18    foundation, compound.

19    BY MR. PIETZ:

20         Q    I'm just trying to understand what you    15:16:30

21    meant a moment ago.

22         A    In my experience, mainly just with the

23    labeling of whether something is registered timely

24    or not, there have been past instances which I'm not

25    sure what the root of the issue is, but, you know,

                                        Page 185

1    one, if I can.

2         So Bill Hannigan has access to, I believe,

3    download that information.  But once a Pixmole case

4    is assigned to -- we have a choice of who to assign

5    it to.

6         So if we were to assign it to a legal

7    partner, they would have -- whoever the case is

8    assigned to, generally speaking, has the ability

9    then to download.                            15:46:59

10        Q    So you have access to it initially.  Once

11   it's been assigned to  legal partner -- does that

12   mean your lawyers in this lawsuit?

13        A    Yes.

14        Q    Okay.  So they -- your attorneys have

15   access to Pixmole information currently, is that

16   correct, for the claims at issue in this case; is

17   that right?

18        A    Yes.

19        Q    And they would have that since the

20   beginning of the litigation; is that correct?

21        A    Yes.

22        Q    Okay.  But you, meaning AUGUST Image, also   15:47:28

23   still has access to Pixmole data; is that correct?

24        A    Yes.

25        Q    Is Pixmole similar to ImageRights in that

Page 207

1    it will let you go in there and manually modify a

2    field that is incorrect?

3        MR. DONIGER:  Calls for speculation, lacks

4    foundation.

5        THE WITNESS:  Yes.

6        MR. PIETZ:  All right.  Let's take a              15:48:15

7    five-minute break.  3:48.  Let's come back at 3:55.

8        THE VIDEOGRAPHER:  Time is 3:48 p.m.  We're off

9    the video record.

10               (A recess was taken.)

11       THE VIDEOGRAPHER:  The time is 3:58 p.m.  We      15:48:28

12   are back on the video record.

13   BY MR. PIETZ:

14       Q    All right.  Ms. Kelly I'd like to refer      15:58:29

15   back again to some of the agreements we looked at

16   earlier.

17            So I've got pulled up on my screen -- you

18   should be able to see it now -- Exhibit 40, which is

19   the redacted version of the Streiber original

20   agreement, and then Exhibit 41 is the unredacted

21   version of the Streiber original agreement.

22            My question is, first of all, there's no

23   confidentiality pro vision in this agreement, is      15:58:57

24   there?

25       MR. DONIGER:  Document speaks for itself.

                                              Page 208

1        A    Yeah.  That pink L is probably indicative        18:01:29

2    that its probably --

3        Q    I see.  Yeah.  The resolution is not great

4    on this.

5             So these ones -- these Chrome screenshots,

6    where there's a little pink L in the top right,

7    these would have been the screenshots that you

8    captured yourself; is that right?

9        A    Yes.

10        Q    Okay.  So there is this one in AUGUST 587.

11    And then there's a couple more.  Oprah, AUGUST 591.

12    And I thought it was Urkel, but it's Issa Rae, in

13    AUGUST 592.                                               18:01:59

14             So would those then have been the only

15    three screenshots that a human being captured for

16    the allegedly infringing blog posts, meaning

17    AUGUST 591, AUGUST 592, oh, I guess AUGUST 589 and

18    AUGUST 587?

19        A    Well, sorry.  I wasn't -- I didn't catch

20    the numbers as you were saying them.  But the        18:02:28

21    Kristen Stewart with the tattoo on her arm appears

22    to be a screenshot from me.

23        Q    Right.  So it looks like there's four; is

24    that right?

25             So in other words, the ones that are the

Page 262

```
 1    blue Chrome screenshots that have a little pink L on

 2    the top right, so those four.

 3              So it's 587, 589, 591 and 592, those are

 4    the only screenshots that were captured by a human

 5    being, isn't that correct, as opposed to software?    18:02:58

 6         A    I believe so.

 7         Q    All right.  That will become -- let's go

 8    off the record.  Take a few minutes.  We're pretty

 9    close to the seven hours.  I'm not done, but we'll

10    figure out what we're going to do.  Let's go off the

11    record for a minute.

12         MR. PIETZ:  Can we get the exact time,

13    please.

14         THE VIDEOGRAPHER:  Sure.  Time is 6:03 p.m.    18:03:28

15    We're off the video record.

16                   (A recess was taken.)

17         THE VIDEOGRAPHER:  Time is 6:16 p.m.  We're    18:03:34

18    back on the video record.

19    BY MR. PIETZ:

20         Q    All right.  Okay.  So, Ms. Kelly, some of

21    the topics we propounded for today involve talking

22    about the amount of revenue and profits derived from

23    the photographs at issue in this lawsuit.

24              Do you know what those figures are?

25         A    No, I don't.                              18:16:31
```

Page 263

1   at -- the interrogatory we looked at before, this

2   isn't verified.

3          But is it fair to say you were the point

4   person who was involved in collecting documents

5   responsive to this set of requests for production?

6      A    And you said it was July 2024?

7      Q    Right.

8      A    Yes.

9      Q    And in connection with this set of

10  requests for productions, did you ask any of the          18:21:27

11  photographers who are at issue in this lawsuit to

12  provide you with relevant or responsive documents?

13     A    I'd have to rereview the document.

14     Q    When you say, "I'd have the rereview the

15  document," what document are you referring to?

16     A    The one that you're screen sharing right

17  now.

18     Q    Got it.  Okay.  So you think you might

19  have asked photographers for information responsive      18:21:59

20  to some of these requests?

21     A    I don't remember them off the top of my

22  head, so I'd have to go through like each line to

23  see what was requested and if it was appropriate to

24  reach out to a photographer for something.

25     Q    How did you determine which of these

Page 267

```
 1                    CERTIFICATE OF

 2              CERTIFIED SHORTHAND REPORTER

 3

 4              The undersigned, a certified shorthand

 5     reporter of the State of California do hereby

 6     certify:

 7              That the foregoing proceedings were taken

 8     before me at the time and place herein set forth;

 9     that any witnesses in the foregoing proceedings,

10     prior to testifying, were placed under oath; that a

11     verbatim record of the proceedings was made by me

12     using machine shorthand and was thereafter

13     transcribed under my direction; further, that the

14     foregoing is an accurate transcription thereof.

15              I further certify that I am neither

16     financially interested in the action nor a relative

17     or employee of any attorney of any of the parties.

18              IN WITNESS WHEREOF, I have this date

19     subscribed my name.

20     Dated:  October 14, 2024

21

22

23            Sheryl L. Franco

24

25        Sheryl L. Franco, CSR No. 11593
```

Page 309