Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
  matt@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:   (310) 424-5557
Facsimile:    (310) 597-4626

Attorneys for Defendant
*LINE FINANCIAL PBC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, a New York Limited Liability Company,<br><br>        Plaintiff,<br><br>v.<br><br>LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,<br><br>        Defendant(s). | Case No. 2:23-cv-05492-MWC-AS<br><br>Assigned to: Honorable Michelle Williams Court, United States District Judge<br><br>Referred to: Honorable Alka Sagar, United States Magistrate Judge<br><br>Action Filed:        07/10/2023<br>Fact Discovery Cutoff:   10/11/2024<br>Final Pretrial Conf.:    02/07/2025<br>Trial Date:          02/24/2025<br><br>**DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON STANDING**<br><br><u>Hearing</u>:<br>Date/Time:  December 13, 2024,<br>           1:30 pm<br>Location:   First Street Courthouse<br>           350 W. 1st Street<br>           Courtroom 9B, 9th Floor,<br>           Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iii

DEFENDANT LINE PBC'S REPLY ON STANDING ........................................... 1

    (a) Introduction & Summary .................................................................................. 1

    (b) Back to First Principles: The Copyright Act's Statute of Frauds Prohibits the Creation of *Implied* Exclusive Licenses .................................................. 2

    (c) Since August Has the Burden to Prove its Standing to Sue for Infringement, It Cannot Escape the Requirements of Section 204 ............ 3

    (d) August's Brief Mischaracterizes *Minden v. Wiley*; the Agreements at Issue in That Case Contained an *Explicit* Exclusive License Grant .................... 4

    (e) *DRK Photo* Distinguished *Wiley*, In Part, Because the Agreements at Issue in *DRK Photo* Lacked an Explicit License Grant ...................................... 5

    (f) *Torres* Distinguished *Wiley* Due to the Lack of a "Clear" Exclusive License Grant Apparent from the "Face" of the Agreement ...................... 6

    (g) This Court Should Not Make the Same Mistake the District Court did in *Stockfood*; Federal Law Prohibits *Implied* Exclusive Copyright Licenses . 7

    (h) August's Lack of "Derivative Work" Rights, and Grant of Another Purportedly Exclusive License to ImageRights, Are Also Fatal ............. 10

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Cohen v. Paramount Pictures Corp.*,
   845 F.2d 851 (9th Cir. 1988) ............................................................... 8, 9

*Creative Photographers, Inc. v. Julie Torres Art, LLC*,
   No. 1:22-CV-00655-JPB, 2023 WL 2482962
   (N.D. Ga. Mar. 13, 2023) ("*Torres*") ............................................. passim

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) ......................................................... 3, 5, 9

*Effects Associates, Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) .............................................................. 2, 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) ......................... 3

*Foad Consulting Group, Inc. v. Azzalino*,
   270 F.3d 821 (9th Cir. 2001) .......................................................... 7, 8, 9

*Jacob Maxwell, Inc. v. Veeck*,
   110 F.3d 749 (11th Cir. 1997) ............................................................... 2

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ............................................................... 3

*Liaigre, Inc. v. California Furniture Collection, Inc.*,
   2022 WL 18278600 (C.D. Cal. 2022) ................................................... 5

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
   795 F.3d 997 (9th Cir. 2015) ("*Wiley*") .......................................... passim

*Righthaven LLC v. Hoehn*,
   716 F.3d 1166 (9th Cir. 2013) ............................................................... 3

*Stockfood Am., Inc. v. Adagio Teas, Inc.*,
   475 F. Supp. 3d 394 (D.N.J. 2020) ................................................ 7, 8, 9

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

*Sun Microsys., Inc. v. Microsoft Corp.,*

    188 F.3d 1115 (9th Cir. 1999)......................................................................... 8, 9

*Urbont v. Sony Music Entm't,*

    831 F.3d 80 (2d Cir. 2016) ................................................................................. 3

**Statutes**

17 U.S.C. § 101............................................................................................... 2, 7, 9

17 U.S.C. § 106............................................................................................... 5, 8, 10

17 U.S.C. § 204.................................................................................................passim

17 U.S.C. § 301..................................................................................................... 7

17 U.S.C. 501........................................................................................................ 3

28 U.S.C. § 1338.................................................................................................. 7

**Treatises**

2 Patry on Copyright § 5:129 ............................................................................. 7

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

1

## DEFENDANT LINE PBC'S REPLY ON STANDING

2

**(a)    Introduction & Summary**

3

It is undisputed that the "Agency Agreements" between plaintiff August

4

Image, LLC and the photographers who own the copyrights-in-suit did not contain

5

an ***explicit*** grant of an exclusive license.  Joint Br. (ECF No. 59) at 6:18-10:16

6

(summarizing the Agency Agreements); *see* JAF (ECF No. 59-1) at ¶¶ 60-62. [1] Line

7

PBC asserts these agreements grant no license and merely appoint August an agent.

8

In response, August argues that an exclusive license grant ***should be implied***

9

here.  According to August, it "***necessarily has*** the exclusive right to authorize the

10

reproduction, display, and distribution of the Subject Photographs" because without

11

such rights, August "cannot do its job" as the photographers' exclusive licensing

12

agent. Joint Br. at 15:21-16:2; *see also id*. at 51:14-19 (same; August "***necessarily***

13

***must have***" an exclusive license "to do its job" as agent); *id*. at 68:23-24 (August's

14

appointment as agent "***necessarily includes***" a grant of exclusive rights); *id*. at

15

17:10-12 (August "***necessarily has***" an exclusive license because "it is an exclusive

16

licensing agent and syndicator") (emphasis added to all).

17

August admits that "the terms of the syndication[2] agreements are clear."  *Id*. at

18

56:7-8; *id*. at 55:6.  Yet it nevertheless seeks to introduce parol evidence "***to clarify,***

19

***in explicit terms***, the rights August was given when it was originally made the

20

exclusive licensing agent." *Id*. at 56:5-6 (emphasis added).  Specifically, August

21

points to the backdated Addendums, improperly-withheld Photographer

22

Declarations, and recent testimony from its witness Lauren Kelly.  This evidence

23

should not be considered[3] and fails to establish the existence of an exclusive license.

24

25

[1] August also apparently does not dispute that summary judgment for defendant is appropriate on the Arielle Bobb-Willis claim.  *See* Mot. Br. at 51, fn 37.

26

[2] The term "syndication" is not actually found in the Agency Agreements.  JAF ¶ 60.

27

[3] In addition to being barred by federal Copyright law and the parol evidence rule, it

28

is the subject of evidence objections and a motion for sanctions.  ECF Nos. 59-2, 68.

-1-

Simply put, August's argument that an exclusive license must "necessarily" be *implied* here based on August's appointment as a licensing agent is foreclosed by the writing requirement of Section 204 of the Copyright Act and conflicts with binding Ninth Circuit precedent.

**(b)    Back to First Principles: The Copyright Act's Statute of Frauds Prohibits the Creation of *Implied* Exclusive Licenses**

The Copyright Act has its own statute of frauds, providing that a "transfer of copyright ownership, other than by operation of law,"—*e.g.*, probate, bankruptcy— "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).  Moreover, under the Copyright Act, the term "transfer of copyright ownership" is specifically defined to *exclude* "a nonexclusive license."  17 U.S.C. § 101.

Adding the Copyright Act's statute of frauds and its definition of a "transfer of copyright ownership" together amounts to a simple rule: a "transfer of copyright ownership" such as an *exclusive* license (or an assignment) must be memorialized in a writing signed by the rights owner, but non-exclusive licenses, which are *not* transfers of copyright ownership, may be *implied* without such a signed writing.

The Ninth Circuit explained all this in *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990).  There, the Court rejected the argument that a *transfer copyright ownership* could be *implied* based on custom and practice in the motion picture industry (an argument Judge Kozinski paraphrased as "moviemakers do lunch, not contracts").  *Id.* at 556-57.  However, the Court also concluded that a *nonexclusive* license should be implied, based on the facts of that case.  *Id.* at 558-59; *see also Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752–53 (11th Cir. 1997) (holding that parties' unenforceable oral agreement for exclusive license did not preclude the creation of an implied nonexclusive license by conduct).

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON STANDING

The distinction between non-exclusive licenses that may be formed orally or implied by conduct and exclusive licenses that must comply with Section 204 determines whether a licensee has standing to sue for infringement. *See* 17 U.S.C. 501(b) (only the "legal. . .owner of an exclusive rights under copyright is entitled. . . to institute an action for any infringement of that particular right committed while or she is owner of it"); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC,* 870 F.3d 978, 983 (9th Cir. 2017) (an "exclusive license. . .qualifies as a transfer of a right in a copyright for purposes of the Act. . . By contrast, a mere 'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim.")

**(c)    Since August Has the Burden to Prove its Standing to Sue for Infringement, It Cannot Escape the Requirements of Section 204**

Standing to sue for infringement is the plaintiff's burden to prove. So, the 'defendant has no standing to challenge standing' argument made by August (Joint Br. at 56:16-57:3 & fn 41) has been repeatedly rejected by the Ninth Circuit,

> "Although a third party may not raise noncompliance with 17 U.S.C. § 204(a)'s writing requirement as a defense to a copyright transfer where the parties to the transfer do not dispute its existence, *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010), a third party is not foreclosed from challenging a plaintiff's ownership for purposes of standing, *see Righthaven*, 716 F.3d at 1169[4]. Indeed, it is the plaintiff who has the burden of establishing a qualifying ownership interest both as a substantive element of the infringement claim, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), and as a necessary predicate for standing to bring the claim, 17 U.S.C. § 501(b). *See Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) ("[E]ven courts that have precluded third parties from challenging a plaintiff's ownership rights under the statute of frauds provision in Section 204 have permitted those parties to challenge the validity of the underlying ownership transfer.")." *DRK Photo*, 870 F.3d at 986.

---

[4] *Righthaven LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013).

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

1 Thus, as a purported transferee of copyright rights trying to sue for alleged

2 infringement of those rights, August has the burden to prove that it has a written

3 agreement satisfying § 204(a) that provides it with the rights it claims to own.

4 **(d)   August's Brief Mischaracterizes *Minden v. Wiley*; the Agreements at**

5 **Issue in That Case Contained an *Explicit* Exclusive License Grant**

6 August's next attempt to save its case from Section 204 involves

7 mischaracterizing *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997,

8 1001 (9th Cir. 2015) ("*Wiley*").  According to August's MSJ brief,

9 "In *Minden Pictures [v Wiley]*. . . .The panel explained that an
10 "'exclusive license' to grant licenses to third parties***" necessarily***
11 ***incorporates* "**the rights to reproduce, distribute, and display the
photographs "and to authorize the same. *See id*. at 999, 1003, 1005-06."
12 Joint Br. at 61:11-13 (emphasis added).

13 Importantly, the words "necessarily incorporates," and the like, are not to be found

14 anywhere in the *Wiley* opinion; these words were added by counsel for August and

15 do not fairly  characterize the facts of that case.  *See Wiley,* 795 F.3d at 997-1006.

16 The truth is that, in *Wiley,* the agency agreements the plaintiff Minden was

17 relying upon to establish standing to sue for infringement ***contained an explicit***

18 ***license grant***; specifically, the agreements

19 "confer upon Minden 'the unrestricted, exclusive right to distribute,
20 License, and / or exploit the Images ... without seeking special
permission to do so.' The Agreements define 'Licensing' as 'the
21 marketing, grant, lease, sale, use or other exploitation of reproduction
22 rights to an Image.'" *Wiley*, 795 F.3d at 1000.

23 The *Wiley* panel itself stressed the importance of the foregoing language from the

24 agreements ***explicitly*** granting a license of exclusive copyright rights[5] in explaining

25 its decision.  *Id*. at 1003 ("The Agency Agreements ***explicitly permit*** Minden to

26 reproduce, and to authorize the reproduction of, the copyrighted photographs.

27 _____

28 [5] *I.e.*, of the six so-called exclusive copyright rights set out at 17 U.S.C. § 106.

Reproduction is one of the six "exclusive rights" described in the Act. 17 U.S.C. § 106(1) (listing, *inter alia,* the right "to reproduce the copyrighted work in copies or phonorecords" as an exclusive right.") (emphasis added).

**(e)** ***DRK Photo* Distinguished *Wiley*, In Part, Because the Agreements at Issue in *DRK Photo* Lacked an Explicit License Grant**

Two years after *Wiley*, when the Ninth Circuit took the unusual step of issuing a second published opinion addressing *the exact same legal issue*, it reached the opposite result in *DRK Photo* by distinguishing *Wiley* on the facts. Specifically, the *DRK Photo* court noted **two** key differences between the terms of the relevant agency agreements at issue in the two cases,

> "The key to determining whether Minden's agency agreements conferred a nonexclusive or exclusive license thus was not whether the photographers retained some fractional right but instead that the photographers promised "that Minden, *and only Minden*, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs." *See id.* at 1005 (emphasis added).
>
> DRK's Representation Agreements here at issue, on the other hand, are devoid of that key provision. They also lack any limitation whatsoever on the photographers' authority to contract with other licensing agents." *DRK Photo,* 870 F.3d at 984 (footnote omitted).

Thus, unlike in *Wiley*, the agreements in *DRK Photo*: (1) were not licenses, because they were "devoid of the "key provision" giving Minden the power to "authorize third parties to ***reproduce, distribute, and display the photographs***"; and (2) they were not even *exclusive* agency agreements, in that they also did not limit the photographers' ability to hire other licensing agents[6]. *Id.* (emphasis added).

Further, *DRK Photo* also specifically rejected that plaintiff's argument, also advanced by August here, that even if it otherwise lacked an "ownership interest" in

---

[6] Both August's argument, as well as a district court case it cites, *Liaigre, Inc. v. California Furniture Collection, Inc.*, 2022 WL 18278600 (C.D. Cal. 2022), treat *DRK Photo* as if it distinguished *Wiley* on only the second of these two grounds.

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

the copyrights, its right to "'to authorize' others to exercise the rights of copyright holders" made it an exclusive licensee with standing to sue. *Id*. at 985.

**(f)    *Torres* Distinguished *Wiley* Due to the Lack of a "Clear" Exclusive License Grant Apparent from the "Face" of the Agreement**

In *Torres*, the photo agency plaintiff did have an *exclusive agency relationship* with the photographer. *See Creative Photographers, Inc. v. Julie Torres Art, LLC*, No. 1:22-CV-00655-JPB, 2023 WL 2482962, at *7 (N.D. Ga. Mar. 13, 2023) ("*Torres*") (photographer signed an agreement retaining the plaintiff agency as his "exclusive agent to sell, syndicate, license, market or otherwise distribute any and all celebrity/portrait photographs and related video portraits, submitted to [Plaintiff] by [*Photographer*] and accepted by [Plaintiff] for exploitation for sale or syndication during the term of this Agreement").

Even though the plaintiff in *Torres* had *exclusivity as a licensing agent*, the district court nevertheless distinguished *Wiley* due to the lack of a *"clear" exclusive license grant* (*i.e.*, on the first of the two grounds discussed in the prior section),

> "*Minden [v Wiley]* is distinguishable. The agency agreements in that case contained clear language indicating that they transferred to Minden an exclusive right (rather than merely appointed Minden as an exclusive agent): "The [a]greements also confer upon Minden 'the unrestricted, exclusive right to distribute, License, and / or exploit the Images ... without seeking special permission to do so.' " *Id.* at 1000 (second alteration in original). The Agreement in this case lacks any such language." *Torres*, 2023 WL 2482962, at *7.

The *Torres* court continued,

> "In *Minden [v Wiley]*, too, it seemed fairly clear that the agency agreements constituted some kind of license; the analysis hinged on whether that license was exclusive or nonexclusive. *Id.* at 1004. Here, though, while the Agreement certainly makes Plaintiff an exclusive *agent* to perform for [*the photographer*] certain functions, the Court **does not agree with Plaintiff that the Agreement, on its face, constitutes an exclusive license**." *Id.* (emphasis added).

-6-

Thus, *Torres* distinguished *Wiley* where the agreement with the photographer lacked a "***clear***" grant of an exclusive license obvious "***on its face***." *Id*.

**(g)**    **This Court Should Not Make the Same Mistake the District Court did in *Stockfood*; Federal Law Prohibits *Implied* Exclusive Copyright Licenses**

Copyright law is exclusively federal.  17 U.S.C. § 301 (Copyright Act expressly preempts state law); 28 U.S.C. § 1338 (giving federal courts exclusive jurisdiction over claims for copyright infringement).

Thus, one might fairly wonder why the primary case, apart from *Wiley*, that August builds its standing argument upon devotes a lengthy paragraph to discussing Maine law on contract interpretation.  *See Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 403 (D.N.J. 2020).  According to the district court in *Stockfood*, this is because, "[w]hen interpreting an agreement purporting to assign copyrights, courts look to state contract law."  *Id*.  Notably, that particular assertion by the district court is unsupported by any citation.  *Id*.  And it is incorrect,[7] at least as relevant here, and based on binding Ninth Circuit precedent.

There certainly are cases in which federal courts properly apply state rules of contract interpretation to construe *nonexclusive* copyright licenses.  *Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 823–24 (9th Cir. 2001) was one such case. However, as discussed above, *exclusive* licenses, as well as assignments, are in a special category, in that, per the Copyright Act, these types of contracts constitute "transfers of copyright ownership" and are subject to Section 204's statute of frauds. *See Foad*, 270 F.3d at 825 & fn 7; *citing* 17 U.S.C. §§ 101, 204.

---

[7] *See* 2 Patry on Copyright § 5:129 (Are copyright licenses construed under federal or state law?) ("One frequently encounters in opinions the statement that copyright contracts are to be construed by ordinary contract principles.  One trial court boldly, and erroneously declared: "State contract law governs the construction of copyright assignments, licenses, and other writings effecting transfers of intellectual property." This statement is at best unhelpful and sometimes wrong.") (citations omitted).

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

In *Foad*, ***there were signed written agreements between the parties***, but the Ninth Circuit noted that "we cannot conclude from the writings that Foad transferred to GenCom ***explicitly*** its reproduction, adaptation, and publication rights in the revised plot plan." *Id*. at 825 (emphasis added).  The Ninth Circuit continued,

> "We have recognized, however, that § 204(a)'s writing requirement applies only to the transfer of exclusive rights; grants of nonexclusive copyright licenses need not be in writing. *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir.1990). So we must consider whether Foad granted GenCom a nonexclusive license to copy and modify its revised plot plan and to publish the resulting work. A nonexclusive copyright license may be granted orally or by implication." *Foad*, 270 F.3d at 825-26.

Thus, in *Foad*, the Ninth Circuit only looked to state law and considered whether it would allow parol evidence to prove the existence of an oral or implied-by-conduct agreement because the alleged agreement was for a *nonexclusive* license. *Id.*  Or, to put it somewhat more abstractly, it was appropriate to look to state law to imply the existence of an agreement, but only because "state law d[id] not otherwise conflict with the Copyright Act," since the Act allows for nonexclusive licenses to be implied.  *Id.* at 827; *citing, inter alia*, *Sun Microsys., Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1122 (9th Cir. 1999).

As August itself candidly and correctly acknowledged in its own portion of the joint brief, "Federal courts 'rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy.'"  Joint Br. at 55, fn 39; *citing Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988); *accord Sun Microsys.*, 188 F.3d at 1122 (repeating the same language from *Cohen* quoted by August in its footnote).

As far as Line PBC is aware, *Stockfood* is the only case in which any federal court has ever found that an *exclusive* copyright license can be *implied*.  *Stockfood*, 475 F. Supp. 3d at 402–03 ("I find that by granting the right to license the photographs, the Agency Agreement did clearly, if impliedly, convey rights under Section 106 of the Act.").

1   Presumably, the reason no other federal court has recognized the existence of
2   an *implied, exclusive* copyright license is because the Copyright Act prohibits their
3   existence. *See* 17 U.S.C. § 204(a) (statute of frauds); *id*. § 101 (definition of
4   "transfer of copyright ownership"); *Foad*, 270 F.3d at 825 (considering possibility of
5   implied nonexclusive license where parties' agreements did not "***explicitly***" provide
6   for a "transfer" of "reproduction, adaptation, and publication rights"); *Wiley*, 795
7   F.3d at 1003 (finding agency agreements were exclusive licenses where they
8   "***explicitly permit*** Minden to reproduce, and to authorize the reproduction of, the
9   copyrighted photographs."); *DRK Photo,* 870 F.3d at 984 (distinguishing *Wiley*
10  where the agency agreements were "devoid of the "key provision" granting Minden
11  the right to "reproduce, distribute, and display the photographs"); *Torres*, 2023 WL
12  2482962, at *7 (distinguishing *Wiley* where the agreement with the photographer
13  lacked a "***clear***" grant of an exclusive license obvious "***on its face***.") (emphasis
14  added to all).  Thus, the *Stockfood* court erred in looking to state law to imply the
15  existence of an exclusive copyright license.  *See Cohen*, 845 F.2d at 854 (state
16  contract law may be applied "only to the extent such rules do not interfere with
17  federal copyright law or policy"); *Sun Microsys.*, 188 F.3d at 1122 (same).[8]

18      Moreover, in *DRK Photo*, the Ninth Circuit specifically rejected the argument
19  that an agent becomes an exclusive licensee simply because it has the right to "'to
20  authorize' others to exercise the rights of copyright holders."  *DRK Photo*, 870 F.3d
21  at 985.  Which is an aspect of the *DRK Photo* decision that the district court did not
22  consider in *Stockfood*, which it was free to do (since Ninth Circuit authorities are not
23  binding in the District of New Jersey), and which seems to directly conflict with its
24  conclusion as to exclusivity and with August's position here.

25
26  ――――――――――――
    [8] Further, as Line PBC has argued, the Agency Agreements here specifically stated
27  that they "incorporate[] the entire understanding of the parties"  and New York state
    law, to the extent it applies, would bar the introduction of parol evidence to add a
28  new term in the face of such an integration clause.  Joint Br. at 43:27-44:11.

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

**(h)**  **August's Lack of "Derivative Work" Rights, and Grant of Another Purportedly Exclusive License to ImageRights, Are Also Fatal**

In its motion, Line PBC argued this Court should follow *Torres*, where the district court explained that there was "another hurdle" that the photo agency there failed to clear.  Joint Br. at 44:14-46:2.  Namely, here, as in *Torres*, the Section 106 exclusive copyright rights allegedly conveyed via a license (*i.e.*, the rights to display, distribute, and reproduce) did not match the right allegedly infringed (*i.e.*, the right to prepare derivative works).  *Id*.  In response, August argues that there are only "trivial changes" between its photographs, and the multimedia web stories allegedly displayed by Line PBC.  *Id*. at 58:15-89:4.  Not so, as the photo comparison and related discussion included in the brief demonstrate.  *Id*. at 7:1-14.  The complaint uses pictures to demonstrate that the photos at issue were allegedly adapted for use into a different type of work.  *Id*.  This Court should therefore follow *Torres* and conclude that the plaintiff's failure to prove it has exclusive derivative work rights is a fatal, and separate, basis for granting summary judgment to Line PBC.

Similarly, Line PBC also argued that the ImageRights Agreement destroyed any exclusivity August might have obtained from the photographers.  *Id*. at 12:20-13:15 (relevant parts of agreement); 46:12-47:3 (argument).  It is true copyright rights are divisible under the 1976 Act.  However, August's lengthy diversions into divisibility (*id*. at 48:13-50:12, 50:3-12, 57:5-57:14) are largely a red herring.  To borrow August's metaphor, yes, an author can divide rights so one person has an exclusive right to use the author's work in magazines and another an exclusive license to use it in newspapers.  What none of August's cases establish, however, is that an *exclusive* licensee of magazine rights can in turn appoint another purportedly *exclusive* licensee of the same magazine rights, leaving the author, licensee, and sub-licensee all with "exclusive" rights to sue *on the exact same rights*. Which is the situation here; if the Agency Agreements are "exclusive licenses," then so, it might seem, is the ImageRights Agreement.  This takes *Wiley* too far.

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON STANDING

Respectfully submitted,                    PIETZ & SHAHRIARI, LLP

DATED: November 15, 2024        BY:   */s/ Morgan E. Pietz*
                                       Morgan E. Pietz
                                       Matthew A. Trejo

                                       *Attorneys for Defendant LINE*
                                       *FINANCIAL PBC*

## <u>Certificate of Compliance With Page Limitation</u>
## <u>Per Standing Order for Motions for Summary Judgment Section (ECF No. 29)</u>

     As required by this Court's Standing Order for Motions for Summary Judgment (ECF No. 29), this certifies that this reply brief does not exceed ten pages, exclusive of tables of contents and authorities.  Further, the typeface is Times New Roman 14 point, with footnotes in the same size.

Respectfully submitted,                    PIETZ & SHAHRIARI, LLP

DATED: November 15, 2024        BY:   */s/ Morgan E. Pietz*
                                       Morgan E. Pietz
                                       Matthew A. Trejo

                                       *Attorneys for Defendant LINE*
                                       *FINANCIAL PBC*