Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Matthew A. Trejo (SBN 320464)
  matt@pstrials.com
PIETZ & SHAHRIARI, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:   (310) 424-5557
Facsimile:   (310) 597-4626

*Attorneys for Defendant*
*LINE FINANCIAL PBC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUST IMAGE, LLC, a New York Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>LINE FINANCIAL PBC, a Delaware Corporation; and DOES 1-10,<br><br>Defendant(s). | Case No. 2:23-cv-05492-MWC-AS<br><br>Assigned to: Hon. Michelle Williams Court, United States District Judge<br><br>Referred to: Hon. Alka Sagar, United States Magistrate Judge<br><br>Action Filed:          07/10/2023<br>Fact Discovery Cutoff: 10/11/2024<br>Final Pretrial Conf.:  02/07/2025<br>Trial Date:            02/24/2025<br><br>**DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS**<br><br>Hearing:<br>Date/Time: December 13, 2024, 1:30 pm<br>Location: First Street Courthouse<br>350 W. 1st Street<br>Courtroom 6A, 6th Floor,<br>Los Angeles, CA 90012 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................. iii

LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS ............ 1

    (a) Introduction & Summary ........................................................................ 1

    (b) August and its Counsel Intentionally Concealed the Photographer Declarations, So This Evidence Should be Stricken as in *Pearson* ............ 2

    (c) The Backdated Addendums Were Fundamentally Deceitful and August Offers No Justification for Using Them to Try and Deceive this Court ..... 5

    (d) August Fails to Justify its Repeated, Affirmative Misrepresentations About ImageRights and PixMole's Lack of Involvement in this Lawsuit . 8

    (e) August Fails to Justify Slow-Playing the Disclosure of the Photographers' Contact Information and Production of the Harmful Licensing Comps ... 10

    (f) August Has Failed to Carry its Burden of Demonstrating that its Multiple Discovery Failures Were Substantially Justified or Harmless .................. 11

    (g) The Court Should Ignore August's Improper Spoliation Assertion ......... 12

    (h) Conclusion .............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*In re Maxim Integrated Prod., Inc., Deriv. Lit.*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) .................................................................. 8

*Matrix Intl. Textile, Inc. v. Monopoly Textile, Inc.*,
  2017 WL 2906015, No. 16-cv-160084, (C.D. Cal. May 9, 2017) ......................... 11

*Minden Pictures, Inc. v. Pearson Educ., Inc.*,
  929 F. Supp. 2d 962 (N.D. Cal. 2013) ("*Pearson*") ........................................ passim

*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997) ................................................................................ 11

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
  673 F.3d 1240 (9th Cir. 2012) .............................................................................. 11

*Silvagni v. Wal-Mart Stores, Inc.*,
  320 F.R.D. 237 (D. Nev. 2017) ............................................................................ 12

*Smith v. Premiere Valet Servs., Inc.*,
  2020 WL 7034346, No. 19-cv-09888, (C.D. Cal. Aug. 4, 2020) .......................... 12

**Rules**

Fed. R. Civ. Proc., Rule 26(a) ............................................................................... passim
Fed. R. Civ. Proc., Rule 37(c) ............................................................................... passim
Fed. R. Civ. Proc., Rule 56(d) ....................................................................................... 4

# LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS

**(a)    Introduction & Summary**

According to the plaintiff August Image, LLC's opposition (ECF No. 85, "**Sanctions Opp.**") to defendant Line Financial, PBC's motion for sanctions, "August has violated no courts [sic] orders and made no misrepresentations." Sanctions Opp. at 1:3-4. The first of these assertions may be true but is beside the point. The second, however, is indisputably false. The unrebutted record evidence offered by Line PBC in its sanctions motion shows that August and its counsel engaged in *every different type* of misrepresentation during discovery in this case:

- They *actively concealed* the existence of the Photographer Declarations, both through their bad faith approach to the MSJ meet and confer process and with improper deposition obstruction;
- They *misrepresented facts by omission* in arguments made to this Court by not disclosing that the Streiber Addendum they relied upon at the IDC before Judge Sagar was actually executed after this lawsuit was filed and thus should not have been considered as evidence of standing;
- They *affirmatively denied* the involvement of ImageRights—repeatedly—in a verified response to Rog 12, in August's Rule 7.1-1 disclosures, and in multiple statements made by plaintiff's counsel;
- They *intentionally delayed* the disclosure and production of the photographers' contact information and documents, documents related to ImageRights and PixMole, and the harmful licensing comps.

Remarkably, August's sanctions opposition papers devote very little attention to trying to introduce admissible *evidence* that seeks to explain or justify any of August's egregious and pervasive discovery abuse. Apart from a handful of citations to a declaration offered by plaintiff's counsel, Mr. Doniger, the bulk of August's opposition amounts to creative quotation of misleading snippets from inapposite cases. Notably, nothing in August's opposition papers suggests that any aspect of August's discovery failures was anything other than 100% intentional.

Accordingly, the Court should make a finding of bad faith and impose serious inherent authority sanctions in addition to automatic Rule 37 preclusion sanctions.

### (b) August and its Counsel Intentionally Concealed the Photographer Declarations, So This Evidence Should be Stricken as in *Pearson*

According to August, its "October 3 representation that it was unsure whether it would submit declarations in connection with dispositive motions was true at that time, as it was unsure whether or to what extent it would be able to obtain the Photographers' testimony." Sanctions Opp. at 11:4-7.

Hogwash. By October 3rd, August had already ***received back*** signed declarations from 7 of the 12 photographers, as the emails August produced on October 11th at 5:31 pm conclusively demonstrate. Exh. 112 (ECF No. 61), pp. 169, 171, 172, 174, 175, 177, 179 (of 317). August admits it had already received "all of the declarations" as of October 9th. Sanctions Opp. at 10:22. Yet it offers no excuse for why it failed to include *any* of the declarations in the document production it served the morning of October 10th, seventeen minutes prior to the start of plaintiff's 30(b)(6) deposition, instead of waiting until "the next day," October 11th. *Id*.

August next argues, frivolously, that "Line could have asked August about declarations in August's deposition—it did not. Doniger Decl. ¶ 4." ECF No. 85 at 8:22-9:1. In fact, at the October 10th deposition of August's 30(b)(6) representative, counsel for Line PBC ***tried*** to get Ms. Kelly to identify ***all*** of the evidence August would be relying upon to establish standing, but ***counsel for August obstructed this line of questioning.*** Initially, Ms. Kelly identified language in the Agency Agreements. Pietz Reply Decl., Exh. 142, pp. 98:18-107:3. However, when Line PBC asked Ms. Kelly to explain whether there was "anything else" that "establishes August Image as an owner of exclusive rights," her counsel interjected as follows:

> Q All right. So you've testified two bullet points in the first paragraph. Is there anything else that you can point me to, that AUGUST Image can point me to, as establishing exclusive rights in this original agreement?
>
> MR. DONIGER: AUGUST Image as lay witnesses, not AUGUST Image as what their counsel of record may argue.
>
> MR. PIETZ: I'm asking [for] testimony from a corporate representative to a specifically noticed topic. . . .

> [MR PIETZ]Anything else [?]
> [MS. KELLY] A So as a layperson, that's all I'm pointing out at this time."

Pietz Reply Decl., Exh. 142, pp.108:19-109:5, 109:22-25.  Another example:

> "Q Why does AUGUST Image have standing to pursue this lawsuit?
> MR. DONIGER: Calls for a legal conclusion, calls for attorney/client communications. You are free to give an answer to the extent you have a lay witness answer, but please do not repeat the contents of communications that you've had with counsel as to our view of the legal basis why you have standing." *Id*. at 173:7-15.

Each time it came up, Ms. Kelly took her counsel's hint and declined to disclose the existence of the Photographer Declarations (*see id.*)—which she herself had spent the last few weeks collecting from the photographers, at the request of August's counsel.  Indeed, Ms. Kelly received five of the signed declarations in the three days prior to her deposition, including one the afternoon of the day before.  Exh. 112, *supra*, pp. 168, 170, 173, 174, 176 (of 317).  Thus, August and its counsel's concealment of the existence of the Photographer Declarations was intentional.

Moreover, the meet and confer emails adduced by Line PBC demonstrate that it specifically asked August to identify all of its summary judgment evidence on standing ***six different times*** between September 25 and October 4, 2024.  **Exh. 133**[1] at pp. 19, 17, 12, 11, 6, 2. August's concealment of the Photographer Declarations in the face of these specific inquiries was done in bad faith, and in direct contravention of Judge Hsu's standing order on summary judgment.  *See* ECF No. 29 at § A(1).

August also asserts that "if the declarations were responsive to any discovery requests at all, they were to requests propounded on August 30[, 2024]."  ECF No. 85 at 10:26-27.  Once again, this is plainly wrong; the Photographer Declarations were responsive to RFPs served by Line PBC on May 22, 2024.  Exh. 102 (ECF No. 61) at pp. 121-22 (of 317).  Since the existence of the declarations was concealed between September 26 and October 11, 2024, in contravention of Rule 26(a)(1)(A),

---

[1] Bold, underline "**Exhs.**" were filed at ECF No. 68-1 and authenticated at No. 82-1.

1 | Line never had a chance to move to compel production of related communications.

2 |     August now faults Line PBC for not moving to "reopen discovery" and not invoking Rule 56(d), in order to address the Photographer Declarations. Sanctions Opp. at 8:21. Once again, this argument only highlights August's own improper motivation and bad faith. The *reason* August concealed the Photographer Declarations for the final few weeks of fact discovery was precisely because August wanted to try and *avoid* these two things from happening. On September 27, 2024, Line PBC gave notice that it intended to file a "(2) Motion to Extend Fact Discovery" and a "(5) Renewed Motion to Compel the Plaintiff to Produce the Photographers for Deposition." **Exh. 130** (ECF no. 68-1) at 192, 194 (of 296). But August responded that it would oppose these motions, and would oppose *an ex parte* application to shorten the time for them to be considered so as to minimize the length of any extensions of case management deadlines. **Exh. 133**, pp. 8, 3, 1.

    Of course, if August had produced the Photographer Declarations before the final few hours of fact discovery, Line PBC would have *re-noticed* the depositions of the photographers. *See* **Exh. 130**, *supra*. And there would have been good cause to revisit the issue raised at the IDC of whether their depositions could be compelled *via notice* (*id.*), in view of the photographers each agreeing to testify voluntarily by averring that "If called as a witness, I could and would testify as set forth below." Moreover, August snapping its fingers and the photographers immediately agreeing to testify in this case voluntarily is not the same picture that August painted at the IDC that if it wanted the photographers' deposition testimony, it would have to subpoena them. "**Sanctions Br.**" (ECF No. 82), pp. 9-10.

    Accordingly, this case is like *Pearson*, where Judge Alsup struck the plaintiff's agency agreements with photographers as a sanction for discovery abuse because the plaintiff "made a strategic choice" not to disclose these agreements until "very late." *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 967 (N.D. Cal. 2013) ("*Pearson*"). As in *Pearson*, the plaintiff here "reaffirmed that

choice by failing to timely supplement its Rule 26(a) disclosures and by failing to produce the agency agreements"—here, the Photographer Declarations—"In response to [defendant's] document requests. [Plaintiff] has not shown substantial justification for its very late disclosures. [Plaintiff] must now accept the consequences of its decision." Since "Minden withheld the agency agreements as a deliberate part of its litigation strategy" the court held that "a lesser remedy than preclusion would not be appropriate." *Pearson*, 929 F. Supp. 2d at 967.

It is true that, in *Pearson*, there were also Rule 37(b) violations, given that the plaintiff there had also violated a court order to append all relevant agreements to its amended complaint and represented that its document production was "substantially complete," when it really was not (as here). *Id.* However, there were also Rule 37(b) violations here—just not enough time to pursue them before the close of fact discovery, which was a direct result of plaintiff's deliberate strategy to try and run out the clock, to avoid those discovery motions from being heard.

**(c)   The Backdated Addendums Were Fundamentally Deceitful and August Offers No Justification for Using Them to Try and Deceive this Court**

The motivation behind August's creation of the Addendums was plainly stated by Ms. Kelly in one of the emails that August produced 17 minutes before the start of her October 10th deposition: "Defense attorneys have found a chink in AUGUST's armor, so to speak, regarding the language in our agreements with photographers. With our current roster, we've been asking everyone to sign an addendum to their contract that explicitly states AUGUST has the 'standing' to pursue these matters." **Exh. 135**, p. 1.

The way in which August went about trying to mend the "chink in [its] armor" was fundamentally deceitful, and, unfortunately, it almost worked. Specifically, the Addendums were backdated to look like they memorialized terms agreed to *at the time the original Agency Agreements* were entered into. Which, as explained in more detail in the MSJ, is an important detail since standing is

1  evaluated *at the time a case is filed*.  "**Joint MSJ Br.**" (ECF No. 59), § IV(a)(1)-(2).

2  According to August's sanctions opposition, "there is no 'backdating' or bad faith here," for reasons it previously explained in its summary judgment opposition. Sanctions Opp. at 17:23-25; *citing* Joint MSJ Br. (ECF No. 59), § V(C).  However, in the MSJ brief, August *admitted* to the basic facts of the backdating.  Specifically, August acknowledged that the Addendums "have no signature dates," but they "do refer to the dates of the corresponding original syndication agreements."  Joint MSJ Br. at 63:2-4; *see also* Exh. 88 (ECF No. 61), p. 95 (of 317) (verified interrogatory response admitting all Addendums except one were signed after lawsuit was filed).

In short, there is no *factual* dispute here that August has relied on "backdated" documents, namely the Addendums, to try and establish that it has standing to sue for the alleged infringement of copyright registrations owned by the photographers. August first did this at the IDC before Judge Sagar (**Exh. 119**, pp. 3, 12; **Exh. 124**, p. 5), and it has done it again more recently in its opposition to the summary judgment motion (Joint MSJ Br., pp. 15-16, 48-52).

According to August, there is "nothing nefarious or improper" about its use of these backdated Addendums because it "freely admits" that they are backdated, and the backdating was "only" done because the Addendums were "intended to reflect the understanding of the parties thereto (August and the Photographers) as of" the earlier dates listed in the original Agency Agreements.  Joint MSJ Br. at 63:4-6.

However, August did *not* "freely admit" that the Addendums were backdated *prior to the IDC before Judge Sagar*.  Sanctions Br. at 8:6-25.  On August 2, 2024, August submitted an IDC brief that *quoted* the Streiber Addendum as evidence supporting August's assertion that "August filed this suit to redress infringement of its exclusive rights in the Subject Photographs, *not as a surrogate or pass-through for the photographers*."  **Exh. 119**, p. 3 (brief) (emphasis added; the language in the brief that is quoted from the Streiber Addendum is highlighted); *id*., p. 12 (the Streiber Addendum submitted to this Court).  On August 9, 2024, Line PBC sent a

letter which: (a) noted that the Addendums appeared to be backdated; (b) asked August when the Addendums were signed; and (c) argued they should not be considered if they were signed after this lawsuit was filed.  **Exh. 120**, p. 3.

Despite being on notice prior to the IDC that the Streiber Addendum submitted to this Court appeared to be backdated and why that mattered, August's counsel *refused to disclose* when the Addendums were signed.  **Exh. 121**, p. 2 (8/9 letter from plaintiff declining to state when the Addendums were signed and directing Line PBC to "ask these questions to August in a deposition and/or in a discovery request.")  Line PBC did then serve an interrogatory asking this question on August 13, 2024, which was two days before the IDC.  **Exh. 123**, p. 7.  At the IDC, and despite being on notice of the backdating issue, counsel for August specifically relied upon the "addenda" to explain why this is *not* a case August has brought as "*a surrogate or pass-through for the photographers.*"  (**Exh. 119** at 3), but *rather* a case "*August has brought in its own name to redress violations of its exclusive rights in the photographs*."  **Exh. 124** at 5:1-7 (emphasis added).

One month after the IDC, and only after insisting on being asked via formal written discovery, August Image eventually (if not "freely") admitted that all of the Addendums including the one it submitted to the Court at the IDC were backdated. Exh. 88 (ECF No. 61), p. 95 (of 317).  Since the Streiber Addendum was signed after the complaint was filed (*id.*), the key language August pointed to from it, which Judge Sagar specifically mentioned in explaining why she was ruling in August's favor on the "managing agent" issue at the IDC (Sanctions Br. at. 8:6-10:21), should not have been considered by the Court (MSJ Joint Br. at § IV(a)(1)-(2)).

Two months after admitting to backdating the Addendums, August reversed course on its IDC position altogether and now argues in its MSJ Brief that it is *pursuing this case as a pass-through for the photographers* after all.  Joint MSJ Br. at 60:6-9 (August argues it "does not merely 'stand in the shoes of a nonexclusive licensee, permitted to use the work but not to prevent others from doing so. Rather,

*[August] st[ands] in the shoes of the photographer[s]* with respect to the licensing rights that were assigned to it from the photographer[s].'") (emphasis added).

    *Pearson* is on all fours. Here, as in *Pearson*: (1) the ***reason*** the plaintiff backdated the copyright transfer documents in the first place was to try and shore up the its claim to standing in an ongoing mass copyright litigation campaign; (2) the backdating was done ***in a way*** designed to deceive defendants and courts, who might not think to ask when the documents were signed; (3) after being ***caught on the backdating*** and realizing that post-complaint documents are ineffective to confer standing, the plaintiff then switched standing theories (there the plaintiff moved away from the copyright assignments and towards the agency agreements; here, the plaintiff first renounced the 'agency' theory of standing at the IDC, but then embraced it on MSJ); (4) as discussed above, the plaintiff ***intentionally delayed producing key documents*** relevant to its new standing theory (there the agency agreements, here the Photographer Declarations), until summary judgment proceedings were already well underway, in contravention of Rule 26(a)(1)(A).

    Moreover, here, it is undisputed that ***August knowingly submitted a backdated document to this Court*** and used it to advance its position at the IDC, without disclosing to the defendant or the Court that the Streiber Addendum was backdated, and despite being on notice of the issue ahead of the IDC. Which means that the facts here are worse than in *Pearson*, such that the kind of serious, inherent authority sanctions that Judge Alsup considered but stopped short of imposing are justified here. *See Pearson,* 929 F. Supp. 2d at 971; *accord In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F. Supp. 2d 1046, 1056 (N.D. Cal. 2008) (backdating documents is improper when it is done with an intent to deceive).

**(d) August Fails to Justify its Repeated, Affirmative Misrepresentations About ImageRights and PixMole's Lack of Involvement in this Lawsuit**

    As to ImageRights and PixMole, August argues, frivolously, that it should not be sanctioned for ***affirmatively denying*** their involvement in this litigation,

repeatedly, including under penalty of perjury, because "Line never asked August to supplement its response to ROG 12 to list ImageRights or PixMole." Rog 12 asked August to identify all witnesses with knowledge of Line PBC's alleged copying of the disputed photographs. We now know that a truthful answer to this interrogatory would have involved identifying ImageRights and PixMole, who discovered most of the disputed blog posts at issue with their error-prone lawsuit generation software. Sanctions Br., pp. 14:13-16:6. But a truthful response is not what August provided; it identified *only* August's owner Bill Hannigan and its 30(b)(6) witness Ms. Kelly, not ImageRights and PixMole. **Exh. 116**, p. 4. Thus, August is *blaming* Line PBC for taking August and its counsel at their word that ImageRights was not involved and not moving to compel a truthful answer to their false interrogatory response. No wonder Judge Caproni called August and its counsel's approach to their federal civil discovery obligations "lackadaisical, at best," in another case. **Exh. 140**, p. 11.

In an attempt to muddy the waters, Mr. Doniger offers a declaration averring that "My firm produced ImageRights-related documents to counsel for Line in July, August, and October prior to August's deposition." Doniger Decl. i/s/o Sanctions Opp. (ECF No. 85-1) at ¶ 2. Notably, Mr. Doniger does not specify what "ImageRights-related documents" were supposedly produced in *in July and August*, or explain how Line PBC was supposed to divine that any documents produced then "related" to ImageRights. *See id.* It was not until 9/25/24, 16 days before the close of fact discovery, that August first admitted ImageRights' involvement in this case by amending its initial disclosures. **Exh. 128**, p. 5. And it was not until October 3, 2024, and only after being threatened with motions to extend fact discovery and compel production, that August finally agreed that "we will produce documents by Monday [October 7] which should substantially complete our document production, and included within that will be ImageRights-related documents." **Exh. 133**, p. 9. August still has never produced documents related to PixMole, which, contrary to August's incorrect assertion, are indeed responsive to multiple RFPs served by Line

PBC. Exh. 102 (ECF No. 61), *e.g.*, responses to RFP Nos. 22, 26, 27.

By falsely, affirmatively, and repeatedly denying ImageRights and PixMole's involvement in this litigation until very late in discovery, August severely prejudiced Line PBC's ability to probe the reliability of these entities' lawsuit generation software. Which Ms. Kelly eventually admitted is the source of most of August's evidence of alleged copying, even though she also testified that it is error-prone and subject to manipulation by individual system users. Joint MSJ Br., pp. 29:4-32:2. Should Line have subpoenaed these entities seeking their sensitive source code for their lawsuit generation software early in discovery even though August and its counsel repeatedly denied their involvement, including under penalty of perjury? Subpoenaed them and moved to compel between September 25th, when their involvement was finally admitted, and October 11th, when fact discovery closed?

August and its counsel's transparent bad faith in falsely denying ImageRights and PixMole's involvement merits serious inherent authority sanctions. August should be precluded not just from calling these entities per Rule 37(c)(1) but from introducing anything derived from them or their software as a sanction for bad faith.

**(e) August Fails to Justify Slow-Playing the Disclosure of the Photographers' Contact Information and Production of the Harmful Licensing Comps**

August admits that it waited until August 23, 2024—more than a year after filing this case and 49 days before the fact discovery cutoff—to produce unredacted licenses from which Line PBC could have gleaned full contact information for all of the photographers. *Id*. at 3:8-11. Of course, producing documents from which an opposing party can glean how to contact a witness is not what is required by Rule 26(a)(1)(A)(i). Moreover, August points to no evidence disputing the showing made by Line PBC in its motion that August's initial disclosures related to the photographers were ***intentionally*** tardy, deficient, and contained outdated contact information. Nor does August dispute that it first gave Line PBC the runaround about whether it ever asked the photographers to collect relevant, responsive

documents, but then ultimately never did so. Sanctions Br., pp. 11-12. Accordingly, all the photographers[2] should be precluded from testifying per Rule 37(c)(1) and due to the plaintiff's bad faith in slow-playing the disclosure of their contact information. *See Matrix Intl. Textile, Inc. v. Monopoly Textile, Inc.*, 2017 WL 2906015, No. 16-cv-160084, (C.D. Cal. May 9, 2017), at *3 (party precluded from calling witness when it did "not explain why it waited five months—and three days before the fact discovery cut-off—to supplement its disclosures.")

Similarly, August offers no justification for why it waited until the final few hours of fact discovery to produce all of the licensing comps showing the photographers charging low license fees for the photos at issue. At a minimum, these licenses, which are years-old, should have been produced prior to the plaintiff's deposition, so that Line PBC could have asked August about them. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts.") Nor does August convincingly explain why it should not be stuck with the 'I don't know' answers of its 30(b)(6) witness, in response to questions on noticed topics asking for August and the photographers' past profits on the photos at issue. Accordingly, August should be precluded from introducing evidence of it and the photographers' lost profits, and the jury should be informed of August's discovery abuse hiding the low-value licenses.

**(f) August Has Failed to Carry its Burden of Demonstrating that its Multiple Discovery Failures Were Substantially Justified or Harmless**

To escape Rule 37(c)(1)'s automatic preclusion sanction, it was August's burden to demonstrate that its Rule 26(a)(1)(A) failures were either "substantially justified" or "harmless." *See R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240,

---

[2] According to August, it will examine 13 photographers, plus other witnesses, in a jury trial estimated to last "2-3 days." ECF No. 26 (Joint Rule 26(f) Report) at 7:25.

-11-
DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS

1246 (9th Cir. 2012). August cites a case explaining that four factors typically guide this determination, but addresses none of the factors in its brief. *See* Sanctions Opp. at 7; *citing Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017).

Here, all four of the factors from *Silvagni* weigh in favor of preclusion: (1) Line PBC was "prejudiced and surprised" by all of the evidence produced during the final week of fact discovery, including the Photographer Declarations and related emails, low-value license comps, ImageRights documents, *etc*. (2) Since most of the major revelations were withheld until the final week of fact discovery, Line PBC now has no "ability to cure" the prejudice, apart from via this sanctions motion. (3) Any cure other than preclusion would likely disrupt trial. Finally, and most importantly, (4) August's "bad faith [and] willfulness in not timely disclosing the evidence" weighs heavily in favor of preclusion. *See id*.

**(g)     The Court Should Ignore August's Improper Spoliation Assertion**

To try and distract from its sanctionable misconduct, August asks the Court to sanction Line PBC for "spoliation." However, "a request for affirmative relief is not proper when raised for the first time in an opposition." *Smith v. Premiere Valet Servs., Inc.*, 2020 WL 7034346, No. 19-cv-09888, at *14 (C.D. Cal. Aug. 4, 2020). August's table pounding is particularly inappropriate given that its opposition brief was filed after the deadline to file a new motion and have it heard before the motion cutoff. ECF No. 44 at 2 (specifying "Last Date to Hear Motions" as 12/06/2024). The deposition testimony August references does not come close to establishing "spoliation," and, if August truly believes its own arguments in its sanctions opposition, it should have pursued such a motion before the close of fact discovery. The Court should wholly ignore the improperly-raised spoliation argument.

**(h)     Conclusion**

For the foregoing reasons, Line PBC respectfully requests that the Court make a finding of bad faith and sanction both August and its counsel Doniger / Burroughs for discovery abuse, all as set out in Line PBC's proposed order (ECF No. 68-2).

Respectfully submitted,

PIETZ & SHAHRIARI, LLP

DATED: November 27, 2024    BY:    */s/ Morgan E. Pietz*
Morgan E. Pietz
Matthew A. Trejo

*Attorneys for Defendant
LINE FINANCIAL PBC*

## L.R. 11-6.2. Certificate of Compliance and Certificate of Compliance With Page Limitation Per Standing Order (ECF No. 83)

Counsel for Defendant Line Financial PBC certifies that this this reply brief complies with the type-volume limitation of L.R. 11-6.1.  This certification is made relying on the word count of the word-processing system used to prepare the document.  Defendant's counsel further certifies that this reply brief contains 4,248 words and complies with the word limit of L.R. 11-6.1.

As required by this Court's Standing Order (ECF No. 83), this certifies that this reply brief does not exceed twelve (12) pages, exclusive of tables of contents and authorities.  Further, the typeface is Times New Roman 14 point, with footnotes in the same size.

Respectfully submitted,

PIETZ & SHAHRIARI, LLP

DATED: November 27, 2024    BY:    */s/ Morgan E. Pietz*
Morgan E. Pietz
Matthew A. Trejo

*Attorneys for Defendant
LINE FINANCIAL PBC*

DEFENDANT LINE PBC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS